**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**AMERICAN BROADCASTING COMPANIES, INC.,** ***et al.*****,**

**Plaintiffs,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION,** ***et al.*****,**

**Defendants**

**and**

**FREQUENCY FORWARD, LLC,**
**MEDIA ACTION CENTER,** ***et al.*****,**

**Proposed Plaintiffs-Intervenors**

**Case No. 1:26-cv-2902**

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

By: /s/ Arthur Belendiuk
Arthur V. Belendiuk
D.C. Bar No. 336768
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W., #301
Washington, D.C. 20016
(202) 363-4559

Dated: August 24, 2026

## TABLE OF CONTENTS


**Introduction**.............................................................. 1

**Legal Standard for Intervention**............................................ 3

**Intervenors have Article III Standing**...................................... 4

**Intervenors' Motion is Timely**.............................................. 5

**Intervenors have a Legally Protected Interest in this Litigation**.......... 5

**The FCC's Actions Impair and Impede Intervenors' Legally Protected Interest**............ 5

**Plaintiffs Cannot Adequately Represent the Interests of the Proposed Intervenors**.......... 6

**Conclusion**..................................................................8

# TABLE OF AUTHORITIES

**Cases**

*Board of Education v. Pico,*
457 U.S. 853, 867 (1982*)*.......................................................................... 4

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n,*
788 F.3d 312, 316 (D.C. Cir. 2015).......................................................... 3

*FCC v. League of Women Voters of Cal.*,
468 U.S. 364, 380, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984)............................... 3

*Kane Cnty., Utah v. United States,*
*928 F.3d 877, 890 (10th Cir. 2019)*.......................................................... 3

*Lamont v. Postmaster General*,
381 U.S. 301, 308 (1965).......................................................................... 6

*Illinois Citizens Comm. for Broad. v. FCC*,
515 F.2d 397, 407 (DC Cir. 1975)............................................................. 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555, 560-61 (1992)..................................................................... 4

*Office of Communication of United Church of Christ v. FCC*,
359 F.2d 994, 1003 (D.C. Cir. 1966)......................................................... 7

*Ormat Nevada Inc. v. Burgum*,
Case No. 1:2025cv03512 - Document 15 (D.D.C. 2026).................................... 3

*Radio Communications Corporation v. FCC*,
141 F. 4th 243, 249 (D.C. Cir. 2025)........................................................ 4

*Red Lion Broad. Co. v. FCC*,
395 U.S. 367, 386, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969)................................ 3, 8

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810, 820 (9th Cir. 2001)............................................................. 3

*WildEarth Guardians v. Salazar*,
272 F.R.D. 4, 9 (D.D.C. 2010)................................................................... 3

**Rules**

Fed. R. Civ. P. rule 24(a)……………………….……………..…………………………………….. 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN BROADCASTING COMPANIES, INC.,** ***et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**FEDERAL COMMUNICATIONS COMMISSION,** ***et al.*,**<br><br>**Defendants**<br><br>**and**<br><br>**FREQUENCY FORWARD, LLC,**<br>**MEDIA ACTION CENTER,** ***et al.*,**<br><br>**Proposed Plaintiffs-Intervenors** | **Case No. 1:26-cv-2902** |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

**Introduction**

1. Frequency Forward, and the Media Action Center, individuals, Elise Nakhnikian, Ginger Feldman, Jen Senko, Marcia Annenberg, Rosy Harari, Kristen Brochmann, Jill Noelle Pellowski, Anne Cooper, William Clinton McSherry II, Merry Jones, Kimberley Leahy, James Keenan, Mitchell Szczepanczyk, Sabrina Haake, Torry Mercer, Jeff Shaw, Lanny Larson and Roxanne Griffith (collectively, "Proposed Intervenors or Intervenors"), respectfully submit this memorandum of points and authorities in support of their Motion to Intervene ("Memorandum") as plaintiffs in this case pursuant to Fed. R. Civ. P. 24(a), Fed. R. Civ. P. 24 (b) and Local Rule 7(j).

