UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN BROADCASTING COMPANIES, INC., *et al.*,

*Plaintiffs*,

v.

FEDERAL COMMUNICATIONS COMMISSION, *et al.*,

*Defendants*.

Civil Action No. 1:26-cv-2902-LLA

**PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE (DKT. NO. 18)**

# INTRODUCTION

Plaintiffs American Broadcasting Companies, Inc., The Walt Disney Company, and the eight licensees of the television stations owned by ABC respectfully oppose the Motion to Intervene filed by Frequency Forward, LLC, the Media Action Center, and fourteen individual viewers. *See* Dkt. No. 18. Although Plaintiffs share proposed intervenors' concerns about the Federal Communications Commission's unlawful retaliatory campaign against Plaintiffs, proposed intervenors' motion fails to meet the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a) for two independent reasons.

*First*, proposed intervenors lack a legally protected interest because the harm they invoke is harm to *Plaintiffs*, not to themselves. And the broader injury they claim on behalf of the viewing public is a generalized grievance shared by all viewers, which cannot support intervention.

*Second*, proposed intervenors do not come close to rebutting the presumption that Plaintiffs already adequately represent any interest that proposed intervenors might assert. Plaintiffs may make decisions in the conduct of their case of which proposed intervenors may disapprove, and which might, in proposed intervenors' estimation, be harmful to the viewing public, but that conjecture cannot support a finding that Plaintiffs—who have every incentive to protect their own right to be free of unlawful retaliation—will not vigorously contest Defendants' unlawful, speech-suppressing conduct.

To the extent that proposed intervenors seek permissive intervention under Rule 24(b), that request should also be denied. Although proposed intervenors cite Rule 24(b) in passing in their motion, they have forfeited any claim to permissive intervention by failing to develop any argument on that point. And in all events, permissive intervention is inappropriate where, as here, it would unduly complicate this litigation with no countervailing benefit.

Proposed intervenors have other mechanisms to ensure that their perspective is offered to the Court: they can seek to file an amicus brief at the appropriate stage in the litigation. *See, e.g.*, *Ellsworth Assocs., Inc. v. United States,* 917 F. Supp. 841, 846 (D.D.C. 1996) (stating that "[t]he decision whether to allow a non-party to participate as an amicus curiae is solely within the broad discretion of the Court" and permitting participation because "the non-party movants have a special interest in this litigation as well as a familiarity and knowledge of the issues raised therein that could aid in the resolution of this case"). But Rule 24 does not permit them to take the additional step and insert themselves into this lawsuit as a party. The motion should be denied.

## **BACKGROUND**

Earlier this year, the Federal Communications Commission took the unprecedented step of ordering Plaintiffs to simultaneously submit renewal applications for their broadcast licenses years ahead of schedule. The Commission has not called for an early license renewal in over fifty years, and it has never demanded simultaneous renewal applications from a group of stations commonly owned with a broadcast network. The Commission did so to retaliate against Plaintiffs in violation of the First Amendment, after the Administration and the Commission's Chairman repeatedly denounced ABC's editorial decisions and the views expressed on ABC programs.

Plaintiffs filed this suit to stop the Commission from violating their First Amendment rights. Through this suit, Plaintiffs challenge the Commission's unlawful use of its regulatory power to retaliate against Plaintiffs' speech. Plaintiffs seek a preliminary injunction barring the Commission from taking any further action in the early license renewal process pending resolution of this case. *See* Dkt. No. 2-1, at 43.

On August 20, this Court set a briefing schedule to promptly resolve Plaintiffs' motion for injunctive relief and any motion to dismiss. Four days later, proposed intervenors moved to participate as plaintiffs. Their motion does not dispute that Defendants' retaliatory campaign has

inflicted irreparable harm on Plaintiffs, contrary to the public interest. They acknowledge that "Plaintiffs' filings ably document the extreme pressure the agency and administration have brought to bear on Disney and its broadcast stations, the harm it has wrought, and the retaliatory and pretextual punitive measures it has taken and threatened to take in order to censor, chill and otherwise disrupt ABC's broadcasting." Dkt. No. 18-1, at 2. And they concede that they "seek the same ultimate result" as Plaintiffs, "namely cancellation of the FCC early renewal proceeding and associated retaliatory and pretextual inquiries and investigations." *Id.* at 7.

