# Exhibit 12

**FEDERAL COMMUNICATIONS COMMISSION**
Enforcement Bureau
45 L Street, NE
Washington, DC 20554

January 16, 2025

**VIA E-MAIL**

Daniel R. Suhr
Center for American Rights
747 N. LaSalle St., Suite 210
Chicago, IL 60654
dsuhr@americanrights.org

**Re: Preserving the First Amendment, GN Docket No. 25-11**

Dear Mr. Suhr:

The Enforcement Bureau of the Federal Communications Commission (FCC or Commission) received a complaint dated September 24, 2024 (Complaint) filed by the Center for American Rights (Complainant) to commence an investigation into WPVI-TV, a licensed television broadcast station in Philadelphia, Pennsylvania, for "news distortion" during the broadcast of the Presidential debate on September 10, 2024. For the reasons stated below, the request is denied and the Enforcement Bureau will close its file on this matter.

***

The freedom of speech and the press is enshrined in the First Amendment of the United States Constitution, and is necessary to promote the vigorous dialogue necessary in a representative democracy.[1] When the government seeks to curtail the freedom of expression on "matters of valid public interest," doing so implicates the very heart of speech that the First Amendment is meant to protect.[2] Accordingly, for nearly a century since the Commission's inception in 1934, the Communications Act has expressly prohibited the Commission from engaging in the "power of censorship," or issuing regulations or conditions that "interfere with the right of free speech."[3]

---

[1] *See* U.S. Const. Amend. I; *see also* Pub. L. 111–223, §2, Aug. 10, 2010, 124 Stat. 2380.

[2] *Id.*; *see also Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("[t]he choice of material to go into a newspaper . . . and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment."); *Moody v. NetChoice*, 603 U.S. 707, 731 (2024) (citation omitted); *see generally Ark. Educ. Television Found. v. Forbes*, 523 U.S. 666, 673 (1998) ("As a general rule, the nature of editorial discretion counsels against subjecting broadcasters to claims of viewpoint discrimination. Programming decisions would be particularly vulnerable to claims of this type because even principled exclusions rooted in sound journalistic judgment can often be characterized as viewpoint based."); *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 737-38 (1996) ("[T]he editorial function itself is an aspect of 'speech,' and a court's decision that a private party, say, the station owner, is a 'censor,' could itself interfere with that private 'censor's' freedom to speak as an editor." (citation omitted)).

[3] *See* 47 U.S.C. § 326.

To this end, "the Commission does not – and cannot and will not – act as a self-appointed, free-roving arbiter of truth in journalism."[4] Moreover, as has been noted, "[a] newsroom's decision about what stories to cover and how to frame them should be beyond the reach of any government official, not targeted by them."[5]

The Complaint runs contrary to these longstanding principles. It alleges that WPVI-TV violated the "public interest standard for broadcasters" by engaging in "news distortion" or "news suppression" because it demonstrated "favoritism" of a presidential candidate.[6] In making these claims, the Complaint relies almost entirely on allegations of an editorial nature and conclusory statements – without extrinsic evidence of intentional malfeasance – and fails to meet the high threshold for opening a "news distortion" matter.

***

The Commission is prohibited by the First Amendment to the Constitution and Section 326 of the Communications Act of 1934, as amended, from censoring broadcast material. The Commission does not – nor will it – attempt to direct licensees in the selection or presentation of specific material. Notwithstanding this first principle, while broadcasters are public trustees licensed to operate in the public interest, they may not engage in intentional falsification or suppression of news.[7]

---

[4] *Free Press Emergency Petition for Inquiry Into Broadcast of False Information on COVID-19*, Letter Order, 35 FCC Rcd. 3032, 3033 (MB & OGC 2020) (*Free Press*).

[5] *FCC Commissioner Carr Responds to Democrats' Efforts to Censor Newsrooms*, Office of Commissioner Brendan Carr (Feb. 22, 2021), https://docs.fcc.gov/public/attachments/DOC-370165A1.pdf.

[6] Complaint at 1-2.

