# Exhibit 14

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Preserving the First Amendment | ) | GN Docket No. 25-11 |
| | ) | |
| Equal Opportunities Complaint Involving NBC Telemundo License, LLC, licensee of WNBC, New York, NY | ) ) | Facility ID No. 47535 |

## ORDER

**Adopted: January 16, 2025** **Released: January 16, 2025**

By the Acting Chief, Media Bureau:

## I. INTRODUCTION

1. The Center for American Rights (CAR) has filed a complaint alleging that WNBC, a licensed television broadcast station in New York, violated the Commission's Equal Opportunities Rule.[1] As discussed below, in this Order we deny CAR's complaint and find that no violation of the Equal Opportunities Rule has occurred.

## II. BACKGROUND

2. On Saturday, November 2, 2024, Presidential candidate Kamala Harris appeared in a comedy sketch on the NBC program "Saturday Night Live" (SNL).[2] Ms. Harris' appearance in the sketch lasted approximately ninety seconds. Her opponent, Donald J. Trump, did not appear in the sketch or in the episode. Later during the same episode, in a separate sketch, Virginia Senator Tim Kaine, who was running for re-election, appeared on the program. Senator Kaine's opponent, Hung Cao, did not appear in the sketch or in the episode.

3. On Monday, November 4, 2024, CAR filed a complaint against WNBC alleging that broadcasters are required to afford "equal time" to candidates for public office in the use broadcast facilities.[3] CAR filed the complaint against WNBC because the broadcaster, a licensed television station in New York and an NBC affiliate, allegedly aired the SNL episode in its entirety.[4] CAR alleges that the SNL sketches fail the equal opportunities rule because no comparable invitation was extended to Mr. Trump or to Mr. Cao. The complaint notes, however, that NBC "aired a sixty-second message" from Donald Trump "at the end of Sunday's NASCAR program and again the end of the NFL's Sunday Night

---

[1] Complaint of Center for American Rights Against WNBC at 1 (filed Nov. 4, 2024) (CAR Complaint). CAR has posted the Complaint at https://drive.google.com/file/d/1P2eQRqp-UlkOiuYcsZYdMYi4Va3L2pwI/view. While the Complaint uses the term "Equal Time" rule, the correct phrase is "equal opportunities," because it is possible for a broadcaster to offer an equal amount of time at different rates or to audiences that differ in size. *See* Federal Communications Commission, The Law of Political Broadcasting and Cablecasting, 43 Fed. Reg. 36342 (Aug. 16, 1978) (*Primer*) at 36369.

[2] Tyler Pager, *Harris Joins 'Saturday Night Live' in Last Minute Campaign Surprise* (Nov. 2, 2024), https://www.washingtonpost.com/politics/2024/11/02/harris-saturday-night-live-snl/.

[3] CAR Complaint at 1.

[4] *Id.* at 3.

Football game." The complaint also alleges that Mr. Cao had yet to receive equal time for the "six-minute" comedy sketch featuring Senator Kaine. As relief, CAR seeks "a fine that is sufficiently sizable to ensure (1) that NBC never repeats its illegal behavior and (2) to deter any other broadcast station from following in NBC's unlawful footsteps."[5]

## III. DISCUSSION

4. The freedom of speech and the press is enshrined in the First Amendment of the United States Constitution, and is necessary to promote the vigorous dialogue necessary in a representative democracy.[6] When the government – including Congress, the Courts, and the Executive Branch (and States and local government) – seeks to curtail the freedom of expression on "matters of valid public interest," doing so implicates the very heart of speech that the First Amendment is meant to protect.[7] Accordingly, for nearly a century since the Commission's inception in 1934, the Communications Act has expressly prohibited the Commission from engaging in the "power of censorship", or issuing regulations or conditions that "interfere with the right of free speech."[8] It has instead plainly recognized that "[b]roadcasters—not the FCC or any other government agency—are responsible for selecting the material they air" and that "our role in overseeing program content is very limited."[9] But the Commission does not—and cannot and will not—act as a self-appointed, free-roving arbiter of truth in journalism.[10]

