# Exhibit 15

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Preserving the First Amendment | ) | GN Docket No. 25-11 |
| | ) | |
| Application of Fox Television Stations, LLC<br>For Renewal of License of WTXF-TV,<br>Philadelphia, PA | )<br>)<br>) | MB Docket No. 23-293<br>LMS File No. 0000213362<br>Facility ID No. 51568 |

**MEMORANDUM OPINION AND ORDER**

**Adopted: January 16, 2025** **Released: January 16, 2025**

By the Acting Chief, Media Bureau:

## I. INTRODUCTION

1. We have before us an application (Application) filed by Fox Television Stations, LLC (Licensee) to renew the license of WTXF-TV, Philadelphia, PA (Station).[1] Also before us is a Petition to Deny (Petition) the Application filed by Media and Democracy Project (MAD); Milo Vassallo; John McGinty; Peter Lems; Chenjerai Kumanyika; and Bill Hartman (collectively, Petitioners).[2] Other entities or individuals have filed informal objections to the Application.[3] For the reasons discussed below, we deny the Petition and informal objections and grant the Application.

## II. BACKGROUND

2. The freedom of speech and the press is enshrined in the First Amendment of the United States Constitution, and is necessary to promote the vigorous dialogue necessary in a representative democracy.[4] When the government – including Congress, the Courts, and the Executive Branch (and States and local government) – seeks to curtail the freedom of expression on "matters of valid public

[1] Application for Renewal of License of WTXF-TV, LMS File No. 0000213362 (filed Apr. 3, 2023) (Application). On August 23, 2023, the Media Bureau classified this proceeding as permit-but-disclose under the *ex parte* rules. *See Commission Announces Permit-But-Disclose Ex Parte Status and Establishes MB Docket No. 23-293 for Application for Renewal of License of WXTF-TV, Philadelphia, Pennsylvania*, MB Docket No. 23-293, DA 23-752 (MB, Aug. 23, 2023).

[2] The Media and Democracy Project, Milo Vassallo, John McGinty, Peter Lems, Chenjerai Kumanyika, and Bill Hartman, Petition to Deny, LMS File No. 0000213362 (filed July 3, 2023) (Petition).

[3] *See* Letter from Sue Wilson, Media Action Center, to Chairwoman Jessica Rosenworcel, FCC, LMS File No. 0000213362 (filed July 13, 2023); Letter from Ervin S. Duggan and William Kristol to Marlene H. Dortch, FCC, LMS File No. 0000213362 (filed July 31, 2023) (Duggan/Kristol Objection); Letter from Francis Lipiecki to Marlene H. Dortch, FCC, LMS File No. 0000213362 (filed Aug. 10, 2023); Letter from Alfred C. Sikes to Marlene H. Dortch, FCC, LMS File No. 0000213362 (filed Aug. 20, 2023); Letter from Jamie Kellner to Marlene H. Dortch, FCC, LMS File No. 0000213362 (filed Aug. 22, 2023); Letter from Ervin S. Duggan and William Kristol to Marlene H. Dortch, FCC, LMS File No. 0000213362 (filed Aug. 22, 2023).

[4] *See* U.S. Const. amend. I; *see also* Pub. L. 111–223, §2, Aug. 10, 2010, 124 Stat. 2380.

interest," doing so implicates the very heart of speech that the First Amendment is meant to protect.[5] Accordingly, for nearly a century since the Commission's inception in 1934, the Communications Act has expressly prohibited the Commission from engaging in the "power of censorship," or issuing regulations or conditions that "interfere with the right of free speech."[6] It has instead plainly recognized that "[b]roadcasters—not the FCC or any other government agency—are responsible for selecting the material they air" and that "our role in overseeing program content is very limited."[7] Moreover, "the Commission does not—and cannot and will not—act as a self-appointed, free-roving arbiter of truth in journalism."[8]

