# Exhibit 16

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Application of FOX Television Stations, LLC | ) | LMS File No. 0000213362 |
| for Renewal of License of WTXF-TV, | ) | Facility ID 51568 |
| Philadelphia, Pennsylvania | ) | FRN: 0005795067 |
| | ) | |
| | ) | |

To: Marlene H. Dortch, Secretary
Attn. Holly Saurer, Chief Media Bureau

**PETITON TO DENY**

Arthur V. Belendiuk
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W. #301
Washington, D.C. 20016
abelendiuk@fccworld.com
(202) 363-4559

July 3, 2023

## TABLE OF CONTENTS

**Summary**…………………..………………………………………………………..………i

**INTRODUCTION**…………………………………………..……………...……2

**STANDING**……………………………………………………..…………….…...…3

**BACKGROUND.**……………………..……………..………………..………………...4

**ARGUMENT**…..…...……………………………………………………….……….….…9

**A. FOX Has Failed to Carry its Burden Under the Communications Act**……..…..10

**B. The Commission Must Designate a Hearing to Hold FOX Accountable**……….12

**C. FOX Harmed the Public by Willfully Distorting Election News**………..………15

**CONCLUSION**…………………………………………………………...…………17

## SUMMARY

This license renewal application for a FOX station offers an opportunity for petitioners, in the public interest, to seek to hold FOX accountable for its broadcasting of knowingly false narratives about the 2020 election. Based on extensive record evidence including internal emails and texts, a court has held that the senior management of Fox Television Stations repeatedly disseminated false news. To the best of Petitioners' knowledge, never before has the Commission been confronted with such a judicial finding against an applicant for renewal of a license to broadcast over the public airwaves. This false narrative was broadcast on Fox News Channel, and a good deal of that narrative was broadcast on WTXF-TV and other Fox over-the-air television stations. As an FCC broadcast licensee FOX is bound to broadcast in the public interest, convenience, and necessity. Instead, it has repeatedly aired false information about election fraud, sowing discord in the country and contributing to harmful and dangerous acts on January 6, 2021. FOX's intentional news distortion, sanctioned at the highest levels of its corporate structure, and fabricated by management and news hosts amounts to misconduct that violates the FCC's policy on the character required of broadcast licensees, and was so egregious as to shock the conscience. The petitioners urge the FCC to commence an evidentiary hearing into FOX's misdeeds, which petitioners believe will lead to the denial of the renewal application, the revocation of FOX broadcast licenses, and a determination that FOX lacks the character to remain a licensee.

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Application of FOX Television Stations, LLC | ) | LMS File No. 0000213362 |
| for Renewal of License of WTXF-TV, | ) | Facility ID 51568 |
| Philadelphia, Pennsylvania | ) | FRN: 0005795067 |
| | ) | |
| | ) | |

To: Marlene H. Dortch, Secretary
Attn. Holly Saurer, Chief Media Bureau

## PETITION TO DENY

The Media and Democracy Project, Milo Vassallo, John McGinty, Peter Lems, Chenjerai Kumanyika, and Bill Hartman (Petitioners) file this Petition to Deny (Petition), the referenced license renewal application for WTXF-TV, Philadelphia, Pennsylvania (Application).[1] The applicant is Fox Television Stations, LLC (FTS) and the ultimate parent entity is Fox Corporation (FC) (collectively FOX). Petitioners seek an evidentiary hearing into FOX's egregious conduct in willfully broadcasting false news about the 2020 presidential election that contributed to civil unrest in the country, in particular, the events of January 6, 2021, in Washington, D.C. This hearing will inform the Commission's ultimate decision on the Application, revocation of FOX's broadcast licenses, and FOX's and its senior executives' character qualifications to hold Commission licenses.

---

[1] Where the FCC has not yet acted on other FOX applications for television license renewal, this pleading should be treated as an informal objection to those pending applications.

## INTRODUCTION

Under the FOX banner, FOX produces and distributes content for FOX News Media, FOX Sports, FOX Entertainment, and FOX Television Stations. FOX Television Stations owns and operates 29 full power broadcast television stations. These include stations located in 14 of the top 15 largest designated market areas. Of these stations, 18 are affiliated with the FOX Network. FOX claims that "These stations leverage viewer, distributor and advertiser demand for the FOX Network's national content."[2] FOX News Media operates, inter alia, the FOX News Channel (FNC), FOX Business Network, FOX News Digital, and FOX News Audio.[3] FOX claims that "FOX News Media reaches 200 million people each month."[4] Content on FNC and other FOX cable channels is routinely shared with its FOX affiliated television stations.

After Donald Trump lost the 2020 election, FOX was faced with a backlash from viewers and declining ratings. FOX and its top management decided to pursue a false narrative that the election had been rigged, despite knowing that the claims it reported were false. Nonetheless, for purely financial reasons, FOX continued to pitch this story of a stolen election to its viewers. Its sustained conduct significantly contributed to the January 6, 2021, storming of the Capitol building and its terrible and lasting consequences for this country. FOX's intentional news distortion and manipulation of its audience was so egregious as to shock the conscience. FOX is not qualified to remain a Commission licensee.

Petitioners are regular viewers of WTXF-TV and members of a public interest, media watchdog group. The Petition principally relies on the record and findings in a court decision on

---

[2] https://foxcareers.com/OurBrands/FOXTVStations

[3] https://foxcareers.com/OurBrands/FOXNewsMedia

[4] Id.

motions for summary judgment in a recently settled defamation lawsuit brought by the Dominion voting machine company against Fox News Network (FNN) and FC.[5] In its 130-page decision the court documented in great detail the relevant public and private activities of FOX executives and news teams and reached several key conclusions. It found that FNC hosts had made false claims of election tampering and fraud on broadcast and social media platforms, specifically, that none of the statements they made about Dominion were true. It also held that these statements were defamatory per se. On the question of actual malice, meaning with knowledge of falsity or with reckless disregard for truth, the court reserved that determination for trial and a jury verdict. Following the court decision, FOX settled the lawsuit with Dominion for a reported $787 million, thereby avoiding a trial. Paying a settlement of nearly a $1 Billion is tantamount to a guilty conviction. Fox did not appeal the Court's decision. In fact, it issued a Statement acknowledging the decision, stating, “"We acknowledge the Court's rulings finding certain claims about Dominion to be false.”[6] This Petition to Deny is further bolstered by the Declaration of Preston Padden (Padden Declaration), detailing his familiarity with FOX and his direct contact with FOX leadership during the relevant period. (Exhibit 2), as well as other evidence presented herein.

**STANDING**

Attached hereto as Exhibit 3 are the declarations of John McGinty, Peter Lems, Chenjerai Kumanyika, and Bill Hartman, members of The Media and Democracy Project (“MAD”) and regular viewers of WTXF-TV. Milo Vassallo is a founding member of MAD but does not live within the viewing area of WTXF-TV. MAD is an all-volunteer grassroots organization focused

---

[5] US Dominion, Inc., et. al. v. Fox News Network, LLC. And Fox Corporation (“Dominion v. FOX”). (Exhibit 1, hereto)

[6] https://www.cnn.com/business/live-news/fox-news-dominion-trial-04-18-23

on strengthening a free and independent media, to improve our public debate and thus the information American voters use to inform their democratic decision-making. As part of that goal, MAD has an interest in  the responsibility of journalists and media to report fully, accurately and fairly on the electoral process and the outcome of elections.

**BACKGROUND**

After Joe Biden was declared the winner of the 2020 election, Former president Donald Trump challenged the outcome. A team led by Rudolph Giuliani and Sidney Powell filed numerous lawsuits in multiple states alleging voting irregularities. As set forth in detail in the court's decision in *Dominion v. FOX*, FOX, including Rupert Murdoch and Lachlan Murdoch, as well as the FNC hosts and management, knew at all relevant times that the allegations of "rigging the election" were false and baseless. For example, on November 6, 2020, Rupert Murdoch sent an email to Preston Padden: "Seems Trump listening to terrible advice from Giuliani versus Trump family wanting to wave white flag! Not sure of this but sounds likely. Melania very level headed. Ivanka too but would never go public." Padden Declaration. Despite this, and in response to intense backlash from viewers after the election and declining ratings and profits, FOX chose to mislead its audience and broadcast knowingly false statements to win back viewers.

FNC was the first news network to call Arizona for Joe Biden. Following the call, FNC received "major heat" from viewers and from inside President Trump's inner circle. *Dominion v. FOX* p.13. President Trump began criticizing FOX and retweeting tweets encouraging FOX viewers to switch to other networks. Id. p.14. As ratings for FOX competitors increased, Rupert Murdoch and FOX top management became more and more concerned. Lachlan Murdoch

testified that the drop was concerning. Id. On November 8, Rupert Murdoch emailed Ms. Scott[7], saying that Fox was "[g]etting creamed by CNN!" Id. On November 12, 2020, Murdoch sent a similar email to Padden: "Apparently he's [Trump] told friends that Lachlan and I have betrayed him. Stock down 5 or 6% today. Real bargain!" Financial analysts attributed the decline of FOX's stock to Trump's support for Fox's competitors Newsmax and One America News. In another email on the same day Mr. Murdoch wrote to Padden: "He can only be so hostile as he looks to blame somebody for losing. So he knows he's done." Padden Declaration.

On November 9, 2020, Ms. Scott emailed Rupert Murdoch, noting the importance of "keep[ing] the audience who loves and trusts us...we need to make sure they know we aren't abandoning them and still champions for them." Court Decision p.14-15. To pander to its audience and to appease Trump, FOX began to promote news stories and guests who claimed, without any basis, that the election was rigged. Amidst the backlash, allegations of election fraud began to emerge on FOX.

While it was promoting false narratives and unsupported conspiracy theories, FOX was fully aware that there was no basis for the claims its reporters and news anchors were making. FNC has a centralized research department called the "Brainroom" that conducts internal fact-checking. *Dominion v. FOX* p.17. On November 13, 2020, the Brainroom completed a fact-check regarding the Dominion allegations, which stated:

- There was "no evidence of widespread fraud."
- "Claims about Dominion switching or deleting votes are 100% false" and claims that votes for Former President Trump were deleted are "mathematically impossible."

[7] Suzanne Scott is the Chief Executive Officer of FNC. As the CEO, Ms. Scott is responsible for the content of the shows and has the authority to direct shows to not host certain guests or broadcast certain content. *Dominion v. FOX* p. 8.

- "Dominion has no company ownership relationships with any member of the Pelosi family, the Feinstein family, or the Clinton Global Initiative."
- "The U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency (CISA) has debunked viral claims about the existence of a secret CIA program for vote fraud called Hammer and Scorecard."
- "No credible reports or evidence of any software issues exist."
- "Claims about software updates being done the night before Election Day are 100% false."
- "There are no issues with the use of Sharpie pens related to hand-marked paper ballots."
- "All U.S. voting systems must provide assurance that they work accurately and reliably as intended under federal U.S. Election Assistance Commission and state certification and testing requirements."

*Dominion v. FOX* pp.14-15·

Fox and its top management knew that it was broadcasting a false narrative. WTXF broadcasts "Fox News Sunday" over-the-air every week. The name of the program begins with the words "Fox News". It is produced by Fox News Channel. It is hosted by stars of Fox News Channel. Many of the leading proponents of the false election fraud claims, who have been featured on Fox News Channel, also have appeared on Fox News Sunday on WTXF (either live or in replayed clips from Fox News Channel); people like Rudy Giuliani and Sidney Powell. Fox News Sunday on WTXF effectively is an over-the-air extension of Fox News Channel. Former host Chris Wallace did a better job than other Fox anchors in pushing back against false claims of election fraud. But, he left Fox and Fox News Sunday telling the New York Times, "But when

people start to question the truth — Who won the 2020 election? Was Jan. 6 an insurrection? — I found that unsustainable."[8]

Fox knew that guests on their shows were questioning the truth. For example, on November 19, 2020, Tucker Carlson a FNC host texted Laura Ingraham, another FNC host, that "Sidney Powell is lying by the way. I caught her. It's insane." Ms. Ingraham responded: "Sidney is a complete nut. No one will work with her. Ditto with Rudy." *Dominion v. FOX*, p. 25. Despite everyone knowing the truth, FOX continued to broadcast knowingly untrue news stories, supported by unreliable and untruthful guests. This was done entirely for financial gain. FOX was worried about a loss in audience and revenues. It knew that what it was broadcasting was not true. It also knew, or should have known, that it was causing tremendous damage to the country. FOX was knowingly and maliciously radicalizing a significant portion of the American electorate.[9] Media outlets have described this phenomenon as "Foxitis," or "Foxmania."[10] In January 2021, as set forth in Mr. Padden's declaration, FOX hosts were actively promoting the January 6 demonstration. As Mr. Padden heard Sean Hannity say "its going to be wild, be there."

---

[8] https://www.nytimes.com/2022/03/27/business/media/chris-wallace-cnn-fox-news.html?referringSource=articleShare

[9] For example, lawyers for at least three defendants charged in connection with the January 6 Capitol siege blame election misinformation and conspiracy theories for misleading their clients. The attorneys say those who spread that misinformation bear as much responsibility for the violence as do those who participated in the actual breach of the Capitol. https://apnews.com/article/dc-wire-donald-trump-health-coronavirus-pandemic-election-2020-b7e929bb8d49b77d0922eae7ad3794b7

[10] https://www.cnn.com/2021/05/06/politics/capitol-foxitis-hearing-outburst/index.html
https://www.businessinsider.com/capitol-defendant-attorney-client-had-foxmania-from-watching-fox-news-2021-5

At the repeated urging of FOX, who knew the truth, people came to Washington on January 6, 2021, to "Stop the Steal." The result is well known. A mob of supporters of Donald Trump stormed the Capitol. The attack disrupted a joint session of Congress convened to certify the results of the presidential election. A mob pushed through fences of the Capitol grounds, forcing Capitol Police officers to retreat. Many officers were brutally beaten with deadly weapons (bats, pipes, and flag poles), sprayed with chemical irritants, or crushed and trampled by the surging crowd. By about 2:00 PM the rioters had breached the last barrier and were running up the Capitol steps and scaling the walls of the West Terrace. Another mob also had broken through barriers on the east side of the Capitol. Shortly after 2:00 PM the rioters shattered windows to break into the building, and for the next few hours they vandalized and looted the interior and ransacked offices as they searched for their perceived enemies in Congress. Only minutes after the break-in, members of the House and Senate were notified that protesters had entered the building. Realizing that their lives were in danger, many lawmakers fled or were evacuated from the building or in barricaded offices and even closets. The Capitol was finally cleared of rioters at about 6 PM. According to a Justice Department report released in July 2021, approximately 140 Capitol and Metropolitan police officers were criminally assaulted by the rioters in the January 6 attack. Among those victims, one died of a series of strokes after being hospitalized for injuries sustained in the attack, and two others committed suicide. One of the rioters was shot and killed by police, another died of a heart attack, and a third was crushed to death by the stampeding mob. The rioters caused an estimated $1.5 million in damage to the Capitol building.

FOX greatly contributed to this tragedy. It broadcasted false statements, not out of ignorance, or through a genuine belief that it was broadcasting truth, but through the sole motivation of greed. It cared nothing for the damage it caused or the lives it ruined. Television licenses belong to the people of the United States. Portions of this false narrative were also broadcast on WTXF-TV and affiliated FOX television stations. A broadcast licensee has a duty to broadcast in the public interest, convenience, and necessity. Petitioners cannot imagine a less qualified licensee than FOX or one that has done more harm to the public it is licensed to serve.

**ARGUMENT**

Petitioners allege that FOX intentionally manipulated its audience for wholly unjustified reasons, further dividing the country and contributing to the January 6, 2021, storming of the Capitol. The court decision in *Dominion v. FOX*, the Padden Declaration, and other evidence presented herein strongly support this claim and call into serious question whether FOX has operated its stations in the public interest, whether it has violated Commission policies and whether it has the requisite character to remain an FCC licensee.[11] FOX's actions were so egregious as to shock the conscience in that they sowed discord among the populace and led some to take drastic, illegal action.[12] An evidentiary hearing is needed for the Commission to

---

[11] *Policy Regarding Character Qualifications in Broadcast Licensing*, Report, Order and Policy Statement, 102 FCC 2d 1179, recon. granted in part, 1 FCC Rcd 421 (1986) ("*1986 Character Policy Statement*"), modified, 5 FCC Rcd 3252 (1990) ("*1990 Character Policy Statement*"), on reconsideration, 6 FCC Rcd 3448 (1991), modified in part, 7 FCC Rcd 6564 (1992).

[12] "The Commission acknowledges that there may be circumstances in which an applicant has engaged in nonbroadcast misconduct so egregious as to shock the conscience and evoke almost universal disapprobation…. Such misconduct might, of its own nature, constitute prima facie evidence that the applicant lacks the traits of reliability and/or truthfulness necessary to be a licensee, and might be a matter of Commission concern even prior to adjudication by another body." *1986 Character Policy Statement* at n. 60.

determine on its own the extent of FOX's willfulness in its misrepresentation of the news and whether FOX's misconduct disqualifies it as an FCC licensee.

### A. FOX Has Failed to Carry its Burden Under the Communications Act

A broadcast licensee's authorization to use broadcast spectrum in the public interest carries with it the obligation that the station serves its community. The basic duty of broadcast licensees to serve their communities is reflected in the license renewal provisions of the Communications Act.[13] Section 309(k)(1) of the Act provides that the Commission shall grant a license renewal application if it finds, with respect to the applying station, that during the preceding license term, it has served the public interest, convenience, and necessity and that there have been no serious violations by the licensee of the Communications Act or Commission rules, or other such violations, which, taken together, would constitute a pattern of abuse. Section 309(k)(3) provides that if the Commission determines, after notice and opportunity for hearing, that the licensee has failed to meet the standard of Section 309(k)(1) the Commission shall issue an order denying the license renewal application for the station. Section 312 of the Act provides for revocation of station licenses on specified grounds.[14]

Section 309(d)(1) states that a petition to deny "shall contain specific allegations of fact sufficient to show that… grant of the application would be prima facie inconsistent with… subsection (k) in the case of renewal of any broadcast station license." Section 309(e) states that if "in the case of any application to which subsection (a) of this section applies, a substantial and material question of fact is presented or the Commission for any reason is unable to make the

---

[13] 47 U.S.C. §309(k).

[14] 47 U.S.C. §312.

finding specified in such subsection, it shall formally designate the application for hearing on the ground or reasons then obtaining…"

Petitioners have made specific allegations of fact and are providing the court decision, the Padden Declaration, and other evidence of FOX's serious misconduct that raise substantial and material questions of fact as to the renewal application and FOX's character qualifications. Petitioners have satisfied the requirements for a petition to deny, and FOX cannot counter the findings and holdings of the court in *Dominion v. FOX*. The court found that none of FOX's statements about Dominion were true and held that the statements were defamatory per se. On the defamation element of actual malice (knowledge of falsity or reckless disregard for truth) the judge, after exhaustive recitation of the arguments of the parties and review of the evidence presented, denied summary judgment, finding that genuine issues of material fact existed and no party was entitled to judgment as a matter of law.[15] This is precisely why the Commission must designate this substantial and material question of fact for resolution in an evidentiary hearing. The extent of willful news distortion on the part of FOX executives and hosts most certainly bears heavily on ultimate Commission action on the application and the licensee.

The Commission can take official notice of what happened on January 6, 2021. The public harm wrought by FOX's misconduct is of a magnitude that cries out for an evidentiary hearing. The Act obligates the Commission to designate such a hearing in this matter, which must include the matter of FOX's character qualifications. Owning a broadcast station is more than a business - it is a public trust. It is crucial to our democracy that broadcasting remain a trusted source of news. A company that knowingly and repeatedly presents false news just to

[15] Dominion v. FOX, at p. 64

placate its core viewers undermines that sense of trust. The false news presented by Fox has done grievous damage to our country and its citizens.

**B. The Commission Must Designate a Hearing to Hold FOX Accountable**

The Communications Act and the Commission's rules and policies provide several bases for holding FOX accountable for its misdeeds. Any one of these warrants a hearing into the application and the character of the licensee.

FOX has not operated WTXF-TV and its other stations in a manner that served the public interest, convenience and necessity under Section 309(k)(1)(A) of the Act. The extensive documentation of FOX's false narratives in the court decision, the Padden Declaration and other evidence presented herein raise substantial and material questions of fact, precluding the required public interest finding under that subsection and mandating an evidentiary hearing. The hearing would probe the breadth and degree of approval/acquiescence within FOX of its sustained broadcasting of false narratives. A hearing on a renewal application that could result in revocation of a license may, and should, include the issue of FOX's character qualifications.[16]

The Commission's policy on the character required of broadcast licensees, n. 11 and 12, *supra*, encompasses and proscribes FOX's abuses of the public trust. The Commission made clear that it considers news distortion to be FCC related misconduct, and therefore it bears on the licensee's character qualifications.[17] Even if FOX's misconduct were nonbroadcast related, it

---

[16] *Entercom License, LLC Applications for Renewal of License for Station*, *KDND(FM), Sacramento, CA, Hearing Designation Order,* 31 FCC Rcd 12196, n.122, (2016) "…pursuant to Section 312 of the Act, 47 U.S.C. § 312, we could initiate a proceeding to consider the possible revocation of Entercom's license for the Station based on whether it has the requisite character to continue as a licensee,…"

[17] 102 FCC 2d 1212-13, "Having again considered our earlier, tentative conclusions in this area, the Commission remains convinced that the manner in which we currently treat such broadcaster misconduct as fraudulent contests, news staging and news distortion should not be modified at this time. Because we have retained these specific policies, engaging in such behavior will be

would still raise a character issue, since it was so egregious as to "shock the conscience." A more recent Media Bureau order reiterated the Commission's standard: "In some instances, there may be 'nonbroadcast misconduct so egregious as to shock the conscience and invoke almost universal disapprobation.' The review of such misconduct is not limited to the applicant itself. The Commission may consider non-FCC-related misconduct of an applicant's parent company if it finds that there is 'a close on going relationship between the parent and subsidiary[,]. . .the two have common principals, and if the common principals are actively involved in day-to-day operations of the broadcast subsidiary.'"[18] The Court Decision documents FOX senior management's involvement with news dissemination decisions. The Padden Declaration describes from his firsthand experience as a senior FOX executive Rupert Murdoch's ultimate decision-making authority with every aspect of FOX operations.[19] FOX's egregious misconduct thus extended throughout the corporate structure. The hearing must include the issue of FOX's character qualifications to hold FCC licenses.[20]

The Commission has a long-standing policy proscribing news distortion. It is succinctly set out on the FCC's website:

> **News Distortion.** …as public trustees, broadcast licensees may not intentionally distort the news. The FCC has stated that "rigging or slanting the news is a most heinous act against the public

---

considered as FCC related misconduct. We believe it necessary to continue to weigh such matters as the involvement of station management in the acts in question, and attempts to prevent recurrence of improper activity and other acts taken in mitigation of such acts, on a case-by-case basis."

[18] *Applications for Renewal of License of WUTB, Baltimore,* 28 FCC Rcd 6312, 6317 (2013).

[19] Rupert Murdoch is Chair of Fox Corporation, his son Lachlan Murdoch is Chief executive officer.

[20] To the extent the Commission requires an adjudication of nonbroadcast misconduct, such as a felony conviction, in order to commence proceedings based on character, the court's decision on motions for summary judgment in *Dominion v. FOX* satisfies that standard.

> interest." The Commission will investigate a station for news distortion if it receives documented evidence of rigging or slanting, such as testimony or other documentation, from individuals with direct personal knowledge that a licensee or its management engaged in the intentional falsification of the news. Of particular concern would be evidence of the direction to employees from station management to falsify the news…[21]

The D.C. Circuit opinion in a leading news distortion case reviews the Commission's policy and its history, which are consistent with the foregoing statement.[22]

Petitioners contend they have made a prima facie case that FOX has violated the Commission's news distortion policy. The Commission can take official notice of the court's decision in *Dominion v. FOX* finding that all of FOX's claims of election fraud were false, leaving only the extent of intentionality to be determined for a violation of the news distortion policy. The Padden Declaration completes the prima facie case in that he testifies from direct personal knowledge that FOX intentionally falsified its election narratives with the approval or acquiescence of top management. As such, policy and court precedent dictate that the Commission must investigate this news distortion claim in an evidentiary hearing, which is prerequisite to denial of the renewal application, revocation of licenses, and to a finding that FOX lacks the basic character qualifications to hold FCC licenses.[23]

---

[21] https://www.fcc.gov/media/radio/public-and-broadcasting#DISTORT

[22] *Serafyn v. FCC,* 149 F. 3d 1213, 1217 (D.C. Cir. 1998), e.g., quoting the Commission in *Hunger in America,* 20 FCC 2d 143, 150, 151 (1969). "In a footnote the Commission added:[W]e stress that the licensee must have a policy of requiring honesty of its news staff and must take reasonable precautions to see that news is fairly handled." Clearly, FOX had no such policy.

[23] Id, at 1225. The Court vacated and remanded the FCC's order denying the petitioner's news distortion claim, holding that the agency's failure to consider whether proffered evidence was probative of intent to distort was arbitrary and capricious.

### C. FOX Harmed the Public by Willfully Distorting Election News

Although the court decision reserved the defamation element of actual malice, or intentionality, for trial, there is ample evidence in the record that FOX willfully pursued a false and dangerous narrative to preserve its financial condition and its viewership. As the court found: "The evidence developed in this civil proceeding demonstrates that is [sic] CRYSTAL clear that none of the Statements relating to Dominion about the 2020 election are true." *Dominion v. FOX,* p. 43. The volume of these falsehoods, taken together with the contradictory private views and public pronouncements of FOX news hosts and other management exchanges, is a clarion call for Commission investigation in an evidentiary hearing.

In its brief in support of its Motion for Summary Judgment, filed January 22, 2022, at p. 6, Dominion separated FOX's false broadcasts into four categories: "Fox falsely claimed: (1) Dominion committed election fraud by rigging the 2020 Presidential Election. (2) Dominion's software and algorithms manipulated vote counts in the 2020 Presidential Election. (3) Dominion is owned by a company founded in Venezuela to rig elections for the dictator Hugo Chavez. (4) Dominion paid kickbacks to government officials who used its machines in the 2020 Presidential Election." The court decision thoroughly considered these statements and found them all to be false. As the Padden Declaration points out, when Sidney Powell was sued for false election statements, her counsel told the court that no reasonable person would take her fraud claims as fact. It is difficult to fathom how anyone at FOX might have done so, further supporting their willful complicity.

Other evidence relating to January 6 strongly suggests that FOX news hosts knew they were knowingly broadcasting falsehoods.[24] These false narratives were, in large part, repeated on WTXF-TV and other FOX affiliated television stations. Their on-air characterizations in the aftermath of January 6 are at odds with their private texts to the White House. As NBC News put it: "It was the start of Fox's re-framing Jan. 6 as "not that bad," though the hosts' texts undermine that belief."[25] The wealth of record evidence compels the Commission to initiate a hearing to determine if FOX distorted the news and if FOX has the requisite qualifications to remain an FCC licensee.

---

[24] As the Capitol riot unfolded on January 6, Fox News hosts knew exactly how bad things were."The president needs to tell people in the Capitol to go home. This is hurting all of us. He is destroying his legacy," Laura Ingraham texted to White House Chief of Staff Mark Meadows. "Please, get him on TV — [the riot is] destroying everything you accomplished," Brian Kilmeade wrote to Meadows. "Can he make a statement, ask people to leave the Capitol?" wrote Sean Hannity in yet another Meadows text.

The texts, revealed during a Monday hearing of the House January 6 Commission, were at odds with the hosts' on-air comments on the night of the attack. Ingraham suggested that "antifa supporters" may have been responsible for the violence. Kilmeade took a similar line: "I do not know Trump supporters that have ever demonstrated violence that I know of in a big situation." Hannity, for his part, asserted that "the majority of them were peaceful."

This is tangible proof that some of Fox's marquee personalities knowingly lied to their audience about January. The lying began basically immediately, in the direct aftermath of a national tragedy.
https://www.vox.com/policy-and-politics/2021/12/14/22834009/fox-texts-trump-meadows-ingraham-hannity-capitol-riot

See, also, https://www.nytimes.com/2021/12/13/business/media/fox-news-trump-jan-6-meadows.html

[25] https://www.nbcnews.com/think/opinion/fox-news-hosts-texts-mark-meadows-during-jan-6-exposes-ncna1286051

**CONCLUSION**

For the foregoing reasons, Petitioners seek an evidentiary hearing that they are confident will result in findings of fact warranting Commission denial of FOX's renewal application, revocation of its broadcast licenses, and a determination that FOX lacks the character qualifications required of licensees.

Respectfully Submitted,

/s/Arthur V. Belendiuk
Arthur V. Belendiuk

Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W. #301
Washington, D.C. 20016
abelendiuk@fccworld.com
(202) 363-4559

July 3, 2023

EXHIBIT 1

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>FOX NEWS NETWORK, LLC,<br><br>Defendant. | C.A. No.: N21C-03-257 EMD |
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>FOX CORPORATION,<br><br>Defendant. | C.A. No. N21C-11-082 EMD |

Submitted: March 22, 2023[1]
Decided: March 31, 2023

*Upon Defendant Fox News Network, LLC's Rule 56 Motion for Summary Judgment*
***DENIED***
*Upon Defendant Fox Corporation's Rule 56 Motion for Summary Judgment*
***DENIED***
*Upon Dominion's Motion for Summary Judgment on Liability of Fox News Network, LLC and Fox Corporation*
***GRANTED in part and DENIED in part***

[1] D.I. No. 1220.

Brian Farnan, Esquire, Michael J. Farnan, Esquire, Farnan LLP, Wilmington, Delaware; Rodney Smolla, Esquire (argued), South Royalton, Vermont; Thomas A. Clare, Esquire, Megan L. Meier, Esquire, Dustin A. Pusch, Esquire, Daniel P. Watkins, Esquire, Clare Locke LLP, Alexandria, Virginia; Justin A. Nelson, Esquire (argued), Jonathan J. Ross, Esquire, Elizabeth Hadaway, Esquire, Susman Godfrey LLP, Houston, Texas; Stephen Shackelford, Jr., Esquire (argued), Elisha Barron, Esquire, Mark-Hatch-Miller, Esquire, Zach Savage, Esquire, Susman Godfrey LLP, New York, New York; Davida Brook, Esquire, Jordan Rux, Esquire, Susman Godfrey LLP, Los Angeles, California; Stephen E. Morrissey, Esquire, Edgar Sargent, Esquire, Katherine Peaslee, Esquire, Susman Godfrey LLP, Seattle, Washington; *Attorneys for Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation.*

Blake Rohrbacher, Esquire, Katharine L. Mowery, Esquire, Angela Lam, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware; Paul Clement, Esquire, Erin E. Murphy, Esquire (argued), Clement & Murphy, PLLC, Alexandria, Virginia; Dan K. Webb, Esquire, Matthew R. Carter, Esquire, Winston & Strawn LLP, Chicago, Illinois; Scott A. Keller, Esquire, Lehotsky Keller LLP, Washington, D.C; Eric M. George, Esquire, Katherine A. Petti, Esquire, Ellis George Cipollone O'Brien Annaguey LLP, Los Angeles, California; *Attorneys for Defendant Fox News Network, LLC and Fox Corporation.*

John L. Reed, Esquire, Ronald N. Brown, III, Esquire, DLA Piper LLP (US), Wilmington, DE; *Counsel for Defendant Fox Corporation.*

**DAVIS, J.**

## I. INTRODUCTION

This is a civil action involving a defamation claim. Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation (collectively, "Dominion") allege that Defendant Fox News Network, LLC ("FNN") and Fox Corporation ("FC")[2] published false and defamatory statements of fact about Dominion. Dominion commenced its action against FNN on March 26, 2021. Dominion then commenced its action against FC and Fox Broadcasting Company, LLC on November 8, 2021. On June 21, 2022, the Court granted a motion to dismiss Fox Broadcasting Company, LLC. On December 22, 2022, the Court consolidated the two actions, with FNN and FC as the remaining defendants.

[2] At times, the Court may collectively refer to FNN and FC as "Fox."

Through its complaints (the "Complaints"), Dominion contends that: (i) FNN and FC intentionally provided a platform for guests that FNN's hosts knew would make false and defamatory statements of fact on the air; (ii) FNN and FC, through FNN's hosts, affirmed, endorsed, repeated, and agreed with those guests' statements; and (iii) FNN, with the participation of FC, republished those defamatory and false statements of fact on the air, FNN's websites, FNN's social media accounts, and FNN's other digital platforms and subscription services. Dominion seeks punitive and economic damages for defamation *per se*.

FNN and FC each filed a Motion for Summary Judgment on January 17, 2023.[3] In the FNN Motion, FNN argues that it is entitled to summary judgment because (i) the contested statements are not actionable under the First Amendment and the applicable New York doctrines, (ii) Dominion failed to show that the statements were made or published with actual malice, and (iii) Dominion did not suffer damages. In the FC Motion, FC argues that it is entitled to summary judgment because FC cannot be held vicariously liable for the actions of its subsidiary, and that FC executives were not directly involved in creating or publishing the contested statements. Dominion contests all arguments made in the Fox Motions.

On January 17, 2023, Dominion filed its Motion for Summary Judgment on Liability of Fox News Network, LLC and Fox Corporation (the "Dominion Motion"). Dominion argues that Fox published false and defamatory statements about Dominion's role in the 2020 United States Presidential Election (the "2020 Election"). Specifically, Dominion states FNN (and FC) "gave life to a manufactured storyline" that Dominion rigged the Election.[4] Dominion alleges that FNN "endorsed, repeated, and broadcast a series of verifiably false yet devastating lies about

[3] Respectively, Defendant Fox News Network, LLC's Rule 56 Motion for Summary Judgment (the "FNN Motion") and Defendant Fox Corporation's Rule 56 Motion for Summary Judgment (the "FC Motion").
[4] Compl. ¶ 1, Mar. 26, 2021 (D.I. No. 1).

Dominion."[5] Dominion claims that Fox made various defamatory statements about Dominion in twenty broadcasts, and categorizes the statements into four subsections: (1) "the fraud lie," (2) "the algorithm lie," (3) "the Venezuela lie," and (4) "the kickback lie."[6] Dominion argues that summary judgment on liability should be granted in its favor because any reasonable juror would find that Fox made (1) false statements; (2) of and concerning Dominion; (3) that were published; (4) that were defamatory *per se*; and (5) did so with actual malice. FNN and FC oppose the Dominion Motion.

The Court held a hearing (the "Hearing") on the FNN Motion, the FC Motion and the Dominion Motion on March 21, 2023 and March 22, 2023.[7] At the conclusion of the Hearing, the Court took the various motions under advisement. This is the Court's decision on the FNN Motion, the FC Motion and the Dominion Motion. For the reasons set forth below, the FNN Motion and the FC Motion are **DENIED**, and the Dominion Motion is **GRANTED**, in part, and **DENIED**, in part.

