# Exhibit 22

**BEFORE THE**
**FEDERAL COMMUNICATIONS COMMISSION**

| | |
|---|---|
| In the Matter of:<br><br>The Walt Disney Company,<br><br>American Broadcasting Company,<br><br>KFSN Television, LLC,<br>File No. 0000298350<br><br>KABC Television, LLC,<br>File No. 0000298356<br><br>KGO Television, Inc.,<br>File No. 0000298344<br><br>WLS Television, Inc.,<br>File No. 0000298337<br><br>WABC Television (New York), LLC,<br>File No. 0000298318<br><br>WTVD Television, LLC,<br>File No. 0000298327<br><br>WPVI Television (Philadelphia), LLC,<br>File No. 0000298324<br><br>KTRK Television, Inc.<br>File No. 0000298353 | **MB Docket No. 26-131** |

**PETITION TO DENY RENEWAL OF LICENSES**

1. America First Legal—on behalf of a group of impacted residents who are members of the viewing public—hereby files this Petition to Deny the applications for renewal of broadcast licenses filed by The Walt Disney Company, its American Broadcasting Company, and its subsidiaries

(collectively, "Disney's ABC") for Stations KFSN-TV, Fresno, California; KABC-TV, Los Angeles, California; KGO-TV, San Francisco, California; WLS-TV, Chicago, Illinois; WABC-TV, New York, New York; WTVD, Durham, North Carolina; WPVI-TV, Philadelphia, Pennsylvania; and KTRK-TV, Houston, Texas, pursuant to Section 309(d) of the Communications Act of 1934, as amended, 47 U.S.C. § 309(d), and the Federal Communications Commission's ("FCC" or "Commission") Rules, 47 C.F.R. § 1.939.

2. This Petition is supported by the declarations of parties in interest with personal knowledge who are regular viewers residing in the service areas of Disney's ABC Stations. Each Petitioner resides in the service area of one of the eight Disney's ABC Stations. *See* Declarations attached hereto as Exhibits A, B, C, D, E, F, G, & H.

3. As demonstrated herein, grant of the renewal applications would be against the public interest because Disney's ABC has: (a) committed serious violations of the Communications Act and the Commission's rules, namely unlawful employment discrimination in violation of equal employment opportunity requirements, §§ 309(k)(1)(B) & 309(k)(1)(C), which, taken together, constitute a pattern of abuse; (b) failed to serve the public interest during the current license term, § (k)(1)(A); and (c) demonstrated a lack of the character qualifications necessary to hold broadcast licenses.

## STATEMENT OF INTEREST AND STANDING

4. Petitioners are parties in interest within the meaning of 47 U.S.C. § 309(d)(1). Each Petitioner is a regular viewer of and resides within the service area of one of Disney's ABC Stations listed above. Petitioners' viewing of these stations is not the result of transient or occasional contact; rather, Petitioners watch the stations' programming on a consistent and ongoing basis, *See Off. of Commc'n of United Church of Christ v. FCC*, 359 F.2d 994, 1002 (D.C. Cir. 1966) (holding that members of the viewing public have standing in license renewal).

*5.* As parties in interest, members of the viewing public perform an important role: to "vindicate the public interest." *Id.* at 1001. The Court affirmed that "'[i]t is the right of the viewers and listeners, not the right of the broadcasters, which is paramount. . . . It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences which is crucial here. *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 102 (1973) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969)).

6. The discriminatory employment practices of Disney's ABC harm the public in two respects. First, because Disney's ABC makes employment decisions based on race- and sex-based criteria rather than qualifications and merit, it deprives its audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the

public interest. Second, the use of race- and sex-based criteria by Disney's ABC forecloses or diminishes employment opportunities for qualified individuals.

## PROCEDURAL BACKGROUND

7. On April 28, 2026, the Video Division of the Media Bureau issued an Order (DA 26-416, the "Early Renewal Order") directing Disney's ABC to file license renewals for all eight Disney's ABC Stations within 30 days, pursuant to 47 C.F.R. § 73.3539. The Commission determined that calling in the licenses for early renewal was "essential to the proper conduct of an investigation" and necessary "to ensure that the broadcaster has been meeting its public interest obligations more broadly." *Early Renewal Order* at ¶¶ 1–3.

8. On May 28, 2026, Disney's ABC filed renewal applications for all eight television licenses.

9. On May 29, 2026, the Media Bureau issued a Public Notice (DA 26-541) accepting the renewal applications of Disney's ABC for filing and establishing the pleading cycle for this proceeding. This Petition to Deny is timely filed within the deadline established by the Public Notice.

