# Exhibit 27

| | |
|---|---|
| **From:** | Pamela Kane |
| **To:** | STetreault@wbklaw.com |
| **Cc:** | Dillon, Tyler; Elizabeth Goldin; Georgina Feigen; Christopher Sova |
| **Subject:** | The Walt Disney Company, File No. EB-IHD-25-00038333 \| Follow Up on Supplemental Letter of Inquiry |
| **Date:** | Friday, May 15, 2026 12:52:55 PM |
| **Attachments:** | Attachment A 5 15 26 Email to Disney.pdf |

Suzanne:

The Enforcement Bureau (Bureau) received responses to the Bureau's February 20, 2026 Supplemental Letter of Inquiry (SLOI) from The Walt Disney Company (TWDC), the American Broadcasting Company, and affiliates or subsidiaries (Disney or Company) dated March 23, 2026 and April 21, 2026 (collectively, SLOI Response). After review, the Bureau has considerable concerns about the completeness of the SLOI Response. Those concerns are detailed in Attachment A. Moreover, because the Bureau already granted the Company an extension to respond to the SLOI, the Bureau directs the Company to provide complete responses to the SLOI within 14 days of this letter.

If you have any questions about this matter, please contact Christopher Sova, Division Chief, Investigations and Hearings Division, Enforcement Bureau, FCC at 202-418-1868 or Christopher.Sova@fcc.gov.

Pamela S. Kane
Special Counsel
Investigations and Hearings Division
Enforcement Bureau
Federal Communications Commission
45 L Street NE
Washington, D.C. 20554

## ATTACHMENT A

### I. <u>The Bureau Did Not and Does Not Agree to Limit the Scope of the Company's SLOI Response</u>

In the Company's March 23, 2026 and April 21, 2026 responses to the Bureau's February 20, 2026 Supplemental Letter of Inquiry (SLOI), the Walt Disney Company (Company or TWDC) limited the scope of its responses to "information pertaining to the employment practices of the Company's owned station group as well as its enterprise-wide policies that impact its owned station group since December 2020" – what the Company refers to in its SLOI responses as the "Agreed Scope." In particular, the Company limited its responses or refused to provide any response to Requests for Information (RFI) 14-16, 18, 19, 20, 28, 32, 37-38, 40, 43, 53, 54, 57-64, 66, 70-71 and Requests for Documents (RFD) 5-9 and 16-17 in the SLOI. As detailed below, however, the Company's limitation of its SLOI responses was not something that was "agreed" to.[1]

The Company apparently relied on a July 2, 2025 e-mail from the Bureau to counsel for the Company, in which the Bureau agreed to limit the Company's ***document production*** in response to the Bureau's June 5, 2025 Letter of Inquiry (Initial LOI) by defining "Disney" as the Disney-owned broadcast stations. In that same email, the Bureau specifically reserved the right to renew our demand that Disney produce documents on behalf of more than those Disney-owned broadcast stations. Nothing in the Bureau's email reflects that the Bureau agreed to allow the Company to narrow the scope of ***its narrative responses to the Initial LOI*** and/or to narrow its ***responses to any future RFIs or RFDs*** from the Bureau.

For the Company to have unilaterally limited its narrative responses and document production to the Bureau's SLOI based on a limitation that specifically applied to document production for a different letter of inquiry is improper and unauthorized. It is also disingenuous for the Company to suggest that its narrowed responses to the SLOI reflect discussions between Bureau staff and the Company's counsel. Discussions held between Bureau staff and the Company's counsel in June and July of 2025 clearly related to a different set of requests, and to date, neither the Company, nor its counsel, has approached the Bureau about limiting the scope of its responses to the SLOI.

To confirm, the Bureau did not – and does not – agree that the Company's narrative responses or document production in response to the SLOI should be limited to Disney's Defined Scope. The Bureau thus directs the Company to provide unlimited responses to RFIs 14-16, 18, 19, 20, 28, 32, 37-38, 40, 43, 53, 54, 57-64, 66, 70-71 and RFDs 5-9 and 16-17. To the extent the Company narrowed the scope of its responses to any additional requests that are not listed above, the Bureau directs the Company to provide unlimited responses to those requests as well.

