**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

*American Broadcasting Companies, et al.*

*v.* Civil Case No. 1:26-cv-02902

*Federal Communications Commission, et al.*

**UNOPPOSED MOTION FOR LEAVE TO FILE AMICUS BRIEF**
**BY THE CENTER FOR AMERICAN RIGHTS**

Pursuant to Local Civil Rule 7(o), the Center for American Rights moves this Court to file the attached amicus brief and states in support:

## INTRODUCTION

ABC's complaint and motion focus on its First Amendment speech rights. But it's not the only party to the FCC's proceeding with First Amendment rights at stake. The FCC and President Trump have a First Amendment interest in their government speech. *NRA of Am. v. Vullo*, 602 U.S. 175, 198 (2024) ("nothing here prevents government officials from forcefully condemning views with which they disagree.").

Proposed amicus Center for American Rights also asserts two important First Amendment principles. First, it is the rights of viewers to information that is paramount in the broadcasting context, not the speech rights of the broadcaster. *CBS v. FCC*, 453 U.S. 367, 395 (1981) ("It is the right of the viewers and listeners, not the right of the broadcasters, which is paramount. It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail, rather than to countenance monopolization of that market. . . . It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and

experiences which is crucial here." Ellipses original. Quoting *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969)).

Second, the Center for American Rights and the viewers it represents have a separate First Amendment right to petition the government, which includes filing complaints and petitions at the FCC. The Center's "right to petition extends to all departments of the Government, including administrative agencies, and encompasses formal and informal complaints, about matters of public and private concern." *Arneault v. O'Toole*, 513 F. App'x 195, 198 n.2 (3d Cir. 2013) (internal citations omitted). Here, as ABC's pleading notes, the Center has filed a complaint against ABC and its station WPVI (Compl. ¶ 54) and a petition to deny on the early renewal applications (*see* Compl. ¶ 88). The Center also has filed comments opposing a declaratory judgment in favor of *The* View. ECFS Doc. 26109836115 in MB Docket 26-124. ABC's attempt to cut -off the renewal review process is an attempt to stop the government's review of the Center's petition dead in its tracks. In other words, ABC is trying to prioritize its speech rights over and above viewers' paramount rights to broadcasting in the public interest, and to do so ABC is trying to stop the FCC's review of viewers' exercise of their petition rights. The Center and its viewers are entitled to be heard on this TRO to protect their rights.

**ARGUMENT**

1. The Center for American Rights is a nonprofit, nonpartisan, public-interest law firm that frequently practices before the Federal Communications Commission. More particularly, the Center has filed a petition to deny in the open FCC proceeding on ABC's broadcast licenses on behalf of viewers in several markets. *See* FCC Docket MB 26-131, Doc. 26109956621 (petition to deny, Jun 29, 2026); 26110026680 (supplement, Jul 17, 2026); 26110069566 (reply brief, Aug 05,

2026). If this Court temporarily enjoins the FCC's proceeding, the Center and the viewers it represents will not receive timely resolution of their request for agency action on ABC's licenses.

2. The Center is also frequently referenced in the complaint and accompanying papers. Compl. ¶¶ 54, 56, 62. *See id.* ¶ 88 (obliquely referencing the Center's petition to deny); Disney Memo. in Support of its Motion, Dkt. 2-1, 9-10 & 29; *see id*. at 14 (referencing Petitions to Deny); Mark Fowler Decl., Dkt. 2-6, ¶ 11.

3. The Center supports the Defendants, the Federal Communications Commission and its members.

4. The brief is desirable because the Center has widely recognized expertise in this area of law and can make unique points and arguments within the overall framework of the parties' presentations. The *New York Times* reports that the Center's president Daniel "Suhr had unique insight on the matter [of Carr's FCC policy on broadcasting]. He and his public-interest law firm, the Center for American Rights, had been developing the legal logic for Carr's effort since before the 2024 election."[1] Suhr's expertise is widely recognized by news media—to illustrate, the day ABC filed this lawsuit, Suhr was quoted in stories on it from the *New York Times*, *Los Angeles Times*, *Wall Street Journal*, and CNN.

