**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**AMERICAN BROADCASTING COMPANIES, INC.,** *et al.*,

Plaintiffs,

v.

**FEDERAL COMMUNICATIONS COMMISSION,** *et al.*,

Defendants

and

**FREQUENCY FORWARD, LLC,**
**MEDIA ACTION CENTER,** *et al.*,

Proposed Plaintiffs-Intervenors

Case No. 1:26-cv-2902 (LLA)

**REPLY TO PLAINTIFF'S OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE**

Frequency Forward, and the Media Action Center, individuals, Elise Nakhnikian, Ginger Feldman, Jen Senko, Marcia Annenberg, Rosy Harari, Kristen Brochmann, Jill Noelle Pellowski, Anne Cooper, William Clinton McSherry II, Merry Jones, Kimberley Leahy, James Keenan, Mitchell Szczepanczyk, Sabrina Haake, Torry Mercer, Jeff Shaw, Lanny Larson and Roxanne Griffith ("collectively Proposed Intervenors"), hereby Reply to Plaintiff's Opposition to Proposed Intervenors' Motion to Intervene.

In their Opposition Plaintiffs state that Proposed Intervenors' motion fails to meet the requirements of Federal Rule of Civil procedure 24(a) for two reasons, first the Proposed Intervenors' lack a legally protected interest because the harm they invoke is harm to Plaintiffs,

not to themselves; and second, Proposed Intervenors “do not come close to rebutting the presumption that Plaintiffs already adequately represent any interest that the proposed intervenors might assert.” Opposition at p. 1. As discussed herein, Plaintiffs are mistaken on both points.

**ARGUMENT**

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers*, 473 F.2d 118, 130, 153 U.S. App. D.C. 407 (D.C. Cir. 1972). Specifically, Rule 24 (a) provides that:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a)(2).

The D.C. Circuit has established that the right to intervene under Rule 24(a) depends on the applicant's ability to satisfy four factors: (1) whether the motion to intervene was timely; (2) whether the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731, 355 U.S. App. D.C. 268 (D.C. Cir. 2003) (citations omitted); *see also Jones v. Prince George's Cty.*, 348 F.3d 1014, 1017, 358 U.S. App. D.C. 276 (D.C. Cir. 2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation").

The D.C. Circuit has further held that, in addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution. *See Military Toxics Project v. EPA*, 331 U.S. App. D.C. 7, 146 F.3d948, 953 (D.C. Cir. 1998); *Mova Pharm.*, 140 F.3d at 1074; *Building & Constr. Trades Dep't v. Reich*, 309 U.S. App. D.C. 244, 40 F.3d 1275, 1282 (D.C. Cir. 1994). As the Court has explained, "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *City of Cleveland v. NRC*, 305 U.S. App. D.C. 162, 17 F.3d 1515, 1517 (D.C. Cir. 1994).

**A. Proposed Intervenors have Article III standing.**

To establish standing under Article III, a prospective intervenor must show: (1) injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In this case, (1) Proposed Intervenors' First Amendment rights have been violated, (2) by actions taken by the FCC, and (3) these injuries, which are personal to the Intervenors can be redressed by the Court.

In their Motion, Proposed Intervenors submitted declarations from viewers, demonstrating specific injury sufficient to establish Article III standing. For example, the declaration of Roxanne Griffith clearly demonstrates standing. (Dkt. 18, Motion Ex. 3) Therein Ms. Griffith states:

> "1. I am a resident of New York, New York and a regular viewer of WABC-TV.
>
> 2. I regularly watch *The View* on WABC-TV. I watch it daily when I am home. When I am not home, I tape the program and watch it later.
>
> 3. As a viewer and a fan of *The View*, in recent months I have noticed changes in the program's offerings. I was distressed to learn that because of ongoing pressure from the FCC and its investigation into *The View*, as well as the early license renewal process,

Disney has altered the process for choosing potential guests for *The View*. Disney Complaint ¶ ¶ 88-89. Disney admits that because of FCC pressure, "No candidate for public office has appeared on *The View* since the Bureau's February 2026 inquiry regarding Mr. Talarico's appearance on February 2, 2026." Id. Disney goes on to say in the same paragraph:

> the FCC's multiple actions against ABC has impacted the program's decisions about which guests to invite. Those escalating pressures have led Plaintiffs to be more circumspect in booking political candidates on *The View*, and have resulted in passing on further consideration of booking several political candidates. Those pressures have impacted not only potential bookings, but also the video clips that could constitute an "appearance" on *The View* under the FCC equal opportunities regulation: Plaintiffs have chosen not to air clips that it otherwise would have aired during the Hot Topics segment of *The View* and also in the cold open of the program.

4. I do not want the FCC or any branch of the government, deciding or influencing what guests should or should not appear on *The View*, or for that matter on any program I choose to view. In a society with a free and unencumbered press, journalists, not the government, decide what matters to cover. If I do not agree with the content, as a consumer, I have the right to change the channel.

5. The FCC's actions have violated my First Amendment right to receive news and information, unfiltered by government censorship and intervention."

Likewise, in his declaration, Jack Smith makes a clear case for viewer standing. Motion Ex. 1.

"2. I am a resident of Media, Pennsylvania and a regular viewer of ABC owned WPVI, Philadelphia, Pennsylvania. I am deeply concerned that Disney has modified its programming to pacify the Trump administration and the FCC. See Complaint at pp. 4, 5, 26, 35-37. The airwaves are held in public trust for the benefit of the viewers. Congress never intended for broadcast licenses to be used as bargaining chips to ensure that the political party in power receives favorable coverage from licensed broadcasters. Yet every American can see that is exactly what is happening. Such a blatant abuse of power and process would have been unthinkable when I was FCC General Counsel during the Reagan administration (1984 -1986). The FCC's call for the early renewal of ABC's licenses and the threat to designate the company for hearing over vaguely articulated claims of violating FCC rules against discrimination in employment is obviously retaliatory and pretextual and in violation of my First Amendment rights as a regular viewer of my ABC station. I am injured by the FCC's actions and by Disney/ABC caving under FCC and administration pressure."

