UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN BROADCASTING COMPANIES, INC. *et al.*,

Plaintiffs,

v.

FEDERAL COMMUNICATIONS COMMISSION, *et al.*,

Defendants.

Civil Action No. 26-2902 (LLA)

**DEFENDANTS' REPLY**
**IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**


Table of Contents ........................................................................................................ i

Table of Authorities ..................................................................................................... ii

Argument ........................................................................................................................1

I. *TRAC* Forecloses Jurisdiction in This Court. ........................................................4

II. *Axon* Does Not Provide This Court with Jurisdiction. ...........................................8

III. *Thunder Basin* Confirms That This Court Lacks Jurisdiction. ...........................11

IV. The *Media Matters* and *Endocrine Society* Cases Are Distinguishable, and In Any Event Do Not Justify Departing from *TRAC*, *Axon*, and *Thunder Basin* .................................................................................................14

Conclusion ...................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*,
750 F.2d 81 (D.C. Cir. 1984) .......... 4

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) .......... passim

*Bland v. Blanche*,
Civ. A. No. 25-3499 (APM), 2026 WL 1998552 (D.D.C. July 10, 2026) .......... 5

*Daniels v. Union Pac. R. Co.*,
530 F.3d 936 (D.C. Cir. 2008) .......... 5

*Edwards v. United States*,
211 F. Supp. 3d 234 (D.D.C. 2016) .......... 15

*Endocrine Soc'y v. FTC*,
832 F. Supp. 3d 1 (D.D.C. 2026) .......... 11, 13

*FCC v. AT&T, Inc.*,
608 U.S. 531 (2026) .......... 9

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) .......... 7

*Gen. Tel. Co. of Nw., Inc. v. EEOC*,
446 U.S. 318 (1980) .......... 1, 11

*Glob. Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) .......... 11

*In re NRDC*,
645 F.3d 400 (D.C. Cir. 2011) .......... 5

*In re Tennant*,
359 F.3d 523 (D.C. Cir. 2004) .......... 6

*La Voz Radio de la Communidad v. FCC*,
223 F.3d 313 (6th Cir. 2000) .......... 10, 11

*Media Matters for Am. v. FTC*,
805 F. Supp. 3d 105 (D.D.C. 2025) .......... 11, 15

*Media Matters for Am. v. FTC*,
No. 25-5302, 2025 WL 2988966 (D.C. Cir. 2025) .......... 11, 14, 15

*Moms Against Mercury v. FDA*,
483 F.3d 824 (D.C. Cir. 2007) .......... 5, 6

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) .......... 15

*New Mexico v. Musk*,
824 F. Supp. 3d 80 (D.D.C. 2026) .......... 11

*NRDC, Inc. v. U.S. NRC*,
680 F.2d 810 (D.C. Cir. 1982) .......... 7

*Pub. Util. Comm'r v. Bonneville Power Admin*,
767 F.2d 622 (9th Cir. 1985) .......... 4

*Quiet Cmtys., Inc. v. EPA*,
Civ. A. No. 23-1649 (JMC), 2026 WL 2056862 (D.D.C. July 16, 2026) .......... 5

*Telecomms. Rsch. and Action Ctr. v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) .......... 3, 4, 5, 6

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) .......... 5, 11, 12

*Ukiah Adventist Hosp. v. FTC*,
981 F.2d 543 (D.C. Cir. 1992) .......... 4, 5, 11

**Statutes**

15 U.S.C. § 41 .......... 14

28 U.S.C. § 2342(1) .......... 2, 4, 6

47 U.S.C. § 155(c)(4) .......... 2, 6

47 U.S.C. § 307(c)(3) .......... 3, 7, 16

47 U.S.C. § 402 .......... 2, 4, 6

47 U.S.C. § 402(b)(2) .......... 6, 12

**Regulations**

47 C.F.R. § 1.115(a) .......... 2, 6

Defendant Federal Communications Commission and the remaining Defendants respectfully submit this reply in support of their motion to dismiss (Dkt. 23, "Defs.' Mot."). For the reasons explained here and in that motion, the Court should dismiss this case.

