UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC. *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION, *et al.*,<br><br>Defendants. | Civil Action No. 26-2902 (LLA) |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

Pursuant to the Court's order during the Motions Hearing held October 6, 2026, the Federal Communications Commission and the remaining Defendants respectfully submit this supplemental brief concerning "alternative tools"—beyond early license renewal—through which the agency might seek "to compel" Plaintiffs to comply with the Enforcement Bureau's requests for information in the ongoing antidiscrimination investigation. Min. Entry (Oct. 6, 2026).

Theoretically, there are different tools through which, when a party fails to provide information in response to letters of inquiry, the FCC may seek to compel or encourage compliance, or to obtain the necessary information by some other means. But early renewal is unique: it is a single administrative process involving both broad public input and the possibility of a hearing afterwards if, having considered public input, the Commission determines there is "a substantial and material question of fact." 47 U.S.C. § 309(e), (k)(3). The Media Bureau accordingly determined that early renewal was the best tool for the task before the agency. That said, possible alternative approaches include (in no particular order):

***Administrative subpoenas.*** The Commission could issue an administrative subpoena to compel compliance with a request for information—including compliance with letters of inquiry issued under the Commission's investigative authority in 47 U.S.C. § 403, or with requests for deposition testimony under 47 U.S.C. § 409(h). *See* 47 U.S.C. § 409(e) ("[T]he Commission shall have the power to require by subpena the attendance and testimony of witnesses and the production of all books, papers, schedules of charges, contracts, agreements, and documents relating to any matter under investigation."). To enforce such a subpoena, however, the Department of Justice would need to bring suit on the Commission's behalf. *See id.* § 409(f), (g); *see also id.* § 401.

***Monetary penalties for failure to comply with investigative requests.*** The Commission may issue monetary forfeiture orders for willful or repeated failure to comply with the provisions of the Communications Act or any FCC rule, regulation, or order, 47 U.S.C. § 503(b)(1)(B), including for failure to respond to a letter of inquiry. In practice, before issuing a forfeiture order, the Commission must first issue a written "notice of apparent liability" giving the subject of the prospective forfeiture an opportunity to respond. *See id.* § 503(b)(4)(A).[1] As representative examples of this tool, Plaintiffs have cited proposed forfeitures of "several thousand dollars." Pls.' Opp. (Dkt. 42) at 41-52 & n.40.[2] The persuasive effect of such penalties for a well-resourced entity like The Walt Disney Company, *see* Defs.' Mot. (Dkt. 23) at 32 n.5, may reasonably be questioned. More generally, and further tending to diminish the persuasive effect of this tool, FCC

[1] Plaintiffs also refer to an alternative process under which the Commission, instead of issuing a notice of apparent liability, may conduct a hearing in front of an administrative law judge. *See* Pls.' Opp. (Dkt. 42) at 43 n.52 (citing 47 U.S.C. § 503(b)(3)(A)). As the Supreme Court has recognized, "[i]n practice, the Commission does not use this process." *FCC v. AT&T, Inc.*, 608 U.S. 531, 536 (2026).

[2] All pin cites are to the ECF-generated page numbers, appearing in blue color at the top, right corner of each page.

forfeiture orders are not self-enforcing. *See AT&T*, 608 U.S. at 542-43. They require enforcement by the Department of Justice in a "trial de novo." *Id.* at 537 (quoting 47 U.S.C. § 504(a)). The Commission may not "penaliz[e] a party for failing to act in response to the mere existence of a forfeiture order, which in turn suggests that the party need not comply in the first place." *Id.* at 542.

***Hearings.*** As an alternative to seeking to compel or otherwise encourage compliance with specific requests for information, the Commission could conceivably invoke its general investigative authority under 47 U.S.C. § 403 to order an evidentiary hearing and attempt to obtain equivalent information in that context. *See* Pls.' Opp. (Dkt. 42) at 42 (citing *FCC v. Schreiber*, 381 U.S. 279, 281-83 (1965)). In addition, when the Commission has reason to consider revoking a license, it may conduct a hearing to obtain additional information. 47 U.S.C. § 312. Unlike in the early renewal context, however, the Commission does not (at least not automatically) have the benefit of a public comment period before determining whether to order hearings like these. And although there may be avenues for public participation after the fact, participation by third parties in hearings is subject to formal requirements that do not apply to commenters in the early renewal docket. *See* 47 C.F.R. §§ 1.223, 1.225, 1.229. There is thus reason to doubt whether a hearing designation order, had the Commission issued one here, would have generated the broad public input that the order Plaintiffs challenge has done. In particular, that approach would not have generated the petitions to deny now before the Commission in the early renewal docket, two of which raise substantive allegations of discrimination. *See* Defs.' Mot. (Dkt. 23) at 43.