2. American Broadcasting Companies, Inc., and The Walt Disney Company, ("Plaintiffs") filed their Complaint for Declaratory and Injunctive Relief ("Complaint") and their Motion for Temporary Restraining Order and Preliminary Injunction with this Court on August 18, 2026. These filings seek judicial relief from the Federal Communications Commission's ("FCC") unlawful campaign of coercion to limit Plaintiffs' programming and reporting in retaliation for Plaintiffs having broadcast content of which the current administration disapproves. Plaintiffs' filings ably document the extreme pressure the agency and administration have brought to bear on Disney and its broadcast stations, the harm it has wrought, and the retaliatory and pretextual punitive measures it has taken and threatened to take in order to censor, chill and otherwise disrupt ABC's broadcasting.

3. Proposed Intervenors are FCC watchdog non-profits and regular viewers of ABC stations in their home markets who are harmed by the FCC's actions and face further harm to the extent the Plaintiffs continue to succumb to the agency's pressure, possibly by negotiating a settlement which limits the content provided by the ABC stations. See Declarations of Jack Smith, Susan Wilson Cowan and Roxanne Griffith, Exhibits, 1, 2 and 3. Proposed Intervenors cannot take full solace in ABC's and Disney's advocacy of their First Amendment right to be free of governmental interference, as their corporate interests may not necessarily align with the interests of the Intervenors viewers. Plaintiffs acknowledge these public viewer interests in objecting to the FCC's early license renewal requirement, stating:

> The ultimate injury here is not to the Station or its parent company. It is to the public. When a broadcaster must weigh regulatory retaliation before making editorial decisions, the public loses access to journalism that is free from government influence. The Order—both on its own terms and as a signal to other broadcasters—advances exactly that result. A press that edits itself

> to avoid government displeasure is not a free press. The Commission should not be the instrument of that outcome[1]

4. The First Amendment rights of broadcast station viewers has long been affirmed.[2] It is these right that Intervenors seek to vindicate.

**Legal Standard for Intervention**

5. A recent DC Federal District Court decision allowing intervention reiterated the DC Circuit's standard for intervention under Fed. R. Civ. P. rule 24(a) as follows:

> The D.C. Circuit requires putative defendant-intervenors to demonstrate Article III standing by showing injury in fact, causation, and redressability. See *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n,* 788 F.3d 312, 316 (D.C. Cir. 2015). Additionally, courts in this Circuit require four elements for a party to intervene as of right under Rule 24(a): "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." Crossroads, 788 F.3dat 320."Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections."*WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)).[3]

Additionally, "the requirements for intervention may be relaxed in cases raising significant *public interests*." *Kane Cnty., Utah v. United States, 928 F.3d 877, 890 (10th Cir. 2019)* (citation and

---

[1] FCC FORM 2100, SCHEDULE 303-S KABC TELEVISION, LLC (KABC-TV) Objection to Unlawful Early Renewal, p. 17, May 28, 2026.

[2] National Association of Broadcasters v. FCC, 147 F. 4th 978, **998** - Court of Appeals, Dist. of Columbia Circuit 2025**:** *Red Lion Broad. Co. v. FCC,* 395 U.S. 367, 386, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). In particular, the Court subordinated "the right of the broadcasters" to "the right of the viewers and listeners," *id.* at 390, 89 S.Ct. 1794, to "receiv[e] a balanced presentation of views on diverse matters of public concern," *FCC v. League of Women Voters of Cal.,* 468 U.S. 364, 380, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984).

[3] *Ormat Nevada Inc. v. Burgum*, No. 1:2025cv03512 - Document 15 (D.D.C. 2026), at p. 5.

quotations omitted).

**Intervenors have Article III Standing**

6. The DC Circuit recently elaborated on the requirements for Article III standing as follows:

> To establish Article III standing, a plaintiff must show (1) injury in fact that is concrete and particularized and actual or imminent rather than conjectural or hypothetical, (2) causation fairly traceable to the defendant's challenged action and (3) redressability by a favorable decision that is likely as opposed to merely speculative. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).[4]

The right to receive information is a fundamental right protected under the Constitution. The Supreme Court has held that "the right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom." *Board of Education v. Pico*, 457 U.S. 853, 867 (1982).