## LEGAL STANDARD

To intervene as of right under Rule 24(a)(2), proposed intervenors must satisfy four requirements: (1) their application must be timely; (2) they must have a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no existing party can adequately represent their interests. Fed. R. Civ. P. 24(a)(2); *see also SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). Proposed intervenors rely on the Tenth Circuit's statement that "the requirements for intervention may be relaxed in cases raising significant public interests." *See* Dkt. No. 18-1, at 3 (emphasis omitted) (quoting *Kane Cnty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019)). But the D.C. Circuit has never endorsed that standard. Instead, and consistent with Rule 24's plain text, a putative intervenor must satisfy all four factors, whatever the case's subject matter. *See, e.g.*, *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003). And even under a "relaxed" application of Rule 24(a)(2), proposed intervenors do not come close to satisfying the standard for intervention as of right.

Parties without a right to intervene can seek permissive intervention under Rule 24(b), but that is an "inherently discretionary enterprise." *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Even if a putative intervenor "has a claim or defense that shares with the main action a common question of law or fact" that might justify intervention, "the court must

consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (3).

## ARGUMENT

### I. Proposed Intervenors Have Not Met Their Burden To Demonstrate That They Are Entitled To Intervene As Of Right

Proposed intervenors cannot satisfy the requirements for intervention as of right. They identify no legally protected interest that is uniquely their own, relying instead on *Plaintiffs'* interest in vindicating their rights or on broader interests shared by the entire viewing public. And because they have identified no legally protected interest, they necessarily cannot show any impairment of one. *See, e.g.*, *Cal. Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1344 (Fed. Cir. 2022) ("[W]ithout an identifiable, legally protectable interest, the proposed intervenors' arguments about the practicable impairment of their interests have no merit"). Nor can they show that Plaintiffs will inadequately protect any interest proposed intervenors might assert.

#### A. Proposed Intervenors Have No Legally Protected Interest

Proposed intervenors identify no "legally protected interest" of their own supporting intervention as of right. *Prudential Sec. Inc.*, 136 F.3d at 156. Courts assess whether a would-be intervenor possesses such an interest by reference to the elements of Article III standing. *See, e.g.*, *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 276 (D.D.C. 2014) ("Courts in this circuit generally treat the standing analysis for intervention as of right as equivalent to determining whether the intervenor has a 'legally protected' interest under Rule 24(a)."). A proposed intervenor must therefore identify an injury in fact fairly traceable to the challenged conduct and redressable by a favorable decision. *See, e.g.*, *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316, 320 (D.C. Cir. 2015). Absent that showing, a proposed intervenor has established no interest that Rule 24(a)(2) protects.

The Supreme Court recently called into question whether intervenors must, separately from the legally-protected-interest analysis, meet the requirements of standing to satisfy Article III's case and controversy requirement. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,* 591 U.S. 657, 674 n.6 (2020); *Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (describing, but not resolving, tension between D.C. Circuit and Supreme Court case law). Although Plaintiffs identify this tension in the interests of transparency, this Court need not wade into that debate. Regardless of whether a putative intervenor must establish standing as a *constitutional* matter, intervenors must demonstrate a legally protected interest to intervene as of right under Rule 24(a)(2), and courts in this Circuit continue to rely on standing doctrine to answer that question. *See, e.g.*, *Biden v. IRS*, 752 F. Supp. 3d 97, 114 n.8 (D.D.C. 2024); *Farmer v. EPA*, 759 F. Supp. 3d 101, 108 n.3 (D.D.C. 2024). In other words, putative intervenors must show an injury in fact, causation, and redressability to identify a legally protected interest under Rule 24(a)(2).