[7] *See In re Complaints Covering CBS Program "Hunger in America"*, Memorandum Opinion, 20 F.C.C.2d 143 (1969) (*Hunger in America*) ("The Commission is not the arbiter of truth"); *In re Complaint by Mrs. J. R. Paul, Houston, Tex. Concerning Fairness Doctrine Re Network's Coverage of President's Vietnam Address,* Letter, 26 F.C.C.2d 591, 591 (1969) ("[The Commission] cannot properly investigate to determine whether an account or analysis of a news commentator is "biased" or "true")*; In re Complaint against American Broadcasting Companies, Inc. by Central Intelligence Agency,* Decision, 57 R.R. 2d 1543 (MB 1985)*(Central Intelligence Agency); In Re: Melvin Pulley v. Station Wbfn, Quitman, Mississippi Concerning Pol. Broad.*, Letter, 58 F.C.C.2d 1224, 1224 (BB 1976) (*Melvin Pulley*) (in complaint involving political-related broadcast, declining to take action on news distortion allegations because "in order for the Commission appropriately to commence action in this sensitive area, it must receive significant extrinsic evidence of such deliberate news suppression, as, for example, statements by individuals who have personal knowledge that a licensee ordered such news suppression to take place"); *In the Matter of Complaint & Request for Section 403 Investigation*, Order, 16 FCC Rcd 7647, 7647 (EB 2001) (*Section 403*) (declining news distortion investigation into ABC, CBS, NBC, and FOX with respect to 2000 Presidential election and projection of electoral votes); *In Re Complaint by Wichita Cnty. Hum. Rels. Comm., Wichita Falls, Tex. Concerning Fairness Doctrine Re Stations Kauz-TV & Kfdx-TV*, Letter, 50 F.C.C.2d 322, 324 (BB 1974) (*Wichita Falls*); *In Re Complaint by Rodney D. Driver, Exeter, R.I. Concerning Fairness Doctrine Re Networks*, Letter, 48 F.C.C.2d 338, 340 (BB 1974) (taking no further action on news suppression complaint); *see also In the Matter of TVT License, Inc.,* Memorandum Opinion and Order, 22 F.C.C. Rcd. 13591*,* 13595, para. 17 (MB 2007) (*TVT*); *In re Petition to Deny Applications by Dr. Paul Klite*, Decision, 12 CR 79 (MB 1998) ("[F]or reasons rooted in the First Amendment and the no censorship provision of Section 326 of the Communications Act, editorial judgments regarding news programs are committed to a broadcaster's good faith discretion.").

The Commission has instead plainly recognized that "[b]roadcasters—not the FCC or any other government agency—are responsible for selecting the material they air" and that "our role in overseeing program content is very limited."[8]

Therefore, the question of what constitutes "intentional" or "deliberate" falsification is a very high bar for the Commission to commence an enforcement action. It turns on whether any extrinsic evidence was submitted to the Commission demonstrating intentionality.[9] No such evidence was submitted here. Rather, the Complaint makes allegations of inconsistent "fact checks" during the debate broadcast and supplements these assertions with "accounts of numerous journalists and political observers" that purportedly demonstrate that the broadcast was a "complete failure for 'objective news coverage.'"[10] The Complaint goes on to identify what the complainant perceives to be shortfalls of the broadcast coverage, identifying factual nuances that showed instances of "broadcast favoritism," but without submitting any specific evidence that would distinguish the Complaint from generalized allegations. The Commission has routinely closed similar complaints, even with more information provided,[11] and will also do so here in light of the Commission's longstanding precedent.[12]

***

---

[8] FCC, THE PUBLIC AND BROADCASTING, p.6 (Sep. 2021), https://www.fcc.gov/media/radio/public-and-broadcasting.

[9] *See supra* note 7; *cf. also In Re Application of Am. Broad. Companies, Inc. for Renewal of License of Station Kgo-TV San Francisco, California*, Memorandum Opinion and Order, 86 F.C.C.2d 3, 10, para. 16 (1981); *In the Matter of Liab. of NPR Phoenix, L.L.C. Licensee, Kpty(Fm) Gilbert, Az*, Memorandum Opinion and Order, 13 FCC Rcd 14070, para. 11 (MB 1998) (explaining difference between news distortion and indecency cases "because news and comment programming are at the core of speech which the First Amendment is intended to protect, we have long believed that a particularly high threshold should govern Commission intervention in this area.").

[10] Complaint at 1-4.

[11] *See supra* notes 7 & 9; *cf. also Free Press*, 35 FCC Rcd at 3032, p. 5 ("In short, we will not second-guess broadcasters [much less deploy the formal investigative power of the state against them] that are serving a critical function in providing the public comprehensive coverage of the current public health crisis and the government's response. We leave to the press its time-honored and constitutionally protected role in testing the claims made by our political leaders—as well as those made by national advocacy organizations."); *In re Lynn J. Farris, Farris Broadcasting, Inc*, 22 FCC Rcd. 11193, 11195 (2007) ("If the evidence does nothing more than indicate that there is a dispute about the truth of a reported event or statement, whether a particular event or statement should or should not have been reported, or the manner in which a news item was reported, the Commission will not intervene").

[12] Notably, the Complaint itself also appears to concede that it cannot meet the "news distortion" standard. It states that the matter should be analyzed under an "equal-opportunity" standard under Section 315 of the Communications Act, but then concedes that the "Complainant is not a candidate for president and could not assert a right to equal time to make up for a debate that failed the Section 315(a)(4) standard." But the Complaint then reverts back by insisting that it is being made under a "news distortion" standard, without showing that the Complaint meets the high threshold for advancing such a complaint.

The request in the Complaint is therefore hereby DENIED, and the Enforcement Bureau will be closing its file in this matter.

Sincerely,

Peter S. Hyun
Acting Bureau Chief
Enforcement Bureau