5. Recognizing these important principles, our equal opportunities rules seek to ensure that no legally qualified candidate for office is given less access to the airwaves than their opponent. Section 315(a) of the Communications provides that, if a licensee allows a legally qualified candidate for public office to use a broadcast station, it must afford equal opportunities to other such candidates for that office to use its facilities.[11] The process is straightforward: a broadcast entity that provides time to a candidate must place notice in the public file "immediately,"[12] and a legally qualified candidate can request equal opportunities.[13]

6. As a threshold matter, only legally qualified candidates are covered by our equal opportunity rules. Mr. Trump appears to be a legally qualified candidate under our rules: he had publicly announced his intention to run for office; he was qualified under applicable state and/or federal law to hold the office being sought; and he qualified for a place on the ballot.[14] Mr. Cao, on the other hand, does ***not*** appear to be a legally qualified candidate within the coverage area of WNBC, New York, NY, the station that is the subject of CAR's complaint. Mr. Cao was running for office in Virginia, and the complaint does not allege that WNBC's coverage area includes Virginia. The complaint fails to explain

---

[5] *Id*.

[6] *See* U.S. Const. Amend. I; *see also* Pub. L. 111–223, §2, Aug. 10, 2010, 124 Stat. 2380.

[7] U.S. Const. Amend. I; *see also Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("[t]he choice of material to go into a newspaper . . . and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment")

[8] *See* 47 U.S.C. § 326.

[9] FCC, THE PUBLIC AND BROADCASTING 7 (Aug. 2019), https://www.fcc.gov/media/radio/public-andbroadcasting.

[10] *Free Press Emergency Petition for Inquiry Into Broadcast of False Information on COVID-19*, Letter Order, 35 FCC Rcd. 3032, 3033 (MB & OGC 2020).

[11] 47 CFR § 315(a).

[12] 47 CFR § 73.1943(d).

[13] *See Prime*r at 36348.

[14] *Id*. at 36353.

how WNBC—a licensed television broadcast station in New York—was under any obligation to provide equal opportunity for Mr. Cao, a candidate running for office in Virginia.[15]

7. But even if we assume that both Mr. Trump and Mr. Cao were legally qualified candidates, it is clear that no violation of the FCC's equal opportunities rule has occurred here. CAR admits that, after airing the SNL program featuring Vice President Harris and Senator Kaine, WNBC placed notice in the public file.[16] At that point, legally qualified candidates had the right to ask for equal opportunities from WNBC. Although CAR fails to allege specifically that WNBC denied a request from either Mr. Trump or Mr. Cao for equal opportunities, it appears that the candidates requested equal opportunities — and that NBC quickly granted an accommodation on an accelerated timeframe that satisfied all parties.[17]

8. Specifically, NBC appears to have reached an acceptable accommodation with Mr. Trump within approximately 24 hours. As CAR notes in its complaint, NBC "aired a sixty-second message" from Mr. Trump "at the end of Sunday's NASCAR program and again at the end of the NFL's Sunday Night Football Game."[18] Both of these ads appear to have run on WNBC.[19] Both the NASCAR program and the Sunday Night Football game achieve similar ratings to SNL, and both were aired within approximately 24 hours of the SNL broadcast.[20]

9. Similarly, while CAR notes that Mr. Cao had not received equal time for the Tim Kaine sketch at the time the complaint was filed, news accounts suggest that NBC aired two minutes of ads on the NBC network in Virginia—roughly the equivalent of the two minutes that Sen. Kaine was on screen during the SNL skit—during "The Voice" and during a SNL election special on the Monday following the airing of the SNL skit—and both ads appear to have run on every NBC station with a viewing market in Virginia, some of them affiliates in North Carolina, West Virginia, and the District of Columbia.[21] Although these programs are not the same as the live SNL broadcast on Saturday night, the Washington Times noted that "The Voice" gets better ratings on a Monday Night than SNL would in its regular weekend slot. NBC provided Mr. Cao equal opportunities within approximately 48 hours after the airing of the episode of SNL.[22] And, as with Mr. Trump, the accommodation appears to be a result of an agreement reached between Mr. Cao and NBC.

---

[15] *See Primer* at 36357 (noting that "equal opportunities" do not apply to a broadcast where the service area does not extend to include voters who could vote in the election). *See also* Primer at 36372 ("If a local or State candidate appears on a national network program, an opposing candidate is entitled to equal opportunities over the stations which carried the network program whose signals cover the area in which the local or State election is taking place." (citing *Inquiry Concerning "Equal Time" Requirements under Section 315 of the Communications Act*, *Hon. Mike Monroney*, 40 FCC 251 (1952)).