3. On April 3, 2023, Licensee filed the Application to renew the license of station WTXF-TV, Philadelphia, PA. Fox Corporation ("Fox") is the parent company of Licensee as well as a separate subsidiary, Fox News Network, LLC ("Fox News").[9] On March 31, 2023, just days before the Application was filed, the Superior Court of Delaware issued a decision in a civil defamation matter granting a summary judgment motion filed by Dominion Voting Systems, Inc. and related entities ("Dominion").[10] In ruling on the summary judgment motion, the state court determined that Fox News disseminated statements relating to Dominion about the 2020 Presidential election that were not true.[11] On the issue of "actual malice" (that is, whether an entity "acted with knowledge that it was false or with reckless disregard of whether it was false or not"), the state court did not grant summary judgment and instead determined that there were genuine issues of material fact to be determined by a jury.[12] The parties subsequently settled the matter.[13]

4. On July 3, 2023, the Petition was filed, alleging that the state court's finding at the summary judgment stage in the civil defamation matter, as well as the evidence disclosed in that proceeding, show that Fox "intentionally manipulated its audience" and "call into serious question whether Fox has operated its stations in the public interest, whether it has violated Commission policies and whether it has the requisite character to remain an FCC licensee."[14] In addition to a copy of the state court's decision, the Petition is supported by a Declaration of a former employee of Fox who states that, "in [his] opinion, Fox has undermined our democracy and has radicalized a segment of our population by presenting knowingly false narratives about the legitimacy of the 2020 election."[15] The Petition calls for an evidentiary hearing so that the Commission can "determine on its own the extent of Fox's willfulness

---

[5] *Id.*; *see also Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("[t]he choice of material to go into a newspaper . . . and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment.").

[6] *See* 47 U.S.C. § 326.

[7] FCC, THE PUBLIC AND BROADCASTING 7 (Aug. 2019), https://www.fcc.gov/media/radio/public-andbroadcasting.

[8] *Free Press Emergency Petition for Inquiry Into Broadcast of False Information on COVID-19*, Letter Order, 35 FCC Rcd. 3032, 3033 (MB & OGC 2020).

[9] *US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730567, *2 (Del. Super. Ct. 2023).

[10] *See id*.

[11] *See id*. at *21 ("The evidence developed in this civil proceeding demonstrates . . . that none of the Statements relating to Dominion about the 2020 election are true. Therefore, the Court will grant summary judgment in favor of Dominion on the element of falsity."); *id*. at *23 ("The record is clear. [Fox News], as a network, broadcasted the Statements. In other words, [Fox News] published the Statements by broadcasting the Statements to [Fox News]'s viewers.").

[12] *Id*. at *23.

[13] *See* Petition at 3.

[14] *See id*. at 2.

[15] *See id*. at Exhibit 2, Declaration of Preston Padden.

in its misrepresentation of the news and whether FOX's misconduct disqualifies it as an FCC licensee."[16] Informal Objections were also filed raising similar issues.[17]

5. On August 2, 2023, Licensee filed an Opposition arguing that the Petition should be denied because it makes no claim regarding the Licensee or the Station; the civil defamation case pertains not to the Licensee or the Station but instead to a cable network under common control with the Licensee; and the record reflects that the Station has served the public interest.[18] On August 22, 2023, the Petitioner responded to the Opposition and raised for the first time a new claim that Licensee made a material misrepresentation in its renewal application when it certified that the documentation in its Online Public Inspection File (OPIF) "has been uploaded to the station's public inspection file when required."[19] Petitioners allege that the Licensee did not upload its issues and program lists to the OPIF in a timely manner in 2018 and 2020;[20] there were numerous instances where the Station failed to timely upload a request for political advertising;[21] and there were other examples of contracts filed without an accompanying disposition of when the spots ran or if any were preempted.[22] On August 29, 2023, Licensee responded to the OPIF allegations.[23]

6. On October 9, 2023, MAD filed a Motion for Production of Documents, asking the Commission to require Fox to produce various documents, including documents submitted or provided in connection with the Dominion litigation; all documents submitted in four Delaware Chancery stockholder derivate lawsuits against Fox; and various documents pertaining to the political file allegations.[24] Licensee opposed the Motion.[25]

## III. DISCUSSION

### A. Standard of Review

7. Under section 309(k)(1) of the Act, the Commission shall grant a station's renewal application "if it finds, with respect to that station, during the preceding term of its license—

(A) the station has served the public interest, convenience, and necessity;

(B) there have been no serious violations by the licensee of this chapter or the rules and regulations of the Commission; and

---

[16] *See id*. at 8-9.