## II. BACKGROUND

### A. The Parties

Plaintiff US Dominion Inc. is a for-profit Delaware corporation. US Dominion Inc. maintains its principal place of business in Denver, Colorado.[8]

Plaintiff Dominion Voting Systems, Inc. is a for-profit Delaware Corporation with its principal place of business in Denver, Colorado.[9] Dominion Voting Systems, Inc. also operates

[5] *Id.* ¶ 2.
[6] Dominion MSJ, Appx. D, Jan. 17, 2023 (D.I. No. 951).
[7] D.I. No. 1220.
[8] Compl. ¶ 8.
[9] *Id.* ¶ 9.

an office in New York.[10] Dominion Voting Systems, Inc. is a wholly owned subsidiary of US Dominion, Inc.[11]

Plaintiff Dominion Voting Systems Corporation is a for-profit Ontario, Canada corporation with its principal place of business in Toronto, Ontario.[12] Dominion Voting Systems Corporation is a wholly owned subsidiary of US Dominion, Inc.[13]

Defendant FNN operates Fox News Channel, Fox Business Channel, Fox News Radio, and Fox News Digital which includes fox.com, foxnews.com, foxbusiness.com, Fox's social media accounts, and Fox's digital subscription services.[14] FNN is a limited liability company incorporated in Delaware with its principal place of business in New York.[15]

Defendant FC is a Delaware corporation with its headquarters in New York.[16] FC is a publicly traded news, sports, and entertainment company that owns numerous subsidiary businesses, including FOX News Media (the trade name for Fox News Network, which includes Fox News Channel, Fox Business Network, Fox Digital, Fox News Audio, and Fox Weather), as well as other brands.[17]

### B. Relevant Non-Parties

Maria Bartiromo is a Fox News and Fox Business personality who hosts *Mornings with Maria* on Fox Business and *Sunday Morning Futures with Maria Bartiromo* on Fox News.[18] Fox broadcasts *Mornings with Maria* and *Sunday Morning Futures* from New York.[19] FNN also

[10] *Id.*
[11] *Id.*
[12] *Id.* ¶ 10.
[13] *Id.*
[14] *Id.* ¶ 11; Def. FNN's Answer to Pls.' Compl. and Countercl. ¶ 11 ("FNN Answer to Compl."), Jan. 24, 2022 (D.I. 181).
[15] Compl. ¶ 11; FNN Answer to Compl. ¶ 11.
[16] Compl. ¶ 11; FNN Answer to Compl. ¶ 11.
[17] FC MSJ, Ex. G14, FC 2022 Form 10-K at 2.
[18] FNN Answer to Compl. ¶ 12.
[19] *Id.*

controls Ms. Bartiromo's social media accounts.[20] Ms. Bartiromo is FNN's agent.[21] At the time of the broadcasts at issue, Abby Grossberg was the Senior Booking Producer of *Sunday Morning Futures*.[22]

Tucker Carlson is a Fox News personality and hosts *Tucker Carlson Tonight*.[23] Mr. Carlson is FNN's agent.[24] FNN operates Mr. Carlson's Instagram account.[25] At the time of the broadcasts at issue, Justin Wells was the Senior Executive Producer; Alexander McCaskill was the Senior Producer; Kelly Earney was the Senior Booking Producer; Alex Pfeiffer was the Producer; and Eldad Yaron was the Booking Producer.[26]

Lou Dobbs is a Fox Business personality who hosted *Lou Dobbs Tonight* until February 2021, when FNN cancelled the show.[27] Until at least February 5, 2021, FNN operated Mr. Dobb's social media accounts.[28] At the time of the broadcasts at issue, Jeff Field was the Senior Producer; Anne McCarton was the Senior Booking Producer; Michael Biondi was an Associate Producer; John Fawcett was an Associate Producer; and Alexander Hooper was the Coordinating Producer.[29]

Sean Hannity is a Fox News personality and hosts *Hannity*.[30] Mr. Hannity is FNN's agent.[31] At the time of the broadcasts at issue, Robert Samuel was the Senior Producer.[32]

---

[20] Compl. ¶ 12; *id.*
[21] Compl. ¶ 12; FNN Answer to Compl. ¶ 12.
[22] Dominion MSJ, Appx. C.
[23] FNN Answer to Compl ¶ 13.
[24] Compl. ¶ 13; *id.*
[25] Compl. ¶ 13; FNN Answer to Compl. ¶ 13.
[26] Dominion MSJ, Appx. C.
[27] FNN Answer to Compl. ¶ 14.
[28] Compl. ¶ 14; *id.*
[29] Dominion MSJ, Appx. C.
[30] FNN Answer to Compl. ¶ 15.
[31] Compl. ¶ 15; *id.*
[32] Dominion MSJ, Appx. C.

Jeanine Pirro is a Fox News personality who hosts *Justice w/ Judge Jeanine*.[33] Ms. Pirro is FNN's agent.[34] FNN operates Ms. Pirro's social media accounts.[35] At the time of the broadcasts at issue, Jennifer Voit was the Senior Producer.[36]

Sidney Powell is an attorney that briefly pursued litigation challenging the 2020 Election.[37] Those cases were all summarily dismissed by December 9, 2020.[38] Fox repeatedly hosted Ms. Powell after the election. Ms. Powell was purportedly part of former President Trump's legal team, but on November 22, former President Trump stated she was "practicing law on her own."[39]

Rudolph Giuliani, the former mayor of New York City, is a YouTube podcast host, radio show host and attorney to former President Donald Trump and the Trump Campaign.[40] Fox repeatedly hosted Mr. Giuliani in the weeks following the election.

Mike Lindell is the founder and CEO of MyPillow, Inc, one of Fox's biggest sponsors.[41]

### C. FNN EXECUTIVES

Thomas Lowell is the Executive Vice President and Managing Editor of FNN and represents the corporation as its Superior Court Civil Rule 30(b)(6) representative.[42]

---

[33] FNN Answer to Compl. ¶ 16.
[34] Compl. ¶ 16; *id.*
[35] Compl. ¶ 16; FNN Answer to Compl. ¶ 16.
[36] Dominion MSJ, Appx. C.
[37] Compl. ¶ 17.
[38] *Id.*; *see also* Alison Durkee, *Sidney Powell's Voter Fraud Claims Fail in All Battleground States as Arizona and Wisconsin Judges Reject Cases*, FORBES (Dec. 9, 2020 7:19 PM), https://www.forbes.com/sites/alisondurkee/2020/12/09/sidney-powells-voter-fraud-claims-fail-for-third-time-as-arizona-judge-rejects-case/?sh=16050d691993.
[39] Kyle Cheney, *Trump Campaign Cuts Sidney Powell from President's Legal Team*, POLITICO (Nov. 22, 2020, 8:50 PM), https://www.politico.com/news/2020/11/22/trump-campaign-sidney-powell-legal-439357.
[40] Compl. ¶ 18.
[41] Dominion MSJ, Exs. 521-22.
[42] Dominion MSJ, Appx. C.

Suzanne Scott is the Chief Executive Officer of FNN.[43] As the CEO, Ms. Scott is responsible for the content of the shows and has the authority to direct shows to not host certain guests or broadcast certain content.[44]

Jay Wallace is the President and Executive Editor of FNN and Fox Business.[45] Mr. Wallace has "ultimate editorial control" over Fox News Channel and Fox Business Network.[46]

Ron Mitchell is the Vice President of Primetime Programming and Analytics of Fox News.[47] Mitchell has editorial oversight of *Tucker Carlson Tonight* and *Hannity*.[48] Mr. Mitchell has input in what topics and guests the shows cover.[49]

Alan Komissaroff was the Senior Vice President of News and Politics of FNN.[50]

Irena Briganti is the Senior Vice President of Corporate Communications of FNN.[51]

David Clark is the Senior Vice President of Weekend News and Programming of Fox News.[52] Mr. Clark "oversaw the bulk of programming on Saturdays and Sundays," which included *Sunday Morning Futures* and *Justice with Judge Jeanine*.[53] Mr. Clark testified that his role had "an editorial component" because he "work[s] with the show team on the stories the show will touch and broadcast."[54] This included consulting with the show teams about who would appear on shows, including Powell and Giuliani.[55]

---

[43] Dominion MSJ, Appx. C.
[44] Dominion MSJ, Ex. 106, Clark 23:7-24.
[45] Dominion MSJ, Appx. C.
[46] Dominion MSJ, Ex. 147, Wallace 17:22-18:6, 19:13-22:12, 36:2-13, 171:9-13.
[47] Dominion MSJ, Appx. C.
[48] Dominion MSJ, Ex. 129, Mitchell 9:24-10:2, 11:8-12:3, 19:3-10.
[49] *Id.* at 22:5-25:21, 28:24-29:6.
[50] Dominion MSJ, Appx. C.
[51] *Id.*
[52] *Id.*
[53] Dominion MSJ, Ex. 106, Clark 10:13-13:4.
[54] *Id.* at 13:1-4.
[55] *Id.* at 22:7-17, 25:19-27:6.

Lauren Petterson is the President of Fox Business News.[56] Ms. Petterson has decision-making authority.[57]

Gary Schreier is Ms. Petterson's second-in-command and was the executive between Ms. Petterson and the shows.[58]

Meade Cooper is the Executive Vice President for Primetime Programming of Fox News.[59] Ms. Cooper is responsible for the editorial oversight of the primetime shows, which included *Hannity*, *Justice with Judge Jeanine*, and *Tucker Carlson Tonight*.[60] Ms. Cooper oversees "guests that were booked, topics that were covered, things that were said."[61]

Gary Schreier is the Senior Vice President of Programming of Fox Business.[62]

Bill Sammon is the Senior Vice President and Managing Editor of the Washington Bureau of Fox News.[63]

Porter Berry is the Vice President and Editor-in-Chief of Fox News Digital.[64]

### D. FC Executives

Rupert Murdoch is the Chairman of FC.[65]

Lachlan Murdoch is the Chief Executive Officer of FC.[66]

---

[56] Dominion MSJ, Appx. C.
[57] *See, e.g.*, Dominion MSJ, Ex. 133, Petterson 273:4-274:18.
[58] *Id.* at 84:15-86:10.
[59] Dominion MSJ, Appx. C.
[60] *See* Dominion MSJ, Ex. 108, Cooper 31:10-33:1.
[61] *Id.* at 42:24-43:4. *See also* Dominion MSJ, Ex. 375 (Ms. Cooper's email to Ms. Scott stating: "Clearly, I reject the notion that the hosts don't have bosses exercising judgment."); Dominion MSJ, Ex. 376 (show request for permission to book Giuliani in November 2020); Dominion MSJ, Ex. 487 (Ms. Fazio emailing Ms. Cooper and Mr. Mitchell to flag that Mr. Hannity wanted Ms. Powell on his November 30 broadcast).
[62] Dominion MSJ, Appx. C.
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id.*

Raj Shah is the Senior Vice President of FC and the head of FC's Brand Protection Unit.[67]

Viet Dinh is the Chief Legal and Policy Officer for FC.[68]

### E. Electronic Voting Concerns

In the past, vulnerabilities of electronic voting machines have been highlighted by various people,[69] including computer science experts[70] as well as hackers.[71] Notably, Congress held a hearing in January 2020 where lawmakers posed questions and expressed concerns to the nation's three major voting machine manufacturers, including Dominion.[72] The media has also covered these concerns.[73] Though not known to Fox at the time of the broadcasts, discovery has

[67] *Id.*; Dominion MSJ, Ex.605, Shah 63:17-65:9.
[68] Dominion MSJ, Appx. C.
[69] *See* Fox MSJ, Ex. D1, Ben Wofford, *How to Hack an Election in 7 Minutes*, POLITICO (Aug. 5, 2016) (discussing vulnerabilities); Fox MSJ, Ex. D2, *How to Hack an Election*, THE N.Y. TIMES (Jan. 31, 2004) (discussing need for "more safeguards"); Fox MSJ, Ex. D3, *When Votes Disappear*, THE N.Y. TIMES (Nov. 24, 2006) (claiming the touch-screens on electronic voting machines in Florida's 13th Congressional District supposedly failed); Fox MSJ, Ex. E1, Piper 157:20-158:14; 161:2-21 (stating Ohio and California conducted reviews of electronic voting system vulnerabilities in 2007); Fox MSJ, Ex. D6, *CNN*, Democracy at Risk (Nov. 3, 2006) (*Lou Dobbs Tonight* CNN transcript discussing vulnerabilities in electronic voting machines); Fox MSJ, Ex. D7, Eric Geller, *Georgia Likely to Plow Ahead With Buying Insecure Voting Machines*, POLITICO (Mar. 28, 2019, 5:06 AM) (discussing vulnerabilities of barcode voting machines that do not have paper ballot backup).
[70] *See* Fox MSJ, Ex. F1 ¶ 18 (Nov. 28, 2022) (Wallach Report stating that in 2007, California reviewed Diebold, Hart InterCivic, and Sequoia voting machines and found that all three systems had viral vulnerabilities); Fox MSJ, Ex. H1 (email with embedded computer scientist article claiming that Dominion software does not allow ImageCast Evolution to print on your ballot, but fraudulent software could exploit this and cast additional votes on ballot) (*embedding* Andrew Appel, *Design Flaw in Dominion ImageCast Evolution Voting Machine*, FREEDOM TO TINKER (Oct. 16, 2018)).
[71] *See* Fox MSJ, Ex. D26, Taylor Telford, *Hackers Were Told to Break Into U.S. Voting Machines. They Didn't Have Much Trouble*, WASHINGTON POST (Aug. 19, 2019) (discussing hacker conference).
[72] *See* Fox MSJ, Ex. D10, Christina A. Cassidy, *Voting Machine Vendors Get Scrutiny at Congressional Hearing*, WASHINGTON POST (Jan. 9, 2020).
[73] *See, e.g.*, Fox MSJ, Ex. D11, Pat Beall, *Will Your Ballot Be Safe? Computer Experts Sound Warnings on America's Voting Machines* (Nov. 2, 2020, 6:07 PM); Fox MSJ, Ex. D12, Kate Brumback, *Another Showdown Set This Week Over Georgia Voting Machines* (Sept. 9, 2020, 7:13 AM); Fox MSJ, Ex. D13, Danny Hakim et al., *Anatomy of an Election 'Meltdown' in Georgia*, N.Y. TIMES (July 25, 2020 ); Fox MSJ, Ex. D13, Alan Judd, *In High-Stakes Election, Georgia's Voting System Vulnerable to Cyberattack*, ATLANTA J. CONSTITUTION (Oct. 23, 2020).

shown that Dominion machines in the past had technical issues unlike and unrelated to those alleged in this civil action.[74]

### F. Dominion

Dominion was founded in 2002 by Dominion CEO John Poulos as a voting technology company with the objective of providing "accurate, transparent, and accessible elections."[75] The machines were designed to generate an auditable paper record backup, allowing Dominion customers to "test, verify, and audit" election results.[76] Dominion's voting systems are certified under U.S. Election Assistance Commission ("EAC") standards, reviewed, and tested by independent testing laboratories accredited by the EAC, and are designed to be auditable.[77] Dominion machines served twenty-eight states and Puerto Rico during the election.[78] After the election, Dominion soon began to be blamed for the "stolen election."

### G. The 2020 Election

On November 7, 2020, President Biden was declared the President-elect. Due to COVID concerns, it was known that the 2020 election (the "Election") would involve numerous mail-in ballots – a fact that Fox employees were aware of prior to the Election.[79]

---

[74] *See* Fox MSJ, Ex. H2, Coomer Email (Oct. 30, 2020) ("[O]ur shit is just riddled with bugs[.]"); Fox MSJ, Ex. H24, Daulby Email to Dominion (Nov. 8, 2020) ("We are having issues observing the GA-7 race. There have been irregularities with machine counts and your techs are coming to reprogram the machines.").
[75] Compl. ¶ 20.
[76] Dominion MSJ, Ex. 183, Poulos Aff. ¶ 3.
[77] *Id.* ¶ 7; Dominion MSJ, Ex. 189 at FNN008_00026258.
[78] Dominion MSJ, Ex. 183, Poulos Aff. ¶ 7, Ex. 189 at FNN008_00026258.
[79] *See* Dominion MSJ, Ex. 146, Stirewalt 20:17-25 (testifying that election day votes would skew Republican, while mail-in and absentee votes would skew Democratic); Dominion MSJ, Ex. 106, Clark 142:11-21 (agreeing in deposition that the results would lead to a shift in the final vote tally); Dominion MSJ, Ex. 438 (Fox News Decision Team stating that key states will look red before shifting blue in the following days and noting "because some key states will not count many mail ballots until later this week, the presidential race call could come AFTER election night. . . . but it does NOT mean that there are problems with the integrity of the vote count.").

### H. Former President Trump and Team Contend Election Fraud

It was "well-known and understood by everybody in the business" that former President Trump would "claim that the only way that he could lose the election was by fraud, or that the only way that he would not prevail would be if it was stolen."[80] "He had laid that predicate down throughout the spring and into the summer."[81]

After President Biden was declared the winner, former President Trump claimed that the election was "far from over," and announced plans to pursue litigation.[82] A team lead by Mr. Giuliani and Ms. Powell then filed numerous lawsuits in multiple states alleging voting irregularities, several of which implicated Dominion.[83] This was "in part because several media outlets reported problems in jurisdictions that used Dominion machines in the immediate aftermath of the election . . . [such as] Antrim County, Michigan. . . . and Georgia."[84]

On November 7, 2020, the Trump Campaign and the Republican National Committee filed suit in Arizona, alleging that vote tabulation machines improperly rejected ballots and election officials failed to cure them.[85] On November 11, 2020, the Trump Campaign filed suit in Michigan, alleging, among other things, that Dominion tabulation machines were defective.[86]

---

[80] Dominion MSJ, Ex. 146, Stirewalt 16:2-15.
[81] *Id.* at 16:9-11.
[82] Fox MSJ, Ex. A2 at 2.
[83] FNN Ans. Br. at 18. There is no dispute that Mr. Giuliani represented former President Trump, however there is a dispute as to whether Ms. Powell represented him. *See* Catherine Lucey, *Sidney Powell Not Part of Trump's Legal Team, Says Rudy Giuliani*, WALL ST. J. (Nov. 23, 2020 10:50 AM), https://www.wsj.com/articles/giuliani-says-sidney-powell-not-part-of-trumps-legal-team-11606088107; *compare* Donald J. Trump (@realDonaldTrump), TWITTER (Nov. 14, 2020 10:11 PM), https://twitter.com/realDonaldTrump/status/1327811527123103746 ("I look forward to Mayor Giuliani spearheading the legal effort to defend OUR RIGHT to FREE and FAIR ELECTIONS! Rudy Giuliani, Joseph diGenova, Victoria Toensing, Sidney Powell, and Jenna Ellis, a truly great team, added to our other wonderful lawyers and representatives!"), *with* Kyle Cheney, *Trump Campaign Cuts Sidney Powell from President's Legal Team*, POLITICO (Nov. 22, 2020, 8:50 PM), https://www.politico.com/news/2020/11/22/trump-campaign-sidney-powell-legal-439357.
[84] FNN Ans. Br. at 18-19.
[85] *Id.* at 19.
[86] *Id.* at 19-20.

On November 13, 2020, Lin Wood filed suit in Georgia seeking to overturn the Election.[87] On November 25, 2020, Ms. Powell and Mr. Wood filed suits in Georgia and Michigan, alleging that Dominion machines manipulated votes.[88] On December 1, 2020, Ms. Powell filed suit in Wisconsin, raising similar allegations, and the next day she did the same in Arizona.[89]

Former President Trump continued to perpetuate the conspiracy that the Election was stolen.[90] On January 7, 2021, he stated that after his campaign's "pursu[it of] every legal avenue to contest the election results" it was time to make the presidential transition, but did not squarely declare that President Biden was legitimately elected.[91]

### I. FNN's Election Coverage and Rising Brand Concerns

FNN was the first news network to call Arizona for President Biden.[92] Following the call, FNN received "major heat" from viewers.[93]

Backlash came from others, too. Former President Trump's political advisor Jason Miller tweeted, "@FoxNews is a complete outlier in calling Arizona, and other media outlets should not follow suit. There are still 1M+ Election Day votes out there waiting to be counted – we pushed our people to vote on Election Day, but now Fox News is trying to invalidate their votes![94] Liz

---

[87] *Id.* at 19. Filed with this suit was a redacted affidavit from a person claiming to be Hugo Chavez's former security guard, alleging that Dominion's software is a descendent of Smartmatic, which the affiant claimed was used to rig Venezuelan elections. *See* Fox MSJ, Ex. C5, Aff.
[88] FNN Ans. Br. at 20-21. The Georgia complaint cites the affidavit of an alleged whistleblower who claimed "Smartmatic and Dominion were founded by foreign oligarchs and dictators" to ensure "Venezuelan dictator Hugo Chavez never lost another election." Fox MSJ, Ex. C8, Compl. ¶ 5. It also cites the sworn declaration of an alleged military intelligence expert, who claims foreign agents have exploited Dominion's vulnerabilities to manipulate the Election. *Id.* ¶ 111. The Michigan complaint contained similar allegations. *See* Fox MSJ, Ex. C9, Compl.
[89] FNN Ans. Br. at 21.
[90] FNN Ans. Br. at 22.
[91] Donald J. Trump (@realDonaldTrump), TWITTER (Jan. 7, 2021, 7:10 PM), https://t.co/csX07ZVWGe.
[92] Dominion MSJ at 18.
[93] Dominion MSJ, Ex. 195 (email to Mr. Wallace and Mr. Sammon, stating "I/we are taking major heat over the AZ call."); *see also* Dominion MSJ, Ex. 193 (Mr. Shah email to Lachlan Murdoch, Mr. Dinh, and Ms. Scott stating "[l]ots of conservative criticism of the AZ call"); Dominion MSJ, Ex. 194 (email from Mr. Shah showing Twitter Analytics spike in conservative criticism of Fox); Dominion MSJ, Ex. 126, Komissaroff 121:25-123:16 (agreeing there was viewer backlash after the AZ call).
[94] Jason Miller (@JasonMillerinDC), TWITTER (Nov. 3, 2020, 11:47 PM), https://twitter.com/JasonMillerinDC/status/1323849305917186050.

Harrington, the Republican National Committee spokesperson, tweeting, "Call GA, NC, and TX, you HACKS! Retract AZ!"[95] On November 12, 2020, after FNN aired a segment concluding that "nothing filed, any challenge so far, appears likely to overturn the results in any state," former President Trump began criticizing Fox and retweeting tweets encouraging Fox viewers to switch to other networks.[96]

As ratings for Newsmax (a FNN competitor) increased, Ms. Scott sent an email to Kyle Godwin, the Vice President of Programming of FNN, directing him to "keep an eye."[97] Mr. Wallace called the Newsmax surge "a bit troubling."[98] Mr. Wallace said it was an "alternate universe."[99] Additionally, Mr. Wallace stated that Fox was on "war footing."[100]

And on November 7, 2020, when Fox ultimately declared that President Biden had won the Election, its viewership went down.[101] Lachlan Murdoch testified that the drop was concerning.[102] On November 8, Rupert Murdoch emailed Ms. Scott, saying that Fox was "[g]etting creamed by CNN!"[103] In response, Ms. Scott said that she had a "[l]ong talk with KRM and Lachlan" and provided Rupert Murdoch with the main points of the talk, saying that he had "a lot . . . to think about this week."[104]

On November 9, 2020, Ms. Scott emailed Rupert Murdoch, noting the importance of "keep[ing] the audience who loves and trusts us…we need to make sure they know we aren't

---

[95] Liz Harrington (@realLizUSA), TWITTER (Nov. 3, 2020, 11:52 PM), https://twitter.com/realLizUSA/status/1323850485699432450.
[96] *See* Gerhard Peters and John T. Woolley, *Donald J. Trump, Tweets of November 12, 2020 Online*, THE AMERICAN PRESIDENCY PROJECT, UC SANTA BARBARA, https://www.presidency.ucsb.edu/documents/tweets-november-12-2020 (last visited Mar. 26, 2023).
[97] Dominion MSJ, Ex. 221; Dominion MSJ, Appx. C.
[98] Dominion MSJ, Ex. 223.
[99] *Id.*
[100] *Id.*
[101] Dominion MSJ at 23-24.
[102] Dominion MSJ, Ex. 130, L. Murdoch 145:20-147:24.
[103] Dominion MSJ, Ex. 611.
[104] *Id.*

abandoning them and still champions for them."[105] Rupert Murdoch responded, "Thanks. All very true. Lots of sane Fox viewers still believe in Trump."[106] Ms. Scott said "we will highlight our stars and plant flags letting the viewers know we hear them and respect them."[107] Ms. Scott emailed Irena Briganti, the Senior Executive Vice President of FNN, stating: "Irena - just spoke to Lachlan. Can you call Raj [Shah] and walk him through everything we are doing… I'm told he made a comment that maybe we [are] changing based on our coverage this weekend."[108]

From November 10, 2020 through November 12, 2020, FC held an in-person board meeting in Los Angeles, with all board members, including the former Speaker of the House Paul Ryan, and business unit leaders present.[109] Mr. Ryan noted that it was not implausible that the meeting included discussions regarding FNN's coverage of the election conspiracy theories, and that it was a "topic du jour" that former President Trump would seek to create his own TV network in direct competition to Fox.[110]

On November 11, 2020, Mr. Shah shared polling data from YouGov to Ms. Briganti, which showed that there were "clear declines in favorability, especially with primetime viewers" for the Fox brand, and followed up later that day, stating, "on our current course, if not already then by the weekend, opinions of Fox from our core viewers will be underwater" and "I've shared my thoughts with Lachlan and Viet, that bold, clear and decisive action is needed for us to begin to regain the trust that we're losing with our core audience."[111]

By November 12, 2020, FC's stock fell 6%, and financial analysts attributed the decline of FC's stock to former President Trump's support for Fox's competitors Newsmax and One

---

[105] Dominion MSJ, Ex. 619.
[106] *Id.*
[107] Dominion MSJ, Ex. 214 at FoxCorp00056541.
[108] Dominion MSJ, Ex. 647.
[109] Dominion MSJ, Ex. 650; Dominion MSJ, Ex. 620, Ryan 147:13-154:16.
[110] Dominion MSJ, Ex. 620, Ryan 156:25-157:6, 174:14-175:2.
[111] Dominion MSJ, Ex. 624 at FoxCorp00053724, FoxCorp00053725.

America News ("OAN").[112] By November 15, FNN's daytime and primetime audience had declined by 34% and 37%, respectively.[113] At the same time, Newsmax's daytime audience increased nearly six-fold, from 57,000 to 329,000, and its primetime audience tripled from 129,000 to 412,000.[114]

On November 13, 2020, Mr. Shah reported the drop in viewership and favorability of Fox News amongst its audience to Lachlan Murdoch, Mr. Dinh, and Ms. Scott, stating "strong conservative and viewer backlash to Fox that we are working to track and mitigate," "[b]oth Donald Trump and Newsmax have taken active roles in promoting attacks on Fox News," and "[p]ositive impressions of Fox News among our viewers dropped precipitously after Election Day to the lowest levels we've ever seen."[115] Lachlan Murdoch testified that the drop in Fox's rating would "keep him awake" at night, and that he paid close attention to Mr. Shah's Brand Protection reports.[116]

### J. Election Fraud Allegations and Dominion's "Role"

Amidst the backlash, allegations of election fraud, at first not specifically tied to Dominion, began to emerge. On November 5, 2020, Ms. Bartiromo posted allegations of vote "dump[s]" in favor of Biden on social media.[117] In response, fellow host Brett Baier stated "[t]he outcome may or may not change – but they're going to turn over a lot of stones in these states. If

---

[112] Matthew Fox, *Fox Corp. Tumbles 6% as Trump Retweets Support for Rival Networks Newsmax and OANN*, Business Insider (Nov. 12, 2020, 12:34 PM), https://markets.businessinsider.com/news/stocks/fox-stock-price-president-trump-retweets-support-for-rival-networks-2020-11-1029798530.

[113] Prior to the election, Fox's average daytime audience was around 2.439 million. After the election, the average fell to 1.6 million. Fox's prime time audience also fell by 37%, from 5.346 million to 3.463 million during the same timeframe. *See* Fox News Channel, USTVDB (last visited Mar. 27, 2023), https://ustvdb.com/networks/fox-news/.

[114] *See* Compl. ¶ 56.

[115] Dominion MSJ, Ex. 625.

[116] Dominion MSJ, Ex. 130, L. Murdoch 147:19-24.

[117] Dominion MSJ, Ex. 204. *See also* Maria Bartiromo (@MariaBartiromo), Twitter (Nov. 5, 2020, 11:20 AM) https://twitter.com/MariaBartiromo/status/1324386054254809091?lang=en.

there's any merit to these stories about more votes than registered voters, or votes with no signatures, etc-- then what??? . . . NO evidence of fraud. None."[118]

On November 6, 2020, Ms. Powell appeared on *Lou Dobbs Tonight* and brought up a conspiracy theory called "Hammer and Scorecard," without tying the theory to Dominion.[119]

On November 7, 2020, Ms. Pirro's show scheduled that day was cancelled because executives were worried about her discussing conspiracy theories.[120]

FNN's coverage began to focus on Dominion specifically. Dominion contests twenty statements (the "Statements"), arguing that the Statements constitute actionable defamation *per se*. Dominion divides the Statements at issue into four categories: (1) "the fraud lie," (2) "the algorithm lie," (3) "the Venezuela lie," and (4) "the kickback lie." The Statements are attached to this decision.[121]

### K. FACT-CHECKING

#### *1. Brainroom*

FNN has a centralized research department called the "Brainroom" that conducts internal fact-checking.[122] On November 13, 2020, the Brainroom completed a fact-check regarding the Dominion allegations,[123] which stated:

- There was "no evidence of widespread fraud."[124]
- "Claims about Dominion switching or deleting votes are 100% false" and claims that votes for Former President Trump were deleted are "mathematically impossible."[125]

---

[118] Dominion MSJ, Ex. 176; *see also* Dominion MSJ Ex. 97, Baier 39:3-41:1 (agreeing in deposition that at the time of writing the text, he did not believe there was evidence of fraud).
[119] Dominion MSJ, Ex. 206 at FNN018_02260592, FNN018_02260599.
[120] *See* Dominion MSJ, Ex. 293.
[121] *See* Appx.
[122] Dominion MSJ, Ex. 101, Bruster 147:3-7; *see also* Dominion MSJ, Ex. 106, Clark 127:6-9, 270:9-12; Dominion MSJ, Ex. 126, Komissaroff 48:12-13.
[123] Dominion MSJ, Ex. 168.
[124] *Id.* at FNN015_00132223
[125] *Id.* at FNN015_00132225.

- "Dominion has no company ownership relationships with any member of the Pelosi family, the Feinstein family, or the Clinton Global Initiative."[126]
- "The U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency (CISA) has debunked viral claims about the existence of a secret CIA program for vote fraud called Hammer and Scorecard."[127]
- "No credible reports or evidence of any software issues exist."[128]
- "Claims about software updates being done the night before Election Day are 100% false."[129]
- "There are no issues with the use of Sharpie pens related to hand-marked paper ballots."[130]
- "All U.S. voting systems must provide assurance that they work accurately and reliably as intended under federal U.S. Election Assistance Commission and state certification and testing requirements."[131]

On November 21, 2020, Mr. Komissaroff asked the Brainroom to "get . . . the facts about the Dominion situation" and "separate facts from fiction."[132] The Brainroom forwarded Mr. Komissaroff the November 13 fact-check it had previously completed.[133] Mr. Komissaroff testified that he put in the request after being asked to do so by Mr. Lowell and either Mr. Wallace or Ms. Scott.[134] Mr. Clark confirmed that if the Brainroom concluded that the allegations against Dominion were false, the allegations should not have been aired.[135]

***2. Dominion Outreach***

Beginning on November 12, 2020, Dominion sent Fox over 3600 "Setting The Record Straight" ("STRS") emails to a number of FNN's reporters and producers, including those who oversaw and managed content for *Lou Dobs Tonight*, *Sunday Morning Futures*, *Mornings with*

---

126 *Id.*
127 *Id.*
128 *Id.*
129 *Id.* at FNN015_00132226.
130 *Id.*
131 *Id.*
132 Dominion MSJ, Ex. 126, Komissaroff 44:7-49:1.
133 *See* Dominion MSJ, Ex. 159; *id.* at 49:7-23.
134 Dominion MSJ, Ex. 126, Komissaroff 44:7-49:1.
135 *See* Dominion MSJ, Ex. 106, Clark 272-17:23; *see also* Dominion MSJ, Ex. 133, Petterson 172:10-13 (agreeing that if Brainroom concludes something is false, it should not air).

*Maria*, *Justice with Judge Pirro*, *Hannity*, and *Tucker Carlson Tonight*.[136] The STRS emails provided facts and links debunking Fox's statements.[137] Among the cited references in the email was the CISA "#Protect2020 Rumor vs. Reality" public advisory.[138] Mr. Lowell testified that the STRS emails sent on November 13 and November 14 were widely circulated throughout FNN.[139]

On November 16, 2020, Tony Fratto, Dominion's communications consultant, reached out to Ms. Scott and Mr. Wallace personally, alerting them that the allegations were "verifiably wrong information."[140] Mr. Fratto offered an off-the-record briefing to walk through Dominion's business and concerns.[141] Mr. Wallace and Mr. Fratto spoke on the phone, but Mr. Wallace could not recall the specifics of the conversation beyond that they discussed Dominion.[142] Mr. Fratto testified that he advised Mr. Wallace that some of the Fox guests were spreading lies and tried to appeal to Fox's "journalistic ethics."[143] After that evening's broadcast of *Lou Dobbs Tonight*, Mr. Fratto emailed Mr. Wallace, writing "[m]ore fucking out and lies. Honestly. He is a disgrace."[144] Mr. Wallace forwarded the email to Ms. Petterson and Ms. Cooper, stating "I spoke with him earlier to calm him, but it doesn't look like it worked. Think we need to keep an eye out here on this storyline – or at least make sure we include their response."[145] On November 24, Mr. Fratto emailed Mr. Wallace again.[146]

---

[136] Dominion MSJ, Ex. 128 Lowell 388:8-391:19, 412:23-413:24, 420:5-13, 541:13-544:21; Dominion MSJ, Ex. 331; Dominion MSJ, Ex. 338; Dominion MSJ, Ex. 339; Dominion MSJ, Ex. 340; Dominion MSJ, Exs. 343-49.
[137] Dominion MSJ at 93-94.
[138] *Id.* at 95.
[139] Dominion MSJ, Ex. 128, Lowell 391:17-19, 420:10-13, 430:17-431:22.
[140] Dominion MSJ, Ex. 235 at FNN008_00022197.
[141] *Id.*
[142] *See* Dominion MSJ, Ex. 147, Wallace 209:17-212:5.
[143] Dominion MSJ, Ex. 119, Fratto 231:10-234:21.
[144] Dominion MSJ, Ex. 236 at FNN008_00022195.
[145] *Id.*
[146] Dominion MSJ, Ex. 238.

On November 20, 2020, Dominion sent Fox's General Counsel a six-page letter, with citations, setting straight the allegations.[147]

***3. State Audits***

State audits and recounts were conducted for contested areas. In Maricopa County, Arizona (the only county in the state that used Dominion machines[148]), the Maricopa Board of Supervisors Chairman, Bill Gates, and the County Recorder, Stephen Richer, confirmed they had not seen evidence of vote manipulation and did not believe vote manipulation had occurred.[149] Maricopa County completed a hand recount audit that confirmed the election results,[150] which Mr. Gates stated had yielded a one-hundred-percent match in a public letter.[151] Additionally, two accredited independent testing laboratories each completed an audit, neither of which showed evidence of manipulation.[152]

In Georgia, the Secretary of State commissioned an independent testing laboratory to complete a forensic audit of a sampling of Dominion's machines.[153] On November 17, 2020, the audit concluded there was no evidence of tampering.[154] The Secretary of State announced on November 19, 2020 that Georgia's statewide hand recount "confirmed the original result of the election."[155] Upon request of the Trump campaign, Georgia conducted another recount that again confirmed the election results.[156]

[147] Dominion MSJ, Ex. 237.
[148] Dominion MSJ, Ex. 183, Poulos Aff. ¶ 10.
[149] Dominion MSJ, Ex. 120, Gates 35:5-36:12; Dominion MSJ, Ex. 139, Richer 22:14-23:11.
[150] Dominion MSJ, Ex. 209 at DOM_0071808361.
[151] Dominion MSJ, Ex. 210
[152] *See* Dominion MSJ, Ex. 300; Dominion MSJ, Ex. 301; Dominion MSJ, Ex. 136, Richer 53:14-56:23.
[153] Dominion MSJ, Ex. 303-A; Dominion MSJ, Ex. 222, Raffensperger Aff. ¶ 4.
[154] Dominion MSJ, Ex. 303-A; Dominion MSJ, Ex. 222, Raffensperger Aff. ¶ 4.
[155] Dominion MSJ, Ex. 303-D; *see also* Dominion MSJ, Ex. 303-B.
[156] Dominion MSJ, Ex. 303-E.