## LEGAL STANDARD

10. Under Section 309 of the Communications Act, "[a]ny party in interest may file with the Commission a petition to deny any application" for renewal of a broadcast license. 47 U.S.C. § 309(d)(1). The petition must "contain specific allegations of fact sufficient to show that the petitioner is a party in interest and that a grant of the application would be prima facie inconsistent with …

subsection (k) in the case of renewal of any broadcast station license." *Id.* Such allegations of fact must be supported "by affidavit of a person or persons with personal knowledge thereof." *Id.*

11. Under Section 309(k)(1) of the Act, the Commission shall grant an application for license renewal if it finds, with respect to that station during the preceding license term: (A) the station has served the public interest, convenience, and necessity; (B) there have been no serious violations by the licensee of the Communications Act or the rules and regulations of the Commission; and (C) there have been no other violations by the licensee of the Communications Act or the rules and regulations of the Commission which, taken together, would constitute a pattern of abuse. 47 U.S.C. § 309(k)(1).

12. If a broadcaster fails to meet these requirements, the FCC may deny the renewal application under Section 309(k)(3) or grant it "on terms and conditions as are appropriate, including a grant for a term less than the maximum otherwise permitted." *Id.* § 309(k)(2).

13. In evaluating a petition to deny, the Commission must first determine whether the petition sets forth specific allegations sufficient to demonstrate that granting the application would be prima facie inconsistent with the public interest. *Citizens for Jazz on WRVR, Inc. v. FCC*, 775 F.2d 392, 394 (D.C. Cir. 1985) (Scalia, J.). At the threshold stage, the Commission must assume the facts set forth in the petition are true. *Id.* Second, the Commission must determine whether a substantial question of material fact is raised, such that

an evidentiary hearing is necessary. *Id.* Third, "the Commission must make the ultimate determination of whether the facts establish that the 'public interest, convenience, and necessity will be served by the granting [of the application].'" *Id.* (quoting 47 U.S.C. § 309(a)) (modification in original).

14. The Commission has long recognized that "the public interest is not served by licensees who engage in intentional employment discrimination" and that such practices "put seriously into question a licensee's character qualifications to remain a licensee: intentional discrimination almost invariably would disqualify a broadcaster from a position of public trusteeship." *Bilingual Bicultural Coalition on Mass Media, Inc. v. FCC*, 595 F.2d 621, 637 (D.C. Cir. 1978).

**FACTS**

15. Petitioners are parties in interest and regular viewers, each residing within the service area of one of the eight Disney's ABC stations, who have watched the stations' programming on a consistent and ongoing basis for multiple years, including local news, public affairs, and community-oriented content.

16. The FCC requires all broadcast licensees to afford equal opportunity in employment and prohibits discrimination on the basis of race, color, religion, national origin, or sex. 47 C.F.R. § 73.2080.

17. The Walt Disney Company and its subsidiaries are organized into three segments: Entertainment, Sports, and Experiences.

18. "Disney General Entertainment Content (DGE) is a collection of renowned content brands at The Walt Disney Company creating original entertainment and news programming for the company's streaming platforms and its cable and broadcast networks. The collection – including 20th Television, ABC Signature, ABC Entertainment, ABC News, Disney Branded Television, Freeform, FX, Hulu Originals, National Geographic and Onyx Collective – develops, produces, curates and markets groundbreaking programming from dynamic storytellers. DGE is focused primarily on creating content for the company's streaming platforms Disney+, Hulu and Star, and branded networks including ABC, Disney Channel, Freeform, FX and National Geographic."[1]

19. This includes the subject "eight owned ABC television stations."

20. As the parent company, The Walt Disney Company controls the policies, procedures, and vision of Disney's ABC.

21. On its "Reimagine Tomorrow" website, Disney's ABC published "Inclusion Standards" that imposed explicit race- and sex-based quotas across all Disney General Entertainment productions.[2]

22. The Inclusion Standards for "On Screen Representation" required that Disney's ABC programming meet at least three of the five listed areas. The

---

[1] Press Release, The Walt Disney Co., Disney General Entertainment Unveils Onyx Collective, a Dedicated, Premium Content Brand for Creators of Color and Underrepresented Voices (May 17, 2021), https://perma.cc/X4RG-2PCU.