### II. <u>Concerns With the Company's Narrative Responses to Individual Requests</u>

**RFI 16.** The Bureau requested that the Company explain the relationship between each Owned Station Ownership Entity (OSOE*)* and TWDC. In addition to narrowing its response based on Disney's Defined Scope, the Company simply directed the Bureau to a chart.

As discussed above, the Company had no basis for narrowing its narrative response to Disney's Defined Scope. In addition, a chart cannot and does not "explain" the relationship between each OSOE and TWDC. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 17.** The Bureau requested that the Company define the term "DEI" as used by Disney

[1] As there was no agreement between the Bureau and Company counsel that the scope of the Company's narrative and production responses to the Bureau's SLOI should be limited in any way, the Bureau shall refer to what the Company calls the "Agreed Scope" as "Disney's Defined Scope."

during the period covering the SLOI, and to the extent that Disney's definition of DEI has changed during the relevant time period, to explain when and how the definition has changed. The Company's response failed to explain how the definition of what it defines as "DEI" has changed during the relevant time period or explain when, why and how it has changed. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 20.** The Bureau requested that the Company state, for each Owned Station (as that term is defined in the SLOI), whether there were policies or goals established, directed, or monitored by any OSOE or other entity in the TWDC ownership chain that relate to recruitment, employment, career development and training, compensation including bonuses and benefits and contracting, based on race, color, national origin, sex, and/or religion. The Bureau further requested that if the answer was yes, that the Company list and describe each such policy or goal of the OSOE or other entity establishing, directing or monitoring the policies or goals, and explain any changes to the same for the dates covered by this SLOI.

The Company not only improperly limited its response based on Disney's Defined Scope, but it also failed to identify whether any OSOE or other entity in the TWDC ownership chain established, directed, or monitored policies that relate to recruitment, employment, career development and training, compensation including bonuses and benefits and contracting, based on race, color, national origin, sex, and/or religion. As a result, the Company's response did not address whether any OSOE or other entity in the TWDC ownership chain established, directed, or monitored "outreach efforts to ensure equal employment opportunity" or "the goals WPVI identified in its 2022 AOP submission." Also, the Company's response did not address whether any OSOE or any entity in the TWDC chain established, directed, or monitored WTVD's goal (referred to in response to RFI 18) of hiring those who represented the WTVD audience. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 21.** The Bureau requested that the Company explain, for each Owned Station, whether and how TWDC and the OSOEs communicate policies or goals that originate with TWDC and/or the OSOEs to the employees of each Owned Station. To the extent TWDC or the OSOEs changed their method of communication over time, the Bureau asked the Company to describe those changes and the relevant dates.

The Company's response did not sufficiently address how the OSOEs communicate policies or goals to the Owned Stations' employees. The Company also failed to address how TWDC communicates its goals to the Owned Stations or whether TWDC communicates its policies through any method or Document other than its Employee Policy Manual. Lastly, the Company did not explain whether TWDC or the OSOEs changed their method of communication over time, and if so, the changes made and the relevant dates. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 23.** The Bureau requested that the Company identify each OSOE that participates in, monitors, or controls the Owned Station's daily operations and to describe the way such participation, monitoring, or control is executed. The Bureau also requested that the Company explain if the OSOE's participation, monitoring, or control changed over time, and if so, the relevant dates.

The Company's response focused on the interpretation of what constitutes "control" of a broadcast license under section 310(d) of the Communications Act of 1934, as amended (Act) and provided that the Owned Stations "maintained control" over daily operations. This response, however, lacked any reference to the portion of the RFI that asks about the OSOE's participation in or monitoring of the Owned Stations' daily operations. It also failed to explain whether the OSOE's participation, monitoring, or control has changed over time. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 24.** The Bureau requested that the Company identify each OSOE that participates in,

monitors, or controls each Owned Stations' employment, supervision, and dismissal of personnel as well as compliance with section 73.2080 of the Commission's rules. The Bureau also requested that the Company explain if the OSOE's participation, monitoring, or control changed over time, and if so, the relevant dates.