5. "The classic role of amicus curiae is to assist a court in a case of public interest by supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration." *California v. United States DOI*, 381 F. Supp. 3d 1153, 1163-1164 (N.D. Cal. 2019). That describes the Center's brief: it addresses the crucial issues with additional authorities presented within a "different analytical approach," *Prairie Rivers Network v. Dynegy Midwest*

[1] Jan. 13, 2026, Jim Rutenberg, https://www.nytimes.com/2026/01/12/magazine/fcc-tv-networks.html.

*Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020) (Scudder, J., in chambers), while still addressing the same arguments raised by the parties. This is not a "show of hands" or "copycat brief," *id*., but a serious effort to add value to the Court's consideration of these important and novel First Amendment questions.

6. Amicus briefs are especially appropriate "when the would-be amicus has a direct interest in another case that may be affected by a decision in the current case." *Rawson v. ALDI, Inc*., 2022 U.S. Dist. LEXIS 88511, *19 (N.D. Ill. May 17, 2022). In this instance, the amicus has a direct interest in the agency proceeding that will be enjoined by a TRO as the filer of a petition to deny (indeed, the Center intends to move to intervene in this litigation to protect its rights as a petitioner before the Commission, but recognizes that resolution of intervention is not possible on the accelerated schedule associated with this TRO). If the Court grants a TRO, and eventually a PI or permanent injunction, the Center and its clients will be prevented from receiving agency adjudication of their petition.

7. The amicus appreciates the excellent work of the U.S. Department of Justice and Federal Communications Commission Office of General Counsel. All the same, its interests are not adequately represented by government defendants. In this as in many cases, a public interest organization can add arguments and ideas to the conversation which a government defendant is not in a position to assert.

Particular to this instance, at this point the Commission has not taken an affirmative position on whether Disney is engaged in race- or sex-based employment practices. The Commission has, at most, concluded that it has sufficiently substantial allegations of race- and sex-based employment practices to make its investigation public by ordering early renewal applications. *See* Media Bureau Order, DA 26-416 at 1 (April 28, 2026) ("Specifically, the FCC

has been investigating Disney's ABC stations for possible violations of the Communications Act of 1934 and the FCC's rules, including the agency's prohibition on unlawful discrimination"). And the Commission has taken no position on the other issues raised in CAR's Petition to Deny, namely asserting that Disney is not operating its stations in accord with its public interest obligations.

The Center, however, has taken the affirmative position that the Commission should act on ABC's licenses based on publicly available information documenting Disney's pattern of corporate-level race and sex discrimination. The Center has taken the further affirmative position that Disney is operating its ABC stations contrary to its public interest obligations.

Any response from the Commission will necessarily be circumspect in the information it can provide and the conclusions it reaches to protect the integrity of its investigation and to avoid reaching conclusions prematurely. The Center, by contrast, can give the Court the full picture presented in its Petition to Deny, which is central to the arguments made by ABC about pretext.

8. The motion is timely—it is being filed the day after the government's response is due, such that ABC can address its arguments in its reply brief.

9. The Center has consulted counsel for the parties, who do not object to the amicus brief.

10. A proposed order accompanies the motion as required by Rule 7(o).

11. The FCC has expressed in the Joint Status Report that it plans to file a motion to dismiss on jurisdictional issues. In order to avoid unnecessary briefing, the Center is not filing to intervene prior to this Court's decision on the motion to dismiss. The Center appreciates the briefing burden that counsel and the Court would face for a motion to intervene, particularly if expedited for resolution by October 6. Filing an amicus allows the Center and its viewers to protect their interests on this compressed timeframe. If the Court denies the jurisdictional motion to dismiss, the Center will promptly move to intervene before the deadline for the FCC to answer.

Wherefore, given the Center's expertise in these issues and its interest in this specific case, the Center moves the Court to file the accompanying brief.

Respectfully submitted,

*/s/ Christopher E. Mills*
Christopher E. Mills
Spero Law LLC
557 East Bay St. #22251
Charleston, SC 29413
843-606-0640
cmills@spero.law

Daniel R. Suhr*
Center for American Rights
1341 W. Fullerton Ave., Suite 170
Chicago, IL 60614
414-588-1658
dsuhr@americanrights.org
**Pro Hac Vice Motion Filed Simultaneously*