Concerning standing, Plaintiffs' Opposition makes no mention of the declarations or the specific allegations they contain but limits its claim that Proposed Intervenors lack standing to its assertion that Proposed Intervenors do not have a legally protected interest in this case. It is beyond dispute that the loss of programming due to government interference constitutes a concrete and imminent injury. Here the declarations clearly support Proposed Intervenors' showing that the government caused the Plaintiffs to censor its programming to the detriment of the Proposed Intervenors. "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

The Court affirmed that "'[i]t is the right of the viewers and listeners, not the right of the broadcasters, which is paramount. . . . It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences which is crucial here. *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S.94, 102 (1973) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 390 (1969)). As parties in interest, members of the viewing public perform an important role: to "vindicate the public interest." *Id.* at 1001. *See also, Off. of Commc'n of United Church of Christ v. FCC*, 359 F.2d 994, 1002 (D.C. Cir. 1966) (holding that members of the viewing public have standing in license renewal).

As demonstrated by the declarations, Disney is not the only injured party in this proceeding. If anything, Proposed Intervenors have the greater claim. As Disney has said, "The ultimate injury here is not to the Station[s] or its parent company. It is to the public."[1] The

[1] FCC FORM 2100, SCHEDULE 303-S KABC TELEVISION, LLC (KABC-TV) Objection to

Supreme Court has affirmed that members of the public have First Amendment rights to receive information:

> The protection of the Bill of Rights goes beyond the specific guarantees to protect from Congressional abridgment those equally fundamental personal rights necessary to make the express guarantees fully meaningful. I think the right to receive publications is such a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers.

*Lamont v. Postmaster General*, 381 U.S. 301 (1965). In deciding whether a local school board violated the Constitution by removing books from a school library, the Supreme Court held that "the right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom." *Board of Education v. Pico*, 457 U.S. 853 (1982).

The FCC's actions and Disney's pusillanimous self-censorship are at war with the "uninhibited, robust, and wide-open" debate and discussion that are contemplated by the First Amendment. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Neither the FCC, nor the Plaintiffs can be relied on to defend Proposed Intervenors' First Amendment rights to receive news and information free of government interference.

**B. Intervenors' Motion is Timely**

Plaintiffs do not challenge Proposed Intervenors' Motion on the factor of timeliness. Further, Intervenors will comply with the court's schedule for briefing and court appearances, so there will be no disruption or delay in the proceedings.

---

Unlawful Early Renewal, p. 17, May 28, 2026.

**C. Intervenors have a Legally Protected Interest in the Litigation**

Plaintiffs claim that Proposed Intervenors do not have a legally protected interest because "this lawsuit is about the FCC's retaliatory campaign against *Plaintiffs* in violation of *Plaintiffs'* First Amendment rights." Opposition at p. 5. However, the First Amendment "protects both a speaker's right to communicate information and ideas to a broad audience and the intended recipients' right to receive that information and those ideas," *Rossignol v. Voorhaar*, 316 F.3d 516, 522 (4th Cir. 2003). Plaintiffs cannot claim that the FCC is violating their First Amendment rights without acknowledging the First Amendment rights of the Proposed Intervenors. This is especially true as Plaintiffs admit that they have self-censored programming, in violation of their public interest obligations as broadcast licensees, to appease a president who was offended by the jokes of a late-night comedian. Plaintiffs have a legally protected interest in preserving their First Amendment rights, the very rights Plaintiffs have demonstrated that they are willing to sacrifice to save their licenses.

**D. Plaintiffs Cannot Adequately Represent the Proposed Intervenors' Interests.**

The Plaintiffs claim that they will "adequately protect any interests proposed intervenors have in this litigation." Opposition p.5. If, as Plaintiffs allege, the interests of Plaintiff and Proposed Intervenors align, then why do Plaintiffs oppose the Motion to Intervene? Plaintiffs serve two distinct interests. While their First Amendment rights have been violated, they have an overarching legal and fiduciary duty to protect their licenses and preserve their value for the benefit of Disney's shareholders. This conflict has resulted in Plaintiffs' willingness to self-censor and take other steps to appease the administration, even when those steps violate its public interest obligations under the Communications Act. Proposed Intervenors have only one

interest to protect, their First Amendment rights to receive news and information free of government interference. The two interests are not aligned and will not always dictate precisely the same approach to the conduct of the litigation. *See, e.g. Trbovich v. UMW,* 404 U.S. 528, 538-39 (1972). "[Rule 24] is satisfied if an applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *American Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (noting that "the requirements [of Rule 24] are to be construed in favor of intervention". *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1319 (Fed. Cir. 2012). The court has recognized, "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. 1967). Moreover, even "a shared general agreement … does not necessarily ensure agreement in all particular respects," *Natural Res. Def. Council*, 561 F.2d 904, 912 (D.C. Cir 1977). Proposed Intervenors do not have FCC licenses that can be revoke. They will not pull their punches and will vigorously defend their First Amendment rights from FCC interference.

## CONCLUSION

Plaintiffs have failed to state a basis for denying Proposed Intervenors' Motion to Intervene. Proposed Intervenors have satisfied the legal requirements for standing and intervenor status in this litigation, and therefore respectfully ask the Court to grant their Motion to Intervene.

By: /s/ Arthur Belendiuk
Arthur V. Belendiuk
D.C. Bar No. 336768
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W., #301
Washington, D.C. 20016
(202) 363-4559

Dated: September 7, 2026