**ARGUMENT**

Employment discrimination on the basis of race, sex, national origin, or religious affiliation is contrary to the public interest and unlawful. *See* Defs.' Mot. (Dkt. 23) at 13-14;[1] *see also Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 326 (1980) (combatting employment discrimination serves "the public interest"). The Communications Act obligates the Commission to guard against and investigate potential discrimination by parties it regulates. *See* Defs.' Mot. at 13-14, 16. Since March 2025, the Commission has been investigating serious allegations of employment discrimination at Disney and its subsidiaries, which include eight broadcast television stations. *See Id*. at 17.[2] More than a year into that investigation, Disney still had not provided the FCC's Enforcement Bureau with information it had asked for. To further the investigation, the FCC's Media Bureau then issued an order requiring Disney's broadcast stations to submit early license renewal applications. *See* Defs.' Mot. at 18-19, 33-45.

Plaintiffs concede that the Commission has the authority to call for early license renewal when "essential to the proper conduct of a hearing or investigation." Opp. (Dkt. 42) at 42 n.51 (quoting 47 C.F.R. § 73.3539(c)). But they regard that "justification for the early license renewal

---

[1] All pin cites are to the ECF-generated page numbers, appearing in blue color at the top, right corner of each page.

[2] *See also* Amicus Br. of the Center for American Rights ("CAR Br.," Dkt. 26-1) at 15-16 (describing certain of these policies and practices); Defs.' Mot. Ex. 21, Pet. to Deny of the Center for American Rights (Dkt. 23-21) at 43-50 (highlighting "specific programs that demonstrate race and gender-based discrimination"); Defs.' Mot. Ex. 22, Pet. to Deny Renewal Licenses of America First Legal (Dkt. 23-22) at 8-11 (describing "Inclusion Standards").

proceeding" here as "not credible." *Id.* at 9-10. They have therefore sued to "challenge the Commission's . . . exercise of its early license renewal authority" as an "unconstitutional" attempt "to retaliate against them for protected speech." *Id.* at 9.

This Court lacks subject-matter jurisdiction to review that claim. Congress has given the courts of appeals exclusive jurisdiction to review challenges to FCC orders. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402. Seeking to circumvent that statutory review scheme, Plaintiffs frame their injury as arising from the Commission's investigatory "process," not a particular FCC "decision" or order. Opp. (Dkt. 42) at 15; *accord id.* at 13. But it is clear from their pleadings, as crystallized by their opposition to the motion to dismiss, that in challenging the constitutionality of the Media Bureau's early renewal process, Plaintiffs in fact challenge the order itself—they seek to enjoin it and thereby to prevent the Commission from adopting any successive orders. *See id.* at 9; *see also id.* at 13 ("Plaintiffs seek to enjoin the Commission's unlawful use of the early license renewal proceeding"); PI Mem. (Dkt. 2-1) at 51 (urging the Court to "prevent[] the Commission from taking any further action with respect to its retaliatory early renewal application order"); Compl. (Dkt. 1) at 44 (asking this Court to "[d]eclare that Defendants' order requiring that Plaintiffs file early license renewal applications constitutes retaliatory action").

The order requiring early renewal applications was a staff-level action that Plaintiffs could have appealed to the full Commission. *See* 47 C.F.R. § 1.115(a). Had they done so, the Commission would have been obligated to decide their application for review, 47 U.S.C. § 155(c)(4), and the resulting order would have been subject to judicial review in a court of appeals, *see* 28 U.S.C. § 2342(1); 47 U.S.C. § 402. If the court of appeals was persuaded that the decision to order early renewal was retaliatory, it could have granted Plaintiffs relief. Indeed,

under this scenario, a court of appeals might by now already have heard and decided Plaintiffs' retaliation claim.

But instead of availing themselves of available administrative remedies and awaiting a final Commission order—which would also have allowed them to seek relief from any unreasonable delay under the All Writs Act—Plaintiffs complied with the early renewal order. As a result, the Commission received six petitions to deny their applications, including two that specifically address allegedly discriminatory practices at Disney. *See* Defs.' Mot. (Dkt. 23) at 20, 43. The Commission is now reviewing those pleadings and the wider record that the renewal applications have generated. While that process is underway, Plaintiffs' existing licenses will remain in effect. *See* 47 U.S.C. § 307(c)(3). In other words, for the duration of the Commission's renewal proceeding (and even longer, if the proceeding results in an adverse decision and Plaintiffs seek judicial review), the stations may continue to operate under their existing licenses without impediment.