The investigation underlying this case arose from concerning reports of discrimination at Disney companies. Defs.' Mot. (Dkt. 23) at 17. In response to letters of inquiry from the Commission, Plaintiffs limited the scope of their responses to questions designed to elicit information on the effect of company-wide policies on Disney's owned-and-operated stations. *See*

*id.* at 43; *see also* Defs.' Mot. Ex. 27 at 3-13. And it is well established that, if "documented," a "pattern of intentional discrimination" puts "seriously into question a licensee's character qualifications. *Bilingual Bicultural Coalition on Mass Media v. FCC*, 595 F.2d 621, 629 (D.C. Cir. 1978). In this context, the Media Bureau reasonably determined that calling for early renewal of Plaintiffs' licenses was the tool best-fitted to the Commission's investigatory purposes. "[T]he method by which [information] is to be gathered is, of course, a matter for the Commission." *Id.* at 630.

Plaintiffs acknowledge, as they must, that the Commission's rules authorize it to call for early license renewal when the Commission determines that doing so "is 'essential to the proper conduct of a hearing or investigation.'" Pls.' Opp. (Dkt. 42) at 42 & n.51 (quoting 47 C.F.R. § 73.3539(c)). But while acknowledging this point in the abstract, Plaintiffs contend that it "makes no sense" for the Commission to have elected to call for early renewal here, unless for a retaliatory purpose. *Id.* at 42. In Plaintiffs' view, calling for early renewal was not the right "match" between the problem the Commission confronted in this case—their repeated failure to provide information requested in the antidiscrimination investigation—and the agency's possible remedies. *Id.* at 41. Rather than calling for early renewal, they contend that the Commission should have "issue[d] a Notice of Apparent Liability for monetary forfeiture for several thousand dollars," *id.*, or perhaps ordered "an evidentiary hearing" pursuant to 47 U.S.C. § 403, *id.* at 42.[3]

Asking whether the Commission might have chosen a different tool to combat Plaintiffs' failure to provide complete responses in the antidiscrimination investigation does not address the operative question in this case: whether the agency lawfully elected to call for early renewal.

---

[3] Plaintiffs also refer to the possibility of issuing a "notice of inquiry," a tool the Commission sometimes employs as a prelude to possible rulemaking. Pls.' Opp. (Dkt. 42) at 42 (citing 47 C.F.R. § 1.430). It is unclear how they contemplate that tool might have applied here.

Regardless, this line of argument confirms that Plaintiffs are challenging the validity of the Media Bureau's early renewal order. *See* Defs.' Reply (Dkt. 52) at 6. And it is clear under the governing statutes that Congress has vested authority to review such determinations exclusively in a court of appeals. *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402; *see also* Defs.' Reply at 17-18 (question of whether calling for early renewal was appropriate is integral to the statutory review scheme and implicates the Commission's expertise). Had Plaintiffs exhausted their administrative remedies by filing an application for full-Commission review of the staff-level early renewal order, *see* 47 U.S.C. § 155(c)(7), the Commission would have been required to decide that application, *see id.* § 155(c)(4), *see also Nat'l Republican Cong. Comm. v. Brown*, No. 26A274, 2026 WL 2618462 (U.S. Sept. 4, 2026) ("The Commission is required to resolve every application it receives."). That in turn would have generated a final Commission order subject to review in the court of appeals, *see* 28 U.S.C. § 2342(1); 47 U.S.C. § 402, where Plaintiffs could have raised their First Amendment retaliation claim. Any possible concern about delay in obtaining a Commission order subject to review in the court of appeals is answered by the availability of a petition for mandamus. *See Telecomms. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("[T]here is no doubt that this court has present jurisdiction to hear claims concerning nonfinal agency action (or inaction) that might affect our future statutory review of final agency action."). Plaintiffs' deliberate choice not to exhaust their administrative remedies and petition for review in the court of appeals is thus no reason for this Court to bypass the claims-channeling framework that Congress established for review of FCC orders. Whether the Media Bureau "chose the wrong tool from the agency's toolkit" in calling for early renewal here is a question of the kind Congress intended for a court of appeals to resolve.

Dated: October 9, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ *Dimitar P. Georgiev*

DIMITAR P. GEORGIEV, D.C. Bar #1735756
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2500 (main)

*Attorneys for the United States of America*