7. Intervenors have suffered actual, concrete and particularized injury in fact as regular viewers of ABC stations as a consequence of the FCC's punitive censorship campaign that has inhibited ABC's programming and content and will continue to do so for as long as the FCC holds the sword over Plaintiffs' heads by the threat of license revocation. See e.g. Declaration of Roxanne Griffith, Ex. 3. Should the FCC designate Plaintiffs' renewal applications for a trial type evidentiary hearing, the pressure on Plaintiffs would continue, potentially for years, as the hearing runs its course and appeals are heard. Plaintiffs acknowledge the bind in which they find themselves: "Each day, Plaintiffs (and every other broadcaster observing the Commission's actions) face a choice between exercising independent editorial judgment or risking the loss of valuable broadcast licenses—precisely the type of choice that chills protected First Amendment

---

[4] *Radio Communications Corporation v. FCC*, 141 F. 4th 243, 249 (D.C. Cir. 2025).

activity and cannot be remedied after the fact."[5] This constitutional harm is directly caused by the FCC's retaliatory and pretextual censorship campaign. The relief sought by Plaintiffs and Potential Intervenors in this case, if granted, would relieve the pressure and enjoin the FCC's unlawful actions. ABC viewers constitutional rights would be restored, barring any compromises Plaintiffs were to make in settling the case. The declarations of Intervenor viewers appended to this Memorandum attest to the harm they suffer. and otherwise meet the requirements for Article III standing.

**Intervenors' Motion is Timely**

8. Plaintiffs filed this lawsuit on August 18, 2026. Intervenors are filing their Motion to Intervene approximately one week later. Intervenors will not file a complaint and will comply with the schedule set by the Court. There is no question that Intervenors' Motion is timely.

**Intervenors have a Legally Protected Interest in this Litigation**

9. The First Amendment rights of viewers to have access to speech that is free from government interference is at issue in this litigation. Viewers' legally protected interest in consuming broadcasting over the public airwaves uncensored by the government has long been established.[6]

**The FCC's Actions Impair and Impede Intervenors' Legally Protected Interest**

10. Plaintiffs admit their quandary under threat of FCC sanctions, up to and including revocation of valuable broadcast licenses.[7] The FCC has initiated proceedings, which may well involve a protracted hearing, for retaliatory and pretextual purposes. See e.g. Declaration of Jack Smith, former FCC General Counsel, Ex. 1. Plaintiffs have been and continue to be pressured

---

[5] Complaint, at ¶ 143.
[6] n. 2, *supra*.
[7] n. 1, *supra*.

into curtailing their programming and reporting, Proposed Intervenors' First Amendment rights are impaired and impeded by government action. Just as Plaintiffs have a First Amendment right to broadcast without government interference, so too Proposed Intervenors have an absolute right to receive such information.[8]

**Plaintiffs Cannot Adequately Represent the Interests of the Proposed Intervenors**

11. When the FCC unlawfully required the ABC stations to file for early renewal of their broadcast licenses and the ABC stations filed their early renewal applications over objection, many of the same Intervenors filed a petition to deny the applications. Intervenors agreed that the early renewal requirement was unprecedented, retaliatory and pretextual, and thus unlawful. They nevertheless had a serious concern that Disney/ABC might secretly negotiate a settlement of any FCC proceedings involving their licenses, which agreement could obligate the broadcaster to temper or avoid reporting speech that was critical of the current administration. Such a settlement would violate the First Amendment rights of viewers of ABC stations. Chief Judge Bazelon stated years ago, "For better or worse, a licensee confronted with the choice between an economic disadvantage and pleasing the government through curtailment of a constitutional right will generally choose curtailment."[9]

12. Broadcast licenses are held in a public trust for the benefit of the public. Viewers of the ABC stations have a duty to uphold that responsibility and not allow licensees or the

---

[8] "The protection of the Bill of Rights goes beyond the specific guarantees to protect from Congressional abridgment those equally fundamental personal rights necessary to make the express guarantees fully meaningful. I think the right to receive publications is such a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them." *Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965).