In an effort to establish a legally protected interest in this litigation, proposed intervenors first observe that "Plaintiffs have been and continue to be pressured into curtailing their programming and reporting" in violation of what the proposed intervenors describe as their own "absolute right to receive such information." Dkt. No. 18-1, at 5–6. But as proposed intervenors' own motion reflects, this lawsuit is about the FCC's retaliatory campaign against *Plaintiffs* in violation of *Plaintiffs*' First Amendment rights. Whatever the scope of proposed intervenors' own protected speech, *see* Dkt. No. 18-1, at 6 n.8, they have no cognizable interest in vindicating *Plaintiffs'* free-speech rights. They are not "the direct subject of" the FCC's unlawful retaliation, and they cannot piggyback on the harms that this retaliation inflicts on Plaintiffs to establish their

right to intervene as plaintiffs themselves. *See Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 431 (D.C. Cir. 2021) (denying intervention in part on this basis).

To avoid the common-sense conclusion that this litigation seeks to vindicate Plaintiffs' rights, proposed intervenors argue that "[b]roadcast licenses are held in a public trust for the benefit of the public," and that "[v]iewers of the ABC stations have a duty to uphold that responsibility and not allow licensees or the government to compromise the use of those licenses in the public interest." Dkt. No. 18-1, at 6–7. There are two independent problems with this argument.

First, the interests of the public writ large, or of all ABC viewers, cannot supply the cognizable, legally protected interest needed to justify intervention as of right. Indeed, proposed intervenors cite no case granting a viewer party status in litigation over a broadcaster's constitutional claims based on a generalized interest in watching particular programming. A contrary rule would violate the fundamental principle that a plaintiff cannot raise "a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992); *see also Biden*, 752 F. Supp. 3d at 113 (putative intervenor must establish that it has "a legal interest as distinguished from interests of a general and indefinite character" (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980))). Like any other party seeking to sue, putative intervenors cannot rely on "an abstract general interest common to all members of the public," *Carney v. Adams*, 592 U.S. 53, 59 (2020); they cannot point only to "interests of a general and indefinite character" to meet the requirements for intervention as of right, *Am. Tel. & Tel. Co.*, 642 F.2d at 1292 (D.C. Cir. 1980). Yet that is exactly what proposed intervenors do here.

Second, proposed intervenors' viewer status neither confers upon them an interest in nor a right to control Plaintiffs' editorial decisionmaking. *See Columbia Broad. Sys., Inc. v. Democratic Nat. Comm.*, 412 U.S. 94, 113 (1973) ("[N]o private individual or group has a right to command the use of broadcast facilities."); *id.* at 116 ("Congress pointedly refrained from divesting broadcasters of their control over the selection of voices."). Plaintiffs' decisions as to what to cover are their own.

Proposed intervenors therefore have not identified a concrete, individualized interest sufficient to justify intervention as of right. If they wish to address the harms caused by Defendants' retaliation, the proper vehicle is an amicus brief explaining why injunctive relief would serve the public interest.[1]

### B. Plaintiffs Adequately Represent Any Plausible Interest That Might Be Raised By Proposed Intervenors

Proposed intervenors also cannot show that Plaintiffs will fail to adequately protect any interests proposed intervenors have in this litigation. "[A] presumption of adequate representation exists if both the intervenor and existing party have the same ultimate objective." *HRH Servs. LLC v. Travelers Indem. Co.*, 2024 WL 4699925, at *9 (D.D.C. 2024) (citation modified); *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010) (same). The movant then "bears the burden to rebut this presumption by demonstrating special circumstances that make the representation inadequate, such as adversity of interest, collusion, or nonfeasance." *HRH Servs.*, 2024 WL 4699925, at *9 (citation modified).

[1] Proposed intervenors direct this Court to D.C. Circuit caselaw addressing when a viewer of a broadcast station may participate in lawful FCC administrative proceedings involving that station. Dkt. No. 18-1, at 7 n.3 (citing *Off. of Commc'n of United Church of Christ v. FCC*, 359 F.2d 994, 1003 (D.C. Cir. 1966)). That precedent, however, does not help proposed intervenors, as it identifies no viewer interest in opposing the FCC's institution of retaliatory proceedings against a media company.