[16] CAR Complaint at 3. *See also* WNBC Online Public Inspection File, Section 73.1943 Notice available at https://publicfiles.fcc.gov/api/manager/download/a9474522-24b9-0f45-768b-82e5ad985409/0f30972f-b03e-41a2-83c5-ed60d50e7185.pdf .

[17] *See* Kerry Picket, *Hung Cao strikes deal with NBC to air political ads in key time slot after Kaine appears on 'SNL'* (Nov. 4, 2024), https://www.washingtontimes.com/news/2024/nov/4/hung-cao-strikes-deal-nbc-air-political-ads-key-ti/.

[18] CAR alleges that the two sixty-second ads from Mr. Trump are "not comparable: an advertisement-style message run at the end of a program looks like an ad," and that the "ads to not convey the same sense of cultural resonance and endorsement as participation in the show itself." *Id.* at 1. But the accommodation appears to satisfy the candidate.

[19] Picket, *supra* note 17.

[20] *Id*.

[21] *Id*. Furthermore, because the ads also ran on NBC affiliates in a market where Mr. Cao would qualify as a legally qualified candidate, those stations would appear to have met our equal opportunity rules as well.

[22] *Id*.

10. CAR asserts that this "after-the-fact make-up" is "too little, too late."[23] But CAR apparently misunderstands the sequencing of events in an equal opportunities case. An agreement reached after the use of broadcast facilities is a standard way for broadcasters to adhere to the equal opportunities rule.[24] And under our rules, NBC is not obligated to provide exactly the same access; in the context of a live comedy show, such an accommodation would be impossible. Instead, our rules require the broadcaster to make periods that normally have comparable audiences available to competing candidates upon request.[25] Here, the day after the SNL sketch aired, NBC gave the Trump campaign two minute-long free commercial slots, one during "Sunday Night Football," typically the week's highest-rated program, and the other during Sunday evening's NASCAR race, another popular sporting event.[26] Such access to large audiences is comparable, and may in fact be greater, to that of SNL.

11. Separately, NBC and Mr. Cao reached an agreement for NBC to air two minutes of Mr. Cao's ads on "The Voice" and a SNL election special on Monday November 4, 2024, roughly equivalent to the two minutes that Mr. Kaine was on screen during the nearly six-minute skit on SNL.[27] Again, because "The Voice" gets better ratings on a Monday night than "SNL" would in its regular weekend time slot, this agreement provided a comparable (if not even a larger) audience to the one that viewed the SNL sketch at issue.[28]

12. Given WNBC's prompt response to the equal opportunities requests from the candidates in a manner consistent with our rules, Mr. Cao's failure to qualify as a legally qualified candidate within the coverage area of WNBC, and the agreement by the candidates to the terms of what appears to be a mutually acceptable deal, we deny CAR's request for relief.

## IV. CONCLUSION

13. For the reasons set forth above, we deny the complaint filed by Center for American Rights against WNBC.

## V. ORDERING CLAUSES

14. Accordingly, **IT IS ORDERED** that the Complaint filed by Center for American Rights on November 4, 2024 **IS DENIED.**

---

[23] CAR Complaint at 3.

[24] *See Primer* at 36348 ("The rules do not require a station to sell or give a candidate any particular time period, or even to make available exactly the same time period that was sold or given to his opponent.").

[25] *Id.*

[26] Picket, *supra* note 17.

[27] *Id.*

[28] Finally, CAR's complaint argues at length that SNL is not a "bona fide news" program and, as a result, does not fit within the exemptions to the equal opportunities rule permitted by the Act. CAR Complaint at 2. Because NBC ultimately provided equal opportunities to both candidates in a manner consistent with our rules, we do not need to address SNL's status as a "bona fide news" program.

15. These actions are taken pursuant to sections 4(i) and (j), and 315 of the Communications Act of 1934, as amended, 47 U.S.C. § 154(i), 154(j), 315.

FEDERAL COMMUNICATIONS COMMISSION

Rosemary Harold
Acting Chief, Media Bureau