[17] *See supra* n.[3].

[18] *See* Opposition of Fox Television Stations, LLC, LMS File No. 0000213362 (filed Aug. 2, 2023) (Licensee Opposition).

[19] *See* Reply of The Media and Democracy Project, Milo Vassallo, John McGinty, Peter Lems, Chenjerai Kumanyika, and Bill Hartman, LMS File No. 0000213362 (filed Aug. 22, 2023) (MAD Reply).

[20] *See id*. at 20 (stating that "the fourth quarter reports for 2022 and 2018 were uploaded significantly later than required").

[21] *See id*. at 22 (providing an example where a request for political advertising was made on July 14, 2020 for advertising to run from October 6, 2020 until October 12, 2020, but the contract was not placed in the station's OPIF until October 13, 2020, the day after the final air date).

[22] *See id*. at 22-23 (citing 47 CFR § 73.1943 and stating that Licensee uploaded certain contracts but not the invoices).

[23] *See* Letter from Matthew S. DelNero, Counsel for Fox Television Stations, LLC, to Ms. Marlene H. Dortch, FCC, MB Docket No. 23-293 (Aug. 29, 2023), at 2 ("Licensee Aug. 29, 2023 Letter").

[24] *See* MAD, Motion for Production of Documents, MB Docket No. 23-293 (Oct. 9, 2023).

[25] *See* Letter from Matthew S. DelNero, Counsel for Fox Television Stations, LLC, to Ms. Marlene H. Dortch, FCC, MB Docket No. 23-293 (Oct. 16, 2023).

(C) there have been no other violations by the licensee of this chapter or the rules and regulations of the Commission which, taken together, would constitute a pattern of abuse."[26]

If, however, the licensee fails to meet that standard, the Commission may deny the application—after notice and opportunity for a hearing under section 309(e) of the Act—or grant the application "on terms and conditions that are appropriate, including a renewal for a term less than the maximum otherwise permitted."[27]

8. If a petition to deny or informal objection has been filed against a renewal application, the Commission reviews the pleading pursuant to Section 309(d) to determine whether it contains "specific allegations of fact sufficient to show that the petitioner is a party in interest and that a grant of the application would be prima facie inconsistent with . . . [Section 309(k)]."[28] If so, the Commission examines the record to determine whether a "substantial and material question of fact is presented to warrant further inquiry in a hearing."[29] If the Commission determines that the record as a whole presents a substantial and material question of fact, or if it is unable to determine that the licensee has met the statutory renewal standard, it will designate the application for hearing.[30] If it finds that the record does not present any substantial and material questions of fact and that the licensee has met the statutory standard, the Commission will grant the application.[31]

**B. Procedural Issues**

9. As an initial matter, we reject Licensee's claim that MAD does not have standing to file the Petition.[32] In the broadcast regulatory context, standing is generally shown in one of three ways: (1) as a competitor in the market subject to signal interference; (2) as a competitor in the market subject to economic harm; or (3) as a resident of the station's service area or regular viewer or listener of the station.[33] An association such as MAD can establish standing provided "one or more of its members has standing."[34] MAD provided a Declaration from its founder memo (Milo Vassallo) that John McGinty, Peter Lems, Chenjerai Kumanyika, and Bill Hartman are each members of MAD.[35] Those individual members in turn submitted Declarations that they reside in the Station's viewing area and are regular viewers of the Station.[36] Accordingly, we find that MAD has standing to file the Petition.

---

[26] 47 U.S.C. § 309(k)(1).

[27] *Id.* § 309(k)(2), (3).

[28] *Id.* § 309(d)(1); *Astroline Commc'ns Co. v. FCC*, 857 F.2d 1556, 1561 (D.C. Cir. 1988) (*Astroline*).