Michigan conducted post-election audits that verified the election results.[157] Michigan's Senate Oversight Committee then conducted its own investigation and came to the same conclusion.[158]

The Secretary of the Commonwealth of Pennsylvania saw no evidence suggesting Dominion stole the election.[159] This is supported by the statutorily mandated statistical sampling audit and subsequent risk-limiting audits, which confirmed the vote count was accurate on November 24, 2020.[160]

***4. Other Public Sources***

In a public advisory dated November 4, 2020, CISA announced that every state had voting safeguards to ensure vote counting was accurate.[161] The same day, the National Association of State Election Directors and the National Association of Secretaries of State issued a statement ("NASED/NASS Joint Statement") that "more than 100 million votes were safely and securely cast."[162] On November 12, 2020, a joint statement from CISA and others ("CISA Statement") was released, calling the election "the most secure in American history" and stating "**[t]here is no evidence that an voting system deleted or lost votes, changed votes, or was in any way compromised**."[163] On November 16, 2020, fifty-nine experts jointly announced that there was "no credible evidence of computer fraud in the 2020 election outcome" ("Experts' Joint Statement").[164] On December 1, 2020, former U.S. Attorney General William Barr

---

[157] *See* Dominion MSJ, Ex. 306-B.
[158] Dominion MSJ, Ex. 306-C.
[159] Dominion MSJ, Ex. 100, Boockvar 45:21-46:14, 50:7-16, 178:13-17.
[160] *See id.* at 46:19-49:5; 25 Pa. Stat. § 3031.17 (requiring counties to conduct a "statistical recount of a random sample of ballots"); Dominion MSJ, Ex. 354.
[161] *See* Dominion MSJ, Ex. 556-A; Dominion MSJ, Ex. 556-B.
[162] Dominion MSJ, Ex. 311.
[163] Dominion MSJ, Ex. 190 (emphasis in original).
[164] Dominion MSJ, Ex. 315.

announced that the Justice Department had not uncovered evidence of widespread voter fraud and had not seen anything that would change the outcome of the election.[165]

### L. Fox's Internal Meetings

From November 2020 to March 2021, Fox held editorial meetings twice a day, one in the morning and one in the afternoon.[166] Mr. Lowell testified that "senior editorial leadership" attended these meetings.[167] According to an interrogatory response, the "senior editorial leadership" present, at different times, included: Mr. Berry, Ms. Cooper, Mr. Komissaroff, Mr. Lowell, Ms. Petterson, Ms. Rosenberg, Mr. Sammon, Mr. Schrier, Ms. Scott, and Mr. Wallace, and at times, Lachlan and Rupert Murdoch.[168]

At the morning meetings, the group would provide updates on programming and interviews set to take place that day, and in the afternoons they would discuss breaking news updates and coverage for the next day.[169] At her deposition, Ms. Cooper stated that the executive team discusses the need to cover stories factually and responsibly.[170] Mr. Clark testified that lower-level executives in charge of the shows would sometimes receive editorial guidance.[171]

Each show additionally held its own meetings. For *Lou Dobbs Tonight*, Mr. Dobbs, Mr. Field, Mr. Hopper and another met or held calls on show days.[172] For *Hannity Show*, Mr. Hannity, Ms. Fazio, Mr. Samuel, and sometimes Mr. Berry met or held calls on show days. For *Tucker Carlson Tonight*, Mr. Wells, Mr. McCaskill and others met or held calls on show days.[173]

---

[165] Dominion MSJ, Ex. 316.
[166] Dominion MSJ, Ex. 127, Lowell 215:20-216:16.
[167] *Id.*
[168] Dominion MSJ, Ex. 374, No. 83.
[169] Dominion MSJ, Ex. 108, Cooper 56:1-57:23; Dominion MSJ, Ex. 126, Komissaroff 26:12-14; Dominion MSJ, Ex. 127, Lowell 202:10-203:7.
[170] *See* Dominion MSJ, Ex. 108, Cooper 67:14-68:2; *see also* Dominion MSJ, Ex. 126, Komissaroff 30:6-11.
[171] *See* Dominion MSJ, Ex. 106, Clark 85:13-15.
[172] Dominion MSJ, Ex. 374, No. 83.
[173] *Id.*

For *Sunday Morning Futures*, Ms. Grossberg, Mr. Clark, Ms. Bartiromo, and possibly others met or spoke on the phone.[174] For *Justice w/ Judge Jeanine*, Ms. Pirro, Mr. Andrews, and Ms. Voit held non-regularly occurring conference calls.[175]

### M. Fox's Internal Dialogue About the Allegations

As the theories about Dominion circulated, Fox employees became guarded. After Ms. Bartiromo's "vote dumping" tweet, Mr. Baier told Mr. Wallace that "none of [it] is true as far as we can tell."[176] The next day, after Ms. Powell discussed Hammer and Scorecard on *Lou Dobbs Tonight*, Rupert Murdoch emailed Ms. Scott that "we should watch Sean especially" and "[i]f Biden holds Az, Nevada, Georgia, and Pa very hard to credibly cry foul everywhere."[177]

On November 12, 2020, Tommy Firth, the Executive Producer of *The Ingraham Angle*, texted Mr. Mitchell that "[t]his dominion shit is going to give me a fucking aneurysm – as many times as I've told Laura it's bs, she sees shit posters and trump tweeting about it – she wanted to invite an 8chan poster on about this."[178] Mr. Mitchell said it was "the Bill Gates/microchip angle to voter fraud" and later checked in, asking Firth how it was going with the "kooks?"[179] Mr. Firth said "I beat her back on dominion saying we would have to tell the truth and this make the president look like an idiot and expose you and maybe fox to his continued wrath."[180]

The same day, after a FNN reporter fact-checked former President Trump's tweet about Dominion, Mr. Carlson sent the tweet to Mr. Hannity and said "Please get her fired. . . . It's measurably hurting the company. The stock price is down."[181]

---

[174] *Id.*
[175] *Id.*
[176] Dominion MSJ, Ex. 418 at FNN071_04502985.
[177] Dominion MSJ, Ex. 151.
[178] Dominion MSJ, Ex. 229.
[179] *Id.*
[180] *Id.*
[181] Dominion MSJ, Ex. 230 at FNN035_03890511.

On November 14, 2020, during FNN's coverage of a rally supporting former President Trump, Lachlan Murdoch told Ms. Scott that "News guys have to be careful how they cover this rally. So far some of the side comments are slightly anti, and they shouldn't be. The narrative should be this is a huge celebration of the president."[182] Ms. Scott responded: "Yes thanks."[183] On the same day, when the CEO of News Corporation, Robert Thomson, sent Rupert Murdoch an article about election fraud, Rupert Murdoch responded, "[b]ut where's the evidence?"[184]

On November 14, 2020, Mr. Clark received a Brainroom fact-check of Ms. Pirro's opening debunking election fraud allegations.[185]

In an email sent November 16, 2020, Rupert Murdoch said to Ms. Scott: "Trump will concede eventually and we should concentrate on Georgia, helping any way we can. We don't want to antagonize Trump further, but Giuliani taken with a large grain of salt. Everything at stake here."[186]

The same day, Mr. Carlson received a text from a redacted source that read: "From WH … the claims about dominion have been debunked."[187] Mr. Carlson said, "[f]or sure? I asked Sidney for evidence. She never responded."[188] The person responded: "She's a psychopath. She's getting Trump all spun up and has zero evidence. Same with Rudy. NSC cyber did a thorough analysis. There's nothing to it."[189] Mr. Carlson called her a "[c]razy person."[190] Mr. Carlson said that he was asking Ms. Powell for evidence and told her: "You've convinced [Fox viewers] that Trump will win. If you don't have conclusive evidence of fraud at that scale, it's a

[182] Dominion MSJ, Ex. 627.
[183] *Id.*
[184] Dominion MSJ, Ex. 630.
[185] *See* Ex. 461; Dominion MSJ, Ex. 106, Clark 273:19-279:20, 281:13-282:23.
[186] Dominion MSJ, Ex. 239.
[187] Dominion MSJ, Ex. 240 at FNN035_03891178.
[188] *Id.*
[189] *Id.*
[190] *Id.*

cruel and reckless thing to keep saying."[191] The redacted source texted back that Ms. Powell "won't respond because she has no evidence."[192] Mr. Carlson replied "[t]hen it's totally shocking to me that she keeps saying that. Seriously."[193] On November 19, 2020, Mr. Carlson texted Ms. Ingraham, another FNN host, that "Sidney Powell is lying by the way. I caught her. It's insane."[194] Ms. Ingraham responded: "Sidney is a complete nut. No one will work with her. Ditto with Rudy."[195]

On November 19, 2020, Rupert Murdoch emailed Ms. Scott, calling Mr. Giuliani's press conference "[t]errible stuff damaging everybody" and said it was "[p]robably hurting us too."[196] The same day, Rupert Murdoch emailed News Corporation CEO Robert Thomson, calling the press conference "[r]eally crazy stuff" and "damaging."[197]

On November 20, 2020, Mr. Schreier received notice from the Brainroom that Ms. Bartiromo's reporting on election fraud allegations was unreliable and based on sources FNN "would never use as a primary."[198]

On November 20, 2020 and 21, 2020, Mr. Carlson said he was not going to address Ms. Powell's Venezuelan affidavit and called it "ludicrous."[199]

On November 22, 2020, Mr. Shah sent a text to Mr. Pfeiffer that said "so many people openly denying the obvious that Powell is clearly full of it."[200] Mr. Pfeiffer called Ms. Powell "a fucking nutcase."[201] On November 23, Mr. Shah emailed Lachlan Murdoch, Mr. Dinh, and Ms.

[191] Dominion MSJ, Ex. 240 at FNN035_03891179.
[192] *Id.*
[193] *Id.*
[194] Dominion MSJ, Ex. 241 at FNN035_03891091.
[195] *Id.*
[196] Dominion MSJ, Ex. 181.
[197] Dominion MSJ, Ex. 156.
[198] Dominion MSJ, Ex. 409 at FNN011_00104922.
[199] Dominion MSJ, Ex. 171 at FNN035_03890767.
[200] Dominion MSJ, Ex. 271 at FoxCorp00056388.
[201] *Id.*

Scott about coordinating an effort to generate Trump pushback on "Powell's outlandish voter fraud claims."[202] The same day, the former President of ABC News forwarded an article to Rupert Murdoch titled "Fox News Identity Crisis: Indulge Trump's Election Conspiracy or Reject It …and Watch Its Audience Flee?"[203] Rupert Murdoch responded that "generally, we are navigating it pretty well,"[204] which he clarified in his deposition he meant that Fox was "reporting it well" and "straddle[ing] the issue."[205]

In December 2020, Mr. Clark told Ms. Bartiromo that she could no longer book Ms. Powell or Mr. Giuliani.[206]

On December 6, 2020, Mr. Ryan texted Rupert and Lachlan Murdoch, writing: "we are entering a truly bizarre phase of this where [former President Trump] has actually convinced himself of this farce and will do more bizarre things to delegitimize the election. I see this as a key inflection point for Fox, where the right thing and the smart business thing to do line up nicely."[207]

On December 7, 2020, Rupert Murdoch wrote to Lachlan Murdoch, stating, "[c]all me later re Trump and Paul. Trump on Saturday sounded really crazy."[208] On the same day, Rupert Murdoch told Ms. Scott that due to the increasingly questionable rhetoric from former President Trump, including asking the Georgia Governor to help overturn the election, it was "all making it harder to straddle the issue! We should talk through this. Very difficult and we should include Lachlan later."[209]

---

[202] Dominion MSJ, Ex. 163.
[203] Dominion MSJ, Ex. 636.
[204] Dominion MSJ, Ex. 600, R. Murdoch 139:2-4.
[205] *Id.* at 139:14-19; Dominion MSJ, Ex. 639; Dominion MSJ, Ex. 652.
[206] Dominion MSJ, Ex. 106, Clark 34:6-35:5; Dominion MSJ, Ex. 379.
[207] Dominion MSJ, Ex. 620, Ryan 266:25- 267:24, 269:6-23; *see id.* 261:24-262:4.
[208] Dominion MSJ, Ex. 660.
[209] Dominion MSJ, Ex.639; Dominion MSJ, Ex.652.

On December 24, 2020, Mr. Carlson texted Jenna Ellis, one of former President Trump's lawyers, that "[i]t's hard to overstate the damage having Sidney Powell on stage did to the cause of fair elections. That was really reckless and stupid."[210]

On January 5, 2021, Rupert Murdoch emailed Ms. Scott that it was suggested the "prime time three should independently or together say something like 'the election is over and Joe Biden won.'"[211] Ms. Scott forwarded it to Ms. Cooper and said "I told Rupert privately they are all there – we need to be careful about using the shows and pissing off the viewers but they know how to navigate."[212]

On January 6, 2021, former President Trump called into *Lou Dobbs Tonight* while the U.S. Capital was under attack.[213] Ms. Petterson notified Ms. Scott, Ms. Wallace, and Ms. Briganti that former President Trump was not permitted to appear on the show that day.[214] Rupert Murdoch told Ms. Scott not to have any more former President Trump appearances on FNN.[215]

On January 11, 2021, FC board member Anne Dias told the Murdochs that "considering how important Fox News has been as a megaphone for Donald Trump, directly or indirectly, I believe the time has come for Fox News or for you, Lachlan, to take a stance. It is an existential moment for the nation and for Fox News as a brand."[216] When Lachlan Murdoch emailed Rupert Murdoch to discuss Anne Dias's email, Rupert Murdoch responded: "Just tell her we have been talking internally and [] intensely along these lines, and Fox News, which called the

---

[210] Dominion MSJ, Ex. 172.
[211] Dominion MSJ, Ex. 277.
[212] *Id.*
[213] Dominion MSJ, Ex. 665.
[214] *Id.*
[215] Dominion MSJ, Ex. 600, R. Murdoch 260:21-25.
[216] *Id.* at 273:1-11.

election correctly, is pivoting as fast as possible. We have to lead our viewers which is [] not as easy as it might seem."[217]

Other FNN hosts (who did not make any of the statements at issue) also privately doubted the allegations. On December 1, 2020, Bret Baier, the host of *Special Report with Bret Baier*, sent an email saying that the allegations "[c]an't be remotely true."[218] Lucas Tomlinson, another Fox reporter, responded to the email that day, calling the allegations "100% not true" and "complete bullshit."[219] On December 16, 2020, Dana Perino, a host on *Fox and Friends*, called the allegations "nonsense" and said she was losing sleep "churning on the lies that are being told on our network."[220]

### N. Procedural Posture

On March 26, 2021, Dominion filed its Complaint against FNN, alleging defamation *per se*.[221] On May 18, 2021, FNN filed a Motion to Dismiss for Failure to State a Claim.[222] Following briefing, the Court denied the motion on December 16, 2021 ("*Dominion I*").[223] On February 14, 2022, Dominion filed its Answer and Defenses to FNN's Counterclaim.[224] FNN denies the allegations and lists eight defenses.[225]

---

[217] *Id.* at 274:19-275:15; Dominion MSJ, Ex. 620, Ryan 328:3-13.
[218] Dominion MSJ, Ex. 367 at FNN018_02492482.
[219] *Id.* at FNN_01802492481.
[220] Dominion MSJ, Ex. 371 at FNN021_03851306.
[221] Compl.
[222] Defs.' Mot. to Dismiss, May 18, 2021 (D.I. No. 45).
[223] Op. Den. Def.'s Mot. to Dismiss ("*Dominion I*"), Dec. 16, 2022 (D.I. No. 142).
[224] *See* Countercl. Answer.
[225] *Id.* at 4–6. Dominion asserts that (1) FNN fails to state a claim upon which relief can be granted; (2) FNN is not entitled to costs and attorney's fees because Dominion's lawsuit has a substantial basis in fat and law; (3) FNN is not entitled to damages because it cannot demonstrate Dominion's suit was commenced or continued for the purpose of harassing or inhibiting speech; (4) FNN's counterclaim is barred because its statements were not constitutionally protected speech; (5) FNN is barred and/or limited by its own bad faith or unclean hands; (6) FNN is barred because its Counterclaim violates Dominion's rights under the First and Seventh Amendment; (7) FNN's Counterclaim is frivolous under New York Civil Practice Law and Rules § 8303-a; and (8) FNN's Counterclaim is without merit and without substantial basis in fact and law within the meaning of New York Civil Rights Law § 70-a. *Id.*

Dominion filed its Complaint against FC and Fox Broadcasting Company LLC, on November 8, 2021, alleging defamation *per se*.[226] On December 30, 2021, FC and Fox Broadcasting Company LLC collectively filed a Motion to Dismiss under Superior Court Civil Rule 12(b)(6).[227] Following briefing, the Court granted the motion as to Fox Broadcasting Company LLC, and denied the motion as to FC ("*Dominion II*").[228] On July 6, 2022, FC filed its Answer, Defenses and Counterclaim.[229]

On April 27, 2021, the Court entered an order holding that New York tort law applied.[230]

On December 1, 2022, the defendants filed a Joint Motion to Consolidate.[231] The Court held an omnibus hearing on the motion (and other matters) on December 21, 2022.[232] The Court granted the motion on December 22, 2022.[233]

The Court then issued an Order Setting Briefing on Summary Judgment Motions.[234] Pursuant to that Order, Dominion filed the Dominion Motion on January 17, 2023.[235] On February 8, 2023, FC and FNN each filed an Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment[236] On February 20, 2023, Dominion filed its Reply Brief in

[226] FC Compl., Nov. 8, 2021 (FC D.I. No. 1).
[227] Defs.' Mot. to Dismiss, Dec. 30, 2021 (FC D.I. No. 14).
[228] Op. Upon Defs.' Mot. to Dismiss, June 21, 2022 (FC D.I. No. 40).
[229] Def.'s Ans., Defenses and Counterclaim, July 6, 2022 (D.I. No. 43).
[230] D.I. No. 40. The Court made comments at the March 21-22 hearing that Delaware law may control on punitive damages. After a review of the caselaw, the Court agrees with the parties that New York law applies to the issue of punitive damages. *See, e.g., Jackson v. Bridgestone Americas Tire Operations, LLC*, 2015 WL 13697682, at *2-6 (Del. Super. Nov. 24, 2015)(engaging in a Delaware choice of law analysis to determine whether Michigan or Delaware law should apply).
[231] Mot. to Consolidate, Dec. 1, 2022 (D.I. No. 859).
[232] Omnibus Hearing, Dec. 21, 2022 (D.I. No. 886).
[233] Order Consolidating for Trial C.A. No. N21C-03-257 EMD and C.A. No. N21C-11-082 EMD, Dec. 22, 2022 (D.I. No. 890).
[234] Order Setting Briefing on Summ. J. Mots., Jan. 6, 2023 (D.I. No. 920).
[235] Dominion's Mot. for Summ. J. on Liability of FNN and FC, Jan. 17, 2023 (D.I. No. 951).
[236] Def. FC's Ans. Br. in Opp'n. to Pls.' Mot. for Summ. J., Feb. 8, 2023 (D.I. No. 1034); Def. FNN's Ans. Br. in Opp'n to Pls.' Mot. for Summ. J., Feb. 8, 2023 (D.I. No. 1033).

Support of its Motion for Summary Judgment Against Fox News Network, LLC and Fox Corporation.[237]

Dominion also filed a Motion to Dismiss or Alternatively for Summary Judgment on Fox News Network, LLC's Amended Counterclaim on January 27, 2023.[238] Fox did not respond, however, the parties previously briefed the issue.[239]

On January 17, 2023, FNN and FC filed their FNN Motion and FC Motion, seeking summary judgment on Dominion's defamation claims.[240] On February 8, 2023, Dominion filed its Dominion's Combined Opposition to Fox News Network, LLC's and Fox Corporation's Rule 56 Motions for Summary Judgment.[241] On February 20, 2023, FC filed its Defendant Fox Corporation's Reply Brief in Support of Its Motion for Summary Judgment, and FNN filed Defendant Fox News Network, LLC's Reply Brief in Support of Motion for Summary Judgment.[242]

As noted above, the Court held the Hearing on March 21, 2023, and March 22, 2023. At the conclusion of the Hearing, the Court took the various motions under advisement.

---

[237] Dominion's Reply Br. in Supp. of its Mot. for Summ. J. Against FNN and FC, Feb. 20, 2023 (D.I. No. 1082).
[238] Dominion's Mot. to Dismiss or Alternatively Mot. for Summ. J. on FNN's Am. Countercl. ("Dominion's Mot. to Dismiss Countercl."), Jan. 27, 2023 (D.I. No. 1018).
[239] *See* Def.'s Br. on New York's anti-SLAPP Law ("Fox's anti-SLAPP Br."), Sep. 19, 2022 (D.I. No. 595); Pls.' Response to Def.'s Br. on New York's anti-SLAPP Law ("Dominion's anti-SLAPP Response"), Sep. 28, 2022 (D.I. No. 634); Def.'s Reply Br. on New York's anti-SLAPP Law ("Fox's anti-SLAPP Reply"), Oct. 10, 2022 (D.I. No. 699).
[240] D.I. 952; D.I. 953; D.I. 955; D.I. 956.
[241] D.I. No. 1036.
[242] D.I. No. 1079; D.I. No. 1080.

## III. PARTIES' CONTENTIONS

### A. The Fox Motion and the FC Motion.

#### *1. The Fox Motion*

FNN argues that the Statements are not defamatory as a matter of law. FNN contends that no reasonable viewer would understand that FNN's coverage and commentary on the Dominion allegations as presenting information that FNN determined to be true. Instead, FNN asserts that the reasonable viewer would understand that FNN is merely "fulfilling its journalistic duty to 'present[] newsworthy allegations made by others.'"[243]

Additionally, FNN argues that under New York common-law principles and the First Amendment, the reporting of a newsworthy allegation by the press is not defamatory, even if the allegations are later found to be false.[244] FNN cites to caselaw to argue that when the press repeated allegations which are later proven to be false, even if the allegations are from "questionable" sources, a reasonable viewer would understand the allegations as mere claims, not reports of facts.[245]

---

[243] FNN MSJ at 42.
[244] *Id.* at 38.
[245] FNN cites to *Page v. Oath Inc.*, 270 A.3d 833 (Del. 2022) (Delaware Supreme Court did not find that Yahoo! News and Huffington Post defamed Carter Page when they published articles repeating allegations from the "Steele Dossier" which stated that Page met with high-ranking Russian officials, because the articles "made clear that the allegations were unsubstantiated and under investigation" by using phrases like "seeking to determine" and "at their alleged meeting."); *Croce v. N.Y. Times Co.*, 930 F.3d 787 (6th Cir. 2019) (Sixth Circuit found that the New York Times article did not defame the plaintiff even though it reported on false allegations against the plaintiff, because a reasonable reader would understand that the article was only presenting newsworthy allegations made by others, not presenting such allegations as fact); *Brian v. Richardson*, 660 NE.2d 1126 (N.Y. 1995) (New York Court of Appeals found that the defendant's article was not defamatory despite the article repeating false claims made by questionable sources, and the defendant offered his own view that these sources were credible and the allegations should be investigated, because the reported claims were identified in the articles as being unconfirmed, and a reasonable reader would not have understood the defendant's article as offering the claims as actual assertions of fact); *Vengroff v. Coyle*, 231 A.d.2d 624, 625 (N.Y. App. Div. 1996) ("[G]iven the use of the words 'apparently', 'rumored', and 'reportedly' in the letter, a reasonable reader would understand the statements made about the plaintiffs 'as mere *allegations* to be investigated rather than as *facts*.'") (emphasis in original).

FNN also maintains that the Statements are not actionable under the neutral report privilege, the fair report privilege, and opinion privilege. FNN posits that FNN's coverage of former President Trump's allegations regarding Dominion and election fraud was newsworthy. As such, the FNN hosts "informed their audiences at every turn that the allegations were just allegations that would need to be proven in court . . . [a]nd to the extent some hosts commented on the allegations, that commentary is independently protected as opinion."[246] FNN makes a hypothetical argument that if Dominion had their way, anyone who repeats a false allegations by a public official would have committed defamation, which contradicts the First Amendment and its embodiment of a "profound national commitment to the principle that debate on public issues should be uninhabited, robust, and wide-open."[247]

Furthermore, FNN contends that a defamation cause of action requires the plaintiff to produce "clear and convincing" evidence showing that the statements in question were made with actual malice. FNN asserts that Dominion fails to show that FNN made or published the Statements with actual malice. FNN argues that it provided a forum for newsworthy claims and denials to be debated on, and the FNN hosts did not take the allegations at face value when their guests presented the allegations.

Finally, FNN argues that it is entitled to summary judgment because Dominion failed to show that (i) that Dominion actually suffered any economic injury, and (ii) FNN's actions were the cause of any economic harm. FNN notes that this is true even if the Court finds a triable issue of fact as to one or more of the contested statements, and the jury could reasonably find evidence of actual malice.

---

[246] FNN MSJ at 38-39.
[247] *Id.* at 47 (citing *Sullivan v. N.Y. Times*, 376 U.S. 254, 270 (U.S. 1964)).

### *2. The FC Motion*

FC argues that there is no genuine issue of material fact as to FC's involvement or participation in the publication of the Statements, and as to actual malice. FC claims that without any evidence on the record that Rupert Murdoch or Lachlan Murdoch, or anyone else in FC, had a direct role in creating or publishing the contested statements made on FNN shows, Dominion's claims against FC fail.[248] FC points to the testimony of FNN show hosts and executives who all uniformly answered in the negative when they were asked whether they communicated with any FC employees, including Rupert Murdoch and Lachlan Murdoch, regarding Dominion or the election fraud allegations.[249] As FC pleads, "it is Fox News, not Fox Corporation, that controls the content of Fox News shows."[250]

FC also contends that it cannot be held vicariously liable for FNN's actions under the "agency" theory, or by "piercing the corporate veil."[251] FC argues that the caselaw rejects the notion that a parent company can be held vicariously liable for the actions of its subsidiary, either by "piercing the corporate veil" or under the theory of agency, absent a showing that the parent company "exercises complete dominion and control over the subsidiary" or that the subsidiary was "wholly dominated and controlled by the parent corporation such that piercing the corporate veil is justified."[252] FC also notes that the Court in Dominion II declined to adopt the vicarious liability theory argued by Dominion.

FC adopts the arguments made by FNN on damages and punitive damages.

[248] FC MSJ at 9.
[249] *Id.* at 9-14.
[250] *Id.* at 23.
[251] *Id.* at 26.
[252] *Id.* at 26-27, (citing *Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 413 (S.D.N.Y. 1996) and *Stern v. News Corp*, 2010 WL 5158635, at *4 (S.D.N.Y. Oct. 14, 2010)).

### *3. Dominion's Combined Response to the FNN Motion and the FC Motion*

Dominion disagrees with FNN and FC. Dominion maintains that the Court should deny the FNN Motion and the FC Motion because the facts show that Fox knowingly or recklessly published false conspiracy theories about Dominion. Moreover, Dominion contends that the dissemination of the false allegations by Fox caused substantial damage to Dominion's business and reputation.

Dominion argues that individuals in FC and FNN, including Rupert Murdoch, Lachlan Murdoch, and Ms. Scott, as well as the FNN hosts, knew at all relevant times that the allegations of Dominion "rigging the election" were false and baseless. Despite this, and in response to intense backlash from viewers after the election and declining ratings and profits, Dominion asserts that Fox chose to "straddle the line" and publish the Statements to win back viewers.

Dominion claims that Rupert Murdoch and Lachlan Murdoch were intrinsically involved in the day-to-day operations of FNN, to the point of directing FNN executives and producers on the tone and the narrative that the FNN hosts and reporters should adopt on the air, which guests should be allowed on the shows, and how the allegations regarding Dominion should be handled. Dominion alleges that FC's level of involvement in the operations and management of its subsidiary go beyond a question of agency or vicarious liability and constitutes actual malice on the part of FC.

Lastly, Dominion argues that the Court should reject FNN's arguments on the applicability of the neutral report privilege because the Court of Appeals of New York rejected its adoption. Additionally, Dominion contends that FNN's arguments regarding the fair report privilege and the privilege for opinion should be rejected. Dominion maintains that (i) the Statements were not made in reference to actual, ongoing lawsuits or official investigations

involving Dominion and election fraud, and (ii) a reasonable viewer would not have understood the contested statements as genuine opinions of the hosts, but as assertions of fact.

### B. The Dominion Motion

#### *1. Dominion*

Dominion contends that summary judgment should be granted in its favor because the statements were (1) false; (2) "of and concerning" Dominion; (3) published by Fox; (4) defamatory *per se*; and (5) made with actual malice.[253] Dominion does not move for summary judgment on damages.

On the first point, Dominion argues that "undisputed evidence," including state audits and recounts, certification and testing, additional public evidence, sworn testimony, Dominion's contemporaneous statements, Dominion's source code, and Fox's lack of evidence all prove that the allegations are false.[254] As to the second point, Dominion states that all challenged statements referred to Dominion by name. With the third point, Dominion argues that FNN directly published the statements through its broadcasts to viewers, and FC engaged in the publication and is therefore responsible. In support of the fourth point, Dominion contends that the statements charged Dominion with a crime and attacked the heart of its business and are thus defamatory *per se*. And in support of the final point, Dominion asserts that direct and circumstantial evidence shows responsible employees at both FC and FNN acted with actual malice or, at a minimum, reckless disregard.

[253] *See* Dominion MSJ.
[254] *Id.* at 46-76.

***2. FNN's Opposition***

FNN contends that summary judgment should be denied because (i) the Statements are not actionable where they are protected by the neutral report privilege; the fair-report privilege, or privilege for opinions; and (ii) alternatively, Dominion fails to prove actual malice.[255]

***3. FC's Opposition***

FC argues that (i) it did not have a role in the creation or publication of the statements and (ii) Dominion lacks clear and convincing evidence of actual malice.[256]

## IV. STANDARD OF REVIEW[257]

The Superior Court Civil Rule 56 governs motions for summary judgment.[258] "The Court will grant summary judgment if, after viewing the record in a light most favorable to the non-moving party, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law."[259] On a motion for summary judgment, the Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; and (iii) denies the motion if a material fact is in dispute."[260] The moving party bears the initial burden of showing the motion is supported by the undisputed facts.[261] If the moving party carries its burden, then the burden shifts to the non-moving party to show a genuine issue of material fact exists, and that a trial is necessary.[262]

---

[255] *See* FNN MSJ Ans. Br.
[256] *See* FC MSJ Ans. Br.
[257] On January 27, 2023, the Court held that Superior Court Civil Rule 56 would apply to the parties' summary judgment motions. D.I. No. 1017.
[258] Super. Ct. Civ. R. 56.
[259] *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Nov. 23, 2021) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)); Del. Super. Ct. Civ. R. 56.
[260] *CVR Refin., LP*, 2021 WL 5492671, at *8 (citing *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977); *Merrill*, 606 A.2d at 99; *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962)).
[261] *CVR Refin., LP*, 2021 WL 5492671, at *8 (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[262] *Id.* (citing *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995)).

Although summary judgment is "encouraged when possible,"[263] there is no "right" to summary judgment.[264] "The Court may deny summary judgment if the Court is not reasonably certain" whether there is a triable fact issue.[265] The Court may also deny summary judgment if "the Court concludes a more thorough inquiry into, or development of, the facts[] would clarify the law or its application."[266]

Although the parties have each moved for summary judgment, the Court's discussion of the contentions need not necessarily be broken down by motion. The Court notes that the parties' arguments overlap considerably. As such, the Court will address the issues by element and/or by defense.

## V. DISCUSSION

Dominion asserts claims of defamation *per se*. Dominion therefore must prove that when the record is reviewed in a light most favorable to Fox, there are no genuine issues of material fact as to each element of defamation. Under New York law, a claim for defamation *per se* requires the claimant to establish: (i) a false statement, (ii) publication without privilege or authorization to a third party, (iii) constituting fault as judged by the actual malice standard, and (iv) that causes special harm or constitutes defamation *per se*.[267] Defamation *per se* includes accusations of a serious crime or business harm.[268] In addition, the alleged defamation must be "of or concerning the plaintiff."[269]

---

[263] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 443 (Del. 2005).
[264] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002) (internal quotation marks and citation omitted).
[265] *CVR Refin., LP*, 2021 WL 5492671, at *8 (citing *Cross v. Hair*, 258 A.2d 277, 278 (Del. 1969)).
[266] *Id.* (citing *Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 918-19 (Del. 1965)).
[267] *Kasavana v. Vela*, 100 N.Y.S.3d 82, 85-86 (N.Y. App. Div. 2019); *Sullivan*, 376 U.S. at 280.
[268] *Kasavana*, 100 N.Y.S.3d at 85–86.
[269] *Chicherchia v. Cleary*, 616 N.Y.S.2d 647, 648 (N.Y. App. Div. 1994) (quoting *Gross v. Cantor*, 200 N.E. 592, 593 (N.Y. 1936)).

The parties have done an excellent job of joining the issues. In some instances, however, the parties conflate the elements. The Court will be addressing the elements individually in an attempt to methodically set out the decisions on summary judgment.

### A. DOMINION IS ENTITLED TO SUMMARY JUDGMENT ON FALSITY.

"To satisfy the falsity element of a defamation claim, plaintiff must allege that the complained of statement is 'substantially false.'"[270] "Courts typically compare the complained of language with the alleged truth to determine whether the truth would have a different effect on the mind of the average reader."[271] Falsity "refers to the content of an allegedly defamatory statement, not the act of republishing it."[272]

The Court will be looking to the Statements and determining whether the Statements are true of false. These are the "complained of" Statements. Fox invites the Court, in a footnote, to ignore the Statements in determining falsity.[273] Instead, Fox would have the Court look to see if it is true whether former President Trump made those allegations—purportedly through Ms. Powell and Mr. Giuliani—and that FNN reported this accurately. Fox is, in essence, trying to recharacterize what constitutes the "complained of statements." The New York courts have rejected this type of approach to falsity.[274]

---

[270] *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (N.Y. 1st Dep't 2015) (quoting *Biro v. Condé Nast*, 883 F.Supp. 2d 441, 458 (S.D.N.Y. 2012)).
[271] *Id.*
[272] *Zuckerbrot v. Lande*, 167 N.Y.S.3d 313, 334 (N.Y. Sup. Ct. 2022). *Accord Watson v. NY Doe 1*, 439 F.Supp. 3d 152, 161 (S.D.N.Y. 2020) ("[U]nder New York law, '[a] speaker who repeats another's defamatory statements is not made immune from liability for defamation merely because another person previously made the same demeaning claim.'"); *Cianci v. New York Times Pub. Co.*, 639 F.2d 54, 60-61 (2d Cir. 1980) (same).
[273] FNN Ans. Br. at 67, n. 15.
[274] *Zuckerbrot*, 167 N.Y.S.3d at 334 (rejecting the defense that "accurately" posting statements of another goes to publication and not whether the complained of statement is true or false); *see also Biro v. Conde Nast*, 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) (providing that defendants cannot escape liability simply because they are conveying someone else's defamatory statements without adopting those statements as their own). *See also Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 386 (1972) (noting, in passing, that the media "cannot defend a libel suit on the grounds that the falsely defamatory statements are not its own.").

Dominion asserts that "[d]enying summary judgment on falsity requires this Court to find that a reasonable juror today could think that Dominion actually committed election fraud."[275] Christopher Stirewalt, Fox's Political Editor, testified that "no reasonable person" would have believed the allegations.[276] Dominion states that in discovery responses and binding corporate representative testimony, Fox has conceded falsity as to Smartmatic ownership and the "Venezuela lie."[277] As to the "fraud lie," "algorithm lie," and the "kickback lie," Dominion argues that Fox admitted it does not have the evidence to confirm or deny falsity."[278]

Beginning with the "election lie," Dominion points to state audits and recounts, certification and testing, additional public evidence, EAC Commissioner's sworn testimony, Dominion's source code, Dominion's contemporaneous and sworn statements, and Fox's lack of evidence in support of its assertion that the "election lie" is false.[279] Maricopa County, Arizona, the only county in Arizona that used Dominion products, conducted a hand count audit that yielded a "100 percent match."[280] Two independent testing laboratories also confirmed there was "no evidence of manipulation."[281] A forensic audit by an independent testing laboratory found no evidence of tampering,[282] as did two subsequent recounts.[283] Michigan conducted post-election audits, as well as a comprehensive investigation led by the Michigan Senate Oversight

---

[275] Dominion MSJ at 46.
[276] Dominion MSJ, Ex. 146, Stirewalt 154:10.
[277] Dominion MSJ at 48-49.
[278] *See* Dominion MSJ, Ex. 127, Lowell 53:5 – 54:2.

> [I]t's my understanding FNN is planning to introduce evidence at trial that some votes were flipped. And that knowledge is based solely on discussions with counsel. I have no knowledge of facts outside of the scope of what I just described to you. . . The statement that Dominion committed election fraud, we cannot state – Fox News is not going to state definitively whether that statement is true or false. And we're not planning to assert that in trial, that is my understanding.

*Id.*
[279] Dominion MSJ at 51-62.
[280] Dominion MSJ, Exs. 209-210.
[281] Dominion MSJ, Exs. 300-301.
[282] Dominion MSJ, Ex. 303-A.
[283] Dominion MSJ, 303-D; 303-B; 303-E.

Committee, all of which found no evidence of systematic fraud.[284] All sixty-seven Pennsylvania counties completed a statutorily mandated statistical sampling audit, and then sixty-three counties completed a risk-limiting audit, both of which confirmed the accuracy of the election results.[285]

Every state that used Dominion products certified them prior to the election.[286] CISA explained the safeguards in place to ensure a fair election, including certification and testing.[287] State certification laws require voting systems to go through testing and meet standards of accuracy before use, and many states require federal testing and/or certification by the EAC, as well as logic and accuracy testing.[288] Because of this, every state that used Dominion machines certified them prior to the election.[289]

Dominion points to additional public record evidence to prove that the allegations were false, including: the CISA Joint Statement on November 12;[290] the Experts' Joint Statement on November 16;[291] the November 17 Maricopa County's Board of Supervisors Chairman's public letter stating the results were completely accurate;[292] the December 1 statement from U.S. Attorney General William Barr;[293] the EAC Commissioner's deposition testimony that there was "no widespread fraud or malfunction that would change the result of an election;"[294] and the

[284] Dominion MSJ, Exs. 306-B-306-C.
[285] Dominion MSJ, Ex. 100, Boockvar 46:19-49:5; Ex. 354. *See also* 25 Pa. Stat. § 3031.17.
[286] Dominion MSJ, Ex. 183, Poulos Aff.
[287] Dominion MSJ, Exs. 556-A-556-B.
[288] Dominion MSJ, Ex. 308; Ex. 186, Hovland Decl., Ex. A. *See also* Ariz. Rev. Stat. § 16-449; Ga. Code §§ 21-2-374(b), 21-2-379.6(c); Mich. Comp. Law §§ 168.795; 25 Pa. Stat. §§ 3006, 3007, 3011, 3015, 3031.5, 3031.14.
[289] *See* Dominion MSJ, Ex. 183, Poulos Aff. ¶ 8; Ex. 185 at 2.
[290] Dominion MSJ, Ex. 190.
[291] Dominion MSJ, Ex. 315.
[292] Dominion MSJ, Ex. 210.
[293] Dominion MSJ, Ex. 316. "[T]o date, we have not seen fraud on a scale that could have effected a different outcome in the election."
[294] Dominion MSJ, Ex. 186, Hovland Decl. ¶ 5.