[2] *ABC Entertainment: Inclusion Standards*, THE WALT DISNEY CO: REIMAGINE TOMORROW, https://perma.cc/J6B9-UH7F.

areas include, "50% or more of regular and recurring written characters come from Underrepresented Groups" and "50% or more of regular and recurring actors come from Underrepresented Groups."[3]

23. The Inclusion Standards for "Creative Leadership" require that at least three of six areas be met, including: "50% or more of producer & above on writing staff and 50% or more of Co-Producer & below on writing staff come from Underrepresented Groups"; "50% or more of episodic directors come from Underrepresented Groups"; "Casting Director is from an Underrepresented Group"; "Meaningful representation of Underrepresented Groups in senior creative leadership"; "Promotion of a member of an Underrepresented Group into a role that constitutes career progression for at least one member of the writing staff"; and "Substantial year-over-year increase in members of Underrepresented Groups as directors and in writing staff."[4]

24. The Inclusion Standards for "Below-the-Line" positions required that at least two of five areas be met, including: "50% or more of line producer and/or production department heads (ie: DP, composer, costume designer, editor, production designer, music supervisor) come from Underrepresented Groups"; "50% or more of other key roles (any mid-level crew and technical positions) come from Underrepresented Groups"; "50% or more of the overall crew or project staff come from Underrepresented Groups"; and "Promotion of member

[3] *Id.*
[4] *Id.*

of Underrepresented Group into a role that constitutes career progression for at least one crew/team member."[5]

25. The Inclusion Standards for "Industry Access & Career Development" required that at least three of six areas be met, including: "Paid employment opportunities such as apprenticeships, internships, expert advisers to facilitate union eligibility for members of Underrepresented Groups"; "Training opportunities and/or skills development ... including one-off, work-experience opportunities for students from underrepresented groups"; "'First job' for member of Underrepresented Group in a role that constitutes career progression from prior"; and "50% or more of outside vendors or contractors employed by production provide industry access or opportunities to members of Underrepresented Groups."[6]

26. Disney's ABC defined "Underrepresented Groups" for some purposes to include "Asian American, Pacific Islander, Black, Hispanic, Native American/Indigenous, LGBTQ, People with Disabilities, Veterans & Women."[7] This definition excluded white males from the classification, resulting in the Inclusion Standards operating as race- and sex-based quotas that favored certain groups over others.

27. A leaked internal Frequently Asked Questions ("FAQ") document on the Inclusion Standards described the company's intention "to increase training

[5] *Id.*
[6] *Id.*
[7] *Reimagine Tomorrow: Our Intentions*, THE WALT DISNEY CO., https://perma.cc/6GVD-DGTJ.

and development opportunities for members of underrepresented groups" in a racially exclusionary manner. The FAQ stated that the "expectation is the Inclusion Standards will serve as a catalyst for those involved in the creative and hiring processes to become even more engaged in inclusive hiring and employment practices" and to "address" barriers "to equal employment opportunities [] for underrepresented groups." Disney Entertainment admitted that an example of an "inclusive hiring and employment practice" was "improving access to training and development opportunities for members of underrepresented groups."[8]

28. Disney Entertainment has publicly reported the outcomes of its race- and sex-conscious employment policies, demonstrating intentional workforce balancing. According to data published by Disney Entertainment: from FY 2020 to FY 2021, the percentage of "people of color" working as directors for Disney Entertainment rose by 6%, while the percentage of white directors dropped by 6%; the percentage of Disney's ABC directors who are women increased by 2%, while the percentage of male directors dropped by 2%; the percentage of people of color as Disney's ABC series regulars and leads grew 4%, while the white percentage dropped 4%; the percentage of people of color and women producers each increased by 3%, while white and male producers

[8] Elon Musk (@elonmusk), X (Feb. 8, 2024, 2:44 AM), https://perma.cc/YZW4-Y4EZ.

each dropped by 3%; and the percentage of writers who are people of color grew by 3%, as the white percentage dropped by 3%.[9]

29. Disney Entertainment has publicly disclosed data showing its workforce composition by race and ethnicity.[10] As of FY 2022, the total workforce of Disney Entertainment was approximately 47% white and 47% "people of color," representing a 3.6% decrease in white employees from the prior year. At the executive level, white employees comprised 69.9% of executives (down 3.4% year-over-year), while "people of color" comprised 27.5% (up 2.8%). At the manager level, white employees comprised 65.6% (down 2.2%), while "people of color" comprised 32% (up 1.8%).[11]

30. Disney's ABC invested in specific talent development programs designed to increase racial representation at the executive level, including the "Black Talent Network," which launched in 2020. Black Talent Network "is a dynamic program designed to support the exposure, sponsorship and development of Black senior leaders through a variety of unique experiences including mentorships, access to internal and external insights, career resources and networking opportunities."[12]

31. Current and former Disney's ABC employees reported that the discriminatory policies of Disney's ABC created a hostile work environment for

---

[9] *Vision: Representation in Our Content*, THE WALT DISNEY CO.: REIMAGINE TOMORROW, https://web.archive.org/web/20240209164925/https://reimaginetomorrow.disney.com/vision.