Consistent with its response to RFI 23, in its response to RFI 24, the Company focused on section 310(d) of the Act and on its interpretation of "control." This response, however, lacked any reference to the portion of the RFI that asks about the OSOE's participation in or monitoring of the Owned Stations' employment, supervision, and dismissal of personnel and compliance with section 73.2080 of the Commission's rules. It also failed to explain whether the OSOE's participation, monitoring, or control has changed over time. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 25.** The Bureau requested that the Company identify each OSOE that participates in, monitors, or controls each Owned Stations' programming decisions. The Bureau also requested that the Company explain if the OSOE's participation, monitoring, or control changed over time, and if so, the relevant dates.

Consistent with its response to RFI 23 and RFI 24, in its response to RFI 25, the Company focused its response on section 310(d) of the Act and on its interpretation of "control." This response, however, lacked any reference to the portion of the RFI that asks about the OSOEs' participation in or monitoring of the Owned Stations' programming decisions. It also failed to explain whether the OSOEs' participation, monitoring, or control has changed over time. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 26.** The Bureau requested that the Company identify each OSOE that participates in, monitors, or controls each Owned Stations' payment of financial obligations. The Bureau also requested that the Company explain if the OSOE's participation, monitoring, or control changed over time, and if so, the relevant dates.

Consistent with its response to RFI 23-25, in its response to RFI 26, the Company focused its response on section 310(d) of the Act and on its interpretation of what constitutes "control." This response, however, lacked any reference to the portion of the RFI that asks about the OSOEs' participation in or monitoring of the Owned Stations' payment of financial obligations. It also failed to explain whether the OSOEs' participation, monitoring, or control has changed over time. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 28.** The Bureau requested that the Company state the purpose and formation and/or termination dates of the following three teams: Disney Entertainment Human Resources team; Disney Entertainment DEI team; and Disney Enterprise DEI team. The Bureau also requested that the Company identify, for each team, its authority to draft, issue, review, suggest or rescind policies or goals that influence or affect the OSOEs, including the Owned Stations.

The Company provided a limited response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. In addition, the Company's response to this RFI is insufficient in several ways. For example, in the first paragraph of the response, the Company suggested that it identified Employee Relations (ER) teams instead of Human Resources (HR) functions, but it failed to explain the significance of this distinction or to address whether each of the three listed teams are ER teams. The SLOI response also failed to explain whether the Disney Entertainment Television (DET) team is still in existence.

In the second paragraph of the response, the Company stated that "certain employment positions and departments within its HR (now People & Culture) organization" have been renamed, but it is not clear from the response how, if at all, these name changes affect the three teams identified in this request. In addition, it is not clear which employment positions and departments have been renamed, when they were renamed, or why. It is also not clear how the Opportunity & Inclusion department differs, if at all,

from the former Diversity, Equity, and Inclusion department in form or function.

In the third paragraph of the response, the Company referred to four teams by acronyms. The Bureau directs the Company to confirm the full name of each of these teams, the segment or segments to which they apply, the year the team originated, if they are still in existence, and the year the team's name was changed.

Finally, the response failed to identify, for any of the three teams set out in the request, or the additional four teams named in the last paragraph of the Company's response, to describe the authority each had "to draft, review, issue, suggest or rescind policies or guidance applicable to the Owned Stations."

The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 29.** The Bureau requested that the Company provide a chart that lists the job title, duties, and relevant date(s) of membership and/or employment for each individual on the Disney Entertainment Human Resources team; Disney Entertainment DEI team; and Disney Enterprise DEI team.

Here again, the Company's response is deficient. The Company responded that it identified ER teams instead of HR functions, but it failed to explain the significance of this distinction or to address whether each of the teams are ER teams. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 31.** The Bureau requested that the Company state, for each Owned Station, whether any policy or goal identified in response to RFI 30 was implemented, and if so, to provide the dates it was in effect and a description of the policy and/or goal.

Instead of providing the requested information, the Company simply responded that the Owned Stations are governed by the Employee Policy Manual and the Enterprise Strategic Inclusion Framework. The Company did not describe any specific policy and/or goal, it did not identify the dates that policy and/or goal was in effect, and it did not confirm whether any specific policy and/or goal was implemented. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 40.** The Bureau requested that the Company provide information concerning the database of diverse and underrepresented talent and crew referenced in RFI 39 such as its creation date, its contents, each OSOE or Owned Station with access, and its termination date (if applicable).