Having declined to challenge the early renewal order through the process prescribed by Congress, or to await a final reviewable order in the resulting proceeding, Plaintiffs now seek to side-step the claims-channeling statutes that provide for review of FCC orders exclusively in the courts of appeals. *See Telecomms. Rsch. and Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 77-79 (D.C. Cir. 1984). Straining to establish jurisdiction in this Court, they brush aside *TRAC*, overread and misapply the Supreme Court's jurisprudence on claims channeling, and give undue weight to recent First Amendment retaliation cases that do not apply.

This Court should decline Plaintiffs' invitation to exercise jurisdiction it does not have, grant Defendants' motion to dismiss, and dismiss the case.

## I. ***TRAC* Forecloses Jurisdiction in This Court.**

As established in Defendants' motion, Congress has channeled claims challenging FCC orders to the courts of appeals and, in specified licensing cases, to the D.C. Circuit. *See* Defs.' Mot. (Dkt. 23) at 23-24 (explaining the operation of 28 U.S.C. § 2342(1) and 47 U.S.C. § 402)). The governing claims-channeling provisions deprive this Court of federal-question jurisdiction in FCC cases—even where, as here, the agency has not yet issued any final, reviewable order. *See TRAC*, 750 F.2d at 75 & n.26, 77; *see also* Defs.' Mot. at 15 (citing cases applying *TRAC*). That is because "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *TRAC*, 750 F.2d at 78-79.

The principle articulated in *TRAC* applies "broadly." *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992). "By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." *TRAC*, 750 F.2d at 77. Thus, although "*TRAC*-type cases have tended to focus on one category of nonfinal agency action—unreasonable agency delay—neither the language nor rationale of *TRAC* indicates that its reach is limited to such claims." *Ukiah Adventist*, 981 F.2d at 550 (citation modified). For example, courts have recognized that "constitutional claims of agency bias and prejudgment" are subject to claims channeling under *TRAC*. *Id.*; *see also Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 84 (D.C. Cir. 1984) (principles of *TRAC* apply "squarely to a claim of bias," which has "equal power" as a claim of unreasonable delay "to affect [the] future jurisdiction" of the court of appeals); *Pub. Util. Comm'r v. Bonneville Power Admin*, 767 F.2d 622, 628 (9th Cir. 1985) ("jurisdiction over claims that may affect our future statutory review authority . . . , such as the instant bias claim, is exclusive").

*TRAC* acknowledges that, in "a small category of cases," 750 F.2d at 78, challenges to "nonfinal agency action" may be reviewable in district court under general federal-question jurisdiction. *Ukiah Adventist*, 981 F.2d at 550. But that exception to claims channeling does not apply where a plaintiff's claim is one that Congress has "reserved solely for appellate review"—even if the plaintiff contends that the administrative process in question is unconstitutional or otherwise unlawful. *Id.* at 549; *see also id.* (claims channeling applied where plaintiff challenged agency's jurisdiction to hear underlying antitrust complaint); *Daniels v. Union Pac. R. Co.*, 530 F.3d 936, 941-44 (D.C. Cir. 2008) (same, where plaintiffs lost (or feared to lose) professional certifications through proceeding that allegedly violated due process).

Plaintiffs brush *TRAC* aside as a "decades-old and inapposite D.C. Circuit decision that long predates" the Supreme Court's decisions in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). Opp. (Dkt. 42) at 22. But *TRAC* remains in force notwithstanding those decisions. *See, e.g.*, *Quiet Cmtys., Inc. v. EPA*, Civ. A. No. 23-1649 (JMC), 2026 WL 2056862, at *8 (D.D.C. July 16, 2026) (applying *TRAC* to hold D.C. Circuit had exclusive jurisdiction to compel agency action where that court had exclusive jurisdiction to review such action); *Bland v. Blanche*, Civ. A. No. 25-3499 (APM), 2026 WL 1998552, at *4 (D.D.C. July 10, 2026) ("Once again, *Axon* 'did not overrule the D.C. Circuit's clear holdings in *TRAC* and *Air Line Pilots*.'").