[9] *Illinois Citizens Comm. for Broad. v. FCC*, 515 F.2d 397, 407 (DC Cir. 1975) (Bazelon, C.J. statement on denial of rehearing en banc)

government to compromise the use of those licenses in the public interest. The DC Circuit has affirmed Congress' public benefit purpose:

> [I]t is the public in individual communities throughout the length and breadth of our country who must bear final responsibility for the quality and adequacy of television service — whether it be originated by local stations or by national networks. Under our system, the interests of the public are dominant. The commercial needs of licensed broadcasters and advertisers must be integrated into those of the public. *Hence, individual citizens and the communities they compose owe a duty to themselves and their peers to take an active interest in the scope and quality of the television service* which stations and networks provide and which, undoubtedly, has a *vast impact on their lives and the lives of their children.* Nor need the public feel that in taking a hand in broadcasting they are unduly interfering in the private business affairs of others. On the contrary, *their interest in television programming is direct* and their responsibilities important. *They are the owners* of the channels of television — indeed, of all broadcasting.
>
> FCC, *Television Network Program Procurement*, H.R.Rep. No. 281, 88th Cong., 1st Sess. 20 (1963). (Emphasis added.)[10]

13. The interests of the Proposed Intervenors in this litigation may well diverge from the interests of Plaintiffs. While both groups seek the same ultimate result, namely cancellation of the FCC early renewal proceeding and associated retaliatory and pretextual inquiries and investigations, the viewers of the ABC stations have a strong constitutional interest in preserving the uncensored, full and fair programming and reporting they have enjoyed for years. Any negotiated deals between Plaintiffs and the FCC may well compromise the constitutional rights of ABC viewers. Intervenor Plaintiff status as viewers will help ensure that these rights are protected. Plaintiffs acknowledge in the Complaint that the FCC's unlawful actions have forced

[10] *Office of Communication of United Church of Christ v. FCC*, 359 F.2d 994, 1003 (D.C. Cir. 1966).

them to make programming and content decisions they would not normally have made.[11] Viewers are injured by these journalistic distortions, which will continue for as long as the FCC holds proceedings that threaten the ABC licenses.

---

[11] ABC cannot ignore the consequences of any decision that might anger the Administration or the FCC Chairman… ABC ultimately decided to livestream the speech on ABC News LIVE, which it ordinarily would not have done. Complaint p.4

…with every editorial judgment shadowed by the prospect of provoking the Administration into further retaliation. Complaint p.5

As a result of these cumulative pressures from the FCC's investigation into *The View* as well as the early license renewal process...the process for evaluating potential guests for *The View* has changed. Complaint p.26

the President called for the revocation of ABC's and NBC's broadcasting licenses based on their failure to broadcast his speech… However, this threat, even more than the ones preceding it, had teeth: the Commission had before it the Stations' early license renewal applications. Complaint p.35

…the Chairman has made clear that, while he is in charge, a station will be found to serve the public interest only if its programming is favorable to the Administration. Complaint p.36

The campaign is also calculated to operate *in terrorem* upon the rest of the industry: ABC is the visible target and suffers the most immediate harm, but the message is addressed to every broadcaster in the country, and the ultimate cost is borne by the press as a whole. Complaint p.37

**Conclusion**

14. Proposed Intervenors have satisfied the legal requirements for standing and intervenor status in this litigation, and therefore respectfully ask the Court to grant their Motion to Intervene. As the Supreme Court said in *Red Lion*: "It is the right of the viewers and listeners, not the right of the broadcasters, which is paramount."[12]

By: /s/ Arthur Belendiuk
Arthur V. Belendiuk
D.C. Bar No. 336768
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W., #301
Washington, D.C. 20016
(202) 363-4559

Dated: August 24, 2026

[12] *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 389 (1969)