Proposed intervenors concede that they "*seek the same ultimate result*" as Plaintiffs: cancellation of the FCC's early-renewal proceeding and associated retaliatory conduct. Dkt. No. 18-1, at 7 (emphasis added). That concession triggers the presumption of adequate representation. Proposed intervenors can identify no special circumstances sufficient to rebut it.

Proposed intervenors do not dispute that Plaintiffs are sophisticated companies represented by experienced counsel making the very arguments proposed intervenors wish to make. Indeed, their own motion praises Plaintiffs' filings as "ably document[ing] the extreme pressure the agency and administration have brought to bear on Disney and its broadcast stations, the harm it has wrought, and the retaliatory and pretextual punitive measures it has taken and threatened to take in order to censor, chill and otherwise disrupt ABC's broadcasting." Dkt. No. 18-1, at 2. As further confirmation that they view Plaintiffs' pleadings as sufficient to assert their arguments, proposed intervenors state that they "will not file a complaint," Dkt. No. 18-1, at 5—even though Rule 24(c) requires the moving party to submit "a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c).

Instead, proposed intervenors' sole argument for inadequacy is the hypothetical worry that down the road Plaintiffs "might secretly negotiate a settlement" that compromises Plaintiffs' editorial independence. Dkt. No. 18-1, at 6; *see id.* at 7 ("Any negotiated deals between Plaintiffs and the FCC may well compromise the constitutional rights of ABC viewers."). But a putative intervenor "must produce something more than speculation as to the purported inadequacy" of a party's counsel. *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011). The possibility of a future settlement with terms that differ from what a putative intervenor might have negotiated does not suffice. *See id.* (citing *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54–55 (1st Cir. 1979), and rejecting the "argument that the plaintiff may be tempted to settle a claim in a

way unfavorable to the applicant, where the applicant made no indication that any such settlement was in the offing" (citation modified)). Such "quibbles over litigation tactics" do not show that the plaintiff is inadequately representing the relevant interests. *Jones*, 348 F.3d at 1020 ("A mere difference of opinion concerning the tactics with which litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party or who are formally represented in the lawsuit." (citation modified)); *Stuart v. Huff*, 706 F.3d 345, 354 (4th Cir. 2013) (denying intervention to prevent "endless squabbles at every juncture over how best to proceed"); *Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 403 (D.D.C. 2025) (denying intervention while noting that it is "immaterial" that a putative intervenor might "make different arguments" than would a party, because the "relevant inquiry" is whether the putative intervenor's interests are "adequately represented, not whether its preferred arguments are articulated"). "If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning." *Jones*, 348 F.3d at 1020 (citation modified). And given that there is no indication that any potential settlement is on the table, proposed intervenors' sole stated concern is not even ripe. Rule 24(a)(2) does not permit intervention to guard against an abstract contingency that may never materialize.

Although an existing party "who is ineffectual, incompetent, or unwilling to raise claims or arguments that would benefit the putative intervenor may qualify as an inadequate representative in some cases, this is not such a case." *Jones*, 348 F.3d at 1019–20. Plaintiffs have taken no litigation position adverse to the interests proposed intervenors assert. To the contrary, Plaintiffs' complaint and pending motion for temporary injunctive relief seek the same remedy—an injunction against the FCC's early-renewal proceeding and related retaliatory conduct—that would fully redress any injury proposed intervenors allege. The suggestion that Plaintiffs might

someday settle in some unidentified way that harms proposed intervenors is pure speculation—speculation belied by the record in this case that amply shows that Plaintiffs will robustly contest Defendants' efforts to undermine the First Amendment.