[29] *Astroline*, 857 F.2d at 1561. *See also* 47 U.S.C. § 309(d)(2); *Applications of Cumulus Licensing, Corp. (Assignor) and Clear Channel Broadcasting Licenses, Inc. (Assignee)*, Order, 16 FCC Rcd 1052, 1054 n.5 (2001) (stating that the Commission follows the same two-step analysis in assessing the merits of a petition to deny or informal objection).

[30] 47 U.S.C. § 309(k)(2), (3). *See also* 47 U.S.C. § 309(d)(2), (e).

[31] *Astroline*, 857 F.2d at 1561. *See* 47 U.S.C. § 309(k)(1).

[32] *See* Licensee Opposition at 15-17 (stating that "[c]ertain of the MAD Petitioners lack standing to bring this Petition").

[33] *See, e.g., Entercom License, LLC, Hearing Designation Order*, 31 FCC Rcd 12196, 12205-06 (2016); *Melodie Virtue, Esq*., Letter Decision, 30 FCC Rcd 6045 (MB 2015).

[34] Petition for Rulemaking to Establish Standards for Determining the Standing of a Party to Petition to Deny a Broadcast Application, Memorandum Opinion and Order, 82 FCC 2d 89, 96, para. 20 (1980).

[35] *See* Petition, Declaration of Milo Vassallo.

[36] *See* Petition, Declarations of John McGinty, Peter Lems, Chenjerai Kumanyika, and Bill Hartman.

### C. Substantive Issues

10. For the reasons discussed below, we conclude that neither the Petition nor the Informal Objections contain "specific allegations of fact sufficient to show that . . . a grant of the [renewal] application would be prima facie inconsistent with" Section 309(k) of the Act.[37] Accordingly, we deny the Petition and Informal Objections.[38] Because the record reflects that the Station has satisfied the requirements of Section 309(k), we grant the Application and renew the license of WTXF-TV, Philadelphia, PA.

#### 1. Petitioners and Objectors have failed to establish that grant of the WTXF-TV renewal application is prima facie inconsistent with Section 309(k)

11. We deny the Petition and the Informal Objections because, with the exception of the allegation of violations of the OPIF rules, they have not raised issues pertinent to the Commission's review of a renewal application as mandated by the text of Section 309(k) of the Act. Section 309(k)(1) provides that in a license renewal proceeding the Commission "shall grant the [renewal] application if it finds, *with respect to that station*, during the preceding term of its license [that] *the station* has served the public interest, convenience, and necessity . . . ."[39] As the Commission explained over two decades ago soon after Section 309(k) was added in the Telecommunications Act of 1996,[40] "Congress . . . has expressly limited the scope of the license renewal inquiry to matters occurring *at the particular station* for which license renewal is sought."[41] The Commission has also explained that its "character policy does not override this statutory limitation," meaning that conduct occurring at other affiliated stations or affiliated subsidiaries that may be "'so egregious as to shock the conscience and evoke almost universal disapprobation'" is not considered at renewal under Section 309(k).[42] Rather, while such matters could be considered in a revocation proceeding under Section 312, they are beyond the scope of the limited renewal inquiry under Section 309(k).[43]

12. Moreover, consistent with our obligations under the First Amendment and the statutory prohibition set forth in Section 326 of the Act on the Commission "censor[ing]" broadcast stations or

---

[37] 47 U.S.C. § 309(d)(1); *Astroline Commc'ns Co. v. FCC*, 857 F.2d 1556, 1561 (D.C. Cir. 1988) (*Astroline*).

[38] Because the Petitioners and Objectors do not raise specific allegations of fact sufficient to show that grant of the renewal application would be prima facie inconsistent with Section 309(k), we deny Petitioners' Motion for Production. *See supra* n.[23].

[39] 47 U.S.C. § 309(k)(1)(A) (emphasis added).

[40] Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, § 204 (1996).