Committee to Investigate the January 6th Attack on the United States Capitol's finding that Dominion did not rig the Election.[295]

In further support of the falsity prong, Dominion provided its source code to its own expert, as well as Fox's expert. Dominion's expert stated it was unable to detect any mechanism to switch votes,[296] which no Fox expert has contested.[297] Dominion also notes that it has denied the allegations in its STRS emails and its sworn testimony.[298] Finally, Dominion states that Fox has "zero evidence" to prove there is an issue of material fact as to falsity.[299]

Moving to the "algorithm lie," Dominion again cites to the state audits, recounts, certification and testing, other public record evidence, Dominion's contemporaneous and sworn statements, and Fox's lack of evidence to prove that the allegation is false.[300] Notably, Fox witnesses have admitted the "algorithm lie" is false or lacks evidence.[301] Although Ms. Powell stated on *Lou Dobbs Tonight* that she possessed "evidence of how [Smartmatic and Dominion] flipped the votes, how it was designed to flip the votes," Fox admitted that it never received that proof.[302] Fox's expert was one of the fifty-nine experts in the Experts' Joint Statement that "[m]erely citing the existence of technical flaws does not establish that an attack occurred, much less that it altered an election outcome."[303] Dominion also posits that, to the extent Fox argues the human error in Antrim County constituted "vote flipping" or that Fox simply made

---

[295] Dominion MSJ, Ex. 317 at 3-8.
[296] Dominion MSJ, Ex. 548, Rubin Aff. ¶ 4; Ex. 548-A ¶ 146.
[297] Dominion MSJ at 60.
[298] Dominion MSJ at 61. *See* Dominion MSJ, Ex. 138, Poulos 895:5-9.
[299] Dominion MSJ at 61-62. *See* Dominion MSJ, Ex. 127, Lowell 41:22-42:4, 177:13-19 (stating Fox does not currently have evidence to prove or disprove falsity); Dominion MSJ, Ex. 319, Nos. 192, 197, 209 (failing to deny falsity of fraud lie and admitting Trump did not win by millions of votes shifted by Dominion software in Requests for Admission).
[300] *See* Dominion MSJ at 64-72.
[301] *See* Dominion MSJ at 68-73, Ex. 96, Andrews 31:22-32:2; Ex. 111, Dobbs 87:13-25, 90:15-91:15; Ex. 105, Carlson 163:21-24; Ex. 121, Grossberg 263:5-10; Ex. 135, Pirro 89:3-13; Ex. 146, Stirewalt 154:20-155:17; Ex. 145, Smith 34:15-22, 35:14-22.
[302] Dominion MSJ, Ex. 128, Lowell 285:6-13; Ex. 319, RFA No. 222.
[303] Dominion MSJ, Ex. 315.

statements about the machines having vulnerabilities, Fox's "algorithm lie" accused Dominion of a broad, purposeful, and fraudulent algorithm design that lacked substantial truth.[304] Dominion also contends that due to the nature of election administration, where votes are tabulated, reported, and certified by local jurisdictions, it is impossible to monitor or flip votes.[305]

As to the "Venezuela lie," Fox has admitted that allegations of Dominion being owned by a company founded in Venezuela to rig elections for Hugo Chavez is false.[306] Furthermore, this information is readily available to the public.

To prove that the "kickback lie" is false, Dominion offers deposition testimony of its Chief Executive Officer and corporate representative, John Poulos, and election officials. Mr. Poulos testified that Dominion did not pay kickbacks to election officials.[307] Election officials from Pennsylvania, Arizona, and Georgia similarly testified that they did not receive kickbacks from Dominion.[308] No evidence has been offered proving otherwise.

Fox dedicates little to its argument on falsity. It claims that "[t]he question is whether the press reported the 'true' fact that the President made those allegations."[309] However, falsity refers to the content of the statement, not the act of republishing it.[310] Therefore, the question of falsity is whether the content of the allegations was true, not whether Fox truthfully republished the allegations.[311]

---

304 Dominion MSJ at 70-71.
305 Dominion MSJ at 65.
306 Dominion MSJ, Ex. 319, Nos. 176, 180, 194; Ex. 127, Lowell 67:2-25, 108:14-19. RFA admissions "conclusively establish" the falsity of the statements. *See* Super. Ct. Civ. R. 36(b); *Merritt v. United Parcel Service*, 956 A.2d 1196, 1201 (Del. 2008).
307 Dominion MSJ at 76, Ex. 138, Poulos 895:19-22.
308 Dominion MSJ at 77, Ex. 100, Boockvar 49:23-50:6 (Pennsylvania Secretary of State); Ex. 120, Gates 34:22-35:4 (Maricopa Board of Supervisors Chairman); Ex. 222, Raffensperger Aff. ¶ 3 (Georgia Secretary of State); Ex. 303, Sterling Aff. ¶ 3 (Georgia Chief Operating Officer of the Secretary of State's Office).
309 Fox Ans. Br. at 67, n. 15.
310 *See Zuckerbrot*, 167 N.Y.S.3d at 334; *Watson*, 439 F.Supp. 3d at161.
311 *See id*.

As discussed above, Dominion has offered proof demonstrating that the allegations were substantially false. Comparing the allegations at issue to the truth, the truth would have likely had a different outcome on the average viewer, as the statements at issue were dramatically different than the truth. In fact, although it cannot be attributed directly to Fox's statements, it is noteworthy that some Americans still believe the election was rigged.[312]

Fox takes a nuanced approach to falsity. Fox would have the Court test whether specific points stated by the FNN hosts are true. For example, Fox argues that if a FNN host notes that the next guest is Ms. Powell, that Ms. Powell is an attorney for former President Trump and that Ms. Powell will be stating the position of the former President, then all the statements are true and there can be no defamation. As set out above, falsity "refers to the content of an allegedly defamatory statement, not the act of republishing it."[313] The Statements, discussed herein, relate to allegations against Dominion and not the roles of parties or what they will be talking about.

While the Court must view the record in the light most favorable to Fox, the record does not show a genuine issue of material fact as to falsity. Through its extensive proof, Dominion has met its burden of showing there is no genuine issue of material fact as to falsity. Fox therefore had the burden to show an issue of material fact existed in turn. Fox failed to meet its burden. *The evidence developed in this civil proceeding demonstrates that is* ***CRYSTAL*** *clear that none of the Statements relating to Dominion about the 2020 election are true.* Therefore, the Court will grant summary judgment in favor of Dominion on the element of falsity.

---

[312] Mark Murray, *Poll: 61% of Republicans Still Believe Biden Didn't Win Fair and Square in 2020*, NBC NEWS (Sept. 27, 2020, 12:21 PM) https://www nbcnews.com/meet-the-press/meetthepressblog/poll-61-republicans-still-believe-biden-didnt-win-fair-square-2020-rcna49630.
[313] *Zuckerbrot*, 167 N.Y.S.3d at 334.

### B. DOMINION IS ENTITLED TO SUMMARY JUDGMENT ON THE ELEMENT OF "OF AND CONCERNING."

"For there to be recovery in libel, it must be established that the defamation was 'of and concerning the plaintiff.'"[314] Dominion asserts that the Statements at issue are "of and concerning" Dominion,[315] which Fox does not contest. Because each of the Statements, at some point, refers to Dominion by name, there is no genuine issue of material fact as to whether the statements are "of and concerning" Dominion. As such, the Court will grant summary judgment for Dominion as to the element of "of and concerning."

### C. DOMINION IS ENTITLED TO SUMMARY JUDGMENT ON THE ELEMENT OF PUBLICATION AS TO FNN.

The next element of defamation is publication of the challenged statements without privilege or authorization to a third party.[316] Communication of the challenged statement to a third party constitutes publication,[317] even if that third party is just one person.[318] "[E]ach person who repeats the defamatory statement is responsible for the resulting damages."[319] To ascertain who is responsible for the publication of a statement, the Court examines who participated in the creation or the publication of the challenged statements, because "all who take part in the procurement, composition and publication of a libel are responsible in law and equally so."[320]

---

[314] *Chicherchia v. Cleary*, 207 A.D.2d 855 (N.Y. App. Div., 2nd Dept. 1994) (citing *Gross v. Cantor*, 270 N.Y. 93, 96 (N.Y. 1936)). *See also Palin v. New York Times Co.*, 940 F.3d 804, 816 (2d Cir. 2019) (holding that plaintiff has "more than sufficient[ly]" made a plausible allegation that the challenged statements are "of and concerning" her where they reference her by name).
[315] Dominion MSJ at 82.
[316] *Dillion v. City of New York*, 261 A.D.2d 34, 38 (N.Y. App. Div., 1st Dept. 1999).
[317] *Osorio v. Source Enterprises, Inc.*, 2006 WL 2548425, at *6 (S.D.N.Y. Sept. 5, 2006).
[318] *Torati v. Hodak*, 47 N.Y.S.3d 288, 290 (N.Y. App. Div. 1st Dept. 2017).
[319] *Geraci v. Probst*, 15 N.Y.3d 336, 342 (N.Y. 2010). *See also* Restatement (Second) of Torts § 581 cmt. g (Am. Law Inst. 1977) (broadcasting companies are similar to newspapers because they are not solely engaged in the transmission of messages, therefore by selecting and putting people on air for business purposes, they "cooperate actively in publication.").
[320] *Dominion II* at 15 (citing *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005)).

"To find that a defendant 'directed' or 'participated in' publication requires, at very least, evidence of some affirmative evidence on the part of the defendant."[321]

Dominion argues that FNN clearly published the challenged statements through broadcasts "over its vast media network, including on its television broadcasts and social media platforms."[322] Dominion states that seventeen of the statements were aired on Fox News or Fox Business (which were often then reposted on websites and social media), and the other three statements were on Lou Dobbs' Twitter account, which he has admitted is "the show's handle as well as [his]."[323]

Dominion claims that FC is responsible for publication because Lachlan and Rupert Murdoch participated in the procurement, composition and publication of the statements by "participat[ing] in the editorial process and/or attend[ing] editorial meetings."[324] Dominion points to Requests for Admissions responses, which stated that the two "attended at least some of twice daily meetings" during the relevant time and communicated with Ms. Scott about the shows at issue during the relevant time.[325] Dominion additionally highlights conversations between FC and FNN executives about the shows as proof that FC took part in publication.

FNN does not directly contest the issue of publication. It addresses publication with actual malice, stating that Dominion's proffered evidence fails to prove that those allegedly responsible played a role in the publication, and therefore cannot be held liable. Because FNN makes that argument in the scope of actual malice, it will be addressed below.

---

[321] *Ertel v. Patriot-News Co.*, 674 A.2d 1038, 1043 (Pa. 1996).
[322] Dominion MSJ at 85.
[323] Dominion MSJ, Ex. 111, Dobbs 74:13-18 ("That's the show's handle as well as mine.").
[324] Dominion MSJ at 101-02. *See also* Fox MSJ, Ex. E32, Scott 328:16-21 ("Rupert and Lachlan participated in editorial meetings. Not every day and not every meeting, but they did generally participate in many of the meetings. Probably more around this time because it was an active time.").
[325] Dominion MSJ, Ex. 319, Nos. 27, 35, 43, 51.

The record is clear. FNN, as a network, broadcasted the Statements. In other words, FNN published the Statements by broadcasting the Statements to FNN's viewers. In defamation claims, "all who take part in the procurement, composition and publication of a libel are responsible in law and equally so."[326] "To find that a defendant 'directed' or 'participated in' publication requires, at very least, evidence of some affirmative evidence on the part of the defendant."[327] FNN is not a passive entity. FNN controls what is broadcast on its various networks. FNN does this through its employees as agents of FNN. Thus, regardless of who within FNN is responsible for publication, FNN did in fact publish the statements to its viewers.

FC argues that it did not participate in the publication of the challenged statements. It states that Dominion has failed to uncover evidence of its role in publication, despite the voluminous record.[328] FC first submits that FNN hosts,[329] FC executives,[330] and FNN employees and executives[331] have "uniformly testified" that FC did not play any role in the creation or publication of the challenged statements. FC states this is further supported by interrogatory

---

[326] *Dominion II* at 15 (citing *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005)).
[327] *Ertel,* 674 A.2d at 1043.
[328] FC Ans. Br. at 18.
[329] *Id*. at 9-10. *See* Fox MSJ, Ex. E25, Pirro 421:21-422:13 (testifying that she never spoke with anyone at FC about the content of her shows related to the Election or about Dominion); Ex. E26, Bartiromo 406:7-10 (testifying that she never spoke with Scott or anyone at FC, including Rupert and Lachlan Murdoch, about Dominion or the allegations); Ex. E27, Carlson 165:15-166:1 (testifying that he can not recall ever speaking to Lachlan Murdoch about election fraud allegations); Ex. E29, Dobbs 96:22-23 (testifying that he would not have received direction or guidance from any of the Murdochs).
[330] FC Ans. Br. at 11-13. *See* Fox MSJ, Ex. E41, Rupert Murdoch 352:24-354:6 (testifying that he never spoke to Bartiromo, Dobbs, Pirro, Hannity, Carlson, Hegseth, Campos-Duffy, Cain, or Wallace about Dominion and vote fraud); Ex. E42, Shah 364:20-365:10 (testifying that he never had anything to do with what was put on air regarding the allegations); Ex. E43, Dinh 360:13-18 (same as Shah); 260:21-24 (testifying that outside of lawsuit, has not discussed Dominion with Lachlan or Rupert Murdoch).
[331] FC Ans. Br. at 13-15. *See* Fox MSJ, Ex. E32, Scott 328:8-11 (testifying that she does not remember talking to Rupert or Lachlan Murdoch about Dominion); Ex. E33 Komissaroff 208:10-209:5 (testifying that he does not recall Rupert or Lachlan Murdoch ever telling him to cover the allegations); Ex. E34, Clark 298:9-300:23 (testifying that he does not recall talking to Lachlan Murdoch, Rupert Murdoch, or Viet Dinh about Giuliani and Powell's appearances on the November 15, 2020 *Sunday Morning Futures* show and stating he does not know who Raj Shah is); Ex. E35, Cooper 282:4-23 (testifying that nobody at FC gave specific instructions on who to book or what topics to cover, and that she did not converse with Rupert or Lachlan Murdoch about what to cover); Ex. E36, Schreier 252:20-253:1 (testifying that neither Rupert or Lachlan Murdoch communicated to him about giving airtime to Giuliani or Powell).

responses.[332] FC also points out that Dominion did not ask FC executives whether they discussed the topics with the hosts.[333]

FC downplays the Murdochs' attendance at some editorial meetings, reasoning that that alone does not prove they played a role in publication, especially where many employees testified that they did not discuss the challenged statements with the Murdochs.[334] And in response to Dominion's argument that FC and FNN executives discussed the shows with one another, FC asserts that that is insufficient to prove FC engaged in the publication of the shows, especially because FNN executives were not bound to FC's feedback.[335] Finally, to the extent that Dominion alleges FC is responsible for the publication because it could have stopped the broadcasts, FC says that under *Ertel v. Patriot-News Co.*, failing to hinder publication is not enough.[336]

Dominion contends that Rupert Murdoch and Lachlan Murdoch played a direct role in FNN publishing the Statements. Dominion argues that not only did Rupert Murdoch and Lachlan Murdoch "weigh in" on the "specific direction on both the tone and narrative of Fox's news coverage" during the relevant timeframe, both FC executives were fundamentally involved in the day-to-day operations of FNN "via phone calls and emails with 'suggestions' on hosts, narratives, topics, and guests – including on issues related to the 2020 election; how to cover the conspiracy claims; how to treat Trump; the hosts of the accused broadcasts; and guests like Rudy

---

[332] FC Ans. Br. at 15. *See* Fox MSJ, Ex. K1, Nos. 1-3, 7, 9, 15, 29, 31, 33, 35, 37, 39, 45, 47. FC also cites FNN's responses to interrogatories, however the evidence cited does not speak to that claim.
[333] FC Ans. Br. at 18.
[334] *Id.* at 21-22. FC additionally states that no witness can even specifically recall whether the Murdochs were present when Dominion was discussed. *See* Fox MSJ, Ex. E45, Schreier 56:23-57:16; Ex. E46, Berry 109:8-111:18; Ex. E47, Scott 328:22-329:20 (D.I. 1035).
[335] FC Ans. Br. at 24-27. *See* Fox MSJ, Ex. E49, L. Murdoch 78:21-79:6 (testifying that he "would hope [Scott] would consider [the suggestion]. She doesn't have to put it up. She's the responsible executive."); Ex. E32, Scott 35:19:-36:5 ("Rupert and Lachlan never tell me to do anything. . . they make suggestions, they don't tell me what to do.)
[336] FC Ans. Br. at 27-28. *See Ertel*, 674 A.2d at 1043.

Giuliani."[337] Dominion also points to Rupert Murdoch's testimony to show that he had the power to dictate who went on FNN shows and who didn't:

> Q. And you could have said to Suzanne Scott or to the hosts, "Stop putting Rudy Giuliani on the air"?
>
> A. I could have. But I didn't.[338]

The Court finds there are genuine issues as to material facts on whether FC "published" the Statements. FC offers enough support for its argument that FC did not directly publish or otherwise engage in the publication of the Statements. Dominion relies on facts relating to the Murdochs involvement with FNN and its broadcasts. Because reasonable jurors could differ on whether FC published the Statements, there is a genuine issue of material fact. Therefore, the Court will deny summary judgment on the issue of publication as it relates to FC.

The Court finds that there is no genuine issue of material fact and Dominion is entitled to judgment as a matter of law as to whether FNN published the Statements. Accordingly, as to FNN, the Court will grant summary judgment to Dominion on the issue of publication.

---

[337] Dominion Opp. at 10-11. Suzanne Scott, CEO of FNN, testified that both Rupert Murdoch and Lachlan Murdoch called her "about once a day" and they also attended the daily editorial meetings at FNN. Ex. 143, Scott 165:23-166:5. Dominion alleges that at times, Rupert Murdoch would essentially direct the narrative and tone of FNN shows to be aired, noting that on November 6, 2020, Rupert Murdoch emailed Ms. Scott discussing what FNN hosts should say regarding the false narrative that President Trump had actually won the election, stating, "Everything seems to be moving to Biden and If Trump becomes a sore loser we should watch Sean [Hannity] especially and others don't sound the same. Not there yet but a danger." Ex. 151. Suzanne Scott responded, "Agree to all" and forwarded the email to Meade Cooper, who testified that "I would interpret that to mean that if former President Trump clearly lost and isn't accepting the results of the election, that we should make sure that Sean does not go down that same path." Ex. 752, 747, Ex. 108, Cooper 186:9-14. Lachlan Murdoch testified that he works with FNN through Ms. Scott and weighed in on the "specific direction on both the tone and narrative of Fox's news coverage. Dominion Opp. at 10, Ex. 130, L. Murdoch 261:22 – 23. On November 14, 2020, Lachlan Murdoch told Ms. Scott during FNN's coverage of a Trump rally that Lachlan Murdoch was watching, "News guys have to be careful how they cover this rally. So far some of the side comments are slightly anti and they shouldn't be. The narrative should be this is a huge celebration of the president" to which Ms. Scott responded, "Yes thanks." Dominion Opp. at 26, Ex. 627, Ex. 130, L. Murdoch 116:4-119:11. Lachlan Murdoch also criticized an FNN reporter's live coverage of the event as being "[s]mug and obnoxious," to which Ms. Scott replied that she was "calling now" to the reporter's producer to change the tone of the reporter's coverage. Dominion Opp. at 26, Ex. 627, Ex. 130, L. Murdoch 116:4-119:11.

[338] *Id.* at 30, Ex. 600, R. Murdoch 317:2-6.

### D. THE COURT WILL NOT GRANT SUMMARY JUDGMENT ON THE ISSUE OF ACTUAL MALICE.

"Actual malice" means that a defendant published false information about a plaintiff "with knowledge that it was false or with reckless disregard of whether it was false or not."[339] To satisfy the reckless disregard standard, a plaintiff must establish that a defendant "entertained serious doubts as to the truth of [the] publication" or had a "high degree of awareness of [its] probable falsity."[340]

Actual malice can be proven "through the defendant's own actions or statements."[341] But actual malice can also be determined through the subjective determination of whether the defendant entertained serious doubts as to the truth of the statement, which can be proven by inference.[342] A speaker cannot "purposefully avoid[]" the truth and then claim ignorance.[343] But the failure to investigate a statement's truth, standing alone, is not evidence of actual malice, "even if a prudent person would have investigated before publishing [it]."[344] If the plaintiff offers "some direct evidence" that the statement "was probably false," the Court can infer that the defendant "inten[ded] to avoid the truth."[345]

Circumstantial evidence is probative when determining whether actual malice exists. Circumstantial evidence may take many forms, including: (i) obvious reason to doubt the veracity of the informant;[346] (ii) a basis wholly on an unverified, anonymous source;[347] (iii) such

---

[339] *Sweeney v. Prisoners' Legal Servs. of New York, Inc.*, 84 N.Y.2d 786, 792 (N.Y. 1995) (quoting *Sullivan,* 376 U.S. at 280).
[340] *Id.* (quoting *Harte–Hanks Communications v. Connaughton,* 491 U.S. 657, 667 (1989)).
[341] *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 183 (2d Cir. 2000).
[342] *Solano v. Playgirl*, 292 F.3d 1078, 1085-86 (9th Cir. 2002) (holding that a jury could conclude the editors knowingly or recklessly published a misleading cover where someone in the editorial process raised concerns, which the editors were aware of).
[343] *Sweeney.*, 84 N.Y.2d at 787.
[344] *Id.*
[345] *Id.*
[346] *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).
[347] *Id.*

an inherent improbability "that only a reckless man would have put them in circulation;"[348] (iv) financial motive;[349] (v) a departure from journalistic standards;[350] (vi) a preconceived false narrative;[351] and (vii) a refusal to retract the statement and continuing to repeat statements that have been proven false.[352] These factors are not conclusive. A plaintiff may prove actual malice through an accumulation of such circumstantial evidence.[353]

Moreover, a plaintiff cannot show actual malice in the abstract, actual malice must be "brought home to the persons . . . having responsibility for the [allegedly defamatory] publication."[354] In other words, "[w]hen there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice."[355] Still, proof of actual malice "calls a defendant's state of mind into question and does not readily lend itself to summary disposition."[356]

### *1. Dominion's Argument*

#### a. Dominion contends that falsity was widely known within Fox.

Dominion contends that "this case is the rare defamation case with extensive direct evidence of actual malice."[357] Dominion supports this by first arguing that the public record and knowledge within FNN and FC put employees throughout Fox on notice that the allegations

[348] *Id.*
[349] *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 689, n.36 (footnote discussing the circumstantial facts adduced at trial).
[350] *Id.*
[351] *Palin*, 940 F.3d at 813.
[352] *Nunes v. Lizza*, 12 F.4th 890, 900-01 (8th Cir. 2021).
[353] *Celle*, 209 F.3d at 183.
[354] *Sullivan*, 376 U.S. at 287. *See also Solano*, 292 F.3d at 1086 (holding that a jury could conclude the editors knowingly or recklessly published a misleading cover where someone in the editorial process raised concerns, which the editors were aware of).
[355] *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013)
[356] *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) (internal citations omitted).
[357] Dominion MSJ at 90.

were false.[358] As discussed above, on November 4, 2020, NASED/NASS Joint Statement was issued, on November 12, 2020, the CISA Joint Statement was issued, and on November 16, the Experts' Joint Statement was issued.

Election officials similarly assured the public that the Election was not rigged. Mr. Lowell testified that there was a "general awareness" of the CISA Statement, which was provided in Dominion's STRS emails.[359] Even Ms. Petterson asked, "[d]oes anyone do a fucking simple google search or read emails?"[360]

Dominion asserts that deposition testimony further illustrates that Fox knew the allegations were false.[361] Dominion points out that Fox witnesses have declined to acknowledge the allegations as true, and in some cases even testified they did not believe the allegations.[362] Mr. Stirewalt testified that he not believe the allegations, that "no reasonable person" would have believed them, and confirmed that this was a widely held belief among the news people he talked with.[363] Additionally, the Brainroom addressed many of the allegations and determined the allegations to be untrue.

---

[358] Dominion MSJ at 92-95.
[359] Dominion MSJ, Ex. 128, Lowell 413:6-24, 420:5-13; Ex. 331; Ex. 339.
[360] Dominion MSJ, Ex. 356 at FNN022_03852657.
[361] Dominion MSJ at 96-100.
[362] Dominion MSJ at 96, n.12. *See* Dominion MSJ, Ex.102, Briganti 27:9-28:21 (never believed the allegations); Ex. 111, Dobbs 22:17-22, 38:11-16 (Powell never substantiated her claims and has never seen proof showing Election was rigged); Ex. 106, Clark 215:11-231:4 (does not believe allegations and as of November 7, 2020 believed Biden won); Ex. 108, Cooper, 127:18-140:14 (does not believe allegations); Ex. 116, Field 134:6-135:25 (does not believe allegations); Ex. 117, Firth 38:16-43:7 (never believed Dominion was engaged in massive and coordinated effort to steal the Election); Ex. 122, Hannity 322:15-25 ("I did not believe it for one second, and I tried to listen as time went on. . . I waited for proof. I got my Sidney answer November 30th."); Ex. 124, Hooper 52:14-19, 54:23-55:3, 59:17-22 (at time was unsure, does not believe allegations now); Ex. 126, Komissaroff 38:2-19, 38:23-40:1 (never saw evidence and does not believe them); Ex.130, L. Murdoch 249:4-7; 269:15-20; 321:16-323:22 (does not believe allegations); Ex. 129, Mitchell 256:10-259:11, 386:6-387:19, 388:8-12, 391:2- 392:14 (never found allegations credible); Ex. 133, Petterson 55:20-72:17 (does not believe allegations but found them serious at the time); Ex. 140, Sammon 55:6-18, 56:16-18 (never believed allegations); Ex. 143, Scott 306:24-310:20 (never believed allegations); Ex. 146, Stirewalt 153:24-157:11 (does not believe allegations, states that it was "widely known" and "no reasonable person would believe"); Ex. 148, Wells 70:18-25 (never saw evidence and does not believe allegations). Dominion included other deposition testimony, however it does not argue the omitted individuals are responsible for the publication, hence the omission here.
[363] Dominion MSJ at 100. *See* Dominion MSJ, Ex. 146, Stirewalt 136:2-6, 198:4-25.

**b. Dominion provides evidence that purportedly shows the responsibility of Fox executives.**

In addition to the general knowledge of falsity, Dominion claims that specific evidence shows that each of the following Fox executives expressed disbelief in the allegations, yet engaged in the publication process of the broadcasts – making them each responsible: Ms. Scott, Mr. Wallace, Mr. Lowell, Ms. Cooper, Ms. Petterson, Mr. Clark, Mr. Sammon, Mr. Komissaroff, Ms. Rosenberg, Mr. Mitchell, Mr. Schreier, and the Murdochs.[364] Dominion claims that these executives are responsible because, according to Request for Admission responses, they participated in the editorial process and/or attended editorial meetings.[365] Furthermore, Dominion maintains the decision to rebroadcast shows is controlled by the executives, and in this case all shows were rebroadcast.[366]

As to FC, Dominion highlights that Rupert Murdoch was in "constant communication" with Scott and closely involved in various aspects of FNN.[367] Dominion argues that Lachlan Murdoch had similar control.[368] Mr. Dinh was consulted by shows when there were "legal concerns,"[369] and ultimately Ms. Powell and Mr. Giuliani were both banned for that exact reason.[370] Fox asserted privilege when Mr. Dinh was asked about his knowledge and authority.[371]

---

[364] Dominion MSJ at 104-116.
[365] *Id.* at 102. *See* Dominion MSJ, Ex. 372; Ex. 127, Lowell 196:11-201:3, 216:10-16. The Court discussed the various roles and editorial aspects of each of the executive in Section II. Moreover, the Court noted at what times the executives were notified that the Dominion claims were false.
[366] Dominion MSJ Reply Br. at 53.
[367] *Id.* at 45.
[368] *Id.* at 46.
[369] Dominion MSJ, Ex. 601, Dinh 109:8-16.
[370] Dominion MSJ, Ex. 379 at FNN047_04367516.
[371] Dominion MSJ Reply Br. at 47.

**c. Dominion maintains that specific evidence shows the responsibility of FNN hosts, producers, and executives for each broadcast.**

Dominion alleges that Ms. Scott, Mr. Wallace, Ms. Petterson, Mr. Schreier, Mr. Clark, Ms. Bartiromo, and Ms. Grossberg are responsible for the Statements made on *Sunday Morning Futures*.[372] For instance, Dominion notes that Ms. Bartiromo interviewed Ms. Powell the day prior to the November 8, 2020 broadcast.[373] Similarly, Ms. Grossberg provided Ms. Bartiromo with a "one-sheet" outline of what Ms. Powell planned to cover.[374] Dominion highlights the only email Ms. Powell sent Ms. Bartiromo prior to the show: an email from an anonymous author who stated Dominion machines flip votes.[375] The author claimed she has visions and was "internally decapitated," yet neither Ms. Bartiromo nor Ms. Grossberg pressed the matter.[376] Dominion emphasizes that by November 12, 2020, Ms. Bartiromo and Ms. Grossberg were also receiving STRS emails.[377]

Dominion contends that Ms. Scott, Mr. Wallace, Ms. Petterson, Mr. Schreier, Mr. Dobbs, Field, Mr. Hooper, and Ms. Fawcett are responsible for the challenged statements made on *Lou Dobbs Tonight*.[378] Notably, Mr. Schreier believed the allegations were false at the time of airing.[379] Dominion submits evidence showing that Mr. Dobbs was aware of the CISA Statement, that producers discussed the CISA Statement, and that Mr. Cooper had emailed himself articles debunking the claims that Mr. Dobbs went on to disseminate that day and the following.[380] Dominion points out that on November 13, 2020, Mr. Schreier received the STRS

[372] Dominion MSJ at 117.
[373] *Id.* at 118. *See* Dominion MSJ, Ex. 207.
[374] Dominion MSJ at 118. *See* Dominion MSJ, Ex. 423.
[375] Dominion MSJ, Ex. 154.
[376] *Id.*
[377] Dominion MSJ at 122.
[378] *Id.* at 123.
[379] *Id.* at 124.
[380] *Id.* at 125.

email,[381] and on November 16, 2020, producers exchanged several emails debunking the claims.[382] Mr. Fawcett said Ms. Powell was "doing lsd and cocaine and heroin and shrooms."[383] Several more instances of producers doubting the claims abound.[384]

Dominion contends that Ms. Scott, Mr. Wallace, Ms. Cooper, Mr. Clark, Ms. Pirro, Mr. Andrews, and Ms. Voit are responsible for the challenged statements made on *Justice with Judge Jeanine*.[385] On November 13, 2020, a day before the first broadcast at issue, Mr. Andrews forwarded Ms. Pirro an STRS email, stating Dominion's denials would need to be included, and afterwards forwarded the email exchange to Mr. Clark calling Ms. Pirro a "reckless maniac."[386] On the ensuing broadcast, Ms. Pirro flashed Dominion's general denial on air for fifteen seconds.[387] At least two of Ms. Pirro's openings were also sent to the Brainroom and returned with edits.[388]

Dominion argues that Ms. Scott, Mr. Wallace, Ms. Petterson, Gavin Hadden (VP of Morning Programming), and three hosts: Will Cain, Pete Huegseth, and Rachel Campos-Duffy, are responsible for the challenged statements made on the *Fox and Friends* broadcast.[389]

Dominion contends that Ms. Scott, Mr. Wallace, Mr. Cooper, Mr. Mitchell, Mr. Berry, Mr. Hannity, Mr. Fazio, and Mr. Samuel are responsible for the challenged statements made on *Hannity*.[390] Despite never believing Ms. Powell's claim, Mr. Hannity invited Ms. Powell on air.[391] Similarly, Dominion states, Mr. Hannity's staff knew the allegations were false, such as

---

[381] *Id.* at 126.
[382] *Id.* at 127-28. *See* Dominion MSJ, Ex. 439; Ex. 440; Ex. 441.
[383] Dominion MSJ, Ex. 442.
[384] *See* Dominion MSJ at 128-134.
[385] *Id.* at 135.
[386] *Id.* at 136. *See* Dominion MSJ, Ex. 457.
[387] *Id.* at 137.
[388] *Id.* at 136-37.
[389] *Id.* at 139.
[390] *Id.* at 141.
[391] *Id.* at 142.

when Mr. Fazio called Mr. Giuliani 's press conference on November 19, 2020, "comic book stuff."[392]

Dominion lastly claims that Ms. Scott, Mr. Wallace, Ms. Cooper, Mr. Mitchell, Mr. Carlson, Mr. Wells, Mr. Pfeiffer, Mr. McCaskill, and Mr. Yaron are responsible for the challenged statements made on *Tucker Carlson Tonight*.[393] Despite Field stating "management" told the *Lou Dobbs Tonight* team that they could not host Mike Lindell, Mr. Carlson hosted him the same night.[394] Mr. Carlson testified that Mr. Lindell was coming on to discuss his Twitter suspension and Mr. Carlson did not know he would stray from that topic,[395] however the pre-show notes mention Mr. Lindell raising "new evidence" on voting machines.[396] Dominion stresses that Mr. Carlson and Mr. Pfeiffer acknowledged the allegations were unsupported by evidence multiple times far before hosting Mr. Lindell.[397] According to Dominion, the morning of the broadcast at issue, Ms. Earney raised concerns about Mr. Lindell, but those concerns purportedly fell on deaf ears – Mr. Lindell was hosted, spread the allegations, and Mr. Carlson failed to push back.[398]

#### d. Additional Circumstantial Evidence

Dominion supplements its actual malice argument with circumstantial evidence, which it says indicates an inference of actual malice. First, Dominion argues that the allegations were inherently improbable, and the sources relied on were unreliable.[399] Dominion spends about five

[392] *Id.* at 143. *See* Dominion MSJ, Ex. 387 at FNN055_04454599.
[393] Dominion MSJ at 144.
[394] *Id. See* Dominion MSJ, Ex. 499 at FNN062_04471969.
[395] FNN MSJ, Ex. E7 185:21-24, 320:14-321:9.
[396] Dominion MSJ, Ex. 510 (pre-interview email noting that Lindell believed "new evidence came up on the voting machines" and was suspended on Twitter after retweeting election fraud misinformation).
[397] Dominion MSJ at 145. *See* Dominion MSJ, Ex. 169; Ex. 432; Exs. 500-501; Ex. 150; Ex. 503; Ex. 240; Ex. 505; Ex. 386; Ex. 166.
[398] Dominion MSJ at 146-48.
[399] *Id.* at 148-152.

pages quoting various Fox employees who questioned the veracity of the statements and the reliability of their sources.[400] No employees delved into the reliability of any of the supposed evidence, such as the email Ms. Powell forwarded or the redacted affidavits, except for the Brainroom calling Ms. Bartiromo's evidence unreliable.