[10] *Vision: Representation in Our Workforce*, THE WALT DISNEY CO.: REIMAGINE TOMORROW, https://web.archive.org/web/20240209164925/https://reimaginetomorrow.disney.com/vision.

[11] *Id.*

[12] *Black History is Now: Making History as a Black Female VP at Disney*, DISNEYPARKSBLOG (Feb. 23, 2023), https://perma.cc/4SFB-XN36.

employees who did not share the company's political and ideological views. According to an anonymous open letter from Disney's ABC employees, "The Walt Disney Company has come to be an increasingly uncomfortable place to work for those of us whose political and religious views are not explicitly progressive. We watch quietly as our beliefs come under attack from our own employer, and we frequently see those who share our opinions condemned as villains by our own leadership."[13]

32. The employee open letter further stated, "Disney has fostered an environment of fear that any employee who does not toe the line will be exposed and dismissed" and that "[a]s much as diversity and inclusion are promoted ... Disney doesn't seem to have much room for religious or political conservatives within the company. Left-leaning cast members are free to promote their agenda and organize on company time using company resources. They call their fellow employees 'bigots' and pressure Disney to use corporate influence to further their left-wing legislative goals."[14]

33. A pseudonymous article published by a Disney's ABC insider reported that employees who did not endorse the company's political positions faced retaliation: "I've only managed a few private conversations with these people,

[13] Thomas Barrabi, *Conservative Disney Employees Urge Company to Stay 'Politically Neutral,'* N.Y. POST (Mar. 24, 2022), https://perma.cc/7XNU-24UJ (full letter: https://perma.cc/WV8Q-JYDT).
[14] *Id.*

and the story is consistently the same: keep your mouth shut or find yourself the target of scrutiny and likely termination."[15]

34. The insider further reported, "I have been personally involved in no less than five projects that had their creative visions dimmed by the dictates of profoundly uncreative DEI functionaries: Replace that Christmas song, it's too Christian. Don't 'culturally appropriate' that visual design, we don't have a member of that ethnicity on the project team. Send this script to a 'sensitivity reader,' the voice is too male. Remove 'ladies and gentleman [*sic*], boys and girls' from all park announcements, it reinforces the gender binary."[16]

35. On February 14, 2024, America First Legal Foundation ("AFL") submitted a formal complaint to the U.S. Equal Employment Opportunity Commission requesting the issuance of a Commissioner charge for an inquiry into the systemic discrimination practices of Disney's ABC.[17] The complaint alleged that the employment practices of Disney's ABC violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by knowingly and intentionally using race, color, sex, or national origin as motivating factors in employment decisions.

36. Disney's ABC affirmatively represented to the public that it would make employment decisions based on individuals' race, color, national origin, or sex.

[15] Ethan L. Clay, *Disney's Institutional Capture*, QUILLETTE (Mar. 29, 2022), https://perma.cc/3APC-GJXD.

[16] *Id.*

[17] Letter from Reed D. Rubinstein, Senior Vice President, Am. First Legal, to Christine Park-Gonzalez, Dir., U.S. Equal Emp. Opportunity Comm'n (Feb. 14, 2024), https://perma.cc/QY9L-N5LZ.

These representations constitute public admissions of intentional discrimination.

37. Petitioners' communities suffer direct, tangible, and substantial injury from the discriminatory employment practices of Disney's ABC because: (1) discriminatory practices undermine the stations' ability to ascertain and respond to community needs; and (2) these discriminatory practices raise serious questions about the character, qualifications, and fitness of the licensee to hold a broadcast license.

38. The intentional use of race- and sex-based criteria in the selection of writers, directors, producers, and on-air talent by Disney's ABC has compromised programming content received by viewers in the Disney's ABC Stations' service areas. Disney's ABC implemented these criteria as a matter of deliberate corporate policy, with full knowledge that race and sex were being used as factors in employment decisions.

39. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would perpetuate injury to viewers and prospective employees by allowing the stations to continue operating in a manner inconsistent with the public interest standard and the Commission's nondiscrimination requirements.

## GROUNDS FOR DENIAL

### Serious Violations of the Communications Act and FCC Rules

40. Under Section 309(k)(1)(B), the Commission must determine whether there have been serious violations by the licensee of the Communications Act or the rules and regulations of the Commission during the preceding license term. Disney's ABC has committed serious violations of the Commission's equal employment opportunity rules.

41. The Commission's Rules provide that "[e]qual opportunity in employment shall be afforded by all licensees" and that "[n]o person shall be discriminated against in employment by [a licensee] because of race, color, religion, national origin, or sex." 47 C.F.R. § 73.2080. Disney's ABC has violated these requirements by intentionally implementing hiring, promotion, and compensation practices that use race and sex as criteria in employment decisions across all eight corporate operations.

42. The Commission "has developed rules and policies to ensure that broadcast licensees strive to satisfy, and are sensitive to, the needs of their communities. Basic among these rules is that a licensee who discriminates in employment or fails to engage in an effective EEO program cannot be said to be operating in the 'public interest.'" *Nat'l Black Media Coal. v. FCC*, 775 F.2d 342, 344–45 (D.C. Cir. 1985). The Commission's rules have been applied even where the evidence only established a disparate impact on race. *See In re Rev. of Comm'n's Broad. & Cable Equal Emp. Opportunity Rules & Pol'ys*, 15 FCC

Rcd. 22548, 22554 (2000). Here, Disney's ABC is engaged in intentional discrimination: the evidence demonstrates the deliberate adoption of race- and sex-conscious criteria as a matter of corporate policy, which is a flagrant violation warranting the most serious regulatory consequences. *Id.*

43. Even if the Commission were to find that individual instances of the discriminatory conduct of Disney's ABC do not independently rise to the level of "serious violations" under Section 309(k)(1)(B), the totality of the discriminatory practices across Disney's ABC constitutes a "pattern of abuse" warranting denial under Section 309. 47 U.S.C. § 309(k)(1)(C).

44. The systemic nature of these practices, implemented as a uniform corporate policy across Disney's ABC, demonstrates precisely the kind of cumulative misconduct that Section 309(k)(1)(C) was designed to capture. Each individual employment decision made on the basis of race or sex constitutes a discrete violation of the Commission's nondiscrimination rules; taken together, they establish a pattern of abuse that is incompatible with continued licensure.

45. The "pattern of abuse" standard requires consideration of violations "which, taken together, would constitute a pattern." 47 U.S.C. § 309(k)(1)(C). The discriminatory employment practices of Disney's ABC are not isolated incidents confined to a single station or a single employment category. Rather, they reflect a corporate-wide policy applied uniformly across Disney's ABC,

affecting hiring, promotion, compensation, and workplace opportunities in each market. This is a "pattern" within the meaning of the statute.

**Failure to Serve the Public Interest**

46. Under Section 309(k)(1)(A), the Commission must determine whether Disney's ABC stations have served the public interest, convenience, and necessity during the preceding license term. Disney's ABC stations have failed to meet this standard.

47. "The clear intent of the Act was that the award of a broadcasting license should be a 'public trust.'" *Off. of Commc'n of United Church of Christ v. FCC*, 707 F.2d 1413, 1427 (D.C. Cir. 1983); *see also FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 795 (1978) (stating that "the physical scarcity of broadcast frequencies . . . led Congress to delegate broad authority to the Commission to allocate broadcast licenses in the 'public interest'"). As a public trustee, Disney's ABC is obligated to operate its stations in a manner that serves the communities within their respective service areas. Its implementation of discriminatory employment practices across all eight stations represents a fundamental breach of this public trust obligation.

48. The Commission has recognized that a station's employment practices directly affect its ability to serve its community. *See L.A. Women's Coal. for Better Broad. v. FCC*, 584 F.2d 1089, 1092 (D.C. Cir. 1978) (recognizing connection between workforce composition and programming service). A licensee that employs race- and sex-based criteria in selecting the individuals

who make editorial judgments, report the news, produce content, and determine which community issues receive coverage undermines its capacity to ascertain and respond to the full range of community needs. The discriminatory employment practices of Disney's ABC have impaired the quality and responsiveness of programming available to viewers in all eight station markets.

**Character Qualifications**

49. The Commission's character policies require that a licensee possess the character qualifications necessary to hold a broadcast license. 47 U.S.C. § 308(b).