The Company refused to provide any response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 42.** The Bureau requested that the Company describe Disney's Reimagine Tomorrow website, including its purpose; the date(s) it was made available internally and to the public; the materials and services made available via the website; the reason(s) for taking the website offline; and an explanation including the date(s) and reason(s) for any changes.

The Company's response is incomplete. For example, RFI 42(a) requests that the Company describe the purpose of the Reimagine Tomorrow website. The Company failed to do this. The Company also failed to identify the materials and services made available via the website as requested by RFI 42(d). [redacted] Lastly, the Company failed to provide any response to RFI 42(f) – an explanation including the date(s) and reason(s) for any changes to the website's purpose and the materials and services made available.

The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 44.** The Bureau requested that the Company state whether and how Disney has monitored, tracked, or ensured that the Owned Stations have not employed, compensated, terminated, promoted or demoted any personnel based on protected characteristics, including criteria based on race, color, religion, national origin, or sex and, if so, to identify the guidelines and policies, if any, by which Disney has done so.

The Company's response failed to explain whether the Company monitors, tracks, or ensures that the Owned Stations comply with the Company's EEO Policy or other guidelines or policies to ensure that Owned Stations have not employed, compensated, terminated, promoted or demoted any personnel based on protected characteristics, including criteria based on race, color, religion, national origin, or sex. The Company also failed to explain how the Company monitors, tracks or otherwise ensures that the Owned Stations comply with the Company's EEO policy and/or other similar guidelines and policies. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 45.** The Bureau requested that the Company list and describe, for each Owned Station, any recruitment opportunities limited to students from Historically Black Colleges and Universities and/or single-sex colleges or universities and/or colleges or universities with at least 50% of minority students and any job training opportunities limited to minorities and female employees.

The Company's narrative response is incomplete. [redacted] The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 46.** The Bureau requested that the Company list and describe, for each Owned Station, every recruitment, employment, career development training or professional development program based on race, color, national origin, sex, and/or religion that it offered to its employees and contractors.

[redacted] The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 51.** The Bureau requested a description of the actions the Company has taken to comply with Executive Orders 14151 and 14173.

The Company responded that these Executive Orders directed certain actions be taken by federal agencies, departments, commissions, and for 14173, the federal government, and as such imposed no obligations on a private party such as the Company. The Bureau requests that the Company confirm that it has not taken *any* actions to comply with these two Executive Orders.

**RFI 52.** The Bureau requested a description of any actions taken by an OSOE and/or the Owned Station to comply with Executive Orders 14151 and 14173.

The Company responded that these Executive Orders directed certain actions be taken by federal agencies, departments, commissions, and for 14173, the federal government, and as such imposed no obligations on a private party such as the Company. The Bureau requests that the Company confirm that neither an OSOE nor an Owned Station has taken *any* actions to comply with these two Executive Orders.

**RFI 54.** The Bureau requested a description of the internship program that WABC-TV described as placing "special emphasis on seeking out and identifying female and minority students," and the dates of participation by WABC-TV or any of the other Owned Stations.[2] Additionally, the Bureau asked for

[2] *See* WABC-TV, New York, New York (Facility Id. No. 1328), 2021-2025 EEO Public File Reports.

details regarding what "special emphasis" was put in place and how it was effected in practice.

The Company provided a limited response based on its application of Disney's Limited Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. Additionally, the Company's response did not address the request for a description of the "special emphasis on seeking out and identifying female and minority students," put in place and how it was effected in practice. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 55.** For each Owned Station, the Bureau requested that the Company describe the [redacted]

The Company's response did not address the information requested. [redacted] The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 56.** The Bureau requested a description of the activities, goals, decisions and policies of, and the Owned Stations' participation in, the Women+Tech BERG and "Code: Rosie"[3] as well as an explanation of why each program was created, the current status of each program, and an identification of the individual or entity that directed each Owned Station to implement the programs, if applicable.