Contrary to what Plaintiffs say, moreover, "protective jurisdiction under *TRAC*" is not "narrow." Opp. (Dkt. 42) at 23. The case they cite for that proposition, *In re NRDC*, 645 F.3d 400 (D.C. Cir. 2011), merely recognizes that *TRAC* does not apply when "the basis of prospective jurisdiction [in the court of appeals] is a speculative chain of events," *id.* at 405 (quoting *Moms Against Mercury v. FDA*, 483 F.3d 824, 827 (D.C. Cir. 2007)).

That concern does not pertain here. There is no question that the Commission's license renewal proceeding "might lead to an appeal." *Moms Against Mercury*, 483 F.3d at 827 (quoting *In re Tennant*, 359 F.3d 523, 529 (D.C. Cir. 2004)). In fact, it could already have done so through either of two avenues. First, had Plaintiffs exhausted their administrative remedies by seeking full-Commission review of the early renewal order, *see* 47 C.F.R. § 1.115(a), the Commission would have been statutorily required to act on their application for review. *See* 47 U.S.C. § 155(c)(4). If that action was unreasonably delayed, Plaintiffs could have sought a writ of mandamus from the court of appeals under the All Writs Act. *See TRAC*, 750 F.2d at 75. Second, if the Commission resolved their application for review by upholding the early renewal order, Plaintiffs could have obtained judicial review in the court of appeals then, too. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402. Either way, Plaintiffs could have presented their claim of unconstitutional retaliation to the court of appeals. And likewise now, if the early renewal proceeding is allowed to run its course, Plaintiffs will be able to challenge any resulting adverse orders in the D.C. Circuit, and to raise their retaliation claim then. *See* 47 U.S.C. § 402(b)(2), (5). By contrast, allowing Plaintiffs to bring their claim in this Court "might affect the Circuit Court's future jurisdiction" over any final order arising from the early renewal proceeding. *TRAC*, 750 F.2d at 75. Indeed, if they were to succeed on the merits of their retaliation claim (as is unlikely), the Commission might be prevented from ever issuing a final reviewable order at all. Plaintiffs' claim is thus "subject to the exclusive review of the Courts of Appeals." *Id.* at 78-79.

To be sure, *TRAC* does not apply "where a denial of review in the District Court will truly foreclose all judicial review." 750 F.2d at 78. But that principle is not fairly invoked where, as here, Plaintiffs gave up previously available avenues for judicial review by failing to exhaust their administrative remedies. And Plaintiffs effectively concede that any order denying their renewal

applications or revoking their licenses will be reviewable in the D.C. Circuit. *See* Opp. (Dkt. 42) at 46 ("An eventual appeal of a license nonrenewal order does not redress the chilling effects of that risk."), 48 ("And although Defendants state that Plaintiffs would 'be able to seek review in the D.C. Circuit of any adverse final licensing order,' that ignores the here-and-now injuries inflicted on Plaintiffs." (citation omitted)). They further recognize that, if a final order is unreasonably delayed, they may seek a writ of mandamus. *See id.* at 24. In either circumstance, they would be able to raise their retaliation claim. Their insistence that they cannot obtain meaningful judicial review outside of their present suit is therefore baseless.

Importantly, Plaintiffs do not dispute that Section 307(c)(3) of the Communications Act guarantees that Plaintiffs may continue to use their existing licenses, undisturbed, for the duration of the license renewal proceeding and for however long they might need to seek judicial review of an adverse decision. *See* 47 U.S.C. § 307(c)(3); Defs.' Mot. (Dkt. 23) at 2, 49, 54. Given that guarantee and Plaintiffs' confidence in their retaliation case, whatever editorial changes they may adopt in the interim are not properly attributable to the early renewal proceeding, but are instead the result of their own independent choices. Defs.' Mot. at 12; *see id.* at 49-50.