**II. Permissive Intervention Is Unwarranted**

To the extent proposed intervenors alternatively seek permissive intervention, the Court should deny that request as well. "A party forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) (citation modified); *see also Ouachita Riverkeeper, Inc. v. Bostick*, 938 F. Supp. 2d 32, 42 n.5 (D.D.C. 2013) ("By failing to raise these arguments in their initial motion, the Defendant-Intervenors forfeited these contentions and the Court need not address the arguments."). Proposed intervenors cite Rule 24(b) once, in passing, Dkt. No. 18, at 1, and never explain why granting permissive intervention would be an appropriate exercise of this Court's "inherent[] discretion[]." *Nat'l Children's Ctr.*, 146 F.3d at 1046. The argument is forfeited.

Even if properly raised, permissive intervention also fails for a more basic reason: proposed intervenors have failed to identify any "claim or defense" of their own to support permissive intervention in the first place. Fed. R. Civ. P. 24(b)(1)(B). By their own admission, proposed intervenors "will not file a complaint," Dkt. No. 18-1, at 5, and their motion is unaccompanied by any pleading setting out a claim or defense, as Rule 24(c) requires. Where both permissive intervention and intervention as of right are concerned, proposed intervenors' motion "could be denied on that basis alone." *Manafort v. U. S. Dep't of Just.*, 2018 WL 10701253, at *1 (D.D.C. 2018).

Instead, proposed intervenors' position is entirely duplicative of Plaintiffs'. Proposed intervenors agree with Plaintiffs that the FCC is engaging in a retaliatory campaign against

Plaintiffs. They seek the same relief as Plaintiffs. And they identify no position—beyond speculation that Plaintiffs might later settle—that differs from Plaintiffs'. Permissive intervention would "duplicate" Plaintiffs' efforts and "would serve only to further delay the litigation's conclusion." *BCP Trading & Invs., LLC v. Comm'r*, 991 F.3d 1253, 1273 (D.C. Cir. 2021) (citation modified); *see also* Fed. R. Civ. P. 24(b)(3) (court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights"). Proposed intervenors include two organizations and eighteen individuals (each with individual declarations), and their participation risks complicating the expedited briefing schedule set by the Court, including by generating potential discovery disputes over the individuals' standing declarations. Any delay resulting from these complications would be particularly prejudicial to Plaintiffs given the ongoing, irreparable harm they are suffering as a result of the FCC's unconstitutional retaliation. In other preliminary injunction cases, courts have thus recognized that allowing intervention risks prejudicing the original plaintiff. *See, e.g.*, *Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 6–7 (D.D.C. 2021) (allowing intervention only on the condition that the intervenor adhered to the preexisting preliminary injunction briefing schedule).

Because proposed intervenors' participation would not "significantly contribute to the just and equitable adjudication of the legal question presented," permissive intervention should be denied. *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (citation modified).

## CONCLUSION

Plaintiffs respectfully request that the Court deny proposed intervenors' motion to intervene.

Dated: September 3, 2026

By: /s/ Beth A. Wilkinson

Beth A. Wilkinson (D.C. Bar No. 462561)
Jenna P. Swarbrick (D.C. Bar No. 1614398)
Daniel Epps (*pro hac vice*, D.C. Bar No. 1002523)
Luke Churchill (D.C. Bar No. 90020985)
**WILKINSON STEKLOFF LLP**
2001 M St. NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
jpswarbrick@wilkinsonstekloff.com
depps@wilkinsonstekloff.com
lchurchill@wilkinsonstekloff.com

Caroline Li (D.C. Bar No. 1779285)
**WILKINSON STEKLOFF LLP**
130 W 42nd St., 24th Floor
New York, NY 10036
Telephone: (212) 294-8910
Facsimile: (202) 847-4005
cli@wilkinsonstekloff.com

Paul D. Clement (D.C. Bar No. 433215)
Jeffrey C. Thalhofer (D.C. Bar No. 1658324)
**CLEMENT & MURPHY, PLLC**
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
jeff.thalhofer@clementmurphy.com

*Counsel for Plaintiffs American Broadcasting Companies, Inc.; The Walt Disney Company; KABC Television, LLC; KFSN Television, LLC; KGO Television, Inc.; KTRK Television, Inc.; WABC Television (New York), LLC; WLS Television, Inc.; WPVI Television (Philadelphia), LLC; and WTVD Television, LLC.*