[41] *See Sagittarius Broad. Corp.*, Memorandum Opinion and Order, 18 FCC Rcd 22551, 22555, para. 8 (2003) (emphasis added). While Sections 309(k)(1)(B) and 309(k)(1)(C) refer to rule violations by the "licensee," the Commission has explained that does not mean "the Commission can look beyond conduct at the station under consideration." *Entercom Sacramento License, LLC*, Memorandum Opinion and Order, 33 FCC Rcd 6615, 6618, para. 10 n.30 (2018) (subsequent history omitted). The Commission has explained that such an interpretation would "conflict[] with the language and structure of the statute, which defines the scope of relevant conduct as that occurring 'with respect to [the] station' at issue. . . . [I]f the language were construed [in this manner], the scope of the renewal inquiry would turn on the completely arbitrary distinction of corporate form, as the result would differ for a broadcaster that holds all of its licenses in a single licensee subsidiary and another that holds licenses through multiple licensee subsidiaries." *Id*.

[42] *Entercom Sacramento*, 33 FCC Rcd at 6619, n.32.

[43] *Entercom License, LLC,* Hearing Designation Order and Notice of Opportunity for Hearing, 31 FCC Rcd 12196, para. 30 n.122 (2016) (explaining that the "limited scope of our review of renewal applications under the Act does not include consideration of questions of character that do not involve serious violations of the Act or Rules" but "pursuant to Section 312 of the Act, 47 U.S.C. § 312, we could initiate a proceeding to consider [] possible revocation [] based on whether [the licensee] has the requisite character to continue as licensee"), *affirmed on reconsideration*, 32 FCC Rcd 7149, 7153, paras. 13-14 (2017).

"interfere[ing] with [their] right of free speech by means of radio communication,"[44] we have explained that we "will not take adverse action on a license renewal application based solely on the subjective determination . . . as to what constitutes appropriate programming."[45]

13. Applying that precedent here, except for the alleged violations of the OPIF rules, none of the conduct alleged by the Petitioners and Objectors involve the Station, and thus they have not raised issues pertinent to review of a renewal application under Section 309(k). Rather, the state court decision relied on by the Petitioners and Objectors determined that a cable network (Fox News) under common control with the Station disseminated false statements relating to the 2020 Presidential election.[46] Neither the Station nor the Licensee was a defendant in that lawsuit, and the state court decision made no findings or even mentioned the Licensee or the Station.[47]

14. To the extent the Petitioners and Objectors allege that the Station engaged in "news distortion,"[48] they fail to establish a prima facie case that the Station ever disseminated false information. Rather, the state court's decision pertains only to the Fox News cable network.[49] While Petitioners and Objectors assert that WTXF-TV broadcast "Fox News Sunday" over-the-air every week,[50] they do not list any content aired on Fox News Sunday that they believe warrants a hearing nor do they otherwise provide anything that might support a claim that the false statements disseminated on Fox News were broadcast on WTXF-TV. In any event, to the extent Petitioners and Objectors would have the Commission review specific content aired by WTXF-TV to assess whether and to what extent such content is similar to the content aired on Fox News that the state court found to be false, we decline to do so. Such content review in the context of a renewal application would run afoul of our obligations under the First Amendment and the statutory prohibition on censorship and interference with free speech rights as set forth in Section 326 of the Act. In short, neither state court's findings or any other allegations in the record involve the Station and, as such, they are not within the scope of the license renewal inquiry mandated by Section 309(k).[51]

---

[44] *See* U.S. Const. amend. I; 47 U.S.C. § 326.

[45] *See* Letter from Peter H. Doyle, Chief, Audio Division, FCC to Kevin M. Raymond, 28 FCC Rcd 14907 (MB, 2013).

[46] *US Dominion, Inc.*, 2023 WL 2730567, *21.

[47] Moreover, the state court dismissed Fox Broadcasting, LLC (operator of the Fox Broadcast Network) from the case because the complaint offered "'no factual support for [the] allegations'" that Fox Broadcasting, LLC had republished the statements that were the subject of that litigation. Fox Opposition at 8 (quoting *US Dominion, Inc. v. Fox News Network, LLC*, 2022 WL 2229781 (Del. Super. Ct. June 21, 2022)). In addition, the state court did not find at the summary judgment stage that the Licensee's parent company (Fox Corporation) published the false information. *US Dominion, Inc.*, 2023 WL 2730567, *24 (stating that the parent corporation "offers enough support for its argument that [it] did not directly publish or otherwise engage in the publication of the" false information).