Second, Dominion contends that Fox had a financial motive, demonstrated by Fox's concerns about ratings, viewership downturn and growing competition with Newsmax.[401] Ms. Grossberg told Ms. Bartiromo that the "audience doesn't want to hear about a peaceful transition."[402] Mr. Dobbs called any day with Ms. Powell or Mr. Giuliani "guaranteed gold."[403] Mr. Hannity told his team that "[r]especting this audience whether we agree or not is critical."[404] Mr. Samuel responded and said that "our best minutes from last week were on the voting irregularities."[405]

Third, Dominion states that FNN departed from journalistic standards by continuing to broadcast the allegations despite the lack of evidence.[406] Dominion contends that several FNN employees admitted in their depositions that journalists should not relay misinformation to viewers.[407]

Fourth, Dominion argues that FNN knew of the preconceived narrative that the Election was stolen and was preparing for it before ballots were cast.[408] As an example, Dominion relies on an instance, on September 27, 2020, when a FNN employee asked Ms. Pirro if she would

[400] *Id.*
[401] *Id.* at 153-157.
[402] Dominion MSJ, Ex. 514.
[403] Dominion MSJ, Ex. 164.
[404] Dominion MSJ, Ex. 518.
[405] *Id.*
[406] Dominion MSJ at 158-59.
[407] Dominion MSJ, Ex. 97, Baier 22:6-20, 26:10-14; Ex. 122, Hannity 212:2-6, 32:20-22, 62:3-11; Ex. 601, Dinh 316:5-25.
[408] Dominion MSJ at 159-60.

accept the election results and Ms. Pirro responded: "I will accept the results but I reserve my right to challenge the massive fraud I am justifiably anticipating."[409] Ms. Bartiromo texted Mr. Schreier saying she was worried about cheating on October 31.[410] On November 10, Steve Bannon texted Ms. Bartiromo, writing "[w]e either close on Trumps victory or del[e]gitimize Biden . . . THE PLAN."[411]

Fifth, Dominion contends that FNN's refusal to retract any statements creates an inference of actual malice.[412]

### *2. FNN's Argument*

#### a. Dominion Failed to Prove Actual Malice in the Statements "Brought Home" to Fox

FNN states that Dominion failed to meet its burden that actual malice was "brought home" to the allegedly responsible publishers. FNN notes that the "actual malice" standard and the "clear and convincing" burden of proof are difficult to overcome and submits that Dominion has failed to do so here.[413]

FNN claims that Dominion must prove that "*each* of the 115 statements . . . was made or published with actual malice" and that the alleged actual malice was "brought home" to the individuals responsible for publication.[414] FNN accuses Dominion of "cherry-pick[ing]" statements and attempting to attribute an overall, abstract knowledge of falsity to FNN generally,[415] rather than demonstrate actual malice of the individuals allegedly responsible in

---

[409] Dominion MSJ, Ex. 547.
[410] Dominion MSJ, Ex. 550.
[411] Dominion MSJ, Ex. 157.
[412] Dominion MSJ at 161.
[413] FNN Ans. Br. at 81-82.
[414] *Id.* at 78. (emphasis in original).
[415] *Id.* at 79.

conjunction with each of the 115 statements.[416] FNN relies on *Greenberg v. Spritzer*, in which the court chose to "analyze the statements by category, but within the context in which each statement was made."[417]

FNN argues that the person responsible for a challenged statement is the author or speaker of the statement.[418] FNN first cites to *Palin v. New York Times Co*.[419] There, the court stated: "[T]he critical question is the state of mind of those responsible for the publication. Because the Times identified Bennett as the author of the editorial, it was his state of mind that was relevant to the actual malice determination."[420] The Court does not read *Palin* as cited by FNN. As Dominion notes,[421] *Palin* does not stand for only holding the speaker responsible for a challenged statement; it instead reviewed several individuals in the chain and determined that they did not recognize any error.[422]

FNN then points to *Page v. Oath Inc.*,[423] *Ertel v. Patriot-News Co.*,[424] *Mimms v. CVS Pharmacy*,[425] and *Flotech, Inc. v. E.I. Du Pont de Nemours & Co*.[426] to argue that Dominion failed to bridge the gap between parties responsible for publication and the actual malice

---

[416] *Id.* at 84.
[417] 155 A.D.3d 27, 47 (N.Y. App. Div., 2nd Dept. 2017). The court in *Greenberg* still analyzed the statements by category, therefore it appears that Fox's reliance on this case is somewhat misplaced as Dominion categorizes the allegations into four kinds and addresses them in a broadcast-specific context.
[418] FNN Ans. Br. at 84.
[419] *Id.* (citing *Palin*, 940 F.3d at 810).
[420] *Palin*, 940 F.3d at 810.
[421] Dominion MSJ Reply Br. at 37
[422] *Palin*, 940 F.3d at 810.
[423] 270 A.3d 833, 850 (Del. 2022) (explaining that the actual malice inquiry examines the mindset of those responsible for the statements, or "those involved in the drafting," which in this case consisted of the authors).
[424] 674 A.2d 1038, 1043-44 (Pa. 1996) (holding that for a third-party defendant to be responsible for "procur[ing] publication, the plaintiff must establish the third-party defendant directed or participated in the publication of the defamatory publication of another;" under this rule, a private investigator who discovered information and sent a report of it to his clients, who then sent it to a newspaper without notice to the private investigator, did not procure publication).
[425] 889 F.3d 865, 868 (7th Cir. 2018) (stating knowledge of falsity cannot be imputed from principal to agent).
[426] 814 F.2d 775, 781 (1st Cir. 1987) (finding the "two…employees with the primary roles in issuing the press release," a marketing manager and a project specialist/program coordinator, to be the publishers for which actual malice must be analyzed).

inquiry.[427] First, these authorities do not apply New York law. And even so, the Court notes these cases do not establish a rule that the only relevant inquiry is to the actual malice of the speaker and not the employees responsible for publication.

**b. FNN contends the record lacks proof of actual malice.**

FNN asserts that FNN hosts believed the allegations, that evidence shows there were good-faith reasons to not discredit the allegations, and that FNN hosts also pushed back on guests and reported Dominion's denials. FNN stresses that "there is a critical difference between not knowing whether something is true and being highly aware that it is probably false,"[428] and here the evidence shows that hosts[429] and producers[430] believed the allegations, or at the least did not flatly disbelieve them. FNN notes that, even now, Ms. Bartiromo testified that she "cannot sit here and say [she knows] what happened in the election even to this day."[431] Similarly, Mr. Dobbs still believes the election was stolen.[432]

FNN argues that a publisher's reliance on elected officials, as well as official sources, shows an absence of actual malice.[433] FNN also contends that where a source swears to their answers and prepares to substantiate the charges, the scale weighs against actual malice.[434] Ms.

[427] FNN Ans. Br. at 85-86.
[428] *Liberman v. Gelstein*, 605 N.E.2d 344, 350 (N.Y. 1992).
[429] FNN MSJ, Ex. I2, Bartiromo Text (Nov. 20, 2020) ("This was fraud. No one can tell me differently."); FNN MSJ, Ex. E6, Pirro 297:22-24, 97:23-25, 99:17-21, 103:13-15; FNN MSJ, Ex. E5, Dobbs 22:4-16 (testifying that he did believe, and still believes, that the election was stolen); FNN MSJ, Ex. E7, Carlson 44:16—20, 45:7-9, 110:7-9; Dominion MSJ, Ex. 103, Cain 136:13-137:4; Dominion MSJ, Ex. 104, Campos-Duffy 167:24-168:10; Dominion MSJ, Ex. 123, Hegseth 141:24-142:13, 131:4-10.
[430] Dominion MSJ, Ex. 121, Grossberg 259:7-11, 261:22-263:4; Dominion MSJ, Ex. 116, Field 154:10-157:14; Dominion MSJ, Ex. 116, Field 154:10-157:14; Dominion MSJ, Ex. 124, Hooper 52:14-55:3; Dominion MSJ, Ex. 114, Fawcett 92:4-93:20; Dominion MSJ, Ex. 96, Andrews 29:18-22, 31:8-19; Dominion MSJ, Ex. 115, Fazio 46:20-51:13; Dominion MSJ, Ex. 141, Samuel 14:12-15:3; Dominion MSJ, Ex. 148, Wells 67:17-68:4, 72:1-5; Dominion MSJ, Ex. 134, Pfeiffer 39:24-40:4.
[431] Fox MSJ, Ex. E4, Bartiromo 283:1-5.
[432] FNN MSJ, Ex. E5, Dobbs 22:4-16 (testifying that he did believe, and still believes, that the election was stolen).
[433] FNN MSJ at 91. *See, e.g.*, *Freeze Right Refrig. & A.C. Servs. V. City of New York*, 101 A.D.2d 175, 184-85 (N.Y. App. Div. 1st Dept. 1984).
[434] *See St. Amant*, 390 U.S. at 733.

Bartiromo and Mr. Dobbs explained that they took the allegations seriously because they were brought by a president and his lawyers, who were respected attorneys.[435] Ms. Pirro and Mr. Carlson testified that they took the election lawsuits seriously because they were made under the threat of Civil Rule 11 sanctions.[436]

Furthermore, FNN claims that FNN hosts did push back on the allegations. For example, FNN provides that not only did Mr. Carlson testify that he did not know Mr. Lindell was going to bring up Dominion,[437] but also said "they're not making conspiracy theories go away by doing that" in response to Mr. Lindell's statement that people do not want to discuss voting machine fraud.[438]

According to FNN, the allegations were not far-fetched because in the past, experts and politicians alike have raised concerns about electronic voting systems' vulnerabilities.[439]

FNN reasserts the argument that Dominion did not sufficiently "bring home" actual malice to responsible parties in regards to FNN executives.[440] Fox relies on *Ertel*, which states a defamation plaintiff must show that a third-party individual "affirmatively act[ed] to direct or participate in the publication" and that "mere failure to hinder its publication" is not enough."[441] FNN cautions that a slippery slope could develop that would "permit inquiry into the state of mind of every single editor, producer, and executive up the chain."[442]

---

[435] FNN MSJ, Ex. E4, Bartiromo 379:14-22; Fox MSJ, Ex. E5, Dobbs 21:4-8.
[436] FNN MSJ, Ex. E6, Pirro 352:17-23; FNN MSJ, Ex. E7, Carlson 330:19-331:5.
[437] FNN MSJ, Ex. E7 185:21-24, 320:14-321:9. *See Jones v. Taibbi*, 508 F.Supp. 1069, 1074 n.12 (D. Mass. 1981) ("[I]t is one thing to require a newspaper to check the accuracy of an interview. But it may be another matter to hold a TV newsperson responsible for the spontaneous live utterance of an interviewee.").
[438] FNN MSJ, Ex. A38, *Tucker Carlson Tonight* 19-20.
[439] For instance, Ms. Bartiromo and Mr. Hannity testified that they found the allegations credible where Senator Klobuchar, Congresswoman Maloney, and Stacey Abrams expressed similar concerns FNN MSJ, Ex. E4, Bartiromo 196:16-197:2, 379:11-18; FNN MSJ, Ex. E8, Hannity 44:1-18, 187:7-19; 317:12-16.
[440] FNN Ans. Br. at 117-32.
[441] *Ertel*, 674 A.2d at 1043.
[442] FNN Ans. Br. at 120.

FNN contends that Dominion has produced no evidence of executives exercising direct control over the challenged statements.[443] In support of this, FNN references instances throughout the record of executives disclaiming control over the scripts.[444] For example, Ms. Cooper said she rarely reviewed scripts.[445] Ms. Bartiromo said Mr. Clark could not tell her she could not book people, because it was her show.[446] Mr. Dobbs said he did not receive instructions or guidance about covering the allegations, directly or indirectly, from executives.[447] FNN states that Dominion incorrectly named Mr. Schreier as a responsible individual for *Sunday Morning Futures*, but that Mr. Schreier does not oversee that show.[448] In addition to the absence of participation in the publication, FNN says that the executives did not disbelieve the allegations.[449]

FNN asserts that Dominion's circumstantial evidence is insufficient to show actual malice. FNN says that it had reason to be dubious of Dominion's outreach because "mere knowledge of self-serving denials does not prove that someone '*in fact* entertained serious doubts as to the truth' of the statement."[450] FNN similarly refers to the state audits as self-serving.[451] FNN counters Dominion's reasoning that public, objectively verifiable evidence contradicted the allegations by stating that the CISA Statement lacked verifiable evidence to properly debunk the claims.[452] FNN maintains that FNN hosts, such as Mr. Dobbs and Ms. Bartiromo, were therefore rightfully skeptical.[453] Additionally, FNN claims that FNN employees

---

[443] *Id.*
[444] *Id.* at 122-133.
[445] Dominion MSJ, Ex. 108, Cooper 79:2-4.
[446] Dominion MSJ, Ex. 98, Bartiromo 247:16-248:6.
[447] Dominion MSJ, Ex. 111, Dobbs 99:16-100:3.
[448] FNN Ans. Br. at 128.
[449] *Id.* at 134-37.
[450] *Id.* at 137-38 (quoting *St. Amant*, 390 U.S. at 731) (emphasis added).
[451] *Id.* at 143-44.
[452] *Id.* at 140.
[453] *Id.* at 141.

allegedly conducted their own research countering the statements.[454] FNN argues that this alone is not actionable purposeful avoidance.[455] FNN disagrees that the allegations were "inherently implausible" because the allegations were made by a sitting president and investigated by the U.S. Department of Justice and the U.S. Department of Homeland Security.[456] FNN dismisses Dominion's "financial motive" argument, stating that "ratings did not drive revenues."[457]

In response to text messages and emails of various FNN employees questioning the veracity of the claims, FNN has generally the same answer to all: FNN was waiting for the evidence. Because the election results would be verified in mid-December, FNN employees believed this was an appropriate length of time to wait and see if that evidence came to light.[458]

### *3. FC's Argument*

#### a. FC Did Not Participate or Have Any Role in the Creation or Publication of the Challenged Statements

FC notes that Dominion did not include any FC employees when listing who at FC was supposedly responsible for each of the Statements.[459] Dominion did not ask Rupert Murdoch in his deposition whether he had discussed Dominion with any FNN hosts, and on redirect he testified that he had not.[460] FNN hosts purportedly confirmed this – Mr. Dobbs, Ms. Pirro, and Ms. Bartiromo all testified that they had not discussed covering Dominion with FC.[461] Mr.

454 *Id.* at 143.
455 *Id.* at 147-48.
456 *Id.* at 149-50.
457 *Id.* at 151. *See* Dominion MSJ, Ex. 113, Dorrego 31:20-32:9, 237:6-7 (revenue from TV providers make up majority of the revenue, which is not affected by viewership). *See, e.g.*, Dominion MSJ, Ex. 113, Dorrego 258:23-259:5, 287:18-289:1, 297:8-298:11, 346:5-12, Ex. 102, Briganti 79:21-80:3, 130:6-7; Ex. 108, Cooper 171:8-13 (ratings and viewership drop after elections).
458 *Id.* at 145-47.
459 FC Ans. Br. at 17.
460 Fox MSJ, Ex. E41, R. Murdoch 352:24-354:2.
461 FC Ans. Br. at 18-20. *See* Fox MSJ, Ex. E29, Dobbs 96:22-23, 99:24-100:3; Ex. E25, Pirro 421:21-422:8; Ex. E26, Bartiromo 259:24-260:16, 406:6-17.

Carlson testified that he cannot recall ever speaking with anyone at FC about Dominion, Ms. Powell, or Mr. Lindell.[462]

FC asserts that because Dominion has not demonstrated that anyone at FC was responsible for the challenged statements, Dominion turns to the argument that the Murdochs occasionally attended the twice daily meetings;[463] however, nobody present at the meetings testified that they spoke with either of the Murdochs about Dominion.[464] FC maintains that no witness recalls either of the Murdochs even being present when Dominion or the statements at issue were discussed.[465] And assuming that that evidence was provided, FC submits that it still would be insufficient to create responsibility for the publication considering the Murdochs only gave suggestions.[466]

Last, FC—citing *Ertel*—states that to find anyone from FC participated in the publication, there must be action, not just a failure to hinder publication. FC's argument mirrors FNN's same argument on this point.

**b. No Clear and Convincing Evidence of Actual Malice**

FC alleges that assuming Dominion could prove FC directed FNN to publish any of the statements at issue, Dominion's argument would still fail because there is no clear and convincing evidence of actual malice.[467] FC argues that Dominion cannot connect any of the FC employees' statements of disbelief, doubt, or concern to the challenged statements.[468] FC

---

[462] Fox MSJ, Ex. E27, Carlson 165:19-166:1.
[463] FC Ans. Br. at 21.
[464] *Id.*
[465] *Id.* at 22.
[466] *Id.* at 25-27. *See, e.g.*, Fox MSJ, Ex. E40, L. Murdoch 63:3-8 ("I'm not responsible for the editorial on Fox News.")
[467] FC Ans. Br. at 28.
[468] *Id.* at 29.

mirrors FNN's argument that the record does not support a financial motive to publish the Statements.[469]

***4. The Court Will Not Grant Summary Judgment as to Actual Malice.***

The Court has taken time to set out the legal and factual arguments of Dominion, FNN and FC. The Court does this to demonstrate that multiple genuine issues as to material facts and that no party is entitled to judgment as a matter of law on the element of actual malice. The parties have generated a record that shows disputed material facts. Although both FNN and FC suggest the Statements should be examined individually, tracing each to determine whether someone responsible for the publication acted with actual malice as to the specific allegation of defamation. Dominion grouped the Statements into four types, proffered evidence explaining who it believes is responsible for the publication of each broadcast, and supported its claim that those individuals acted with actual malice with ample evidence. FNN and FC have offered evidence supporting their claims, contending that implicated individuals did not reach the level of involvement necessary to constitute responsibility for the publication and that the individuals did not act with actual malice.

The Court does not weigh the evidence to determine who may have been responsible for publication and if such people acted with actual malice – these are genuine issues of material fact and therefore must be determined by a jury. Accordingly, the Court will deny summary judgment on the issue of actual malice, finding that genuine issues as to material fact exist and no party is entitled to judgment as a matter of law.

---

[469] *Id.* at 31.

### E. THE COURT FINDS THAT THE STATEMENTS CONSTITUTE DEFAMATION *PER SE*

Under New York law, a statement is defamatory *per se* if it "tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace."[470] "[I]f [a statement] (1) charges the plaintiff with a serious crime; [or] (2) tends to injure the plaintiff in her or his trade, business or profession" it is considered defamatory *per se*.[471] Specifically, a statement charging a company with fraud, deception, or other misconduct in its business is defamatory *per se*.[472] Where a statement is defamatory *per se*, a plaintiff need not prove damages to establish liability, as "injury is presumed."[473] Whether a statement is defamatory *per se* is a question of law.[474]

Dominion alleges that each of the four categories of Statements is defamatory *per se*. The Statements claimed that Dominion committed election fraud; manipulated vote counts through its software and algorithms; is owned by a company founded in Venezuela to rig elections for dictator Hugo Chavez; and paid kickbacks to government officials who used its machines in the Election. According to Dominion, all these allegations strike at the "basic integrity" of its business: providing voting systems to state and local governments.[475] Dominion notes that a case involving nearly identical statements in support of its argument held that the challenged statements were defamatory *per se*.[476]

Fox does not argue against Dominion's assertion that the statements are defamatory *per se*.

---

[470] *Kasavana*, 172 A.D.3d at 1044; *Smartmatic v. Fox. Corp.*, 2023 WL 1525024, at *14 (Del. Super. Feb. 3, 2023).
[471] *Kasavana*, 172 A.D.3d at 1044.
[472] *Harwood Pharmacal Co. v. Nat'l Broad. Co.*, 9 N.Y.2s 460, 463 (N.Y. 1961).
[473] *Celle*, 209 F.3d at 179 (2d Cir. 2000); *Kasavana*, 172 A.D.3d at 1046.
[474] *Geraci,* 15 N.Y.3d at 344.
[475] Dominion MSJ at 87 (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670 (N.Y. 1981)).
[476] *Smartmatic USA Corp. v. Fox Corp*, 2022 WL 685407, at *20, 22, 23, 28 (N.Y. Sup. Ct. Mar. 8, 2022), *aff'd as modified by Smartmatic USA Corp. v. Fox Corp.*, 213 A.D.3d 512 (N.Y. App. Div. 1st Dept. 2023).

Because the evidence and analogous case law holds allegations such as the ones made in this civil proceeding are defamatory *per se* and Fox has not contended otherwise, the Court holds, as a matter of law, that Dominion is entitled to summary judgment on the element of defamation *per se*.

### F. FOX[477] IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO DAMAGES.

Under New York law, if a statement is defamatory *per se*, the injury to the plaintiff is assumed, and may recover at least nominal damages.[478] "The issue of whether a statement is actionable per se is for the court."[479] A statement can be found defamatory *per se* "where a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury in conclusively presumed."[480] The Court has already found that the Statements are defamatory *per se*. Dominion is entitled to, at the very least, nominal damages if Dominion carries its burden on the other elements of its defamation claims.

FNN argues that Dominion failed to show: (i) that Dominion actually incurred the losses as claimed; (ii) that FNN's actions can be directly attributed to such losses; or (iii) the identities of the customers that Dominion lost because of the alleged defamatory statements by FNN.

FNN first contends that Dominion is not entitled to recover economic damages, including lost profits and lost enterprise value, because Dominion's calculation of the claimed damages is flawed. FNN pleads that "it is simply unrealistic that a company that was generating as little as $10.6 million in annual EBITDA before the 2020 election could have skyrocketed to *$1 billion* in enterprise value in the few short years that followed."[481] FNN states that even if Dominion

[477] FC has adopted FNN's arguments on damages.
[478] *Celle*, 209 F.3d at 179.
[479] *Sheindlin v. Brady*, 597 F.Supp.3d 607, 626 (S.D.N.Y. 2022) (citing *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001)) (applying New York law).
[480] *Id.* (citing *Celle*, 209 F.3d at 180).
[481] FNN MSJ at 148 (emphasis in original).

can prove these "astronomical losses," Dominion cannot prove that the losses were caused by FNN's coverage.[482]

FNN argues that under New York law, a defamation plaintiff must prove that the defamatory statements played "a material and substantial part in inducing others not to deal with the plaintiff, with the result that special damages, in the form of lost dealings, are incurred" and such losses must be proven with "reasonable certainly and without speculation."[483] Additionally, New York requires that a plaintiff specifically name the "persons who ceased to be customers, or who refused to purchase" the plaintiff's goods or services.[484]

FNN asserts that the record shows Dominion's customers were *not* influenced by any of the allegations or media reports regarding the Election, and Dominion's claims are merely conjecture, far short of the evidentiary bar required under New York law. FNN points to the record to show that representatives from various customers made no mention of any statements from FNN when questioned about why they declined to contract with Dominion.[485] Furthermore, FNN pleads that instead of showing any lost profits, the record shows that Dominion's 2021 revenue after the Election *exceeded* its own pre-election projections.[486]

Lastly, FNN claims that Dominion is not entitled to punitive damages as a matter of law, because under New York law, punitive damages can only be awarded upon showing common-law malice, requiring proof that the defendant made defamatory statements "out of hatred, ill

---

[482] *Id.* at 149.

[483] *Id.* (citing *Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs P.C.*, 136 A.D.2d 633, 634 (N.Y. App. Div. 1988) and *Wolf St. Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 33 (N.Y. App. Div. 1985)).

[484] *Id.* at 150 (citing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F.Supp.2d 235, 239-40 (S.D.N.Y. 1999)).

[485] FNN MSJ at 151. "Dominion was not awarded the Morris County, New Jersey contract because 'ES&S's machine won on four of five measures and [its] pricing was comparable to Dominion.'" Ex. F3, Dudney Report ¶ 56.

[486] *Id.* at 152. Dominion projected 2021 revenues between $51.5 and $89.6 million. Dominion's revenue in 2021 was $94.6 million. Dudney Report ¶ 74.

will, or spite" against the plaintiff.[487] FNN pleads that Dominion cannot, and did not, show that any individual at FNN harbored "hatred, ill will, or spite" against Dominion when making or publishing the contested statements.[488]

Dominion argues that under New York law, when accusations are defamatory *per se*, the injury is presumed, and the jury may award presume damages without special proof. Dominion notes that FNN's reliance on *Wolf St. Supermarkets* to argue that Dominion is required to show pecuniary loss is flawed and cites to *Metro. Opera. Ass'n*, where the S.D.N.Y. court held that a corporate defamation plaintiff can "show actual harm to reputation and recover damages based on types of loss other than specific instances of pecuniary business loss."[489] Dominion maintains that, under New York law, defamed corporations are entitled to all economic losses that "flow directly from the injury to reputation caused by the defamation."[490]

Dominion also contends that FNN misstated the applicable law on pecuniary damages. Dominion asserts that the full language of New York law on common-law damages requires that the defendant made defamatory statements "with deliberate intent to injure or made out of hatred, ill will, or spite or made with willful, wanton or reckless disregard of another's rights."[491]

The Statements involve allegations that Dominion created an "algorithm" that was capable of "flipping" votes, which was then installed on their voting machines and systems, and subsequently used to "steal" the Election from a sitting United States President. Such accusations directly implicate and damage the "basic integrity" or the "creditworthiness" of Dominion, a voting technology company which relies on the reputation of the integrity and security of its

---

[487] *Id.* at 155 (citing *Celle*, 209 F.3d at 184).
[488] *Id.* at 155.
[489] Dominion Opp. at 183.
[490] *Id.* at 185 (citing *Robertson v. Doe*, 2010 WL 11527317, at *3 (S.D.N.Y. May 11, 2010)).
[491] *Id.* at 189-90 (citing New York Pattern Jury Instructions § 3:30, and *Prozeralik v. Capital Cities Commc'ns, Inc.*, 626 N.E.2d 34, 42 (N.Y. 1993)).

voting machines and software. As such, the Statements are defamatory *per se*, which in turn creates a presumption of damages to Dominion, who may recover at least nominal damages.

The analysis ends here. The calculation of damages is a question for the jury. As for other damage points, FNN questions the amount of damages and how those damages would be calculated. FNN argued these points strongly in its papers and at the hearing; however, FNN does not make a sustainable argument that Dominion is not entitled to damages as a matter of law or fact. In addition, the Court is aware that the parties have experts on damages and causation. Some, if not all, of these experts will testify at trial. The damage issue is fully joined and intensely factual. The Court will revisit the damages issue (including punitive damages) after the evidence has closed and, if necessary, tailor the jury instructions accordingly. The Court denies summary judgment on damages.

### G. FNN and FC Cannot Avail Themselves of Certain Defenses Like the Neutral Report and Fair Report Privileges or The Privilege for Opinion.

#### *1. Newsworthiness/Neutral Reportage Privilege Fails to Shield FNN from Liability*

The neutral report privilege bars recovery for defamation when the challenged statements, even if defamatory, are "newsworthy."[492] The sheer making of an allegation may be newsworthy.[493] *Edwards*, the case that set forth the doctrine, opines that the First Amendment does not require that the press "suppress newsworthy statements merely because it has serious doubts regarding their truth."[494] Where a journalist "believes, *reasonably and in good faith*, that his report accurately conveys the charges made," they will be immunized under the neutral report

[492] *See Edwards v. Nat'l Audobon Soc'y, Inc.*, 556 F.2d 113, 120 (2d Cir. 1977) (articulating doctrine).
[493] *Id.*
[494] *Id.*

privilege.[495] In *Cianci v. New Times Pub. Co.*, the Second Circuit noted that *Edwards* "contain[ed] important suggestions that the privilege was limited in scope."[496]

This Court observed in *Dominion I* that the doctrine "seems to run contrary to United States Supreme Court precedent as it seems to create a nearly unqualified privilege."[497] This quandary was addressed in *Hogan v. Herald Co.*[498] There, the New York Appellate Division determined that the neutral report privilege could not be reconciled with binding free speech precedent, which bases immunity upon the plaintiff, not the subject matter.[499] The court held that the neutral report privilege "does not apply in this department."[500] New York's highest court then affirmed.[501] Following *Hogan*, the neutral report privilege has continued to be rejected by New York's highest court.[502] This Court expressed reservation as to whether the neutral report privilege was applicable under *Hogan*.[503]

FNN still relies upon the neutral report privilege in contending it is entitled to summary judgment. FNN attempts to reconcile *Edwards* and *Hogan* by claiming that Dominion stretched *Hogan*'s meaning, but in reality *Hogan* does not reject the neutral report privilege.[504] FNN argues that under *Edwards* and subsequent cases, like *Page v. Oath* and *Brian v. Richardson*, the press cannot be held liable for accurately reporting newsworthy allegations made by newsworthy

[495] *Id.* (emphasis added).
[496] 639 F.2d 54, 68-69 (2d Cir. 1980) (holding that "a jury could well find that the New Times did not simply report the charges but espoused or concurred in the harm" where defendant did not provide plaintiff's version of the facts).
[497] *Dominion I* at 41.
[498] 84 A.D.2d 470, 477-79 (N.Y. App. Div. 4th Dept. 1982); *aff'd*, 444 N.E.2d 1002 (N.Y. 1982).
[499] *Id.*
[500] *Id.*
[501] *Hogan v. Herald Co.*, 444 N.E.2d 1002 (N.Y. 1982).
[502] *See Weiner v. Doubleday & Co., Inc.*, 549 N.E.2d 453, 456 (N.Y. 1989); *Huggins v. Moore*, 726 N.E.2d 456, 462 (N.Y. 1999).
[503] *Dominion I* at 41-42.
[504] FNN Ans. Br. at 55. As proof of this statement, FNN cites to *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 105 n.11, 106 (2d Cir. 2000) ("While the New York Court of Appeals rejected the existence of a neutral reportage privilege for private plaintiffs in *Hogan* . . .").

figures (however neither case addresses the neutral report privilege doctrine).[505] FNN claims that the key question in determining when the neutral report privilege applies is whether a reasonable viewer, viewing the statement in the "over-all context in which the assertions were made," would understand the statements as mere allegations to be investigated, rather than facts.[506] FNN asserts that similar to those cases, here FNN neutrally reported the allegations.[507]

FNN theorizes about what limiting the press on reporting newsworthy allegations would look like, posing, for instance, that if there was no neutral reportage privilege "CNN could face liability for reporting Governor Andrew Cuomo's allegations that the women who accused him of sexual assault were liars, since some CNN editors undoubtedly believed the Governor's accusers."[508] FNN goes on to state that if Dominion's interpretation of the law is correct, it should be suing all news outlets, because they all reported on this.[509] Moreover, FNN argues that "New York cannot reject protections afforded by the First Amendment as a matter of 'New York law.'"[510]

Dominion, in turn, contends that New York law has rejected the neutral report privilege because it cannot be squared with free speech precedent, and that there is no federal constitutional basis for the neutral report privilege.[511] From *Gertz* onward, federal constitutional law has "maintained the careful – and highly media-protective – balance it first struck in *Sullivan* and *Curtis Publishing*, requiring an inquiry based on the status of the plaintiff, not the content of the statement."[512] Dominion also states that Fox's argument is weakened by the fact that

---

[505] FNN Ans. Br. at 44. *See Page*, 270 A.3d 833 (Del. 2022); *Brian*, 660 N.E.2d 1126 (N.Y. 1995).
[506] FNN Ans. Br. at 49 (quoting *Brian*, 660 N.E. at 1130-31). *See also Croce v. New York Times Co.*, 930 F.3d 787, 793-95 (6th Cir. 2019); *Green v. CBS Inc.*, 286 F.3d 281, 284 (5th Cir. 2002).
[507] FNN Ans. Br. at 63-67.
[508] *Id.* at 45.
[509] *Id.* at 46-47.
[510] *Id.* at 55.
[511] Dominion MSJ at 164.
[512] *Id.* at 166.

Dominion agreed to an actual malice standard, which is "the greatest amount of protection available under the law."[513] Dominion stresses that Fox is taking an inferential step when relying on *Page* and *Brian*, because neither case discussed newsworthiness.[514] In the alternative, Dominion argues that if the neutral report privilege applied, FNN could not meet its requirements because FNN did not provide "disinterested reporting," but instead espoused and concurred in the challenged statements.[515]

*Hogan* is binding on this Court. *Hogan* rejects the neutral report privilege and, therefore, the Court will not apply the privilege here. The Court would not be the first trial court to determine that it is bound by *Hogan*. In *Fridman v. Buzzfeed, Inc.*,[516] the Supreme Court of New York (a trial court) addressed the neutral report privilege and held:

> Plaintiffs contend that there is no constitutional neutral report privilege under New York law and defendants acknowledge that this issue "has yet to be definitely settled." Admittedly, there are few cases that consider the concept of 'neutral reportage' under New York law.
>
> In *Hogan v. Herald Co.* (84 AD2d 470, 446 NYS2d 836 [4th Dept 1982], the Appellate Division concluded that New York courts do not recognize a neutral report privilege. The Court of Appeals affirmed the Fourth Department's decision without an opinion (*see Hogan v. Herald Co.*, 58 NY2d 630, 458 NYS2d 538 (Mem) [1982]). Although defendants argue that "New York courts, while not using the words 'neutral report,' have acted to protect neutral reports on allegations about public figures by applying other doctrines in defamation law" (NYSCEF Doc. No. 24 at 23), the fact is that defendant failed to cite any binding New York cases that expressly contradict *Hogan*. This Court cannot ignore the clear Court of Appeals precedent; accordingly, the second affirmative defense is severed and dismissed.[517]

Even if the neutral report privilege did apply, the evidence does not support that FNN conducted good-faith, disinterested reporting. Like in *Cianci v. New Times Pub. Co.*, where the

---

[513] *Id.* at 167-68.
[514] *Id.* at 168.
[515] *Id.* at 169-70 (quoting *Edwards*, 556 F.2d at 120).
[516] 2018 WL 2100452 (N.Y. Sup. May 7, 2018).
[517] *Id*. at *4-5.

Second Circuit held that defendant's failure to reveal facts and plaintiff's side of the story was not disinterested reporting,[518] FNN's failure to reveal extensive contradicting evidence from the public sphere and Dominion itself indicates its reporting was not disinterested.

Finally, as raised by the Court at the Hearing, the neutral reportage privilege does not intellectually coexist with the actual malice standard, *i.e.*, the need to demonstrate actual malice is the purported prophylactic for FNN's "slippery slope" concern regarding reporting news. Other courts seem to adopt this approach to the neutral report privilege coexisting with the actual malice standard. The Pennsylvania Supreme Court noted that the neutral report privilege is not necessary because the actual malice standard provides considerable protection to the media in defamation actions.[519] The Pennsylvania Supreme Court held that the neutral report privilege would, in actuality, eliminate a state's power to provide protection to a person's reputation through a defamation lawsuit.[520] The Pennsylvania Supreme Court concluded that it "would not so sharply tilt the balance against the protection of reputation, and in favor of protecting the media, so as to jettison the actual malice standard in favor of the neutral reportage doctrine."[521]

### 2. *Fair Report Privilege Fails to Shield Fox from Liability*

New York has codified fair report doctrine in Section 74 of the Civil Rights Law. It provides that a "civil action cannot be maintained . . . for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding."[522] Thus, to apply the privilege, a publication must be (i) a fair and true report and (ii) of an official proceeding. The privilege is not triggered unless the report comments on a proceeding, not the underlying

---

[518] 639 F.2d 54, 69 (2d Cir. 1980).
[519] *Norton v. Glenn*, 86 A.2d 48 (Pa. 2004).
[520] *Id*. at 56-7.
[521] *Id*. at 57.
[522] N.Y. Civ. Rights Law § 74.

events of such a proceeding.[523] New York courts "do not view statements in isolation."[524] Instead, the court should "consider the publication as a whole."[525] "If context indicates that a challenged portion of a publication focuses exclusively on underlying events, rather than an official proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding."[526] "Doubt regarding whether the report is 'of' a proceeding is resolved against the privilege."[527]

The report must also be "substantially accurate," which is "tested by its effect upon the average reader."[528] If a report produces a different effect on a reader than would a report containing the precise truth about official proceedings, it is not substantially accurate.[529] This requirement is afforded "some degree of liberality" because a report is condensed and reflects some degree of the author's subjective viewpoint.[530] Nonetheless, Section 74 will not shield defamatory statements merely because a party has started judicial proceedings incorporating those statements.[531]

FNN argues that under the fair report privilege, the Statements are not actionable defamatory statements. FNN contends that "so long as it is clear that the press is covering or commenting on proceedings or investigations, not presenting the allegations underlying them as true, there is no defamation at all."[532] FNN alleges that because the privilege is construed

---

[523] *See Fine v. ESPN, Inc.*, 11 F.Supp.3d 209, 217 (N.D.N.Y. 2014); *Corporate Training Unlimited, Inc. v. National Broadcasting Co.*¸ 868 F.Supp. 501, 509 (E.D.N.Y. 1994).
[524] *Alf v. Buffalo News, Inc.*, 995 N.E.2d 168, 169 (N.Y. 2013).
[525] *James v. Gannett Co., Inc.*, 353 N.E.2d 834, 838 (N.Y. 1976).
[526] *Fine*, 11 F.Supp. at 217.
[527] *Dominion I* at 46 (citing *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (N.Y. App. Div. 2nd Dept. 2009)).
[528] *Id.*
[529] *Id.*
[530] *Holy Spirit Ass'n for Unif. of World Christianity v. New York Times Co.*, 399 N.E.2d 1185, 1187 (N.Y. 1979).
[531] *See Williams v. Williams*, 246 N.E.2d 333, 337 (N.Y. 1969) ("We conclude that it was never the intention of the Legislature in enacting section 74 to allow 'any person' to maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release or other communication based thereon and escape liability by invoking the statute.").
[532] FNN Ans. Br. at 67-68.

liberally, it protects reports of proceedings before they take place.[533] It also states that the privilege can be applied to other lawsuits that were commenced, such as Lin Wood's.[534] FNN then states that, if the Court does not accept its logic and "artificially confine[s] [the doctrine] to Powell's lawsuits," on November 25, 2020, Ms. Powell filed her first lawsuit and the privilege was then triggered.[535]

As to the second prong, FNN provides little to illustrate that the statements were substantially accurate reports, only citing the fact that affidavits were discussed, and Ms. Powell used the same the language later used in her filings.[536]

Dominion contends that FNN fails on both prongs. First, Dominion reasons, FNN's interpretation of the privilege is incorrect because it only applies to statements made after November 25, when Ms. Powell filed suit, and the context surrounding the statements indicates they refer to the underlying events.[537] Only one broadcast at issue even referenced Ms. Powell's lawsuit, which Dominion insists referred to Dominion's alleged fraud, not the suit.[538] Second, in the unlikely event a reasonable viewer would take Ms. Powell's statements as report on a lawsuit, they would be inaccurate because Ms. Powell never substantiated her allegations.[539]

A similar fair report privilege argument was rejected in *Khalil v. Fox Corporation*, where the speaker (Ms. Powell, as a guest on *Lou Dobbs Tonight*) was "not working on a case in an

---

[533] *Id.* at 69. FNN cites *Diamond v. Time Warner, Inc.*, 119 A.D.3d 1331, 1333 (N.Y. App. Div. 2014) ("[S]tatement provided background facts for the [plaintiff's] claims in pending and anticipated judicial proceedings.") privilege to "pending and anticipated" proceedings); *Wenz v. Becker*, 948 F.Supp. 319, 323 (S.D.N.Y. 1996) (finding official proceeding commenced where complaint was filed but answer was not); *McNally v. Yarnall*, 764 F.Supp. 853, 856 (S.D.N.Y. 1991) (holding that attorney's statement which "relates directly to a possible position" as a defense related to the underlying charges). Notably, *Diamond* and *McNally* focus on the "substantially accurate" prong, which is not what FNN uses them in support of, and although *Wenz* addresses official proceedings, it does not help FNN because there, a complaint had been filed.
[534] FNN Ans. Br. at 70.
[535] *Id.* at 72.
[536] *Id.* at 70-73.
[537] Dominion MSJ at 174-75.
[538] *Id.* at 175.
[539] *Id.* at 175-76.

official capacity nor on behalf of a public agency during her investigation . . . and at no point did Dobbs or Powell attribute the statements . . . to an official investigation or a judicial proceeding."[540]

The Court has already addressed this same argument for application of fair report in *Dominion I*. As the Court noted previously, most of the contested statements were made *before* any lawsuit had been filed in a court. Only one statement, made on the November 30, 2020, *Lou Dobbs Tonight* broadcast, references an official proceeding, and therefore only that allegation can be tested for the privilege. Because the fair report privilege only applies to substantially accurate reports about *proceedings*, not the underlying facts, the statement fails. Ms. Powell alleged that "all the machines are infected with the software code that allows Dominion to share votes" and called it "the most massive and historical egregious fraud the world has ever seen."[541] Because the statements do not concern official proceedings, the fair report privilege should not apply.