50. The D.C. Circuit has held that "intentional discrimination almost invariably would disqualify a broadcaster from a position of public trusteeship." *Bilingual*, 595 F.2d at 637. The systematic, corporate-wide implementation of race- and sex-based employment discrimination by Disney's ABC raises serious questions regarding its character qualifications.

51. In *In re General Motors Corp.*, 19 FCC Rcd. 473 (2004), the Commission recognized that character qualifications are relevant to the public interest analysis and that a willingness to violate laws bears on the Commission's confidence that a licensee will conform to FCC rules. The knowing engagement in race- and sex-based employment practices by Disney's ABC—conduct it undertook deliberately and publicly—demonstrates a willful disregard for the nondiscrimination requirements of the Communications Act and the

Commission's rules that calls into question its fitness to hold broadcast licenses.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Petitioners respectfully request that the Commission:

1. Deny the applications for renewal of licenses filed by Disney's ABC for Stations KFSN-TV, KABC-TV, KGO-TV, WLS-TV, WABC-TV, WTVD, WPVI-TV, and KTRK-TV; or,
2. Designate the renewal applications for an evidentiary hearing pursuant to 47 U.S.C. § 309(e) to resolve the substantial and material questions of fact raised herein, including whether Disney's ABC engaged in intentional discrimination in hiring, promotion, compensation, and workplace opportunities in violation of the Commission's nondiscrimination rules; or,
3. In the alternative, should the Commission determine that renewal is appropriate, grant renewal only on terms and conditions that include: (a) a requirement that Disney's ABC demonstrate elimination of all race- and sex-based criteria from its employment policies and practices; and (b) enhanced reporting requirements to verify ongoing compliance with 47 C.F.R. § 73.2080, pursuant to 47 U.S.C. § 309(k)(2)

Dated: June 29, 2026

Respectfully submitted,

*/s/Emily Percival*
Emily Percival
Robert Crossin
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003

*Counsel for Petitioners*

Certificate of Service

I hereby certify that, on June 29, 2026, I served the foregoing document upon counsel listed in LMS for the entities that are the subject of this petition via electronic mail at:

edelozier@wbklaw.com;
Crystal.Evans.Greenberg@disney.com;
eric.lieberman@disney.com

*/s/Emily Percival*
Emily Percival
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, DC 20003

# EXHIBIT A

DECLARATIONS AS TO KFSN
Fresno, CA

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of Gene D. Johnson Jr**

I, Gene D Johnson Jr, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of Fresno, within the service area of Station ABC 30. I live in Merced County, I have resided there for 16 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station ABC 30 for approximately 16 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.
7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.
8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Gene D Johnson Jr

Date: June 29,2026

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of** Laurie Anhorn

I, Laurie Anhorn, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of Clovis, within the service area of Station ABC 30. I live in Fresno County, I have resided there for 73 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station ABC 30 for approximately 50 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.
7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.
8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community’s stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community’s expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney’s discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community’s preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community’s

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Laurie Anhorn
Laurie Anhorn (Jun 29, 2026 16:24:40 PDT)

Date: Jun 29, 20

# EXHIBIT B

## DECLARATIONS AS TO KABC
## Los Angeles, CA

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of Jeff Vaughn**

I, Jeff Vaughn, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of Los Angeles, within the service area of Station KABC-TV. I live in Los Angeles County, I have resided there for 11 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station KABC-TV for approximately 11 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. I am an Emmy Award-winning white male with over thirty years of broadcast journalism experience and was a top news anchor in Los Angeles for eight years.

6. Despite strong ratings and performance, I was informed by my large cable news broadcasting employer that I would be terminated within six months and that the company had already begun searching for my replacement.
7. The company replaced me with a person with significantly less experience to meet illegal diversity quotas.
8. I was viewed as part of the company's "white problem," and they sought to fix it by removing me.
9. I am in the process of seeking new employment.
10. Although I have not been employed by the local Los Angeles ABC affiliate to date, an opportunity to join Disney's ABC could arise, and I would be a highly competitive candidate for the position.
11. No current or future employee of Disney's ABC should have to experience the blatant discrimination that I experienced.
12. My experience lends credibility to the objections I express in this affidavit.
13. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.
14. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial

preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.

15. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.

16. The station's discriminatory employment practices also harm me by undermining the station's ability to identify and respond to the full range of my community’s needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

17. I am further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's

character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

18. As a member of the viewing public, I have a stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

19. The programming I watch has become increasingly polarized, substantially damaging my expectation that television programming serves the interests of my community.