The Company's response simply [redacted] and the program is no longer active." Missing from this response is a description of the activities, goals, decisions and policies of, and the Owned Stations' participation in, the Women+Tech BERG and "Code: Rosie."[4] Additionally, the Company did not provide information regarding the creation of Code: Rosie, as well as the name of the individual or entity that directed each Owned Station to implement these two programs. Additionally, for the Women+Tech BERG, the Company's response did not provide the current status of this program. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 57.** The Bureau requested information regarding the African American High School Recognition Ceremony Scholarship [redacted] including the first date Disney funded the scholarship; the Entity(ies) that provided funds; an explanation of the decision to fund the scholarship and identification of the decision maker(s); the date(s) funding ceased (if applicable); an explanation of Disney's role and/or any OSOE role, if any, in selecting scholarship award recipients; and, whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Bureau requested the date(s) that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on the subparts identified in RFI 57(f).

The Company provided a limited response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. In addition, the Company did not provide any dates that Disney and/or any OSOE became aware that the scholarship gave preference based on race, color, national origin, sex or religion. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 58.** The Bureau requested information regarding the Central California Asian Pacific Women Scholarship [redacted] including the first date Disney funded the

---

[3] *See* Bates No. Disney-04-000831.

[4] *See* Bates No. Disney-04-000831.

scholarship; the Entity(ies) that provided funds; an explanation of the decision to fund the scholarship and an identification of the decision maker(s); the date(s) funding ceased (if applicable); an explanation of Disney's role and/or any OSOE role, if any, in selecting scholarship award recipients; and, whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Bureau requested the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on the subparts identified in RFI 58(f).

The Company provided a limited response based on its application of Disney's Limited Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. In addition, the Company did not provide any dates that Disney and/or any OSOE became aware that the scholarship gave preference based on race, color, national origin, sex or religion. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 59.** The Bureau requested information regarding the Emma Bowen Foundation for Minority Interests in Media Scholarship Program (reportedly associated with WABC-TV) including the first date Disney funded the scholarship; the Entity(ies) that provided funds; an explanation of the decision to fund the scholarship and identification of the decision maker(s); the date(s) funding ceased (if applicable); an explanation of Disney's role and/or any OSOE role, if any, in selecting scholarship award recipients; and, whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Bureau requested the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on the subparts identified in RFI 59(f).

The Company provided a limited response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. [redacted] The Bureau's questions, however, focused on [redacted] but also the Company and the OSOEs and whether any of those entities contributed to the Emma Bowen Foundation for Minority Interests in Media Scholarship Program. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 60.** The Bureau requested information regarding the Joe Becton Scholarship at Fayetteville State University (reportedly associated with WTVD) including the first date Disney funded the scholarship; the Entity(ies) that provided funds; an explanation of the decision to fund the scholarship and identification of the decision maker(s); the date(s) funding ceased (if applicable); an explanation of Disney's role and/or any OSOE role, if any, in selecting scholarship award recipients; and, whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Bureau requested the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on the subparts identified in RFI 60(f).

The Company provided a limited response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. Additionally, the Company did not provide any dates that Disney and/or any OSOE became aware that the scholarship gave preference based on race, color, national origin, sex or religion. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 61.** The Bureau requested information regarding the American Indian College Fund including the first date Disney funded the scholarship; the Entity(ies) that provided funds; an explanation of the decision to fund the scholarship and identification of the decision maker(s); the date(s) funding ceased (if applicable); an explanation of Disney's role and/or any OSOE role, if any, in selecting scholarship award recipients; and, whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Bureau requested the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on the subparts identified in RFI 61(f).

The Company provided a limited response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. Additionally, the Company did not provide information regarding whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion or the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 62.** The Bureau requested information regarding the APIA Scholars including the first date Disney funded the scholarship; the Entity(ies) that provided funds; an explanation of the decision to fund the scholarship and identification of the decision maker(s); the date(s) funding ceased (if applicable); an explanation of Disney's role and/or any OSOE role, if any, in selecting scholarship award recipients; and, whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Bureau requested the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on the subparts identified in RFI 62(f).

The Company provided a limited response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. Additionally, the Company did not provide information regarding whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Company failed to identify the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 63.** The Bureau requested information regarding the Hispanic Scholarship Fund (HSF) Scholar Program including the first date Disney funded the scholarship; the Entity(ies) that provided funds; an explanation of the decision to fund the scholarship and identification of the decision maker(s); the date(s) funding ceased (if applicable); an explanation of Disney's role and/or any OSOE role, if any, in selecting scholarship award recipients; and, whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Bureau requested the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on the subparts identified in RFI 63(f).