Plaintiffs would rather not participate in the early renewal process—like many parties that would prefer freedom from their regulators. *See id.* at 29 (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980), and *NRDC, Inc. v. U.S. NRC*, 680 F.2d 810, 816 (D.C. Cir. 1982)). But the early renewal process is one of the means by which the Commission may decide whether to take action. Plaintiffs should not be allowed to avoid participating in the agency's inquiry by claiming—prematurely—that the inquiry is itself punitive agency action. Process is not punishment; it is simply process.

## II. *Axon* Does Not Provide This Court with Jurisdiction.

In *Axon*, the Supreme Court gave guidance on how to identify the "extraordinary" types of claims against agencies that fall outside special review schemes that ordinarily govern. 598 U.S. at 180. Plaintiffs argue that their retaliation claim falls within that narrow group. *See* Opp. (Dkt. 42) at 14-15. But they misconstrue the nature of their claim and misread *Axon*. Their reading, if adopted, would allow litigants to bypass claims-channeling statutes in almost any case.

*Axon* explained that district courts may exercise general federal-question jurisdiction over "charg[es] that an agency is wielding authority unconstitutionally in all or a broad swath of its work," 598 U.S. at 189, not just in an individual order or proceeding. Such claims, the Court stated, go to "the core of [an agency's] existence" or "structure." *Id.* at 189, 192. They are "fundamental, even existential." *Id.* at 180. Thus, for example, the Court determined in *Axon* that district court review was available for claims that "agencies' administrative law judges . . . [were] insufficiently accountable to the President" and thus could not constitutionally perform enforcement hearings at all, in any case, not only in the particular cases before the Court. *Id.* By contrast, as the parties here agree, special review schemes govern challenges to an agency's "specific substantive decision" or "the commonplace procedures agencies use to make . . . a decision." *Id.* at 189. *Compare* Defs.' Mot. (Dkt. 23) at 27, *with* Opp. (Dkt. 42) at 14.

Plaintiffs' retaliation claim falls into the second category, where district court review is unavailable. Although Plaintiffs frame their injury as "result[ing] from the administrative process," not a particular FCC "decision," Opp. (Dkt. 42) at 15, the crux of their claim is a substantive challenge to the early renewal order on the grounds that it was retaliatory, *see id.* 9, 13; *see also* PI Mot. Ex. 41, Order (Dkt. 2-4) at 57 ("Therefore, Disney's ABC is hereby directed to file license renewals for all of their licensed TV stations within 30 days—in other words, by May 28, 2026."). And to whatever extent Plaintiffs can be understood to challenge the early

renewal "process" apart from a specific FCC order, it is through that process that the agency will ultimately reach a "substantive decision"—one subject to review only in the courts of appeals. Notably, too, the constitutional problem that Plaintiffs allege is specific to them. They do not argue that the Commission may never constitutionally call for early renewal of station licenses, only that doing so was unconstitutional in their case.

To avoid the conclusion that claims channeling applies, Plaintiffs offer a more expansive gloss on *Axon*'s description of what claims are subject to district court jurisdiction. Beyond claims that "an agency is wielding authority unconstitutionally in all or a broad swath of its work," Plaintiffs assert that claims "belong[] in district court" whenever they "charge that an agency is wielding authority unconstitutionally." Opp. (Dkt. 42) at 14. At a minimum, they contend, district courts may hear claims that "a party never should have been subjected to agency proceedings in the first place." *Id.*

That unfounded reading of *Axon* is wildly overbroad. The Supreme Court cautioned that *Axon* does not "portend[] newfound enthusiasm for interlocutory review" of claims outside of congressionally prescribed special review schemes. 598 U.S. at 192. And to accept Plaintiffs' reading of *Axon* would "open [the] floodgate" to district court litigation in mine-run agency cases, Amicus Br. of America First Legal Foundation (Dkt. 47) at 24, including for types of claims that have routinely been understood to fall within the exclusive jurisdiction of the courts of appeals.