[48] The Commission has used the term "news distortion" to refer to programming that "deliberately distort[s] or slant[s] the news." *Complaints Covering CBS Program "Hunger in America,"* Memorandum Opinion, 20 FCC 2d 143, 150 (1969) ("*Hunger in America*").

[49] *Hunger in America*, 20 FCC 2d at 150, para. 19 (stating the Commission's concern as "whether *the licensee* has deliberately distorted or slanted the news") (emphasis added). *See also Serafyn v. FCC*, 149 F.3d 1213, 1216 (D.C. Cir. 1998) (explaining that the Commission considers a news distortion allegation "only *if the licensee itself* is said to have participated in, directed, or at least acquiesced in a pattern of news distortion") (emphasis added); *Entercom Communications and CBS Radio*, Memorandum Opinion and Order, 33 FCC Rcd 6621, 6623, para. 5 (2018) ("nothing in Stoltz's claims of news distortion at CBS *television stations* identifies any facts that raise questions about CBS's qualifications to hold the *radio station licenses*") (emphasis added).

[50] *See* Petition at 6-7.

[51] Similarly, while the Duggan/Kristol Objection alleges that Fox and Fox News during the Dominion litigation "made representations to the court as to possible withholding of materials in discovery," such allegations do not involve the Station and thus are not pertinent in connection with the limited scope of the license renewal inquiry

(continued….)

15. While Petitioner alleges that the Station violated the OPIF rules, which does fall within the proper scope of the license renewal inquiry mandated by Section 309(k), we find these allegations are not sufficient to show that grant of the WTXF-TV application would be prima facie inconsistent with Section 309(k) of the Act.[52] The Station has explained how the Commission extended the OPIF filing deadlines in 2018 and 2022 when Petitioners claim the Station's filings were late;[53] why Petitioners misconstrue the date that triggers the obligation to upload documents to the OPIF;[54] how contracts, including revisions, were timely filed and contained all of the information required by Section 73.1943 of the Commission's rules;[55] and how technical challenges with the OPIF database in some cases prevented timely filings.[56] Under the circumstances, we decline to find that the Station made a material misrepresentation in its renewal application when it certified that the documentation required by Sections 73.3526 and 73.3527 of the Commission's rules had been uploaded to the station's public inspection file when required. Nor do we find that Petitioners' allegations rise to the level of "serious violations" or a "pattern of abuse" under Sections 309(k)(1)(B) or 309(k)(1)(C) that would require hearing.[57]

16. Accordingly, in light of the foregoing, we deny the Petition and Informal Objections because they do not contain "specific allegations of fact sufficient to show that . . . a grant of the application would be prima facie inconsistent with" Section 309(k).[58]

### 2. Petitioners and Objectors have not alleged a disqualifying character issue under Commission precedent

17. On alternative and independent grounds, assuming for the sake of argument that the character claims put forth by Petitioners and Objectors are properly before the Commission in the context of this renewal proceeding pertaining to WTXF-TV, we find that Petitioners and Objectors have failed to put forth a prima facie case that would warrant further inquiry.[59] As noted, the allegations here involve non-FCC-related misconduct—material carried on a cable network under common control with the Licensee that a state court found to be false. The Commission has explained that it will consider adjudicated non-FCC-related misconduct that is predictive of "whether an applicant has or lacks the character traits of 'truthfulness' and 'reliability' that we have found relevant to the qualifications to operate a broadcast station in accordance with the requirements of the Communications Act and of our

under Section 309(k). *See* Duggan/Kristol Objection at 7. *See also infra* n.[66] (addressing this claim in relation to the Commission's character policy).

[52] 47 U.S.C. § 309(d)(1).

[53] *See* Licensee Aug. 29, 2023 Letter at 2 (citing *Impact of Potential Lapse in Funding on Commission Operations*, Public Notice, DA 19-10 (rel. Jan. 2, 2019); *Suspension of Filing Deadlines*, Public Notice, DA 19-20 (rel. Jan. 28, 2019); *Media Bureau Announces Extension of Time for Entities to File Documents Into Their Online Public Inspection Files*, Public Notice, DA 23-16 (rel. Jan. 6, 2023)).