### *3. Statements of Fact or Mixed Opinion, Like Those Presently at Issue, Are Not Protected by the Privilege for Opinion*

"Since falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, only statements alleging facts can properly be the subject of a defamation action."[542] In contrast, "pure opinions" are not actionable.[543] In New York, the difference is a question of law.[544]

To ascertain the difference between a pure opinion and a statement of fact, New York courts have articulated a four-factor test: (i) whether the specific language in issue has a precise

[540] 2022 WL 4467622, at *5-6 (S.D.N.Y. Sep. 26, 2022).
[541] Dominion MSJ, Appx. C ¶ 179(m).
[542] *Davis v. Boeheim*, 22 N.E.3d 999, 1004 (N.Y. 2014) (alteration and internal quotation marks omitted).
[543] *Id.*
[544] *Id.*

meaning that is readily understood; (ii) whether the statements are capable of being proven true or false; (iii) an examination of the full context of the communication in which the statement appears; and (iv) a consideration of the broader social context or setting surround the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.[545]

An "opinion" is actionable if a "reasonable listener" would find the speaker conveyed facts about the plaintiff.[546] So "[t]he key inquiry is whether [the] challenged expression, however labeled by defendant, would reasonably appear to state or imply assertions of objective fact."[547]

> In making this inquiry, courts cannot stop at literalism. The literal words of challenged statements do not entitle a media defendant to "opinion" immunity or a libel plaintiff to go forward with its action. In determining whether speech is actionable, courts must additionally consider the impression created by the words used as well as the general tenor of the expression, from the point of view of the reasonable person.[548]

New York law also recognizes "mixed opinions" as actionable statements.[549] A mixed opinion "implies that it is based on facts which justify the opinion but are unknown to those reading or hearing it."[550]

The Court went through a statement-by-statement analysis with the parties at the Hearing. FNN contends that the Statements are all opinions, and therefore are not actionable defamatory statements. Dominion contends the Statements all constitute statements of fact or, at worse, mixed opinion.

---

[545] *Khalil*, 2022 WL 4467622, at *7; *see also Brian*, 660 N.E.2d at 1129..
[546] *600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 934 (N.Y. 1992).
[547] *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1273 (N.Y. 1991).
[548] *Id*. at 1273–74.
[549] *Davis*, 22 N.E.3d at 1004
[550] *Id*.

FNN urges the Court to find that a reasonable viewer would understand that the statements, in the immediate and broader social context in which the statement is made, convey opinions, not fact.[551] FNN cites case law to argue that the use of "[l]oose, figurative, or hyperbolic language" "negate[s] the impression" that a person is "seriously" stating a fact.[552] Here, according to FNN, given the context of the allegations, suggestions of investigating the claims negate the impression that the statement is factual.[553] Furthermore, FNN alleges that "spirited debate on opinion shows does not lend well to statements of actual fact."[554] Under that rationale, FNN claims that many of the contested statements are protected opinions of FNN hosts, not actionable statements. FNN highlights phrases that it argues would cause a reasonable viewer to understand the statements as opinions.[555]

Dominion argues the Statements are not protected opinions. Dominion avers that each of the four kinds of allegations create a verifiable statement of fact.[556] It quotes FNN employees who testified that whether election was stolen and the evidence existed were both questions of fact.[557] Dominion also states that the context weighs in favor of finding that the Statements are

---

[551] FNN Ans. Br. at 74 (citing *Brian*, 660 N.E.2d at 1127-28).
[552] *Id.* (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)).
[553] *Id.*
[554] *Id.* at 74-75 (citing *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 226 (2d Cir. 1985) (recognizing that in the context inquiry, "[s]ome types of writing or speech by custom or convention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."). *See McDougal v. Fox News Network, LLC*, 489 F.Supp.3d 174, 183 (S.D.N.Y. 2020) (holding Carlson's statement that plaintiff engaged in extortion was nonactionable hyperbole in light of (1) the context of *Tucker Carlson Tonight* and (2) jurisprudence that accusations of extortion, without evidence, does not transform an allegation into actionable defamation); *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (holding television host Rachel Maddow's statement that "OAN 'really literally is paid Russian propaganda'" was opinion).
[555] *Id.* at 76. As an example, FNN cites to a November 13, 2020 segment of the *Lou Dobbs Tonight* show in which Mr. Dobbs states "efforts to subvert President Trump and his administration have bene nothing less, in my opinion, than treason." Fox MSJ, Ex. A7, Dobbs.
[556] Dominion MSJ at 79.
[557] *Id.* at 80. *See* Dominion MSJ, Ex. 127, Lowell 128:4-9; Ex. 108, Cooper 175:11-16.

not opinions. Specifically, Fox News and Fox Business hold themselves to the public as news organizations and recognize viewers rely on them for reliable, accurate facts.[558]

Attached to this decision is an Appendix. The Appendix goes through the Statements and decides, as a matter of law, whether the Statement constitutes a statement of fact, mixed opinion or opinion. The Court finds, as a matter of law, that the Statements are either fact or mixed opinion.

Consistent with *Dominion I*, it is reasonably conceivable that viewers of the FNN show segments and tweets of FNN hosts would not view the Statements as merely opinions of the hosts, but either as actual assertions of fact, or implications that the hosts knew something that the viewers do not, i.e., a "mixed opinion." The Statements were capable of being proven true, and in fact the evidence that would prove the Statements was discussed many times (but never presented). Moreover, the context supports the position that the Statements were not pure opinion where they were made by newscasters holding themselves out to be sources of accurate information.

As in *Dominion I*, FNN hosts "repeatedly framed the issue as one of truth-seeking and purported to ground interview questions in judicial proceedings and evidence" and did not read the Statements as mere opinion.[559] Furthermore, it appears oxymoronic to call the Statements "opinions" while also asserting the Statements are newsworthy allegations and/or substantially accurate reports of official proceedings.

Alternatively, the Statements cannot be privileged opinions to the extent the Statements allege election fraud on the part of Dominion. The parties did not address this much in the

---

[558] *Id.* at 80-81. *See, e.g.*, Dominion MSJ, Ex. 98, Bartiromo 344:19-23 (stating she is a "newsperson" who "reports the news"); Ex. 111, Dobbs 19:18-20:17 (stating viewers watch for "accurate information to inform themselves").
[559] *Dominion I* at 48.

briefing or at the Hearing; however, the Court of Appeals of New York has stated that "[a]ccusations of criminal activity, even in the form of opinion, are not constitutionally protected.[560] The Court of Appeals of New York went on:

> While inquiry into motivation is within the scope of absolute privilege, outright charges of illegal conduct, if false, are protected solely by the actual malice test. As noted by the Supreme Court of California, there is a critical distinction between opinions which attribute improper motives to a public officer and accusations, in whatever form, that an individual has committed a crime or is personally dishonest. No First Amendment protection enfolds false charges of criminal behavior.[561]

As discussed above, the Statements are defamatory *per se* because the Statements claimed that Dominion committed election fraud; manipulated vote counts through its software and algorithms; is founded in Venezuela to rig elections for dictator Hugo Chavez; and paid kickbacks to government officials who used the machines in the Election. Dominion contends that the Statements strike at the basic integrity of its business. That alone makes the Statements defamatory *per se*. The Statements also seem to charge Dominion with the serious crime of election fraud. Accusations of criminal activity, even in the form of opinion, are not constitutionally protected.

## VI. CONCLUSION

For the foregoing reasons, the FC Motion and the FNN are **DENIED**. The Dominion Motion is **DENIED** as to the element of Actual Malice and whether FC published the Statements. The Dominion Motion is **GRANTED**, in part, and **DENIED**, in part, as set out in this decision.

---

[560] *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1307 (N.Y. 1977).
[561] *Id.*

The Court will allow this civil action to go to a jury trial. The jury questions will relate to: (i) publication as to FC; (ii) actual malice as to FNN and/or FC; and (iii) whether Dominion incurred any damages.

**IT IS SO ORDERED**

March 31, 2023.
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>FOX NEWS NETWORK, LLC,<br><br>Defendant. | C.A. No.: N21C-03-257 EMD |
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>FOX CORPORATION,<br><br>Defendant. | C.A. No. N21C-11-082 EMD |

**Appendix**

# I. STANDARD OF REVIEW

## A. FACT OR OPINION

Under New York law, the court must decide as a matter of law whether the challenged statement is an opinion.[562] The New York Constitution protects expressions of "pure" opinion with absolute constitutional protection.[563] "Imaginative expressions" and "rhetorical hyperboles" are considered "pure" opinion and protected as such.[564] "The inquiry into whether a statement should be viewed as one of fact or one of opinion must be made from the perspective of an 'ordinary reader' of the statement."[565] "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'"[566] "[T]he fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat or publish it without regard to its accuracy or defamatory character."[567]

Courts look at several factors to determine whether a statement constitutes an opinion: (i) whether the specific language in issue has a precise meaning that is readily understood; (ii) whether the statements are capable of being proven true or false; (iii) an examination of the full context of the communication in which the statement appears; and (iv) a consideration of the broader social context or setting surround the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.[568]

The court in *Khalil v. Fox Corp.* found that when statements included precise and readily understood language such as "we have evidence" and "Khalil is a liaison with Hezbollah," the statements were capable of being proven true or false, and thus not an expression of opinion.[569] The court stated that "the continued discussion of evidence and affirmative statements would not indicate to a reader or listener that Dobbs or Powell were merely stating their opinions."[570]

Likewise, the court in *Gross. v. New York Times, Co.* found that when the contested statements were made "in the course of a lengthy, copiously documented newspaper series that was written only after what purported to be a thorough investigation," it would be understood by a reasonable reader as assertions of fact capable of being proven true or false, despite the defendant's usage of hypothetical or conclusory language.[571]

---

[562] *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 178 (2d Cir. 2000).
[563] *Id.*
[564] *Id.*
[565] *Id.*
[566] *Brian v. Richardson*, 87 N.Y.2d 46, 51 (N.Y. 1995).
[567] *Id.* at 54.
[568] *Khalil v. Fox Corp.*, 2022 WL 4467622, at *7 (S.D.N.Y. Sept. 26, 2022).
[569] *Id.*
[570] *Id.*
[571] *Gross v. New York Times, Co.*, 82 N.Y.2d 146, 154-155 (N.Y. 1993).

Additionally, the court in *Immuno AG. v. Moor-Jankowski* found that when a "letter to the editor" was published in the Journal of Medical Primatology where the authors were fully identified to the readers of the letter, the immediate context of the letter would "induce the average reader of this Journal to look upon the communication as an expression of opinion rather than a statement of fact, even though the language was serious and restrained."[572]

However, the court in *Brian v. Richardson* found that when statements in dispute were published in an Op Ed section of a newspaper which are "traditionally reserved for the airing of ideas on matters of public concern," and the defendant disclosed from the outset of the article that they were not a disinterested observer, coupled with the tone of the article being "rife with rumor, speculation and seemingly tenuous inferences," a reasonable reader could not have understood the disputed statements as assertions of fact.[573]

A party that repeats defamatory facts is normally responsible even though the re-publication consists only of a quotation.[574] Publication of facts attributable to a third person are not automatically transformed into the opinion of the publisher even when the facts can be separated out and no endorsement is given.[575] As such, the Court will not only look to what is said by the FNN host, but all the content in the Statement, even if what is said in the Statement would constitute a "quotation" from third party.

## B. Mixed Opinion

A mixed opinion is a statement of opinion that "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it . . . . The actionable element of a 'mixed opinion' is not the false opinion itself – it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking."[576]

The court in *Khalil v. Fox Corp.* found that when the defendant "repeatedly gave the impression . . . that they possessed unknown facts which supported their claims about Khalil," there was sufficient evidence to find that the challenged statements constituted actionable "mixed opinions."

However, the court in *Nunes v. NBCUniversal Media, LLC* found that the defendant's statement, "Still, the Republicans have kept Mr. Nunes on as the top Republican on the intelligence committee. How does that stand? How does that stay a thing?" was not an actionable statement of fact or a mixed opinion because the statement did not have a precise meaning, is not

---

[572] *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 253-54 (N.Y. 1991).
[573] *Brian*, 87 N.Y.2d at 53.
[574] *Hogan v. Herald Co.*, 84 A.D. 470, 477 (N.Y. App. Div. 4th Dept. 1983), aff'd, 444 N.E.2d 1002 (N.Y. 1982).
[575] *Weiner v. Doubleday & Co., Inc.*, 549 N.E.2d 453, 455-56 (N.Y. 1989).
[576] *Khalil*, 2022 WL 4467622, at *2 (citing *Sorvillo v. St. Francis Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015)).

capable of being proved or disproved, and the average viewer would not reasonably believe that the statement was based on undisclosed facts.[577]

## II. The Statements

### A. November 8, 2020, Sunday Morning Futures Broadcast:

#### 1. Excerpt from Dominion:

Powell: Yes. There has been a massive and coordinated effort to steal this election from We the People of the United States of America, to delegitimize and destroy votes for Donald Trump, to manufacture votes for Joe Biden. . . . they . . . used an algorithm to calculate the votes they would need to flip and they used computers to flip those votes . . . from Trump to Biden . . .

Bartiromo: Sidney, I want to ask you about these algorithms and the Dominion software . . . Sidney, we talked about the Dominion software. I know that there were voting irregularities. Tell me about that.

Powell: That's putting it mildly. The computer glitches could not and should not have happened at all. That is where the fraud took place, where they were flipping votes in the computer system or adding votes that did not exist. We need an audit of all the computer systems that played any role in this fraud whatsoever. . . . They had the algorithms . . . That's when they had to stop the vote count and go in and replace votes for Biden and take away Trump votes.

Bartiromo: I've never seen voting machines stop in the middle of an election, stop down and assess the situation.[578]

#### 2. Omitted Context Offered by Fox:

Bartiromo: President Trump says the votes are wrong, and he is readying new lawsuits to drop tomorrow . . . containing what he says is evidence of voter and ballot fraud, potentially a stolen election. Coming up, Rudy Giuliani and Sidney Powell make the president's case right here.

Bartiromo: But, first, President Trump responding to the media's announcement of a Biden presidency yesterday with this statement. "The simple fact is, the election is far from over." . . .

---

[577] *Nunes v. NBCUniversal Media, LLC*, 2022 WL 17251981, at *8 (S.D.N.Y. Nov. 28, 2022). For context, the defendant was commenting on allegations that the plaintiff, the then-Ranking Member of the House Intelligence Committee, accepted a package from a sanctioned Russian agent, Andriy Derkach.

[578] Compl. ¶ 179, Sunday Morning Futures with Maria Bartiromo, Fox News (Nov. 8, 2020), https://archive.org/details/FOXNEWSW_20201108_150000_Sunday_Morning_Futures_With_Maria_Bartiromo/start/2501/end/2561; Maria Bartiromo (@MariaBartiromo), Twitter (Nov. 8, 2020, 2:13 pm), https://twitter.com/MariaBartiromo/status/1325516879033741319 (Ex. 4).

Bartiromo: The first question everybody wants to know is, what is the evidence the president has alluded to in terms of ballot fraud? What can you tell us? . . .

Giuliani: [R]ight now, we have one. We have two that are being drafted, and the potential is 10. We haven't investigated all the rest of those states. . . . But we have evidence in the rest of those states. You want an estimate? By the end of the week, we'll have four or five. . . .

Bartiromo: If this was systemic, and you have got all this evidence, where is the DOJ?

Giuliani: The answer to that is, I don't know, and I can't worry about it. . . . But, you know, it takes a while to collect 2,000 affidavits, of which we have about half now. . . . Bartiromo: So, how long will this take, Rudy? . . .

Bartiromo: We just heard from Rudy Giuliani . . . [T]here are 10 states, he says, that are potentially stolen, 800,000 votes in question, according to Rudy Giuliani. . . .

Bartiromo: President Trump's legal team . . . is preparing for all-out war, beginning with a slew of new lawsuits this week . . . along with what our next guest says is evidence of voter fraud. Sidney Powell is . . . fighting on the front lines of this battle as part of the president's legal team. . . . Can you walk us through what has taken place here as you see it.

Powell: Yes. There has been a massive and coordinated effort to steal this election from We the People of the United States of America, to delegitimize and destroy votes for Donald Trump, to manufacture votes for Joe Biden. . . . they . . . used an algorithm to calculate the votes they would need to flip and they used computers to flip those votes . . . from Trump to Biden . . .

Bartiromo: If this is so obvious, then why aren't we seeing massive government investigation?

Powell: Those – that's where the fraud took place, where they were flipping votes in the computer system, or adding votes that did not exist. . . .

Bartiromo: I have never seen voting machines stop in the middle of an election, stop down, and assess the situation. . . .

Bartiromo: Sidney, these are incredible charges that you are making this morning. We, of course, will be following this.

Bartiromo: Sidney, I want to ask you about these algorithms and the Dominion software . . . Sidney, we talked about the Dominion software. I know that there were voting irregularities. Tell me about that.

> Powell: That's putting it mildly. The computer glitches could not and should not have happened at all. That is where the fraud took place, where they were flipping votes in the computer system or adding votes that did not exist. We need an audit of all the computer systems that played any role in this fraud whatsoever. . . . They had the algorithms . . . That's when they had to stop the vote count and go in and replace votes for Biden and take away Trump votes.
>
> Bartiromo: I've never seen voting machines stop in the middle of an election, stop down and assess the situation.[579]

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used during the segment, such as "Sidney, we talked about the Dominion software. **I know there were voting irregularities**" and "[c]an you walk us through **what has taken place here** as you see it" indicates to the reasonable viewer that the events in question actually occurred, and Ms. Bartiromo's questioning of her guests is an inquiry of *what* the evidence is, not whether the evidence *exists* in the first place. The assertive language used during the segment does not indicate that these were merely opinions of Ms. Bartiromo or her guests, but an affirmative statement of the events which allegedly occurred.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

**B. NOVEMBER 12, 2020 LOU DOBBS TONIGHT BROADCAST:**

**1. Excerpt from Dominion:**

> Dobbs: Let's talk about, just for a moment, an update on Dominion . . .
>
> Giuliani: Dominion is a company that's owned by another company called Smartmatic, through an intermediary company called Indra. Smartmatic is a company that was formed . . . by three Venezuelans who were very close to, very close to the dictator, Chávez of Venezuela and it was formed in order to fix elections. That's the company that owns Dominion. . . . [A]ll of its software is Smartmatic software . . . So we're using a … company that is owned by Venezuelans who were close to – were close to Chávez, are now close to Maduro, have a history, they were founded as a company to fix elections . . .
>
> Dobbs: It's stunning. And they're private firms and very little is known about their ownership, beyond what you're saying about Dominion. It's very difficult to get a

[579] Fox Appendix of Alleged Defamatory Statements (D.I. No. 1026) ("Fox Appendix"), (Nov. 8, 2020, Sunday Morning Futures Tr.. Ex. A2.) (Jan. 23, 2023).

handle on just who owns what and how they're being operated. And by the way, the states, as you well know now, they have no ability to audit meaningfully the votes that are cast because the servers are somewhere else and are considered proprietary and they won't touch them. They won't permit them being touched. . . . This looks to me like it is the end of what has been a four-and-a-half – the endgame to a four-and-a-half yearlong effort to overthrow the president of the United States. It looks like it's exactly that. . . . This election has got more firsts than any I can think of and Rudy, we're glad you're on the case and pursuing what is the truth.[580]

**2. Omitted Context Offered by Fox:**

Dobbs: The battle for the White House is raging and President Trump and his legal team have no plans to call it quits. Court action is picking up. . . . [A]nd we're told more lawsuits are planned and in the works.

. . .

Dobbs: So joining us now, Jenna Ellis, spokeswoman for the Trump campaign's legal team, attorney to President Trump[.] . . . I want to turn, if I may to actually where we are in the challenges in all of these states[.]

. . .

Ellis: [W]e are still uncovering more evidence. We're only eight days after the election. We still have a lot of legal challenges coming.

. . .

Rep. Andy Biggs: Well, in Maricopa County where two-thirds of voters live, you have Dominion as the vendor right here.

. . .

Dobbs: So you've got . . all sorts of allegations are being made about the trustworthiness of those systems and whether they are or are they not vulnerable to hacking.

. . .

Biggs: We need to find that out and get to the bottom of this.

. . .

Dobbs: President Trump is zeroing in on Dominion voting machines.

. . .

Dobbs: A January 2019 report from the Texas Secretary of State found a number of issues with Dominion's Democracy Suite 5.5A machine, the same model used, for example, in Pennsylvania.

---

[580] Compl. ¶ 179, Lou Dobbs (@LouDobbs), TWITTER (Nov. 12, 2020, 6:03 PM), https://twitter.com/LouDobbs/status/1327024215887851521; Lou Dobbs, Rudy, FACEBOOK (Nov. 12, 2020), https://www.facebook.com/watch/?v=10133836724816 90; Lou Dobbs Tonight (@loudobbstonight), INSTAGRAM (Nov. 12, 2020) https://www.instagram.com/p/CHgkRWyBBus/ (Ex. 18).

. . .

Dobbs: Rudy . . . Let's talk about just for a moment an update on Dominion and how important do you believe the concerns that are being expressed in a number of states about the ability of these machines not to be hacked.

. . .

Giuliani: Dominion is a Canadian company, but all of its software is Smartmatic software. . . . They have a terrible record and they are extremely hackable.

. . .

Dobbs: And now we have to find out whether they did, and with those servers whether they're in Canada, whether they're in Barcelona or Spain or Germany, we know a number of companies, all of them are private, five of them, five of the top voting companies in this country -- at least if they are not in this country, they are processing our votes in this country – they comprise 90 percent of all of the election voting market in this country. It's stunning and they are private firms, and very little is known about their ownership beyond what you're saying about Dominion. It's very difficult to get a handle on just who owns what and how they are being operated. And by the way, the states, as you well know now, they have no ability to audit, meaningfully, the votes that are cast, because the servers are somewhere else and are considered proprietary, and they won't touch them. They won't permit them being touched.

. . .

Dobbs: [H]ow do you proceed now?

Dobbs: Rudy . . . this looks to me like it maybe -- and I say maybe, I'm not suggesting it is -- . . . [b]ut following the operation as when President Trump was a candidate to block his presidency. To follow . . . the special counsel, first 11 months of investigation, then the special counsel investigation which went nowhere except to exonerate him. And the phony impeachment process. This looks to me like it is the end of what has been . . . a four-and-a -half-year-long effort to overthrow the President of the United States. It looks like it is exactly that[.] . . . [I]t is extraordinary that this election has got more firsts than any I can think of. And, Rudy, we're glad you're on this case and pursuing what is the truth and straightening out what is a very complicated and difficult story.[581]

### 3. The Statement Asserts a Fact.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used during the segment, such as "[a]nd by the way, the states, **as you well know now**, they have no ability to audit meaningfully the votes that are cast because the servers are somewhere else and are considered

[581] Fox Appendix, November 12, 2020, Lou Dobbs Tonight Tr. Ex. A5.

proprietary and they won't touch them" and "Rudy, we're glad you're on this case and **pursuing what is the truth** and straightening out what is a very complicated and difficult story" indicates to a reasonable viewer that the events in question actually occurred by using "matter of fact" language, and that the claims presented by Mr. Giuliani are not unproven conspiracy theories, but the "truth."

While a portion of the segment includes language implying that Dobbs is asserting his own opinion, "Rudy . . . this looks to me like it maybe -- and I say maybe, I'm not suggesting it is –" the notion is negated by the rest of the sentence which asserts a fact. Additionally, when viewed in the full context of the overall communication being expressed during the segment, a reasonable viewer would understand that Dobbs and Giuliani are asserting facts, not their own opinions.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

### C. NOVEMBER 13, 2020 LOU DOBBS TONIGHT BROADCAST:

#### 1. Excerpt from Dominion:

Dobbs: Let's start with Dominion, a straight-out disavowal of any claim of fraud against the company, its software or machines. Your reaction.

Powell: Well, I can hardly wait to put forth all the evidence we have collected on Dominion, starting with the fact it was created to produce altered voting results in Venezuela for Hugo Chávez and then shipped internationally to manipulate votes for purchase in other countries, including this one. . . . We also need to look at and we're beginning to collect evidence on the financial interests of some of the governors and Secretaries of State who actually bought into the Dominion Systems, surprisingly enough – Hunter Biden type graft to line their own pockets by a getting voting machine in that would either make sure their election was successful or they got money for their family from it.

Dobbs: Well, that's straightforward.

Powell: People need to come forward now and get on the right side of this issue and report the fraud they know existed in Dominion Voting Systems, because that's what it was created to do. It was its sole original purpose. It has been used all over the world to defy the will of people who wanted freedom.

Dobbs: Sidney, at the outset of this broadcast I said that this is the culmination of what has been an over a four-year effort to overthrow this president; to first deny his candidacy, the election, but then to overthrow his presidency. This looks like the effort to carry out an endgame in the effort against him. Do you concur?

Powell: Oh, absolutely. . . .

Dobbs: Well, good, because this is an extraordinary and such a dangerous moment in our history. . . . Sidney, we're glad that you are on the charge to straighten out all of this. It is a foul mess and it is far more sinister than any of us could have imagined, even over the course of the past four years.[582]

**2. Omitted Context Offered by Fox:**

Dobbs: Those efforts to subvert President Trump and his administration have been nothing less, in my opinion, than treason. An attack on the Constitutional Republic, an attack on the American people. Their conspiracy in league with the Democratic Party, its leaders and the corporate-owned left-wing national media has reached the end game. We are at the conclusion of what has been a four-year assault on Donald Trump.

. . .

Dobbs: Breaking news now. Dominion Voting Systems say they categorically deny any and all of President Trump's claims that their voting machines caused any voter fraud in key swing states or electoral fraud[.] . . . [J]oining us tonight is Sidney Powell, a member of President Trump's legal team[.] . . . Let's start with Dominion, a straight-out disavowal of any claim of fraud against the company, its software or machines.

. . .

Dobbs: [Y]ou're going to have to be quick to go through and to produce that investigation and the results of it. The December deadlines are approaching for electors and just as we saw in 2000 with Bush v. Gore, how critical are those deadlines? And how urgent does that make your investigation and discovery?

. . .

Dobbs: With these allegations, these charges, is the F.B.I. already carrying out an investigation of these voting companies where their servers are domiciled[?]

. . .

Dobbs: Sidney, at the outset of this broadcast, I said this is the culmination of what has been over a four-year effort to overthrow this President[.] . . . This looks like the effort to carry out an end game in the effort against him. Do you concur?[583]

---

[582] Dominion v. FNN Compl. ¶ 179, Lou Dobbs (@LouDobbs), TWITTER (Nov. 13, 2020, 5:35 PM), https://twitter.com/LouDobbs/status/1327379704014393344; Lou Dobbs, Release the Kraken, FACEBOOK (Nov. 13, 2020), https://www facebook.com/115777632950/ videos/680800582822978; Lou Dobbs Tonight (@loudobbstonight), INSTAGRAM (Nov. 13, 2020), https://www.instagram.com/p/CHjF39Uh7Wy/ (Ex. 19)

[583] Fox Appendix, November 13, 2020, Lou Dobbs Tonight Tr. Ex. A7.

### 3. The Statement Asserts a Fact.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used during the segment, such as "[w]ell, **that's straightforward**" when responding to Powell's claims, and telling Powell, "Sidney, we're glad that **you are on the charge to straighten out all of this**[]" implies to a reasonable viewer that Powell's claims are based on fact, and that she is in the process of "straightening out" the "foul mess." Additionally, when viewed in the full context of the overall communication being expressed during the segment, a reasonable viewer would understand that Dobbs and Powell are asserting facts about Dominion, not their subjective opinions.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## D. November 14, 2020 Statement on the @LouDobbs Twitter Account:

### 1. Excerpt from Dominion:

> Read all about the Dominion and Smartmatic voting companies and you'll soon understand how pervasive this Democrat electoral fraud is, and why there's no way in the world the 2020 Presidential election was either free or fair. #MAGA @realDonaldTrump #AmericaFirst #Dobbs.
>
> Embedded in that tweet was a Rudy Giuliani tweet:
>
> Did you know a foreign company, DOMINION, was counting our vote in Michigan, Arizona and Georgia and other states. But it was a front for SMARTMATIC, who was really doing the computing. Look up SMARTMATIC and tweet me what you think? It will all come out.[584]

### 2. Omitted context offered by Fox:

None offered by Fox.

### 3. The Statement Asserts a Fact or Mixed Opinion.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the tweet, such as "[r]ead all about the **Dominion and Smartmatic voting companies** and **you'll soon understand how pervasive this Democrat electoral fraud is**, and why **there's no way** in the world the 2020 Presidential election was either free or fair[]" makes a factual assertion that Dominion were involved in the electoral fraud conspiracy. Furthermore, the accompanying

---

[584] Compl. ¶ 179, Lou Dobbs (@LouDobbs), TWITTER (Nov. 14, 2020, 11:27 AM), https://twitter.com/LouDobbs/status/1327649331789385728 (Ex. 7).

retweet of Mr. Giuliani would be seen by a reasonable viewer as confirmation of the fact asserted in the Statement. When viewed in the full context of the overall communication being expressed in the tweets, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

At best, a strained reading may classify the Statement as a mixed opinion. The Statement implies that there are facts, unknown to the reader, which justify the opinion. Mr. Dobbs asks the reader to "[r]ead all about the Dominion and Smartmatic voting companies" which would lead the reasonable viewer to come to the same conclusion as Mr. Dobbs, *i.e.*, Dominion committed election fraud. Nevertheless, a mixed opinion is actionable under New York law.

As such, the Court finds that the Statement asserts facts or a mixed opinion, and therefore not protected under the opinion privilege.

### E. NOVEMBER 14, 2020 JUSTICE W/ JUDGE JEANINE BROADCAST:

#### 1. Excerpt from Dominion:

> Pirro: The Dominion software system has been tagged as one allegedly capable of flipping votes. Now you'll hear from Sidney Powell in a few minutes who will explain what she has unearthed in the creation of Dominion.
>
> Powell: I am working on the massive aspect of – of system-wide election fraud, definitely impacting the swing states and likely going far beyond that. We're talking about the alteration and changes in millions of – of votes; some being dumped that were for President Trump, some being flipped that were for President Trump, computers being overwritten to ignore signatures. All kinds of different means of manipulating the Dominion and Smartmatic software that, of course, we would not expect Dominion or Smartmatic to admit.
>
> Pirro: I assume that you are getting to the bottom of exactly what Dominion is, who started Dominion, how it can be manipulated if it is manipulated at all, and what evidence do you have to prove this? . . . If you could establish that there is corruption in the use of this software, this Dominion software, as you allege, and you say you have evidence, how do you put that together and prove that on election night, or immediately after, that at the time the votes were being tabulated or put in, that we can prove that they were flipped?
>
> Powell: It was created for the express purpose of being able to alter votes and secure the re-election of Hugo Chávez and then Maduro. . . . There's an American citizen who has exported it to other countries. And it is one huge, huge criminal conspiracy that should be investigated by military intelligence for its national security implications.

Pirro: Yes, and it – hopefully, the Department of Justice, but – but who knows anymore. Sidney Powell, good luck on your mission.[585]

**2. Omitted Context Offered by Fox:**

Pirro: The most important part of democracy is to do it correctly. Most important question tonight is, did we in 2020? . . . America . . . demands all due diligence be exercised in this highly contested presidential election.

. . .

Pirro: The media does not call an election. No one state has yet even certified its vote. Certification, in fact, has not even begun. In fact, the electors do not vote until December 14th. We have one President at a time and until there are certifications or the electors vote on December 14th, the democratic process must be allowed to play out. But many questions remain. On election night around midnight, President Trump was ahead in Pennsylvania, Michigan and Wisconsin. And, then, one by one, the complaints now in the form of affidavits and lawsuits, started coming in.

. . .

Pirro: The Dominion Software System has been tagged as one allegedly capable of flipping votes. Now, you'll hear from Sidney Powell in a few minutes, who will explain what she has unearthed in the creation of Dominion.

. . .

Pirro: And why did a Trump-hating Secretary of State in Georgia agree with Stacey Abrams? And there is a lawsuit by Lin Wood in the United States District Court in Georgia contesting those decisions.

. . .

Pirro: The question ultimately is, will any of these allegations affect the sufficient number of votes to change the result of the election? Maybe yes, maybe no. If the answer is President Trump did not win, then on January 20, Joe Biden will be my President. . . . And in the meantime, please don't tell me that . . . we cannot pursue these irregularities. . . . We will pursue all legal avenues where there are irregularities, anomalies, illegalities and corruption. And until the certification and the electors vote, that is not a lot to ask.

. . .

Pirro: Good evening, Congressman [Kevin McCarthy], thanks for being here. You know, the Democrats are criticizing us for questioning things that are very much a

---

[585] Compl. ¶ 179. Jeanine Pirro (@JudgeJeanine), TWITTER (Nov. 14, 2020, 9:15 PM), https://twitter.com/JudgeJeanine/status/1327797216329617409; Jeanine Pirro (@JudgeJeanine), TWITTER (Nov. 14, 2020, 9:45 PM), https://twitter.com/judgejeanine/status/1327804765804261376; Jeanine Pirro (@JudgeJeanine), TWITTER (Nov. 17, 2020, 9:49 AM), https://twitter.com/JudgeJeanine/status/1328711979163324416; Judge Jeanine Pirro, Part One: Opening Statement, FACEBOOK (Nov. 14, 2020), https://fb.watch/47gZMAHaDn/; Judge Jeanine Pirro, Sidney Powell, FACEBOOK (Nov. 14, 2020), https://fb.watch/47hF09eZYP/ (Ex. 2).

part of lawsuits, affidavits, where people are swearing that they're telling the truth. What are your thoughts on all this?

. . .

Pirro: I referenced some of the affidavits that are part of the lawsuits going on and the most recent lawsuit was filed yesterday by Lin Wood in Georgia[.] . . . How do you think this is all going to end up, [Congressman] Jim [Jordan]?

. . .

Jordan: Well, I mean, we need to investigate. I mean, look, the Democrats spent four years investigating the Russian hoax, but they don't want to take four weeks to investigate the integrity of this election when you had all these affidavits, you have all these concerns? You
had the situation where 6,000 votes in Michigan went for Biden, but they were actually supposed to go for President Trump. So we need to investigate.

. . .

Pirro: [A]nd we can't even follow a legitimate legal process to determine whether or not there was some kind of irregularity or illegality.

. . .

Pirro: The election results in several battleground states continue to be under intense focus as allegations of voter fraud are being investigated. Trump campaign attorney and former federal prosecutor, Sidney Powell joins me now with more. . . Can you give me some idea of what you're working on now and what exactly you are doing on the Trump Campaign, in this effort to identify problems with the election?

Pirro: Well, and now that you mentioned that, they've denied that they have done anything improper and they deny that this claim that there's 6,000 votes that went from President Trump to Biden had anything to do with their software. But at the same time, as you put together your case, Sidney, I assume that you are getting to the bottom of exactly what Dominion is, who started Dominion, how it can be manipulated, if it is manipulated at all, and what evidence do you have to prove this.

Pirro: "[W]hat is your intent here? If you can establish that there is corruption in the use of this software, this Dominion software, as you allege, and you say you have evidence, how do you put that together and prove that on Election Night or immediately after that at the time that the votes were being either tabulated or put in, that we can prove that they were flipped?

. . .

Powell: [A]nd it is one huge, huge criminal conspiracy that should be investigated by military intelligence for its national security implications.

. . .