20. Additionally, Disney's unlawful discrimination in employment further harms me because the race- and sex-based quotas governing the selection of writers, directors, and producers has directly affected the programming content I receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my preferences. I am harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my interest but to advance an extreme racial, political, and socio-sexual agenda, depriving me of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

21. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm me by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Jess Vaughn ____________________

Date: Jun 28, 20 __________

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of** Reuben G. Derma

I, Reuben Derma, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.

2. I reside in the vicinity of Saugus, CA, within the service area of Station ABC-7. I live in L.A. County, I have resided there for 60 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").

3. I have been a regular viewer of Station ABC-7 for approximately 60 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.

4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.

5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have reason to

believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.

7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.

8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my

community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Reuben G. Derma

Date: 6/29/26

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of** ROBERT SCHLESINGER

I, ROBERT SCHLESINGER declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of LOS ANGELES, within the service area of Station ABC-7. I live in LOS ANGELES County, I have resided there for 50+ years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station ABC 7 for approximately 50+ years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have reason to

believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.

7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.

8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.
10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.
11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.
12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my

community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: ROBERT SCHLESINGER

Date: JUNE 29 2026

# EXHIBIT C

DECLARATIONS AS TO KGO
San Francisco, CA

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of** John McClain

I, John McClain, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.

2. I reside in the vicinity of San Francisco, within the service area of Station KGO-TV. I live in San Francisco County, I have resided there for 1.5 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").

3. I have been a regular viewer of Station KGO-TV for approximately 1.5 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.

4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.

5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.

7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.

8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: John McClain
John McClain (Jun 29, 2026 11:05:24 PDT)

Date: Jun 29, 2026

# EXHIBIT D

DECLARATIONS AS TO WLS
Chicago, IL

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of** Charlie McClain

I, Charlie McClain, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of Chicago, within the service area of Station WLS-TV. I live in Cook County, I have resided there for 1 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station WLS-TV for approximately 1 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.
7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.
8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Charlie McClain
Charlie McClain (Jun 29, 2026 11:00:19 CDT)

Date: Jun 29, 2026

# EXHIBIT E

## DECLARATIONS AS TO WABC
## New York, NY

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of Leo G. Watson III**

I, Leo G. Watson, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of New York, within the service area of Station WABC-TV. I live in Nassau County, I have resided there for 2 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station WABC-TV for approximately 2 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.

7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.

8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Leo G. Watson III (Jun 29, 2026 08:49:39 EDT)

Date: Jun 29, 20

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of Hali Friehling**

I, Hali Friehling, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of NYC, within the service area of Station WABC. I live in Sullivan County, I have resided there for 17 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station ABC for approximately 40 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.

7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.

8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: H[illegible]ling (Jun 29, 2026 14:21:16 EDT)

Date: Jun 29, 20

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of** jill donow

I, jill donow, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.

2. I reside in the vicinity of New York, within the service area of Station WABC-TV. I live in Bergen County, I have resided there for 32 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").

3. I have been a regular viewer of Station WABC-TV for approximately 1 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.

4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.

5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.
7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.
8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: jill donow

Date: Jun 29, 2026

# EXHIBIT F

## DECLARATIONS AS TO WTVD
## Durham, NC

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of** Ridge Parker

I, Ridge Parker, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of Durham, within the service area of Station WTVD. I live in Wake County, I have resided there for 6 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station WTVD for approximately 5 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.
7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.
8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Ridge Parker (Jun 29, 2026 15:25:48 EDT)

Date: Jun 29, 2026

# EXHIBIT G

## DECLARATIONS AS TO WPVI
## Philadelphia, PA

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of WILLIAM R. WANGER**

I, _WILLIAM R. WANGER, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.

2. I reside in the vicinity of PHILADELPHIA, PA, within the service area of Station WPVI-TV. I live in MONTGOMERY County, I have resided there for FORTY (40) years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").

3. I have been a regular viewer of Station WPVI-TV for approximately SEVENTY (70) years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.

4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.

5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.

7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.