The Company provided a limited response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. In addition, the Company did not provide information regarding whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Company failed to identify the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 64.** The Bureau requested information regarding the Walt Disney UNCF Enhanced Scholars Internship Program including the first date Disney funded the scholarship; the Entity(ies) that provided funds; an explanation of the decision to fund the scholarship and identification of the decision maker(s); the date(s) funding ceased (if applicable); an explanation of Disney's role and/or any OSOE role, if any, in selecting scholarship award recipients; and, whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. Additionally, the Bureau requested the date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on the subparts identified in RFI 64(f).

The Company provided a limited response based on Disney's Defined Scope. As discussed above, the Company had no basis for narrowing its narrative response in this way. Additionally, the Company did not provide information regarding whether the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. The Company also failed to identify the

date(s), if ever, that Disney and/or any OSOE became aware that the scholarship gave preference to potential awardees based on race, color, national origin, sex, or religion. The Bureau directs the Company to supplement its response to provide all of the information requested.

**RFI 75.** The Bureau requested that the Company, for each year from 2021 to the present, for each Owned Station, list and describe all factors considered and evaluated for all decisions related to hiring, terminating, and promoting employees at all salary bands, including executives.

The Company's response did not list and describe all factors that each Owned Station considered and evaluated in making employment decisions, as was requested. Instead, the Company's response was limited to identifying the Company's expectations concerning employment decisions and to identifying several factors on which Company employment decisions are based. If the Company's expectations as to the factors to be considered for all decisions related to hiring, terminating, and promoting employees at all salary bands, including executives, also applied to the Owned Stations, the Company needed to clarify this point and explain how those "expectations" were communicated to the Owned Stations. If hiring, promotion, and termination at the Owned Stations is based on "legitimate business reasons," the Company needed to identify the "legitimate business reasons" that were considered for each role at the Owned Stations and the entity/individual that established these "legitimate business reasons." The Bureau directs the Company to supplement its response to provide all of the information requested.

## III. <u>Concerns With the Company's Document Production</u>

**RFD 4.** The Bureau requested that the Company provide copies of ***all*** documents identifying or describing TWDC's policies or goals related to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting based on race, color, natural origin, sex, and/or religion.

In response, the Company referred the Bureau to a single document – the TWDC Employee Policy Manual and Standards of Business Conduct that it had previously produced in response to the Initial LOI. Aside from the fact that this document does not appear to identify or describe TWDC's policies for each of the categories set forth in RFD 4, the Bureau finds it difficult to believe that this is the only responsive document.

The Bureau directs the Company to supplement its production to include ***all*** documents identifying or describing TWDC's policies or goals related to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting based on race, color, natural origin, sex, and/or religion. As a reminder, "Document" as defined by the SLOI, is quite broad, and includes "any taped, recorded, transcribed, written, typed, printed, filmed, punched, computer-stored, electronically stored, or graphic matter of every type and description" and "communications from messaging applications." To the extent the Company contends it has no additional responsive documents, the Bureau directs the Company to affirm to that in its response.

**RFD 5.** The Bureau requested all Communications within each Owned Station referring or relating to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting based on race, color, natural origin, sex, and/or religion.

In response, the Company referred the Bureau to each Owned Stations' Affirmative Action Plans (AAP) that were produced in response to the Initial LOI as well as to each Owned Stations' Annual Operating Plans (AOP) that were produced on April 21, 2026. The Bureau finds it difficult to believe these documents are the only "Communications" – as that term is defined by the SLOI – referring or relating to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting and race, color, natural origin, sex, and/or religion. The Company did not produce a single email, for example, within each Owned Station that refers or relates to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting based on race, color, natural origin, sex, and/or religion.

The Bureau directs the Company to supplement its production to produce all Communications requested in RFD 5. To the extent the Company contends it has no additional responsive documents, the Bureau directs the Company to affirm to that contention in its response.

**RFD 7.** The Bureau requested that the Company provide copies of all Communications between TWDC and any Owned Station referring or relating to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting based on race, color, natural origin, sex, and/or religion.