For example, the Supreme Court has recognized that pre-enforcement Seventh Amendment challenges to FCC forfeiture orders are governed by the Hobbs Act. *See FCC v. AT&T, Inc.*, 608 U.S. 531, 537 (2026). Under Plaintiffs' reading of *Axon*, there would have been no need for the litigants in *AT&T* to await the culmination of the Commission's enforcement process to bring their Seventh Amendment claims. Instead, under Plaintiffs' reading, upon receiving letters of

inquiry from the Enforcement Bureau, the wireless carriers could have gone straight to district court alleging that the Commission's investigatory process violated their right to a jury trial. *Cf.* Opp. (Dkt. 42) at 15 (interpreting *Axon* to mean that district court jurisdiction is available whenever a party alleges that "a proceeding is illegitimate from the get-go because that person effectively has a 'right not to stand trial'").

Similarly, under Plaintiffs' reading of *Axon*, it is easy to imagine that the plaintiff in *La Voz Radio de la Communidad v. FCC*, 223 F.3d 313 (6th Cir. 2000), could have obtained review in district court. The plaintiff was a "low-power 'microbroadcaster[]'" that aired religious-themed and other programming "geared to the Hispanic Community." 223 F.3d at 315, 317. It applied for a broadcast license from the FCC but, anticipating that its application would be denied, filed suit in district court. *Id.* at 317. There, it sought "an injunctive order allowing [it] to broadcast [its] religious message and enjoining the government from civilly or criminally sanctioning [it]" for broadcasting without a license. *Id.*

The district court dismissed the case for lack of subject-matter jurisdiction, and the Sixth Circuit affirmed. *Id.* at 315. In doing so, the court individually addressed several possible permutations of the plaintiff's claim against the agency: (1) a *Bivens* claim against a staff member who had warned the plaintiff against unlicensed broadcasting, *see id.* at 316-17; (2) a claim that refusing to grant broadcast licenses to microbroadcasters "violated the First Amendment," *id.* at 316; and (3) a claim that denying the plaintiff a broadcast license would "violate[] the Religious Freedom Restoration Act," *id.* at 317. No matter the formulation of the plaintiff's claim, the court held, "Congress's directive that review of the FCC's administrative actions should occur in the courts of appeals" foreclosed district court jurisdiction. *Id.* at 320; *see id.* at 318-20.

Under Plaintiffs' reading of *Axon*, the plaintiff in *La Voz* could readily have obtained district court review. It would only have needed to assert, as Plaintiffs do here, that the Commission was requiring it to participate in a licensing proceeding in retaliation for disfavored programming—e.g., its religious programming. This Court should not adopt an interpretation of *Axon* that would so readily "create an unmanageable body of litigation in the federal courts" outside the specialized review scheme. *Ukiah Adventist*, 981 F.2d at 551; *see also New Mexico v. Musk*, 824 F. Supp. 3d 80, 100 (D.D.C. 2026) (litigants are ordinarily not permitted to "avoid statutory limits on review by reframing" alleged violations "through creative pleading" (citing *Glob. Health Council v. Trump*, 153 F.4th 1, 16 (D.C. Cir. 2025)).

Even the First Amendment retaliation cases on which Plaintiffs heavily rely do not adopt so broad a reading of *Axon*. *See* Opp. (Dkt. 42) at 15, 21-22 (discussing *Endocrine Soc'y v. FTC*, 832 F. Supp. 3d 1 (D.D.C. 2026); *Media Matters for Am. v. FTC*, 805 F. Supp. 3d 105 (D.D.C. 2025); and *Media Matters for Am. v. FTC*, No. 25-5302, 2025 WL 2988966 (D.C. Cir. 2025) (per curiam)). Those cases cite *Axon* for the proposition that "[w]hether a legal claim is exclusively channeled to an administrative review scheme depends on" the application of the three-factor analysis set forth in *Thunder Basin*. *Media Matters*, 2025 WL 2988966, at *5; *accord Endocrine Soc'y*, 832 F. Supp. 3d at 9; *Media Matters*, 805 F. Supp. 3d at 124.

That more limited reading of *Axon* is correct. And as explained below—again contrary to Plaintiffs' contention, *see* Opp. (Dkt. 42) at 15-20—the application of the *Thunder Basin* factors supports claims channeling to the courts of appeals.