[54] *See id*. at 2-3 (stating that an "*initial* request for rates or an inquiry of availability of time . . . often does not correlate to the date there was a final order" and that the Commission has "clarified that such multiple back-and-forth discussions, including contract revisions, do not need to be uploaded to the online public file, and that uploads shall occur when there is a 'final, mutually agreed upon order of time'") (emphasis in original) (quoting *Standardization and Enhanced Disclosure Requirements for Television Broadcast Licensee Public Interest Obligations*, Second Report and Order, 27 FCC Rcd 4535, 4557 ¶ 42 (2012)).

[55] *See id*. at 3.

[56] *See id*.

[57] 47 U.S.C. § 309(k)(1)(B)-(C).

[58] *Id.* § 309(d)(1); *Astroline Commc'ns Co. v. FCC*, 857 F.2d 1556, 1561 (D.C. Cir. 1988) (*Astroline*).

[59] Petition at 10-14.

rules and policies."[60] The Commission went on to establish four specific categories of such conduct: (1) "adjudications of both criminal and civil violations of law could be considered in which a specific finding of fraudulent representation to another governmental unit is made";[61] (2) "criminal convictions involving false statement or dishonesty could be relevant to predicting the propensity for an applicant to deal truthfully with the Commission";[62] (3) "adjudications involving antitrust or anticompetitive violations from a court of competent jurisdiction, the Federal Trade Commission, or other governmental unit charged with the responsibility of policing such activity";[63] and (4) "any conviction for misconduct constituting a felony."[64]

18. For two alternative and independent reasons, the allegations put forth by Petitioners and Objectors does not qualify as cognizable non-FCC-related misconduct. First, the state court's determination in a civil defamation matter that a cable network under common control with the Licensee disseminated false statements does not fall within any of the categories of relevant non-FCC-related misconduct set forth in the *Character Policy Statements* as described above.[65] Second, the Commission has explained that it will not take cognizance of non-FCC-related misconduct in the specified categories unless there has been an "ultimate adjudication by an appropriate trier of fact" and that "[t]ribunals whose factual determinations may be reviewed de novo will not be considered unless the time for taking such review has expired under the relevant procedural rules."[66] Even assuming the conduct here fell within one of specified categories of cognizable non-FCC-related misconduct, there was not an "ultimate adjudication" on the issue of "actual malice" or whether the Licensee's parent company (Fox Corporation) published the false information. And even with respect to the state court's decision that false information was disseminated, this decision was made in response to a summary judgment motion and was subject to de novo review.[67] While Petitioners claim that Fox's decision to settle the lawsuit prior to de novo review for a reported $787 million "is tantamount to a guilty conviction,"[68] there is no support for such a proposition under well-established Commission precedent.[69]

---

[60] *Policy Regarding Character Qualifications in Broadcast Licensing*, Report, Order, and Policy Statement, 102 FCC 2d 1179, 1195, para. 34 (1986) (*1986 Character Policy Statement*) (subsequent history omitted).

[61] *Id*. at 1196, para. 36.

[62] *Id*. at 1196-97, para. 37.

[63] *Id*. at 1202-03, para. 44.

[64] *Policy Regarding Character Qualifications in Broadcast Licensing*, Policy Statement and Order, 5 FCC Rcd 3252, para. 4 (1990) (*1990 Character Policy Statement*).

[65] *Policy Regarding Character Qualifications in Broadcast Licensing*, Memorandum Opinion and Order, 1 FCC Rcd 421, para. 9 (1986) ("misconduct in the broadcast field which does not violate the Communications Act or the Commission's rules or policies is still relevant for purposes of determining character qualifications of broadcast applicants provided that there has been an adjudication and *it falls into one of the categories of relevant non-FCC misconduct*") (emphasis added).

[66] *1986 Character Policy Statement*, 102 FCC 2d at 1204-05, para. 48 and n.62.

[67] Fox Opposition at 12 n.35 (stating that under Delaware law an appeal of the Superior Court's decision on summary judgment is reviewed de novo). While the Duggan/Kristol Objection alleges that Fox and Fox News in the course of the Dominion litigation "made representations to the court as to possible withholding of materials in discovery," Fox explains that such allegations are unadjudicated and the judge determined that the matter was "closed." *See* Duggan/Kristol Objection at 7; Fox Opposition at 12 n.32.