> Pirro: Yes, and hopefully, the Department of Justice but who knows anymore. Sidney Powell, good luck on your mission.[586]

**3. The Statement Asserts a Fact or a Mixed Opinion.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "[n]ow you'll hear from Sidney Powell in a few minutes who will explain **what she has unearthed in the creation of Dominion**" and "I assume that you are **getting to the bottom of exactly what Dominion is, who started Dominion, how it can be manipulated if it is manipulated at all**," makes factual assertions as to Dominion "flipping votes," Dominion's ownership and control, and its susceptibility to being "manipulated." When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that the Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## F. NOVEMBER 15, 2020 FOX AND FRIENDS SUNDAY BROADCAST:

**1. Excerpt from Dominion:**

> Bartiromo: [S]o much news on the software that was used on the voting machines on election night. There is much to understand about Smartmatic, which owns Dominion Voting Systems. They have businesses in Venezuela, Caracas. . . . We're going to talk about it with Rudy Giuliani and why he does believe he will be able to overturn this election with evidence. He will join me along with Sidney Powell to give us an update on their investigation. This is very important to understand what was going on with this software. Sidney Powell is also talking about potential kickbacks that government officials who were asked to use Dominion actually also enjoyed benefits to their families.[587]

**2. Omitted context offered by Fox:**

None offered by Fox.

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "[t]here is much to understand about **Smartmatic, which owns Dominion Voting Systems**[,]"

---

[586] Fox Appendix, November 14, 2020, Justice with Judge Jeanine Tr. Ex. A9.

[587] Compl. ¶ 179, Fox and Friends Sunday, MEDIA MATTERS FOR AMERICA (Nov. 15, 2020), https://www.mediamatters.org/media/391956 (Ex. 9).

and "[t]hey have businesses in Venezuela, Caracas[]" make factual assertions regarding Dominion and its alleged ownership by Smartmatic. The statement, "Sidney Powell is also talking about **potential kickbacks that government officials who were asked to use Dominion** actually also enjoyed benefits to their families[]" creates an inference to a reasonable viewer that Dominion bribed government officials. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## G. November 15, 2020 Sunday Morning Futures Broadcast:

### 1. Excerpt from Dominion:

Bartiromo: Plus, Sidney Powell on the Venezuela connection and whether kickbacks were involved for those taking on Dominion voting machines, as a hand recount of nearly five million ballots is under way in Georgia.

Giuliani: [T]he rigging . . . went on . . . [A] company that did the votes in 27 states . . . uses Venezuela company software that's been used to steal elections in other countries. . . . And the software that they use is done by a company called Smartmatic. It's a company that was founded by Chávez and by Chávez's two allies, who still own it. And it's been used to cheat in elections in South America. . . . Dominion sends everything to Smartmatic. Can you believe it? Can you believe it? Our votes are sent overseas. They are sent to someplace else, some other country. Why do they leave our country?

Bartiromo: Yes.

Giuliani: And this company had – and this company has tried-and-true methods for fixing elections by calling a halt to the voting when you're running too far behind. They have done that in prior elections. . . . In Detroit, we have evidence that 100,000 ballots were brought in at 4:30 in the morning and counted and to the extent that our witnesses and there are four of them saw it, and one of them is an ex-employee of Dominion, and according to them every single ballot was for Biden and not only that whatever ballots they could see because they weren't Republican so they could get closer, every ballot they could see just had Biden's name on it, nobody else, not even another Democrat. Why does that happen? It happens because you know you're behind, Dominion notifies you, you call off the counting and then you start doing ballots like this.

Bartiromo: Look, I want to show this graphic of the swing states that were using Dominion and this software, the Smartmatic software. You just said it all. This is a Smartmatic, a Delaware entity registered in Boca Raton, Florida, activities in Caracas, Venezuela. The voting machines were used, Dominion voting machines

were used in Arizona, Georgia, Michigan, Nevada, Pennsylvania, and Wisconsin. And I have a graphic showing the states where they stopped counting, which I thought was also strange, to stop counting in the middle of election night. One source says that the key point to understand is that the Smartmatic system has a backdoor that allows it to be . . .

Giuliani: Yeah.

Bartiromo: . . . or that allows the votes to be mirrored and monitored, allowing an intervening party a real-time understanding of how many votes will be needed to gain an electoral advantage. Are you saying the states that use that software did that?

Giuliani: I know I can prove that they did it in Michigan. I can prove it, with witnesses. . . . [Y]es, there is a backdoor.

Bartiromo: Right.

Giuliani: We have people that I can't really disclose, that can describe the hardware in great detail. We have some of the people, former government employees, our government employees, and others that were there at the creation of Smartmatic, they can describe it. They can draw it, they can show it, and then we have proof that I can't disclose yet . . . I mean, I can't imagine you'd give a contract to a company, if you went one step further and found out it's really being run by people that are close to Maduro and Chávez.

Bartiromo: According to public records, Dominion voting machines are used in 2,000 jurisdictions in 30 states. . . . That's troubling, given we already know that at least two software glitches in Georgia and Michigan occurred on election night. Attorney Sidney Powell is leading the charge against Dominion. And she says she has enough evidence of fraud to launch a massive criminal investigation. . . . I want to get right into it. We just heard about the software made by Smartmatic from Rudy.

Powell: President Trump won by not just hundreds of thousands of votes but by millions of votes that were shifted by this software that was designed expressly for that purpose. We have sworn witness testimony of why the software was designed. It was designed to rig elections. . . . It was exported internationally for profit by the people that are behind Smartmatic and Dominion. They did this on purpose. It was calculated. They have done it before. We have evidence from 2016 in California. We have so much evidence I feel like it's coming in through a fire hose.

Bartiromo: Wow, so, Sidney, you feel that you will be able to prove this? Do you have the software in your possession? Do you have the hardware in your possession? How will you prove this, Sidney?

Powell: Well, I have got lots of ways to prove it, Maria, but I'm not going to tell on national TV what all we have. I just can't do that. . . . [T]his is a massive election fraud, and I'm very concerned it involved not only Dominion and its Smartmatic software, but that the software essentially was used by other election machines also. It's the software that was the problem. . . . They can put – it's like drag-and-drop – Trump votes to a separate folder and then delete that folder. . . . We have even got evidence of some kickbacks, essentially.

Bartiromo: Kickbacks. I want to take a short break and come back on that. And I want to ask you about the kickbacks and who took kickbacks in which states. . . . You said that there may have been kickbacks to some people who accepted the Dominion software. Tell me what you mean.

Powell: Well, I mean we're collecting evidence now from various whistle- blowers that are aware of substantial sums of money being given to family members of state officials who bought this software. I mean, we're talking about $100 million packages for new voting machines suddenly in multiple states, and benefits ranging from financial benefits for family members to sort of what I would call election insurance, because they know that they can win the election if they are using that software.

Bartiromo: Which governor or which government official accepted hundreds of millions of dollars in benefits for their family as they took on this software?

Powell: We're still collecting the evidence on that, but it's more than one.

Bartiromo: OK. So, you can't say who you believe took kickbacks

Powell: We have identified mathematically the exact algorithm they used and planned to use from the beginning to modify the votes, in this case, to make sure Biden won. . . . It's massive election fraud. It's going to undo the entire election.

Bartiromo: And, Sidney, you say you have an affidavit from someone who knows how this system works and was there with the planning of it. You believe you can prove this in court?

Powell: Oh, yes. We have a sworn – essentially, a sworn statement from a witness who knew exactly how it worked from the beginning, why it was designed to work that way, and saw when things started shutting down, and they started – stopped counting the votes here. That was the same play that had worked in other countries.

Bartiromo: Wow. This is explosive.[588]

---

[588] Compl. ¶ 179Sunday Morning Futures, FOX NEWS (Nov. 15, 2020), https://archive.org/details/FOXNEWSW_20201115_150000_Sunday_Morning_Futures_With_Maria_Bartiromo/; Maria Bartiromo (@MariaBartiromo), TWITTER (Nov. 15, 2020, 11:13 AM), https://twitter.com/MariaBartiromo/status/1328008263 833690117 (Giuliani); Giuliani: Trump is contesting the

**2. Omitted Context Offered by Fox:**

Bartiromo: Breaking news this morning on the software that President Trump says was weaponized against him. Coming up, President Trump's legal team with new evidence this morning of backdoors on voting machines, ballot tampering, and election interference, Rudy Giuliani with new affidavits and lawsuits charging fraud . . . Plus, Sidney Powell on the Venezuela connection and whether kickbacks were involved for those taking on Dominion voting machines.
. . .

Bartiromo: President Trump's legal team has exactly one month to produce enough evidence to overturn the 2020 election. With a slew of lawsuits pending in multiple states, it's a tall task.



(Trump's tweet on screen during the interview segment.)

Giuliani: And the software that they use is done by a company called Smartmatic, a company that was founded by Chavez and by Chavez's two allies, who still own it. And it's been used to cheat in elections in South America. It was banned by the United States several -- about a decade ago. It's come back now as a subcontractor to other companies. It sort of hides in the weeds. But Dominion sends everything to Smartmatic. Can you believe it? Our votes are sent overseas. They are sent to someplace else, some other country. Why do they leave our country?

Giuliani: And this company had -- and this company has tried-and-true methods for fixing elections.
. . .

Bartiromo: Will you be able to prove this, Rudy?

---

election 'vigorously' in the courts, FOX NEWS (Nov. 15, 2020), https://video.foxnews.com/v/6209933935001?playlist id=3386055101001#sp=show-clips; Maria Bartiromo (@MariaBartiromo), TWITTER (Nov. 15, 2020, 11:39 AM), https://twitter.com/MariaBartiromo/status/1328014693387087873 (Powell); Attorney Powell on election legal challenges that remain active in several states, FOX NEWS (Nov. 15, 2020), https://video.foxnews.com/v/6209930642001?playlist_id=3386055101001#sp=show-clips; Maria Bartiromo (@MariaBartiromo), TWITTER (Nov. 15, 2020, 1:58 pm), https://twitter.com/MariaBartiromo/status/1328049759731453952 (Ex. 21).

. . . .

Bartiromo: I want to show this graphic of the swing states that were using Dominion and this software, the Smartmatic software . . . And I have a graphic showing the states where they stopped counting, which I thought was also strange, to stop counting in the middle of the election night. One source says that the key point to understand is that the Smartmatic system has a backdoor that . . . allows the votes to be mirrored and monitored . . . Are you saying the states that use that software did that?
. . .

Giuliani: [We] can prove that they did it in Michigan
[and] . . . we're investigating the rest.
. . .

Bartiromo: Do you need to have [Dominion] hardware in your possession to prove it? . . . Can you prove the case without the hardware or the software? . . . [Y]ou only have a few weeks Rudy, because they want to certify the state elections early December. . . . Do you believe you will be able to prosecute and be heard within this time frame?

Bartiromo: According to public records, Dominion voting machines are used in 2,000 jurisdictions in 30 states. According to experts, if one site has a flaw, other sites are likely to as well, which is why Texas rejected using Dominion software three times, raising concerns that the system was not safe from fraudulent or unauthorized manipulation. That's troubling, given we already know that at least two software glitches in Georgia and Michigan occurred on election night. Attorney Sidney Powell is leading the charge against Dominion. And she says she has enough evidence of fraud to launch a massive criminal investigation.

Bartiromo: Wow, so, Sidney, you feel that you will be able to prove this? . . . How will you prove this, Sidney?
. . .

Powell: Well, I have got lots of ways to prove it, Maria, but I'm not going to tell on national TV what all we have. I just can't do that.

Bartiromo: OK, but you have a very time -- a small time frame here. The elections are supposed to be certified in early December. Do you believe that you can present this to the courts and be successful within this just couple of weeks?
. . .

Powell: We have even got evidence of some kickbacks, essentially.
. . .

Bartiromo: [Y]ou said that there may have been kickbacks to some people who accepted the Dominion software. Tell me what you mean.

Powell: Well, it's massive election fraud it's going to undo the entire election . . .

Bartiromo: Sidney, you say you have an affidavit from someone who knows how this system works and was there with the planning of it. You believe you can prove this in court?

Powell: Yes.
. . . .

Bartiromo: Wow. This is explosive.
. . .

Bartiromo: [Y]ou [Congressman Jim Jordan] heard what Rudy Giuliani said earlier in the program. He and Sidney Powell are investigating the Smartmatic software and the Dominion voting machines because they do believe, and they say they have evidence, that there were back doors and the votes were manipulated to turn Trump votes into Biden votes. Where are we on that and what do you see in terms of the outcome here of this investigation into voter fraud?
. . .

Jordan: Let the process play out . . . It seems to me we can spend four weeks on getting to the bottom of this election.
. . .

Bartiromo: Now we have to go through the investigatory process.[589]

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "**this company has tried-and-true methods for fixing elections by calling a halt to the voting when you're running too far behind**[]" and "[w]e have **identified mathematically the exact algorithm they used and planned to use from the beginning to modify the votes**, in this case, to make sure Biden won" makes factual assertions regarding Dominion. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

While Ms. Bartiromo poses some of the statements as hypothetical questions to Mr. Giuliani or Ms. Powell, such as "[a]re you saying the states that use that software did that?" Ms. Bartiromo accepts the explanations offered by Ms. Powell and Mr. Giuliani as facts by making

[589] Fox Appendix, November 15, 2020, Sunday Morning Futures Tr. Ex. A10.

affirmative follow-up statements like "Right." or "Wow. This is explosive." A reasonable viewer could understand these hypothetical questions as validations of actual events when viewing the segment in its full context.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## H. NOVEMBER 16, 2020 LOU DOBBS TONIGHT BROADCAST:

### 1. Excerpt from Dominion:

Dobbs: President Trump's legal team says potentially rigged voting machines demand a national security investigation. They are pointing to Dominion Voting Systems' widely used ballot-scanning machines whose software is suspected of inflating vote totals for Joe Biden. Dominion systems used in more than two dozen states. Dominion also one of three companies accounting for almost 90% of the voting equipment in the U.S. elections. . . . Dominion Voting Systems seems to be figuring larger and larger in the interest of your legal team, and what is the latest?

Powell: Oh, definitely, Lou. I've just gotten some stunning evidence from a firsthand witness, a high-ranking military officer, who was present when Smartmatic was designed in a way that – and I'm going to just read to you some of these statements, if you don't mind, so I get them exactly right.

Dobbs: Sure.

Powell: From the affidavit: Designed in a way that the system could change the vote of each voter without being detected. He wanted the software itself to function in such a manner that if the voter were to place their thumbprint or fingerprint on a scanner, then the thumbprint would be tied to a record of the voter's name and identity as having voted but that voter would not be tracked to the changed vote. He made it clear that the system would have to be set up but not leave any evidence of the changed vote for a specific voter, and that there would be no evidence to show and nothing to contradict that the name or the fingerprint or thumbprint was going with a changed vote. Smartmatic agreed to create such a system and produce the software and hardware that accomplished the result for President Chávez. After the Smartmatic electoral management system was put in place, he closely observed several elections where the results were manipulated using the Smartmatic software. . . . Persons controlling the vote tabulation computer had the ability to change the reporting of votes by moving votes from one candidate to another by using the Smartmatic software, and on and on it goes.

Dobbs: And Smartmatic, the relation –

Powell: Smartmatic owns Dominion.

Dobbs: Yes. . . . It's – it is a deeply, deeply troubling election, as I said earlier, the worst in this country's history, bar none, and we have seen official investigative and Justice Department officials slow to move, and it is infuriating to everyone.

Powell: No, we've seen willful blindness. They have adopted a position of willful blindness to this massive corruption across the country, and the Smartmatic software is in the DNA of every vote tabulating company's software and system.

Dobbs: Yes, and it is more than just a willful blindness. This is people trying to blind us to what is going on.[590]

**2. Omitted Context Offered by Fox:**

Dobbs: President Trump's legal team says potentially rigged voting machines demand a national security investigation. They are pointing to Dominion Voting Systems' widely-used ballot-scanning machines whose software is suspected of inflating vote totals for Joe Biden.
. . .

Dobbs: The radical Dems, the RINOS, corporate left wing national media, of course, quick to dismiss any concern about Dominion voting machines being manipulated as a, quote-unquote, conspiracy theory.
. . .

Dobbs: Ronna [Republican National Committee Chair Ronna McDaniel], great to have you with us. . . . Your reaction to what the Trump legal team and others are discovering about Dominion, Smartmatic, and many of the other voting companies, which almost seems like at least a very, very much in election terms, probable cause for a complete and thorough investigation.
. . .

McDaniel: [W]e need to get to the bottom of these election issues and pursue every single one, and that's what the Trump legal team is doing.

Dobbs [to Powell]: Dominion . . . seems to be figuring larger and larger in the interest of your legal team, and what is the latest?
. . .

Powell: I've just gotten some stunning evidence from a firsthand witness, a high ranking military officer who was present when Smartmatic was designed[.]
. . .

---

[590] Compl. ¶ 179, Lou Dobbs Tonight, FOX BUSINESS (Nov. 16, 2020), https://archive.org/details/FBC 20201116 220000 Lou Dobbs Tonight/start/504/ end/564; Lou Dobbs, Sidney Powell, FACEBOOK (Nov. 16, 2020), https://www.facebook.com/115777632950/videos/1625726320970976; Lou Dobbs (@LouDobbs), Twitter (Nov. 16, 2020, 5:45 PM), https://twitter.com/LouDobbs/status/1328469195550576645 (Ex. 8).

Dobbs: I have now received word from a highly reliable source that the F.B.I. does have an investigative team that is now looking into this election.

. . .

Dobbs: It is a deeply, deeply troubling election, as I said earlier, the worst in this country's history bar none. And we have seen official investigative and Justice Department officials slow to move, and it is infuriating to everyone.

. . .

Dobbs: This is the time for the F.B.I. to get into this. This is the time for the court system to work. This is the time for the President to prosecute this investigation and get to the bottom of it[.][591]

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment implies to a reasonable viewer that the Statement asserts facts, such as Smartmatic's ownership of Dominion, "[Dobbs:] Smartmatic, the relation – [Powell:] Smartmatic owns Dominion. [Dobbs:] **Yes**" and that the election fraud actually occurred, "This is people trying to blind us to **what is going on**[]" and "I've just gotten some **stunning evidence** from a firsthand witness." During the segment, Mr. Dobbs dismisses the notion that the allegations are conspiracy theories, stating, "[t]he radical Dems, the RINOS, corporate left wing national media, of course, **quick to dismiss any concern about Dominion voting machines being manipulated as a, quote-unquote, conspiracy theory**," further indicating to the reasonable viewer that the statements are facts, not opinions. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## I. NOVEMBER 18, 2020 LOU DOBBS TONIGHT BROADCAST:

**1. Excerpt from Dominion:**

Dobbs: I want to share with the audience one of the affidavits that has been given to us by an unidentified whistleblower, and it pertains to Dominion….I am alarmed because of what is occurring in plain sight during this 2020 election for president of United States. The circumstances and events are eerily reminiscent of what happened with Smartmatic software electronically changing votes in the 2013 presidential election in Venezuela. What happened in the United States was that the vote counting was abruptly stopped in five states using Dominion software. At the time that vote counting was stopped, Donald Trump was significantly ahead in

[591] Fox Appendix, November 16, 2020, Lou Dobbs Tonight Tr. Ex. A11.

the votes. Then during the wee hours of the morning, when there was no voting occurring and the vote count reporting was offline, something significantly changed. When the vote reporting resumed the very next morning, there was a very pronounced change in voting in favor of the opposing candidate, Joe Biden. That from a whistleblower who was present both in Venezuela in 2013 and in this country as we were counting votes overnight on November 3rd. Your thoughts.

Giuliani: Our votes in 27, 28 states that are counted by Dominion. … And the company counting it is not Dominion, it's Smartmatic, which is a company that was founded in 2005 in Venezuela for the specific purpose of fixing elections. That's their expertise, how to fix elections. They did it a number of times in Venezuela, they did it in Argentina . . . Well, that's the company that was counting and calculating on election night. And they did all their old tricks. They stopped it, they also switched votes around, subtly, maybe 10 per district so you don't notice it. They got caught in Antrim county, which is how we found out about them.

Dobbs: It's outrageous.

Giuliani: We shouldn't be using this company that was founded by Chávez to call votes in America, because their specialty in Venezuela is cheating….And they're using a Venezuelan company as the vote counter, which is known for changing votes.[592]

**2. Omitted Context Offered by Fox:**

Dobbs: All of our guests on this evening's broadcast will be taking up President Trump's fight for a free and fair election. President Trump's attorney, Rudy Giuliani, among our guests.
. . .

Dobbs: Two of our guests tonight have filed sworn affidavits charging election fraud in swing state elections. Garland Favorito says invalid ballots were counted all across Georgia, and Patrick Colbeck alleges Michigan Democrats were able to access a digital back door in the Dominion Voting Software that is the focus of so many allegations and charges across the country.

Dobbs: I want to share with the audience one of the affidavits that has been given to us by an unidentified whistleblower, and it pertains to Dominion. [He then read from the affidavit, which had been filed in federal court in Georgia the day before, and which Powell had read on Lou Dobbs Tonight two days earlier. [Lou

[592] Compl. ¶ 179, Rudy Giuliani Returns to Court to Argue Trump Campaign's Election Case, FOX BUSINESS (Nov. 18, 2020), https://video.foxbusiness.com/v/6210778333001?playlist_id=933116636001#sp=show-clips; Lou Dobbs (@LouDobbs), TWITTER (Nov. 18, 2020, 5:35 PM), https://twitter.com/LouDobbs/status/1329191588216639493; Lou Dobbs (@LouDobbs), TWITTER (Nov. 18, 2020, 4:45 PM), https://twitter.com/LouDobbs/status/1329178820302278668; Lou Dobbs, Rudy Giuliani, FACEBOOK (Nov. 18, 2020), https://www facebook.com/watch/?v=293258 965242628 (Ex. 22).

Dobbs Tonight Tr. 5]; Dkt.6-14 ¶26, Wood v. Raffensperger, No. 1:20-cv-04651 (N.D. Ga. Nov. 17, 2020).]




(Portions of the alleged affidavit were presented during the segment.)

Dobbs: "That, from a whistleblower who was present both in Venezuela in 2013 and in this country as we were counting votes overnight on November 3rd. [To Giuliani] Your thoughts?

Giuliani: Well, Lou, I don't know if people can appreciate this, but I think when they do, they're going to be outraged. Our votes in 27 or 28 states that are counted by Dominion and calculated and analyzed, they're sent outside the United States. and they're not sent to Canada, they're sent to Germany and Spain.

. . .

Dobbs: It's outrageous[.][593]

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates

[593] Fox Appendix, November 18, 2020, Lou Dobbs Tonight Tr. Ex. A14.

an inference to a reasonable viewer that it is factual. The language used in the segment, such as, "[o]ur votes in 27 or 28 states that are counted by Dominion and calculated and analyzed, **they're sent outside the United States**[] and they're not sent to Canada, **they're sent to Germany and Spain**" makes a factual assertion about Dominion. Additionally, during the segment, Mr. Dobbs states that he would like to "share with the audience" an affidavit from an alleged whistleblower who claims to have witnessed Dominion's machines allegedly changing the vote count overnight to favor Biden, which a reasonable viewer would understand this as Mr. Dobbs presenting evidence of the underlying news. Mr. Dobbs also notes that the whistleblower who penned the affidavit was present in both Venezuela in 2013 and in the US during election day, indicating the authenticity of the whistleblower's claims. Mr. Dobbs, in response to Mr. Giuliani's claims that Dominion "did all their old tricks" and "switched votes around," exclaimed, "[i]ts outrageous[,]" which a reasonable viewer would see as affirmation of the claims. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## J. NOVEMBER 19, 2020 LOU DOBBS TONIGHT BROADCAST:

### 1. Excerpt from Dominion:

Dobbs: Another issue at the center of today's news conference, the use of Dominion voting machines and Smartmatic software. Defense attorney Sidney Powell cited a whistleblower's stunning affidavit. It says Smartmatic's technology was used to rig elections in Venezuela. It is now in the, quote, "DNA of every vote tabulating company software and system." Smartmatic and Dominion deny those charges, but Sidney Powell argues that algorithms in the Smartmatic software were used to change results in the presidential election. . . . One of the team members, Sidney Powell, among our guests here tonight. She will be providing more details on how Dominion voting machines and Smartmatic software were used to help Joe Biden. . . . Let's turn to Smartmatic and Dominion. Are they or are they not linked?

Powell: Oh, they're definitely linked. I would call them inextricably intertwined. They have the same history from their inception. I'm sure they're trying to distance themselves from each other, but the fact is that the Dominion machines run the Smartmatic software or parts of the key code of it, and that is what allows them to manipulate the votes in any way the operators choose to manipulate them; and every time there was a glitch, they called it, or connection to the internet, they also violated state laws that required the machines to be certified and nothing to be changed before the votes.

Dobbs: And it's the presumption then that they had the records on those servers of all of the votes that were processed by Dominion or Smartmatic?

Powell: Yes. … It could have run an automatic algorithm against all the votes, which we believe is what happened originally and then the machines had to stop or the counting had to stop in multiple places because President Trump's lead was so great at that point they had to stop the counting and come in and backfill the votes they needed to change the result. . . . There's thousands of people in federal prisons on far less evidence of criminal conduct than we have already against the Smartmatic and Dominion Systems companies.

Dobbs: We have just watched, to everyone in this audience tonight, our election is run by companies, the ownership of which we don't know.[594]

**2. Omitted Context Offered by Fox:**

Dobbs: President Trump's legal team today saying they have the evidence to swing the election to President Trump. [The broadcast then cut to a video of the news conference in which Giuliani provides an overview of the Trump Campaign's key claims and legal strategies.]

Dobbs: Another issue at the center of today's news conference, the use of Dominion voting machines and Smartmatic software. Defense attorney Sidney Powell cited a whistleblower's stunning affidavit . . . It says Smartmatic's technology was used to rig elections in Venezuela.

. . .

Dobbs: Smartmatic and Dominion deny those charges. But Sidney Powell argues that algorithms in the Smartmatic software were used to change results in the presidential election. [The broadcast then cut back to the news conference, where Powell made a series of allegations about backdoors and hacking and flipping votes with algorithms.]

Dobbs: We'll have much more on today's powerful news conference and the powerful charges put forth by the President's legal team. One of the team members, Sidney Powell, among our guests here tonight. She will be providing more details on how Dominion vote machines and Smartmatic software were used to help Joe Biden.

. . .

Dobbs: Breaking news now, Dominion Voting Systems today once again distanced itself from Smartmatic saying, "Dominion is an entirely separate company and

[594] Compl. ¶ 179, Lou Dobbs Tonight, FOX NEWS (Nov. 19, 2020), https://archive.org/details/FBC_20201119_220000_Lou_Dobbs_Tonight/; Trump's Legal Team Still in Evidence Collection Process or Election Challenges, FOX BUSINESS (Nov. 19, 2020), https://video foxbusiness.com/ v/6211050624001#sp=show-clips; Lou Dobbs, Sidney Powell, FACEBOOK (Nov. 19, 2020), https://www.facebook.com/watch/?v=880692419336775; Lou Dobbs (@LouDobbs), TWITTER (Nov. 19, 2020, 5:32 PM), https://twitter.com/LouDobbs/status/1329553227046588417; Lou Dobbs (@LouDobbs), TWITTER (Nov. 19, 2020, 4:55 PM), https://twitter.com/LouDobbs/status/1329543810867671044; Lou Dobbs Tonight (@loudobbstonight), INSTAGRAM (Nov. 19, 2020), https://www.instagram.com/p/CHylMiTBGIs/ (Ex. 10)

fierce competitor to Smartmatic," end quote. "Dominion and Smartmatic do not collaborate in any way and have no affiliate relationship or financial ties."




(Portions of Dominion's "Setting the record straight" emails were shown during the segment.)

<u>Dobbs</u>: Yet in a 2009 lawsuit in which Smartmatic sued Dominion, a very clear relationship between the two companies was laid out. Quote, "The license agreement granted Smartmatic rights to certain patents and patent applications that Dominion owned or controlled and to all know-how, trade secrets, methodologies, and other technical information owned or possessed by Dominion. The license agreement contains a noncompetition provision. This provision limits Smartmatic's rights to develop market or sell products that embody the license technology." So despite what appears to have been, at least, a relationship and it is all but impossible to find any record of either proving or disproving a relationship, because the two firms are privately owned, it becomes a thorny matter, at the very least.

<u>Dobbs</u>: [To Powell] Let's turn to Smartmatic and Dominion. Are they or are they not linked?

. . .

> Dobbs: [W]hat is the next steps for the legal team and when do you believe you will be prepared to come forward with hard evidence establishing the basis for a court to overturn elections or at least results of those elections in a number of battleground states?[595]

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "[Powell] will be providing more details **on how Dominion voting machines and Smartmatic software were used to help Joe Biden**[;]" "[w]e have just watched, to everyone in this audience tonight, **our election is run by companies, the ownership of which we don't know**[;]" and "**Dominion machines run the Smartmatic software** or parts of the key code of it, and **that is what allows them to manipulate the votes in any way the operators choose to manipulate them**" make factual assertions regarding Dominion. While Dobbs does present Dominion's disavowal of the allegations, he immediately casts doubt on Dominion's statements by saying, "[y]et in a 2009 lawsuit in which Smartmatic sued Dominion, a very clear relationship between the two companies was laid out." When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

**K. NOVEMBER 21, 2020 JUSTICE W/ JUDGE JEANINE BROADCAST:**

**1. Excerpt from Dominion:**

> Pirro: The president's lawyers alleging a company called Dominion, which they say started in Venezuela with Cuban money and with the assistance of Smartmatic software, a backdoor is capable of flipping votes. . . . Now, why was there an overnight popping of the vote tabulation that cannot be explained for Biden?[596]

**2. Omitted Context Offered by Fox:**

> Pirro: And now just over two weeks, the President's lawyers come forward alleging an organized criminal enterprise, a conspiracy by Democrats, especially in cities controlled and corrupted by Democrats. The President's lawyers alleging a company called Dominion, which they say started in Venezuela with Cuban money and with the assistance of Smartmatic software, a back door is capable of flipping

---

[595] Fox Appendix, November 19, 2020, Lou Dobbs Tonight transcript. Ex. A18.

[596] Compl. ¶ 179, Judge Jeanine Pirro, Opening Statement (Nov. 21, 2020), https://www.facebook.com/watch/?v=3424348634350374; Jeanine Pirro (@JudgeJeanine), TWITTER (Nov. 21, 2020, 9:15 PM), https://twitter.com/JudgeJeanine/status/1330333931028115456; Jeanine Pirro (@JudgeJeanine), TWITTER (Nov. 21, 2020, 9:16 PM), https://twitter.com/JudgeJeanine/status/1330334182732484611 (Ex. 3).

votes. And the President's lawyers alleging that American votes in a presidential election are actually counted in a foreign country. These are serious allegations, but the media has no interest in any of this.

Pirro: Now, the President's lawyers offered evidence by way of affidavits, which I told you last Saturday as a Judge from a legal perspective, are sworn statements of individuals signed under penalty of perjury, meaning they know they face the penalty of prosecution and five years if they lie. These sworn statements are factual allegations are part of virtually every lawsuit. It's how you start a case. The President's lawyers have indicated that they have 250 such affidavits under oath, people ready to testify. People ready to face the hate that the left has inflicted upon all of us from day one.

Pirro: I ask you, what is the problem in seeking to confirm that this election had no irregularities?

. . .

Pirro: These are the questions that aren't going away. For the sake of our Republic, we have an obligation to get honest and truthful answers, in fact, demand them. Stay tuned.

Pirro: Okay, but Lin, a Federal Judge in Atlanta rejected the lawsuit that this last lawsuit is associated with and this affidavit, District Judge Steven Grimberg, a Trump appointee said he found no evidence of irregularities that affected more than a nominal number of votes.

. . .

Pirro: Well, let me ask you this. Lin, when you say that they were destroying or tried to destroy the ballots. Do you have evidence of that?

Wood: I have video evidence, I posted on my Twitter account. I have photographic evidence. I've posted on my Twitter account. There's no question that they were at the Cobb County Elections Office on Jim R. Miller Park with a shredder truck. We've got video evidence of them shredding the documents putting them in bins, trying to drive off.

. . .

Pirro: [W]ell, people can certainly go to your Twitter account and check that out themselves.[597]

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates

[597] Fox Appendix, November 21, 2020, Justine with Judge Jeanine Tr. Ex. A22.

an inference to a reasonable viewer that it is factual. The language used in the segment, such as "[n]ow, why was there an **overnight popping of the vote tabulation** that **cannot be explained for Biden**?" and "[t]he President's lawyers offered evidence by way of affidavits, **which I told you last Saturday as a Judge from a legal perspective, are sworn statements of individuals signed under penalty of perjury**, meaning they know they face the penalty of prosecution and five years if they lie. **These sworn statements are factual allegations** are part of virtually every lawsuit[]" makes factual assertions regarding Dominion. Pirro implies to her viewers that, as a former judge, the information contained within the affidavits can be trusted as facts. A reasonable viewer would find that Pirro, relying on her credentials, was making assertions of fact by emphasizing the authenticity of an affidavit and the "factual allegations" contained within. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## L. NOVEMBER 24, 2020 LOU DOBBS TONIGHT BROADCAST:

### 1. Excerpt from Dominion:

Powell: [T]here's no doubt that the software was created and used in Venezuela to control the elections and make sure that Hugo Chávez was always reelected as the dictator of Venezuela in what appeared to be, quote, free and fair elections, end quote, but they were manipulated by the software used in the Dominion machines – and used by other machines in the United States, frankly, and we are just continuing to be inundated by evidence of all the frauds here

Dobbs: I think many Americans have given no thought to electoral fraud that would be perpetrated through electronic voting; that is, these machines, these electronic voting companies, including Dominion, prominently Dominion, at least in the suspicions of a lot of Americans.[598]

### 2. Omitted Context Offered by Fox:

Dobbs: Let's start with the ownership of these voting firms. I know you're focusing on that part of the electoral fraud that's been perpetrated this year in this election. Why don't we know who they are?

. . .

[598] Compl. ¶ 179, Lou Dobbs Tonight, FOX BUSINESS (Nov. 24, 2020), https://archive.org/details/FBC 20201124 220000 Lou Dobbs Tonight/start/108 0/end/1140; Lou Dobbs (@LouDobbs), TWITTER (Nov. 24, 2020, 5:37 PM), https://twitter.com/LouDobbs/status/1331366325629968386; Lou Dobbs, Sidney Powell Breaking News, FACEBOOK (Nov. 24, 2020), https://www facebook.com/115777632950/videos/381418186402867; Lou Dobbs Tonight (@loudobbstonight), INSTAGRAM (Nov. 24, 2020), https://www.instagram.com/p/CH_ZbqTBHSE/ (Ex. 13).

> Dobbs: I think many Americans have given no thought to electoral fraud that would be perpetrated through electronic voting; that is, these machines, these electronic voting companies including Dominion, prominently Dominion at least in the suspicions of a lot of Americans.
>
> . . .
>
> Dobbs: Well, you have promised a Kraken will be unleashed. We are – were expecting perhaps your suit would be filed yesterday or today. When shall we expect your lawsuit?
>
> Powell: Well, I think no later than tomorrow. It's just going to be, it's a massive document. And it's going to have a lot of exhibits.
>
> . . .
>
> Dobbs: Your thoughts now about what will be the impact and [can] it be adjudicated in such a way as to meet all of the deadlines that are forced upon you? That is, December 8th and December 14th. Give us your sense of the timing and the urgency of getting this to resolution.[599]

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as: "[l]et's start with the ownership of these voting firms. I know you're focusing on that part of the **electoral fraud that's been perpetrated this year in this election**. Why don't we know who they are?[;]" "I think many Americans have given no thought to **electoral fraud that would be perpetrated through electronic voting; that is, these machines, these electronic voting companies, including Dominion, prominently Dominion**, at least in the suspicions of a lot of Americans[;]" and "**they were manipulated by the software used in the Dominion machine**s – and used by other machines in the United States, frankly, and **we are just continuing to be inundated by evidence of all the frauds here**" assert facts regarding Dominion's participation in electoral fraud. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## M. November 30, 2020 Lou Dobbs Tonight Broadcast:

**1. Excerpt from Dominion:**

> Powell: [W]e need, frankly, to stop the election that's supposed to happen in January because all the machines are infected with the software code that allows

[599] Fox Appendix, November 24, 2020, Lou Dobbs Tonight Tr. Ex. A26.

Dominion to shave votes for one candidate and give them to another, and other features that do the same thing. . . . Different states shaved different amounts of votes or the system was set up to shave and flip different votes in different states. Some people were targeted as individual candidates. It's really the most massive and historical egregious fraud the world has ever seen.

Dobbs: You know, people don't go to jail for their attitude, but in the case of the Secretary of State and the Governor of Georgia right now, one would be tempted to prosecute based on their conduct so far. What is going on with those two individuals?

Powell: [I]t seems that there were significant benefits for both Governor Kemp and perhaps Mr. Raffensperger also, and maybe others on their team, for deciding at the last minute to rush in a contract for Dominion for $107 million for the state.

Dobbs: Now, do we know – you know, I just can't – I think most Americans right now cannot believe what we are witnessing in this election. We have, across almost every state, whether it's Dominion, whatever the company – voting machine company is, no one knows their ownership, has no idea what's going on in those servers, has no understanding of the software, because it's proprietary. It is the most ludicrous, irresponsible and rancid system imaginable in the world's only superpower.