8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: William Wanger (Jun 29, 2026 15:19:56 EDT)
WILLIAM R. WANGER

Date: 06/29/2026

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of**

I, Kenneth Hartman, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of Philadelphia, within the service area of Station 6ABC. I live in Camden County, I have resided there for 33 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station ABC6 for approximately 33 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.
7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.
8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its

fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's

preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Kenneth Hartman

Date: June 29, 2026

# EXHIBIT H

DECLARATIONS AS TO KTRK
Houston, TX

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of Valerie Ann Cecil**

I, Valerie Ann Cecil, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of Houston, within the service area of Station KTRK-TV. I live in Harris County, I have resided there for 33 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a viewer of Station KTRK-TV for approximately 33 years. I rely on my station for important safety information during natural disasters or other extreme weather events.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.

7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.

8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community's stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community's expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney's discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community's preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community's

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Valerie Cecil
Valerie Cecil (Jun 28, 2026 19:52:15 CDT)

Date: Jun 28, 20

**FEDERAL COMMUNICATIONS COMMISSION**
**MEDIA BUREAU**

Docket No. 26-131

**Declaration of Charlene Slack Balderas**

I, Charlene Slack Balderas, declare as follows:

1. I am a party in interest to this proceeding, and to the Petition to Deny filed pursuant to 47 C.F.R. § 1.939. The facts stated herein are within my personal knowledge.
2. I reside in the vicinity of Houston, within the service area of Station KTRK-TV. I live in Haris County, I have resided there for 34 years. My service area Station's license is held by the Walt Disney Company's American Broadcasting Company ("Disney's ABC").
3. I have been a regular viewer of Station KTRK-TV for approximately 34 years. My viewing of this station is not the result of transient or occasional contact; rather, I watch the station's programming on a regular and ongoing basis.
4. I am aware that the Federal Communications Commission requires all broadcast television licensees to afford equal opportunity in employment and prohibits employment discrimination on the basis of race, color, religion, national origin, or sex.
5. Based on the Walt Disney Company's own statements in support of diversity, equity, and inclusion ("DEI"), the civil rights complaint and board letter written by America First Legal, and other publicly available reporting, I have

reason to believe that Disney's ABC has engaged in unlawful race and sex discrimination in its employment policies and practices.

6. As a regular viewer residing within the station's service area, I know that the station's race-based employment practices harm the public interest. A television station that makes hiring and promotion decisions based on racial preferences rather than qualifications and merit deprives its viewing audience of the most capable workforce available to produce programming, gather news, ascertain community needs, and serve the public interest.
7. The station's use of race-based criteria in employment decisions diminishes the quality of its programming because it substitutes racial identity for professional competence as the basis for selecting the individuals who make editorial judgments, report the news, produce content, and determine which community issues receive coverage. When merit is subordinated to racial classification, the resulting programming is less likely to reflect the highest standards of journalism and public affairs broadcasting that viewers are entitled to expect from a licensee operating under the public interest standard.
8. The station's discriminatory employment practices also harm the public by undermining the station's ability to identify and respond to the full range of my community's needs. A station that selects its workforce based on racial identity rather than demonstrated ability to serve the community fails in its fundamental obligation as a public trustee to provide programming responsive to significant community issues.

9. My community is further harmed because the station's race-based employment practices raise serious questions about the character qualifications and fitness of the licensee to hold a broadcast license. The FCC has recognized that consistent discrimination in employment practices calls into question a licensee's character, and such character deficiencies pervade the licensee's entire operation to the detriment of the viewing public.

10. As a member of the viewing public, I represent my community’s stake in the station's compliance with FCC equal employment opportunity requirements because such compliance is necessary to ensure that the station fulfills its obligation as a public trustee to provide programming that serves the entire community.

11. The programming in my area is increasingly polarized and falls short of my community’s expectation that television programming serves the interests of my community.

12. Additionally, Disney's unlawful discrimination in employment further harms my community because the race- and sex-based quotas governing the selection of writers, directors, and producers have directly affected the programming content we receive. The ideology that gives rise to Disney’s discriminatory policies also leads to programming infused with a divisive political and socio-sexual agenda misaligned with my community’s preferences. My community is harmed by this conduct because the station's parent company has used its broadcast license and programming resources not to serve my community’s

interests but to advance an extreme racial, political, and socio-sexual agenda, depriving my community of the merit-based, family-oriented, and politically neutral programming that a licensee operating in the public interest is obligated to provide.

13. Grant of renewal without requiring the licensee to remedy its discriminatory employment practices would further harm my community by allowing the station to continue operating in a manner inconsistent with the public interest standard.

I declare under penalty of perjury that the foregoing is true and correct.

By: Charlene Slack Balderas
Charlene Slack Balderas (Jun 28, 2026 18:36:17 CDT)

Date: Jun 28, 2026