The Company's only response was to direct the Bureau to the Company's response to RFD 5. Yet, as noted above, the Company's response to RFD 5 was limited to each Owned Station's AAPs and AOPs. It is unclear how, if at all, these documents constitute a "Communication" between TWDC and the Owned Stations. The Bureau also finds it difficult to believe these documents are the only "Communications" between TWDC and the Owned Stations referring or relating to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting based on race, color, natural origin, sex, and/or religion.

The Bureau directs the Company to supplement its production to produce all Communications requested in RFD 7. To the extent the Company contends it has no additional responsive documents, the Bureau directs the Company to affirm to that contention in its response.

**RFD 9.** The Bureau requested that the Company provide copies of all Communications between any OSOE and any Owned Station referring or relating to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting based on race, color, natural origin, sex, and/or religion.

The Company's only response was to direct the Bureau to the Company's response to RFD 5. Here again, as noted above, the Company's response to RFD 5 was limited to each Owned Station's AAPs and AOPs. It is unclear how, if at all, these documents constitute a "Communication" between any OSOE and the Owned Stations. The Bureau also finds it difficult to believe these documents are the only "Communications" between any OSOE and the Owned Stations referring or relating to recruitment; employment; career development and training; compensation, including bonuses and benefits; and contracting based on race, color, natural origin, sex, and/or religion.

The Bureau directs the Company to supplement its production to produce all Communications requested in RFD 9. To the extent the Company contends it has no additional responsive documents, the Bureau directs the Company to affirm to that contention in its response.

**RFD 11.** The Bureau requested that the Company produce copies of all Documents and Communications referring or relating to potential or enacted changes to TWDC policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173.

In response, the Company did not state that it did not have responsive Documents and Communications – as those terms are defined in the SLOI. Instead, it directed the Bureau to its narrative response to RFI 51, in which the Company states that neither of these executive orders imposed any obligation on a private party. This narrative response is not responsive to RFD 11. The Company's narrative response to RFI 51 failed to address whether there were potential or enacted changes to TWDC policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173. Moreover, it is difficult to believe that the Company did not have any Documents or Communications referring or relating to potential or enacted changes to TWDC policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173 that are responsive to RFD 11.

The Bureau directs the Company to supplement its production to produce all of the Documents and Communications requested in RFD 11. To the extent the Company contends it has no additional responsive Documents or Communications, the Bureau directs the Company to affirm that contention in

its response.

**RFD 12.** The Bureau requested that the Company produce copies of all Documents and Communications referring or relating to potential or enacted changes to OSOE policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173.

In response, the Company did not state that it did not have responsive Documents and Communications – as those terms are defined in the SLOI. Instead, the Company directed the Bureau to its narrative response to RFI 51, in which the Company states that neither of these executive orders imposed any obligation on a private party. This narrative response is not responsive to RFD 12. The Company's narrative response to RFI 51 failed to address whether there were potential or enacted changes to OSOE policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173. Moreover, it is difficult to believe that the Company did not have any Documents or Communications referring or relating to potential or enacted changes to OSOE policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173 that are responsive to RFD 12.

The Bureau directs the Company to supplement its production to produce all of the Documents and Communications requested in RFD 12. To the extent the Company contends it has no additional responsive Documents or Communications, the Bureau directs the Company to affirm that contention in its response.

**RFD 13.** The Bureau requested that the Company produce copies of all Documents and Communications referring or relating to potential or enacted changes to each Owned Stations' policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173.

In response, the Company did not state that it did not have responsive Documents and Communications – as those terms are defined in the SLOI. Instead, the Company directed the Bureau to its narrative response to RFI 51, in which the Company states that neither of these executive orders imposed any obligation on a private party. This narrative response is not responsive to RFD 13. The Company's narrative response to RFI 51 failed to address whether there were potential or enacted changes to the Owned Stations' policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173. Moreover, it is difficult to believe that the Company did not have any Documents or Communications referring or relating to potential or enacted changes to the Owned Stations' policies, goals, contracts, procedures, presentations, programs, or trainings to comply with Executive Orders 14151 or 14173 that are responsive to RFD 13.

The Bureau directs the Company to supplement its production to produce all of the Documents and Communications requested in RFD 13. To the extent the Company contends it has no additional responsive Documents or Communications, the Bureau directs the Company to affirm that contention in its response.