## III. ***Thunder Basin* Confirms That This Court Lacks Jurisdiction.**

The Supreme Court in *Thunder Basin* identified three factors useful to considering whether Congress intended that claims be reviewed within a special review scheme. First, would precluding district court jurisdiction "foreclose all meaningful judicial review"? *Thunder Basin*,

510 U.S. at 212-13. Second, are the claims "'wholly collateral' to [the] statute's review provisions"? *Id.* at 212. And, third, are the claims "outside the agency's expertise"? *Id.* Here, all three factors reinforce that this Court lacks jurisdiction over Plaintiffs' retaliation claim. *See* Defs.' Mot. (Dkt. 23) at 28-31.

Meaningful judicial review. To begin with, recognizing that jurisdiction in this Court is precluded will not deprive Plaintiffs of any avenue for relief. As explained above, *see supra* at 6-7, 10, Plaintiffs could have challenged the staff-level early renewal order by applying for review by the full Commission, and then sought review of the Commission's order in the court of appeals. And even now, having foregone that opportunity, they are not without options for judicial review. If the Commission ultimately denies their renewal applications or revokes their licenses, they can challenge any such order in the D.C. Circuit. 47 U.S.C. § 402(b)(2), (5). Meanwhile, if Plaintiffs believe the Commission is unreasonably prolonging the renewal proceeding, they need not await "some later point," Opp. (Dkt. 42) at 24, to seek a writ of mandamus (or prohibition) from the court of appeals. They may do so right away—but in the court of appeals, not in this Court.

Collateral claim. Plaintiffs' retaliation claim is not "wholly collateral" to the review provisions of the Communications Act. As they appear to acknowledge, evidence supporting, on the one hand, their retaliation claim or, on the other, a substantive challenge to a final Commission order in the early renewal proceeding, could "overlap[]." Opp. (Dkt. 42) at 19. Evidence that Plaintiffs "meet the statutory criteria" for renewal, they contend, would be "powerful corroboration" that the FCC's actions were "pretextual." *Id*. But by the same token, evidence that Plaintiffs did not meet the criteria for renewal—for example, if they were found to have engaged in employment discrimination—would be powerful corroboration that the FCC's actions were not pretextual. At a minimum, resolving whether the early renewal proceeding was initiated for

retaliatory purposes—the "why" of the early renewal proceeding, Opp. at 18—would require this Court to analyze the legitimacy of the Commission's concerns about employment discrimination at the stations, the relative merits of the Enforcement Bureau's requests for information and Disney's responses in the antidiscrimination investigation, and whether calling for early license renewal was "essential" to that investigation. Proving the point, Plaintiffs address all of those issues at length in the merits portion of their opposition brief. *See id.* at 36-43. But they nowhere suggest how the Court could resolve those questions without preempting analysis that a court of appeals would otherwise conduct under the special review scheme that Congress has established for FCC orders. Contrary to Plaintiffs' contention, *see id.* at 18, the issue of "motive" at the heart of their retaliation claim, *e.g.*, *id.* at 29, 34, thus is integral, not collateral, to the special review scheme.

<u>Agency expertise</u>. Plaintiffs assert that "[t]he Commission 'has no expertise in adjudicating First Amendment retaliation claims that parties bring against the Commission itself.'" Opp. (Dkt. 42) at 19. But the Commission is unquestionably expert in what degree of cooperation is expected from regulated parties in an enforcement investigation, when an early renewal proceeding is "essential" within the meaning of the Commission's rules, and what are the benefits and disadvantages of early renewal as compared to other investigatory tools the Commission might employ—all questions that, again, are central to their retaliation claim. *See id.* at 36-43. Because of this, Plaintiffs' constitutional claim is "intertwined with [and] embedded in matters on which the [Commission is] expert." *Axon*, 598 U.S. at 195.

The *Thunder Basin* factors thus confirm the Commission's analysis under *TRAC* and *Axon*: this Court lacks jurisdiction to review Plaintiffs' claim.