[68] Petition at 3.

[69] *See Fox Television Stations Inc.,* Declaratory Ruling, 8 FCC Rcd 5341, n.41 (1993) ("both suits ended in settlement, and settlement agreements, like consent decrees, do not constitute 'adjudicated misconduct' and are, therefore, not probative of an applicant's character, even though they involve broadcast-related businesses"); *Policy Regarding Character Qualifications in Broadcast Licensing*, Memorandum Opinion and Order, 6 FCC Rcd 3448, para. 6 (1991) ("Where that litigation has ended in a settlement agreement, consent decree, or acquittal and there is

(continued….)

19. Finally, the Commission has explained that it will consider even unadjudicated non-FCC-related misconduct in certain cases, but only if the conduct is "so egregious as to shock the conscience and evoke almost universal disapprobation."[70] The Commission has found the child molestation and drug trafficking qualify under this test.[71] Petitioners and Objectors do not squarely address how the conduct at issue here fits within that precedent. Moreover, to the extent Petitioners and Objectors would have the Commission review specific content aired by WXTF or Fox to determine whether it "shocks the conscience," such content review in the context of a renewal application would run afoul of our obligations under the First Amendment and the statutory prohibition on censorship and interference with free speech rights as set forth in Section 326 of the Act. In light of this precedent, we cannot conclude that the Petitioners and Objectors have put forth a prima facie case that would warrant further inquiry under this standard.

## IV. CONCLUSION

20. For the reasons discussed above, we deny the Petition and informal objections. In addition, based on our review of the Application and the record, we find that the Station has served the public interest, convenience, and necessity during the subject license term and has met the requirements for renewal as stated in 47 U.S.C. § 309(k). Accordingly, we grant the renewal application and renew the license of WTXF-TV, Philadelphia, PA.

## V. ORDERING CLAUSES

23. Accordingly, **IT IS ORDERED** that, pursuant to Sections 4(i), 4(j), and 309(k) of the Communications Act of 1934, as amended,[72] and by the authority delegated by Sections 0.61 and 0.283 of the Commission's Rules,[73] the Petition to Deny filed by Media and Democracy Project (MAD); Milo Vassallo; John McGinty; Peter Lems; Chenjerai Kumanyika; and Bill Hartman, and the Informal Objections filed by Media Action Center, Ervin S. Duggan and William Kristol, Francis Lipiecki, Alfred C. Sikes, and Jamie Kellner **ARE DENIED**.

21. **IT IS FURTHER ORDERED** that the Motion for Production of Documents filed by Media and Democracy Project **IS DENIED**.

---

no admission or finding of unlawful misconduct, we believe it is generally inappropriate for us to reach legal conclusions on the basis of any stipulated facts."); *1986 Character Policy Statement*, 102 FCC 2d at 1204-05, para. 48 n.64 ("We do not believe it appropriate to consider consent decrees, entered into in the civil context, for the purpose of determining character qualifications. The act of consenting to such an agreement is not a wrongful act and does not necessarily imply wrongful conduct. The existence of a consent decree, by itself, is not necessarily probative on the issue of an applicant's character.").

[70] *1986 Character Policy Statement*, 102 FCC 2d at 1204-05, para. 48 n.60.

[71] *See* Letter to Anne L. Weismann from Barbara A. Kreisman, Chief, Video Division, Media Bureau, FCC, 28 FCC Rcd 6312, 6318 (MB 2013) (citations omitted).

[72] 47 U.S.C. §§ 154(i), 154(j), 309(k).

[73] 47 CFR §§ 0.61, 0.283.

22. **IT IS FURTHER ORDERED** that the application filed by Fox Television Stations, LLC to renew the license of WTXF-TV, Philadelphia, PA (Facility ID No. 51568; LMS File No. 0000213362) **IS GRANTED**.

FEDERAL COMMUNICATIONS COMMISSION

Rosemary Harold
Acting Chief, Media Bureau