Powell: Dominion and its minions and other state officials everywhere are apparently out there trying to destroy everything they can get to before we can seize it . . .

Dobbs: And as I said at the outset of the broadcast, Sidney, this is no longer about just voter fraud or electoral fraud, this is something much bigger and this president has to take, I believe, drastic action, dramatic action, to make certain that the integrity of this election is understood, or lack of it, the crimes that have been committed against him and the American people.[600]

**2. Omitted Context Offered by Fox:**

Dobbs: As Steve just reported, Dominion voting machines in Georgia are at the center of a major Republican lawsuit. Attorney Sidney Powell is seeking a forensic audit of the Dominion voting machines in Cobb, Gwinnett and Cherokee counties. A George W. Bush-appointed judge banned those machines from being wiped or in any way altered for the next 10 days, and, today, he scheduled a hearing in the case to be heard this Friday.

[600] Compl. ¶ 179, Lou Dobbs, Sidney Powell, FACEBOOK (Nov. 30, 2020), https://www.facebook.com/watch/?v=830918901055891; Lou Dobbs (@LouDobbs), TWITTER (Nov. 30, 2020), 6:03 PM, https://twitter.com/LouDobbs/status/1333547266032984064; Lou Dobbs Tonight (@loudobbstonight), INSTAGRAM (Nov. 30, 2020), https://www.instagram.com/p/CIO6-KVBKb8/ (Ex. 15).

Dobbs: President Trump's legal team led by Rudy Giuliani in Arizona today speaking before state legislators there, urging them to investigate electoral fraud. This coming the same day that Arizona certified its election for Joe Biden.
. . .

Dobbs: Giuliani also called Colonel Phil Waldron, as a cybersecurity expert witness in that hearing, and he provided chilling details about Dominion Voting Systems. Waldron telling the panel that voting was less secure than a Venmo account, a financial account, and that on Election Day Dominion machines were connected to the internet and absolutely susceptible to cyber attacks.
. . .

Dobbs: This audience, most of America, wants to know where we are in this fight for the White House?

Powell: Well, we are making great progress, Lou. We have one case in the court in Georgia that's getting ready to go to the 11th Circuit. We're going to ask for emergency review of that where we sought to impound all the voting machines in Georgia.
. . .

Powell: And guess what happened yesterday while we were in the process of trying to get the state to respond for our request of the restraining order? Someone went down to the Fulton Center where the votes and Dominion machines were, claimed there was a software glitch and they had to replace the software, and it seems that they removed the server.

Dobbs: Unbelievable. Unbelievable. Do we know where the server is?

Powell: No, we don't right now.

Dobbs: You know, people don't go to jail for their attitude, but in the case of the Secretary of State and the Governor of Georgia right now, one would be tempted to prosecute based on their conduct so far. What is going on with those two individuals?
. . .

Powell: We've gotten tips from different people that we haven't been able to verify completely yet, but it seems that there were significant benefits for both Governor Kemp and perhaps Mr. Raffensperger also and maybe others on their team, for deciding at the last minute to rush in a contract for Dominion for $107 million for the state.
. . .

Dobbs: We have across almost every state, whether it's Dominion, EBS, whatever the company – voting machine company is -- no one knows their ownership, has

> no idea what's going on in those servers, has no understanding of the software because it's proprietary. It is the most ludicrous, irresponsible and rancid system imaginable in the world's only super power. We look like a complete nation of fools, and we're supposed to be meeting constitutional deadlines on December 8th, December 14th? Are you kidding me? This thing should be shut down right now and people understand that this will not be tolerated by the American people.
> . . .
>
> Dobbs: And as I said at the outset of the broadcast, Sidney, this is no longer about just voter fraud or electoral fraud. This is something much bigger. And this president has to take, I believe, drastic action, dramatic action to make certain that the integrity of this election is understood, or lack of it, the crimes that have been committed against him and the American people. And if the Justice Department doesn't want to do it, if the FBI cannot do it, then we have to find other resources within the federal government. We've got to rise above this, because the nation itself -- this is an assault on the core of a democracy, any democracy, our ability to cast a secret ballot.[601]

#### 3. The Statement Asserts a Fact.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "all the machines are infected with the software code that **allows Dominion to shave votes for one candidate and give them to another**[,]" and "**Dominion . . . no one knows their ownership, has no idea what's going on in those servers, has no understanding of the software**, because it's proprietary[]" makes factual assertions regarding Dominion. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

### N. NOVEMBER 30, 2020 HANNITY BROADCAST:

#### 1. Excerpt from Dominion:

> Powell: The machine ran an algorithm that shaved votes from Trump and awarded them to Biden. They used the machines to trash large batches of votes that should have been awarded to President Trump. And they used a machine to inject and add massive quantities of votes for Mr. Biden.[602]

---

[601] Fox Appendix, November 30, 2020, Lou Dobbs Tonight Tr. Ex. A29.

[602] Compl. ¶ 179, Hannity, FOX NEWS (Nov. 30, 2020), https://archive.org/details/FOXNEWSW_20201201_020000_Hannity/start/1939/end/1999 (Ex. 14).

**2. Omitted Context Offered by Fox:**

Hannity: We start, breaking tonight, we have major new developments out of Georgia, Arizona. the Trump campaign continues to investigate election irregularities, allegations of voter fraud.

Hannity: Now those same hacks are demanding that we, the American people, 74 million strong, just fall in line and accept their new standards and accept election results without investigating what are valid affidavits and claims by fellow Americans, citizens under the threat of perjury, of fraud. This is a bad joke.
. . .

Hannity: Let me ask you about -- it appeared publicly to be the split, that you were part of the attorneys for Trump on the election investigation fraud issue. And you said you were never part of that their legal team, although you did work with them in some regard.
. . .

Hannity: And I ask you today, you said to me that there were people watching an internet connection in real time that they can't speak publicly and haven't signed affidavits to that. Why?

Powell: Well, there are a number of reasons. Some are within the government. And some are possibly in different roles that require confidentiality. And they're not in a position where they can come forward without certain protections in place. And that's something that the government really needs to give them if they want to get to the truth of all the matters with which we're gathering more evidence every day.
. . .

Hannity: So, we really can't hear from them -- and they can't sign an affidavit until they get these protections. And my question is to you, you know, in a lot of ways, has anybody forensically examined these machines since the election?
. . .

Hannity: I thought Democrats told us we like whistleblowers. You're saying that these people can't talk because they're going to use [sic] their job? I would think that they get protection.[603]

**3. The Statement Asserts a Fact.**

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "**[t]he machine ran an algorithm that shaved votes from Trump and awarded them to Biden. They used the machines to trash large batches of votes that should have been**

[603] Fox Appendix, November 30, 2020, Hannity Tr. Ex. A28.

**awarded to President Trump. And they used a machine to inject and add massive quantities of votes for Mr. Biden**[]" assert facts regarding Dominion's voting machines, and its ability to alter the vote count for the candidates with an "algorithm." When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

### O. DECEMBER 4, 2020 LOU DOBBS TONIGHT BROADCAST:

#### 1. Excerpt from Dominion:

Dobbs: At the center of it all, Dominion Voting Systems. Are they the culprit here? Not the only culprit, but are they the principal culprit? . . . But concomitantly, Dominion Voting Systems, with – you have described it, with algorithms in which – which were designed to be inaccurate rather than to be a secure system.[604]

#### 2. Omitted context offered by Fox:

Dobbs: Attorneys for President Trump also today ramping up their legal challenge against Georgia's election results. A new filing claiming Georgia's election laws were violated thousands of times, rendering the outcome invalid.
. . .

Dobbs: Your testimony has been fascinating before each of these state legislatures, and I believe that you have been absolutely, I'm going to say persuasive because you've been so informative. At the center of it all, Dominion Voting Systems. Are they the culprit here? Not the only culprit, but are they the principal culprit?
. . .

Dobbs: Dominion Voting Systems with – you have described it with algorithms which were designed to be inaccurate rather than to be a secure system. Give us your sense of who is driving all of this.[605]

#### 3. The Statement Asserts a Fact.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "[a]t the center of it all, **Dominion Voting Systems. Are they the culprit here? Not the only**

---

[604] Compl. ¶ 179, Cybersecurity expert: There Are 'Multiple Ways' to Potentially Interfere with Elections, FOX BUSINESS (Dec. 4, 2020), https://video.foxbusiness.com/v/621428355200l#sp=show-clips; Lou Dobbs, COL WALDRON, FACEBOOK (Dec. 4, 2020), https://www facebook.com/watch/?v=92l0370684303; Lou Dobbs Tonight (@loudobbstonight), INSTAGRAM (Dec. 4, 2020), https://www.instagram.com/p/CIZifHZhQFx/ (Ex. 12).
[605] Fox Appendix, December 4, 2020, Lou Dobbs Tonight Tr. Ex. A30.

**culprit, but are they the principal culprit**?" and "Dominion Voting Systems with – you have described it **with algorithms which were designed to be inaccurate rather than to be a secure system**. Give us your sense of **who is driving all of this**" make factual assertions as to Dominion's "principal" role in the alleged election fraud, and its software which allegedly contained algorithms that were "designed to be inaccurate." While portions of the Statement are couched as questions, a reasonable viewer would view the rhetorical questions as statements of fact, not actual questions posed to a respondent. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

### P. FOX AND DOBBS PUBLISHED A DECEMBER 10, 2020 STATEMENT TO THE @LOUDOBBS TWITTER ACCOUNT:

#### 1. Excerpt from Dominion:

The 2020 Election is a cyber Pearl Harbor: The leftwing establishment have aligned their forces to overthrow the United States government #MAGA #AmericaFirst #Dobbs.

*Fox embedded in the tweet a typewritten document with no other markings or attributions that read:*

We have a warning to the mainstream media: you have purposely sided with the forces that are trying to overthrow the US system. These four people and their collaborators executed an electoral 9-11 against the United States, with the cooperation and collusion of the media and the Democrat Party . . . It is a cyber Pearl Harbor. We have identities, roles, and background of Dominion. Smartmatic people. This will turn into a massive RICO filing. It is Smartmatic, Dominion Voting Systems, Sequoia, SGO. . . . We have technical presentations that prove there is an embedded controller in every Dominion machine. . . . We have the architecture and systems, that show how the machines can be controlled from external sources, via the internet, in violation of voting standards, Federal law, state laws, and contracts.[606]

#### 2. Omitted Context Offered by Fox:

None offered by Fox.

[606] Compl. ¶ 179, Lou Dobbs (@LouDobbs), TWITTER (Dec. 10, 2020, 4:56 PM), https://twitter.com/LouDobbs/status/1337154346795012098 (Ex. 16).

### 3. The Statement Asserts a Fact.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the tweet, such as "[t]he 2020 Election is a cyber Pearl Harbor: The leftwing establishment have aligned their forces to overthrow the United States government" and "**We have technical presentations that prove there is an embedded controller in every Dominion machine**. . . . **We have the architecture and systems, that show how the machines can be controlled from external sources . . .** " make factual assertions regarding Dominion's role in the "cyber Pearl Harbor" and that Dominion machines can be controlled by third parties. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## Q. DECEMBER 10, 2020 LOU DOBBS TONIGHT BROADCAST:

### 1. Excerpt from Dominion:

Dobbs: You say these four individuals [Jorge Rodriguez, Khalil Majzoub, Gustavo Reyes-Zumeta, Antonio Mugica] led the effort to rig this election. How did they do it?

Powell: Well, Lou, they designed and developed the Smartmatic and Dominion programs and machines, that include a controller module that allows people to log in and manipulate the vote, even as it's happening. We're finding more and more evidence of this. We now have reams and reams of actual documents from Smartmatic and Dominion, including evidence that they planned and executed all of this. . . . We have evidence of how they flipped the votes, how it was designed to flip the votes. And that all of it has been happening just as we've been saying it has been. . . . [T]he entire system was created for the benefit of Venezuela and Hugo Chávez to rig elections to make sure he continued winning. And then it was passed on to Mr. Maduro to do the same. And we know it was exported to other countries by virtue of some of the Dominion executives that proceeded to go about and essentially sell elections to the highest bidder. . . . It is a very concerning and troubling and illegal web of conduct that all of which focused on rigging the election in this country. And we are seeing the results in multiple states where we're now identifying specific votes flipped, like in a couple of Georgia counties.

Dobbs: We're going to examine in some detail the – the reasons for what is apparently a broadly coordinated effort to – to actually bring down this President by ending his second term before it could begin. . . . [I]t's outrageous that we have an Attorney General, Sidney, who has said that he sees no sign of – of any significant fraud that would overturn the election. We had a head of the cyber

intelligence unit for the Department of Homeland Security who is suing some people, apparently, for saying that his report basically, was – it was nonsense when he declared it was the most secure election in the country's history. What are we dealing with here, and how can we get to this, if we have a – an Attorney General who has apparently lost both his nerve and his commitment to his oath of office, and to the country; we have an FBI director who seems to be as politically corrupt as anyone who preceded him, and a Homeland Security department that doesn't know what the hell it's talking about and is spending more time playing politics, at least as it applies to Mr. Krebs, than securing the nation.

Powell: President Trump won so many votes, he blew up their algorithm. The American people blew up the algorithm they created before the election to shave votes from Biden and give them to Trump. And we're now seeing direct evidence of that happening in – in multiple counties and multiple states, and we know it happened across the country. …

Dobbs: Let me – let me make you an offer very straightforwardly: We will gladly put forward your evidence that supports your claim that this was a Cyber Pearl Harbor. We have tremendous evidence already but – of fraud in this election, but I will be glad to put forward on this broadcast whatever evidence you have, and we'll be glad to do it immediately.

Powell: Awesome.

Dobbs: We'll work overnight. We will – we will take up whatever air we're permitted beyond this broadcast, but we have to get to the bottom of this.

Dobbs: I mean the governor and the state – Secretary of State have got to find, if not the integrity, the – the primal fear of the voters in Georgia to stop what's going on and stop it now. . . . How much time do you need to get that evidence to this broadcast and we'll put it on the air?

Powell: I'll get you more information that's just stunning tonight.[607]

**2. Omitted Context Offered by Fox:**

Dobbs: Our first guest tonight has new information regarding electoral fraud in the radical left's efforts to steal an election, and she charges four individuals as authors of what she calls a Pearl Harbor-style cyber attack on the 2020 presidential election. There are four names that she highlights.

---

[607] Compl. ¶ 179, Sidney Powell raises questions about security of voting machines, Fox Business (Dec. 10, 2020), https://video.foxbusiness.com/v/6215520845001/#sp=show-clips; Lou Dobbs (@LouDobbs), TWITTER (Dec. 10, 2020, 5:51 PM), https://twitter.com/LouDobbs/status/1337168084541575171; Lou Dobbs (@LouDobbs), TWITTER (Dec. 10, 2020, 5:52 PM), https://twitter.com/LouDobbs/status/1337168397398921217; Lou Dobbs, Sidney Powell, FACEBOOK (Dec. 10, 2020), https://www facebook.com/watch/?v=681543625896199; Lou Dobbs Tonight (@loudobbstonight), INSTAGRAM (Dec. 10, 2020), https://www.instagram.com/p/CioOkAqB6Bq/; Lou Dobbs Tonight (@loudobbstonight), INSTAGRAM (Dec. 10, 2020), https://www.instagram.com/p/Cio02XjhDlM/ (Ex. 1).

. . .

Dobbs: Well, what is the evidence that you have compiled? How have you constructed the architecture of this relationship among these four individuals?

. . .

Dobbs: What is the evidence that this former Communications Minister could reach into the U.S. electoral system and raise the havoc and commit the fraud that obviously we have witnessed in 2020?

. . .

Dobbs: We're back now with Attorney Sidney Powell. She was describing a cyber-Pearl Harbor in the 2020 election focusing on four names.

. . .

Dobbs: I would also like to put up this element from – from your investigation, if we could have that full screen up so that we could all go through that with the audience, because it's important as we look at these four names. We're talking about very large, a very large foreign intrusion and interference in the election of 2020.

. . .

Dobbs: Give us – it's outrageous that we have a – an Attorney General, Sidney, who has said that he sees no sign of any significant fraud that would overturn the election. We had a head of the cyber intelligence unit for the Department of Homeland Security who's suing some people, apparently, for saying that his report basically was nonsense when he declared it was the most secure election in the country's history. What are we dealing with here and how can we get to this if we have an Attorney General who has apparently lost both his nerve and his commitment to his oath of office and to the country. We have an FBI director who seems to be as politically corrupt as anyone who preceded him, and a Homeland Security Department that doesn't know what the hell it is talking about and is spending more time playing politics – at least as it applies to Mr. Krebs – than securing the nation.

. . .

Dobbs: Well, let me—let me make you an offer very straightforwardly: We will gladly put forward your evidence that supports your claim that this was a cyber-Pearl Harbor.

. . .

Dobbs: How much time do you need to get that evidence to this broadcast and we'll put it on the air.[608]

### 3. The Statement Asserts a Fact.

[608] Fox Appendix, December 10, 2020, Lou Dobbs Tonight Tr.. Ex. A31.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "they designed and developed the Smartmatic and Dominion programs and machines, that include **a controller module that allows people to log in and manipulate the vote, even as it's happening**[,]" "[w]e now have reams and reams of **actual documents from Smartmatic and Dominion, including evidence that they planned and executed all of this**," and "**[w]e have tremendous evidence already** but – **of fraud in this election**" makes factual assertions which indicate to a reasonable viewer that Dominion took part in "rigging" the election and flipping the votes. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

### R. ON DECEMBER 10, 2020, FOX AND DOBBS PUBLISHED A STATEMENT TO THE @LOUDOBBS TWITTER ACCOUNT:

#### 1. Excerpt from Dominion:

> Cyber Pearl Harbor: @SigneyPowell1 reveals groundbreaking new evidence indicating our Presidential election came under massive cyber-attack orchestrated with the help of Dominion, Smartmatic, and foreign adversaries. #Maga #AmericaFirst #Dobbs.[609]

[609] Compl. ¶ 179, Lou Dobbs (@LouDobbs), TWITTER (Dec. 10, 2020, 5:52 PM), https://twitter.com/LouDobbs/status/1337168397398921217 (Ex. 1).

### 2. Omitted context offered by Fox:







@LouDobbs Twitter December 10, 2020, 4:47 PM:
The Battle for the White House: Join Lou at 5 & 7 PM/ET as several states and @realDonalTrump ask to join Texas' Supreme Court case for election integrity @SidneyPowell1 @OGJesseMorgan @pjcolbeck @IAmPapaJohn #MAGA #AmericaFirst #Dobbs

@LouDobbs Twitter December 10, 2020, 4:55 PM:
Exposing Dominion: @SidneyPowell1 joins Lou at 5pm ET to share new information that could have massive consequences in the Battle for the White House.

@LouDobbs Twitter December 10, 2020, 4:56 PM:
The 2020 Election is a cyber Pearl Harbor: The leftwing establishment have aligned their forces to overthrow the United States government #MAGA #AmericaFirst #Dobbs[610]

### 3. The Statement Asserts a Fact.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the tweets, such as "[Powell] reveals **groundbreaking new evidence** indicating our Presidential election came under massive cyber-attack **orchestrated with the help of Dominion**, Smartmatic, and foreign adversaries" and "Exposing Dominion: [Powell] joins Lou . . . to share **new information** that could have massive consequences" make factual statements which a reasonable viewer would interpret as assertions of fact, not as opinions of either Dobbs or Powell. When viewed in the

[610] Fox Appendix, December 10, 2020, @LouDobbs tweet. D.I. No. 1 ¶179(p).

full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

**S. DECEMBER 12, 2020 FOX & FRIENDS BROADCAST:**

**1. Excerpt from Dominion:**

Giuliani: [W]e have a machine, the Dominion machine … was developed to steal elections, and being used in the states that are involved.[611]

**2. Omitted context offered by Fox:**

Hegseth: He asked that gentleman what's next. We'll ask the same question of you. In the legal challenge, what's next?

Giuliani: Well, what's next now is to take each one of those complaints that were against different states, to break them down into individual complaints, and over the next two days, bring them in those states where we would have standing; namely, in Michigan, Georgia, Pennsylvania, Nevada, Arizona. Wisconsin, we already have an ongoing case, so we may -- may or may not supplement. It's going to be heard today. So, basically, we'll take the advice of the Supreme Court. The Supreme Court says, I think incorrectly, that the State of Texas doesn't have standing. But, certainly, the President of the United States has standing. Certainly, the electors, like that gentleman that spoke to you, has standing. So we will be bringing those cases in their names in the states in which we were cheated. Georgia is probably the most dramatic example of cheating because it was done live on tape. You know, I say that that tape is going to live after this election like the Zapruder tape with the Kennedy assassination. Twenty years from now when they look back at this election, they're going to show that tape, and whatever happens with the result of this election, they're going to say, oh, my goodness, it really was stolen, because you can see - you can see 30,000 votes being stolen right in front of your eyes. And how the governor of Georgia, the lieutenant governor, can ignore that is pretty close to a crime. I mean, the people of Georgia have every right to be outraged. Their state was stolen on television. Now, we get to -- we get to Detroit and we have a truck that pulled in at 4:30 in the morning with 100,000 votes. And we have a machine, the Dominion machine, that's as filled with holes as swiss cheese and was developed to steal elections and being used in the states that are involved. So there's a lot that's going to come out here over the next month or so. And you know – you know the shame of it? If this all comes out six months from now the way the Biden thing is now coming out – you know, six months ago, eight

[611] Compl. ¶ 179, Rudy Giuliani on Trump Election Fight: We Have '1,000 Affidavits from Witnesses in 6 Different States,' FOX NEWS (Dec. 12, 2020), https://video.foxnews.com/v/6215882367001?playlist_id=930909787001#sp=sho w-clips (Ex. 20).

months ago, I was being accused of being some kind of Russian spy for merely bringing out the fact that the Biden family has been involved in 30 years of racketeering activity, which is all proven. I have the videotape, the documents, the hard drive. I've got every piece of evidence. And I've got a mountainful of evidence and nobody would believe me. We're going to find out it's true. You're also going to find out that this election is stolen. I hope it's not too late.

Cain: Mr. Mayor, I'd love to ask you about timing and that evidence that you bring up. First of all, on timing, do you have time -- you said over the next two days, you'll be bringing many of these suits -- these suits where someone will have standing.' Do you have the time to bring these and put forward the evidence? And what is your strongest piece of evidence? You bring up that video, but you also mention the computer. So what is your strongest piece of evidence you look forward to presenting?[612]

### 3. The Statement Asserts a Fact.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as "we have a machine, **the Dominion machine … was developed to steal elections**, and being used in the states that are involved" and "I have the videotape, the documents, the hard drive. **I've got every piece of evidence. And I've got a mountainful of evidence**[]" make factual assertions that evidence regarding Dominion's involvement in the election fraud actually exists. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

## T. JANUARY 26, 2021 TUCKER CARLSON TONIGHT BROADCAST:

### 1. Excerpt from Dominion:

Carlson: Well, of course you will likely recognize our next guest. His name is Mike Lindell. He runs My Pillow. He advertises every night on this show and across Fox News. He's one of our biggest sponsors, and we are grateful for that.

Lindell: [S]omeone put up on – on the internet, actual machine – new machine election fraud, I – I retweeted it . . . Dominion . . . said they were going to go after Mike Lindell. Well they did. They hired hit groups, bots and trolls went after all my vendors, all these box stores to cancel me out. . . . I'm not backing down. We cannot back down out of fear this time.

[612] Fox Appendix, December 12, 2020, Fox & Friends Tr. Ex. A32.

Carlson: I totally agree.

Lindell: I've been all in trying to find the machine fraud and I – we found it. We have all the evidence. . . . I have the evidence. . . . I dare Dominion to sue me because then it will get out faster. So this is – it – you know, they don't – they don't want to talk about it.

Carlson: No they don't.[613]

**2. Omitted Context Offered by Fox:**

Carlson: For the crime of having different opinions, Mike Lindell has just been banned from Twitter. Several resellers have also stopped selling his product. That happened today. That would include Bed Bath & Beyond, Kohl's, and Kroger. Again, Bed Bath & Beyond, Kohl's, and Kroger. Those are just a few. When you support freedom of speech, you're no longer allowed to speak. That's the new rule. Since this network is one of the last places in this country where Americans are allowed to speak, we're honored to have Mike Lindell on tonight to give his perspective.

. . .

Lindell: Thanks for having me on, Tucker. That list is bigger. There's also HEB, The Shopping Channel, ShopHQ. I mean, they just keep, you know, turning in their POs and saying we're -- we don't want MyPillow anymore.

Carlson: So your views on politics, whether our viewers or anyone else agrees with them or not, are -- are, you know, the views of millions of people. And you've expressed them. You have now been shut down. It seems pretty clear they're sending a message.

. . .

Lindell: This time, about 17 days ago, when someone put up on -- on the internet actual machine – new machine election fraud, I retweeted it and they took my Twitter down. Now, when they took it down -- this is interesting -- they didn't take it down all the way. I just couldn't do anything. And they were running my Twitter like they were me. My friends are going, you're not tweeting very much; and when you do -- I said, I'm not doing that. So I tried to take it down and I got a tweet -- a thing from Germany saying these are Twitter rules and you cannot do this, taking anything down. So they ran my Twitter for about 14 days, 15 days. Then, yesterday, they -- they put it back up so I could run it. And I made one tweet and the tweet was a good – a good letter written by one of my employees because I'm getting attacked about my integrity and stuff, and they took it down five minutes later. And, then, a week ago, they did a – Dominion went online – on TV and said they were going to go after Mike Lindell. Well, they did. They hired hit groups of bots and

[613] Compl. ¶ 179, Tucker Carlson Tonight (@tuckercarlsontonight), INSTAGRAM (Jan. 26, 2021), https://www.instagram.com/p/CKh8slFBKMA/ (Ex. 17).

trolls, went after all my vendors, all these box stores to cancel me out. This cancel culture, fake stories coming out to attack my Lindell Recovery Network, which helps addicts across the country. It's just a shame, Tucker, what they – if they can do it to me, believe me, they can to it to anyone out there. But we're not – I'm not backing down. We cannot back down out of fear this time. Nobody can.

. . .

Carlson: If they disagree with you or think that you're saying things that are incorrect, why don't they explain what those things are, and why don't they try to convince you that you're wrong? I mean, I thought the rules were, if you think someone is saying something incorrect, you explain how it's incorrect and you convince his audience that actually you're right and he's wrong. When did that go away? When did we decide force was the only answer to disagreement?

Lindell: Right. And that – you know, they – I can't even livestream on Facebook. They've shut it down. But you're exactly right, Tucker. What I'd say to them with this particular thing that's going on now, I've been all in trying to find the machine fraud. And we found it. We have all the evidence. So what all these [e]ven – all these outlets that have been calling me from the Washington Post, New York Times, every – every outlet in the country, they go, Mike Lindell, there's no evidence and he's making fraudulent statements. No, I have the evidence. I dare people to put it on. I dared Dominion to sue me, because then it would get out faster. So this is -- you know, they don't -- they don't want to talk about it. They don't want to say it.

. . .

Carlson: They're not making conspiracy theories go away by doing that.

. . .

Carlson: You don't answer -- you don't make people kind of calm down and get reasonable and moderate by censoring them. You make them crazier, of course.[614]

**3. The Statement Asserts a Fact**.

The Statement uses precise and readily understood language to assert facts which are capable of being proven true or false, and the context in which the Statement is presented creates an inference to a reasonable viewer that it is factual. The language used in the segment, such as, "I've been all in trying to **find the machine fraud. And we found it. We have all the evidence**[,]" and "**No, I have the evidence**. I dare people to put it on. **I dared Dominion to sue me, because then it would get out faster**[]" make factual assertions, supported by "all the evidence," regarding Dominion's involvement in the election fraud. When viewed in the full context of the overall communication expressed during the segment, a reasonable viewer would understand that Statement is asserting facts regarding Dominion, not an opinion.

[614] Fox Appendix, January 26, 2021, Tucker Carlson Tonight Tr. Ex. A38.

As such, the Court finds that the Statement asserts facts and therefore not protected under the opinion privilege.

EXHIBIT 2

# DECLARATION OF PRESTON PADDEN

I, Preston Padden, declare under penalty of perjury that the following is true and correct:

I am a Member of the Media and Democracy Project and I support its Petition To Deny the application of Fox Television Stations, LLC to renew the broadcast license of Station WTXF-TV, Philadelphia.

I have had a 45-year career in the media business, and, inter alia, I have held the following positions: Assistant General Counsel, Metromedia; President, The Association of Independent Television Stations; President, ABC Television Network; and Executive Vice-President, Government Relations, The Walt Disney Company. I also served on the Boards of The National Association of Broadcasters and The Motion Picture Association of America.

In 1990 I joined FOX Broadcasting Company as Senior Vice President. I also served as President, Telecommunications and Television for News Corporation. I helped secure for FOX, News Corp and the principal of those companies, Rupert Murdoch, critical FCC waivers that helped enable the successful launch of a fourth broadcast television network. During my years at Fox I admired Mr. Murdoch. His vision and tenacity enabled my colleagues and I to do our good work creating new television competition for the benefit of viewers and advertisers.

I left FOX in 1997 to work for Disney. Currently, I am the principal of Boulder Thinking, LLC., a consulting firm.

I write this declaration because, in my opinion, FOX has undermined our democracy and has radicalized a segment of our population by presenting knowingly false narratives about the legitimacy of the 2020 election. In my opinion, this type of reporting was a significant contributing factor to the riots in the Capitol on January 6, 2021. For example, I heard Sean Hannity on Fox News Channel refer to the then upcoming January 6, 2021 "Stop The Steal" rally in Washington, D.C. telling his viewers that "President Trump says it's going to be wild, be there."

"Fox News Sunday," a weekly show broadcast on television station WTXF-TV and other FOX-affiliated television stations, is produced by Fox News Channel, has been hosted by Fox News Channel stars and essentially is a broadcast extension of Fox News Channel. Fox News Channel also provides national and international news "feeds" to Fox-affiliated television stations, including WTXF-TV for inclusion in their locally produced newscasts. These local newscasts repeated some of the false narratives broadcast on the Fox News Channel.

In my opinion, as a result of FOX's knowingly false narrative, large numbers of that radicalized population ransacked the U.S. Capitol on January 6, 2021, causing injury, property damage and attacking the very foundation of our democracy. In my opinion, FOX contributed to that tragedy.

During my 7 years at FOX, ultimate decision-making authority for the operation of every part of the company - every division, every business unit, every subsidiary - rested with Rupert Murdoch. It was his "candy store." I get the impression that more recently he has begun to share power with his son, Lachlan Murdoch. But I can state without fear of contradiction that Rupert and Lachlan retain ultimate decision-making authority for every part of the company, including FOX News Channel and FOX Television Stations.

For several months in 2020 and 2021, I engaged in an extended exchange of emails with Mr. Murdoch about my concerns over the content being presented on FOX. Without my knowledge, some or all of those email exchanges were produced by Fox in discovery in the Dominion litigation. As was set forth in detail in the opinion of Judge Eric M. Davis in *Dominion v FOX*, Mr. Murdoch and FOX News knew that then President Trump had lost his bid for reelection. However, as revealed by texts and emails in the record of the Dominion litigation, the top management at FOX, worried about losing ratings and revenues, spun a narrative suggesting that the election was rigged, and that electoral victory had been stolen from Donald Trump. It was obvious to me that Mr. Murdoch knew that Trump had lost the election and that there was no basis for claiming election fraud. For example, on November 6, 2020, Mr. Murdoch wrote me, "Seems Trump listening to terrible advice from Giuliani versus Trump family wanting to wave white flag! Not sure of this but sounds likely. Melania very level headed. Ivanka too but would never go public."

In my opinion, Mr. Murdoch was worried about repercussions from Trump, loss of audience and stock value, if he accurately reported the news. On November 12, 2020, he wrote me: "Apparently he's [Trump] told friends that Lachlan and I have betrayed him. Stock down 5 or 6% today. Real bargain!" In another email on the same day Mr. Murdoch wrote me: "He can only be so hostile as he looks to blame somebody for losing. So he knows he's done."

Beyond doubt, Mr. Murdoch knew that Trump had lost the election, nonetheless, FOX continued to promote news stories and guests who claimed, without any basis, that the election was rigged. In my opinion, these actions on the part of Mr. Murdoch, his son and top FOX management significantly contributed to the upheaval that occurred at the U.S. Capitol building on January 6, 2021.

In my opinion, the false narrative FOX knowingly and repeatedly broadcast about alleged fraud in the 2020 election has created a terrible division among the American people. Those falsehoods have caused millions of Americans to believe that the 2020 election was stolen despite the voluminous evidence, including more than 60 Court decisions, to the contrary. There has been no remorse from FOX in response to the judicial finding of falsity. For example, in a recent FOX earnings call Lachlan Murdoch was asked by an analyst whether he intended to change FOX news policies following the Dominion lawsuit. Lachlan replied "There's no change to our programming strategy at Fox News". "It's obviously a successful strategy". Washington Post, May 9, 2023.

When lawyer Sidney Powell was sued for her false statements about the 2020 election (many of those statements were broadcast on FOX) her Counsel told the Court that "no reasonable person" would take her voter fraud claims as fact. In my opinion, given his many journalistic accomplishments, Rupert Murdoch deserves a better legacy than "he presided over a media empire that no reasonable person would believe".

Preston Padden

7-1-23

EXHIBIT 3

MEDIA AND DEMOCRACY PROJECT

**Declaration of Milo Vassallo**

I, Milo Vassallo, declare under penalty of perjury, that the following information is true and correct:

I am a founding member of *The Media and Democracy Project* (www.MediaAndDemocracyProject.org). We are an all-volunteer grassroots civic organization focused on strengthening a free and independent media, to improve our public debate and thus the information American voters use to inform their democratic decision-making. As part of that goal, *The Media and Democracy Project* has an interest in the responsibility of journalists and media to report fully, accurately, and fairly on the electoral process and the outcome of elections. We were founded in 2020, have a leadership team of eight, and membership is defined as participation in our civic actions. We are a national organization with members - including the Declarants - who live in the broadcast area of WTXF-TV.

I declare that I have personal knowledge of the factual allegations made in the Petition to Deny the license renewal application of WTXF-TV and that these allegations are true and correct.

Milo Vassallo
Founding Member,
*The Media and Democracy Project*

**Website:** **MediaAndDemocracyProject.Org**
**Twitter:** @MAD_Democracy and @FixMediaNow
**Mastodon:** http://journa.host/@MAD_democracy

**Declaration of John McGinty**

I, John McGinty, declare under penalty of perjury, that the following information is true and correct:

I am a resident of Jenkintown, Pennsylvania and a regular viewer of WTXF-TV, Philadelphia, Pennsylvania.

I declare that I have personal knowledge of the factual allegations I make in the Petition to Deny the license renewal application of WTXF-TV and that these allegations are true and correct. These allegations are the direct cause of the injury I suffer as a regular viewer of WTXF-TV.

John McGinty

[Type Name]

**Declaration of Peter Lems**

I, Peter Lems, declare under penalty of perjury, that the following information is true and correct:

I am a resident of Philadelphia, Pennsylvania and a regular viewer of WTXF-TV, Philadelphia, Pennsylvania.

I declare that I have personal knowledge of the factual allegations I make in the Petition to Deny the license renewal application of WTXF-TV and that these allegations are true and correct. These allegations are the direct cause of the injury I suffer as a regular viewer of WTXF-TV.

[Type Name]

**Declaration of Bill Hartman**

I, **Bill Hartman**, declare under penalty of perjury, that the following information is true and correct:

I am a resident of Vineland, New Jersey, and a regular viewer of WTXF-TV, Philadelphia, Pennsylvania.

I declare that I have personal knowledge of the factual allegations I make in the Petition to Deny the license renewal application of WTXF-TV and that these allegations are true and correct. These allegations are the direct cause of the injury I suffer as a regular viewer of WTXF-TV.

Bill Hartman

**Bill Hartman**

**Declaration of Chenjerai Kumanyika**

I, _Chenjerai Kumanyika, declare under penalty of perjury, that the following information is true and correct:

I am a resident of _Philadelphia County, Pennsylvania and a regular viewer of WTXF-TV, Philadelphia, Pennsylvania.

I declare that I have personal knowledge of the factual allegations I make in the Petition to Deny the license renewal application of WTXF-TV and that these allegations are true and correct. These allegations are the direct cause of the injury I suffer as a regular viewer of WTXF-TV.

6/29/2023

[Chenjerai Kumanyika]

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and first class mail to the following:

Ann West Bobeck
VP, FCC Legal and Business Affairs
Fox Corporation
101 Constitution Avenue, NW
Suite 200 West
WASHINGTON, DC 20001
bobeck@fox.com

Counsel for Fox Television Stations, LLC

Holly Saurer
Chief, Media Bureau
Federal Communications Commission
45 L Street NE
Washington, DC 20554
holly.sauer@fcc.gov

Barbara Kreisman
Chief, Video Division, Media Bureau
Federal Communications Commission
45 L Street NE
Washington, DC 20554
barbara.kreisman@fcc.gov

Arthur V Belendiuk

Arthur V. Belendiuk