**IV. The *Media Matters* and *Endocrine Society* Cases Are Distinguishable, and In Any Event Do Not Justify Departing from *TRAC*, *Axon*, and *Thunder Basin*.**

While conceding that the recent *Media Matters* and *Endocrine Society* decisions in this District are "nonbinding," Plaintiffs argue that those decisions—and the D.C. Circuit's order declining to stay the district court's "tentative determination" in *Media Matters*, 2025 WL 2988966, at *6—nonetheless offer "reasoned" and "thoughtful" support for recognizing a per se exception to claims channeling for any "First Amendment retaliation claim." Opp. (Dkt. 42) at 20-21. But as the Commission has explained, those cases are readily distinguishable. *See* Defs.' Mot. (Dkt. 23) at 30-31. This Court should not follow them.

Both *Media Matters* and *Endocrine Society* concerned the application of the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*, which (unlike the Communications Act) does not channel judicial review to the courts of appeals, and which did not offer the plaintiffs in those cases a sure path to judicial review. Defs.' Mot. (Dkt. 23) at 30. Plaintiffs contend that these "distinctions do not matter," because the key point of *Axon* is that "judicial review *someday* cannot be sufficient to strip a district court of jurisdiction over a claim of here-and-now injury." Opp. (Dkt. 42) at 21-22. But as noted above, *see supra* at 13, *Axon* "emphasize[s]" that not every "here-and-now" injury from participating in an administrative proceeding justifies departing from the otherwise governing special review scheme. 598 U.S. at 191-92. The Court in *Axon* held more narrowly that claims of injury from "subjection to an unconstitutionally structured decisionmaking process" are reviewable outside the special review scheme. *Id.*

For reasons already explained, *see supra* at 13-15, to whatever extent the courts in *Media Matters* and *Endocrine Society* might be understood to have suggested, in an extension of *Axon*, that First Amendment retaliation claims will always avoid claims channeling and warrant review in district court—*but see Media Matters*, 805 F. Supp. 3d at 125 ("To be clear, the Court does not

give special solicitude to First Amendment claims that are guaranteed to be heard eventually.")—that was error. Plaintiffs conspicuously offer no limiting principle for that rule, and courts have long warned against allowing parties to "avoid a judicial-review bar by creative pleading or clever lawyering." *Mullin v. Doe*, 146 S. Ct. 2121, 2136 (2026); *see also Edwards v. United States*, 211 F. Supp. 3d 234, 237 (D.D.C. 2016) ("Jurisdictional defects cannot simply be eliminated by creative pleading."). Adopting such a rule would encourage a host of regulated entities wishing to avoid administrative exhaustion requirements and claims-channeling provisions to frame their allegations as claims of First Amendment retaliation.

The underlying facts of *Endocrine Society* and *Media Matters* help explain why the courts in those cases might have been motivated to ignore that obvious risk and extend *Axon*. Unlike here, the plaintiffs suing the FTC did "not seek to circumvent an administrative proceeding followed by judicial review in a court of appeals," and they had no prospect of judicial review within the statutory review structure unless the FTC itself initiated court proceedings. *See* Defs.' Mot. (Dkt. 23) at 30 (quoting *Media Matters*, 2025 WL 2988966, at *5). Whatever the merits of extending *Axon* in those circumstances, this Court should not do so in the very different circumstances presented here.

* * *

Finally, the Communications Act already protects Plaintiffs against the "here-and-now" chilling effects on speech that they claim to be suffering: Under Section 307(c)(3) of the Act, any license under review "shall continue . . . in effect" until the completion of "any administrative or judicial hearing and final decision" on a licensee's renewal application, including judicial review under "[S]ection 402." 47 U.S.C. § 307(c)(3). Particularly where Congress has provided this guardrail, the Court should not endorse a new path to judicial review that would allow litigants in

virtually any case to circumvent Congress's intent to channel claims against the FCC to the courts of appeals.

## CONCLUSION

For these reasons, and the reasons stated in their motion to dismiss, Defendants respectfully request that the Court grant their motion and dismiss the case.

Dated: September 24, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *___/s/ Dimitar P. Georgiev___*
DIMITAR P. GEORGIEV, D.C. Bar # 1735756
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252 – 2500 (main)

*Attorneys for the United States of America*