IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION, *et al.*,<br><br>*Defendants*. | Civil Case No. 1:26-cv-2902-LLA<br><br>Judge Loren L. AliKhan |

**RESPONSE TO DEFENDANTS' SUPPLEMENTAL FILING**

Defendants argued at the hearing that "the license renewal process is not about the licenses," but rather an attempt to deal with what they claim to be a discovery deficiency. Hr'g Tr. 38:17–18, Dkt. No. 69. But their supplemental briefing only confirms what they conceded at the hearing: there are "a number of different tools" by which the agency could have addressed the purported discovery deficiency. *Id*. at 67:25–68:4. These are not merely "theoretical[]" tools, *see* Defs.' Supp. Br. 1, Dkt. No. 70; they have been used by the agency for decades. Yet the agency tried none of those less intrusive tools here, instead taking the unprecedented step of calling for early license renewal of all eight ABC-owned stations at once. Defendants' own admissions leave no doubt as to why—Defendants sought to inflict maximal coercive pressure on the media company whose speech the Administration sought to curb, while deliberately evading judicial review.

Defendants' excuses for not using a less intrusive tool to address the supposed discovery deficiency only underscore their retaliatory motive. To justify their choice not to use an

administrative subpoena or a monetary forfeiture order (both of which are options the agency wields in the normal course, *see, e.g.*, PI Reply 34–36 & n.50, Dkt. No. 43; *Pagedata LLC*, Order, 25 F.C.C. Rcd. 16758, 16763 (2010)), Defendants explain that those tools would require the Administration to seek enforcement in federal court. That Defendants openly describe judicial review as an obstacle demonstrates what Plaintiffs have been saying all along: shielding their unconstitutional campaign against ABC from judicial review is part of Defendants' retaliatory strategy.

Defendants also double down on the curious position that the early license renewal process was the most effective avenue for public participation. Defendants acknowledge that the agency can initiate a hearing without early license renewal but insist that a hearing alone does not have "the benefit of a public comment period." Defs.' Supp. Br. 3. By contrast, Defendants contend, public comment is "automatically" part of the early license renewal process. *Id*. But that is wrong. Nothing in the Communications Act or FCC regulations expressly provides for a public comment process in the context of early license renewal. As a result, the agency had to issue a Public Notice to solicit comments on the ABC stations' early license renewal applications. *See* Wilkinson Ex. 45, Dkt. No. 2-4 (Public Notice: FCC's Media Bureau Establishes Pleading Cycle and Ex Parte Procedures for the Early Renewal Applications of the Walt Disney Company's ABC Licenses, FCC, DA 26-541, at 3 n.26 (May 29, 2026), https://perma.cc/WCQ8-QFNX (explaining that the agency was promulgating deadlines for Petitions to Deny in the "absence of a specific rule")).

That type of Public Notice is not unique to the early license renewal context, and thus the agency could have sought public participation through such a notice without initiating an early license renewal proceeding. As Plaintiffs set out in their prior brief, the agency has recently used its authority to issue a Notice of Inquiry or a Public Notice to solicit public comments. *See* PI

Reply 35, Dkt. No. 43; Empowering Local Broadcast TV Stations to Meet Their Public Interest Obligations, 90 Fed. Reg. 54,686 (Nov. 28, 2025), https://perma.cc/HMX4-8UKD. Similarly, the agency issued a Public Notice seeking comments on whether ABC's *The View* should retain its exemption to the equal opportunities rule. *See* FCC's Media Bureau Seeks Comment on Petition by Disney's ABC Asking the FCC to Declare that *The View* Qualifies as a *Bona Fide* News Interview Program, FCC, DA 26-517, at 2 (May 22, 2026), https://docs.fcc.gov/public/attachments/DA-26-517A1.pdf. Defendants claim it is "unclear" how "that tool might have applied here." Defs.' Supp. Br. 4 n.3. But Defendants need not use their imaginations; these prior examples provide a roadmap. For example, the Public Notice on local broadcasters not only solicited comments on a set of specific questions, but also asked the public to consider how those policy questions should factor into the agency's review of license renewals:

> Moving forward, should the Commission engage in a more detailed review of affiliate agreements when reviewing license renewals in order to detect and address discriminatory or anticompetitive terms? We seek comment on these and other remedial provisions as possible avenues for the Commission to explore in addressing these marketplace issues.

Empowering Local Broadcast TV Stations, 90 Fed. Reg. at 54,688. There is no reason that the agency could not have issued a similar Public Notice here without initiating early license renewal. Moreover, Defendants ignore that third parties can file complaints about broadcasters at any time and regularly do so outside of the early license renewal process, and that the FCC has subsequently issued Public Notices seeking comment in response to complaints.[1]

Defendants also omit several other tools at the agency's disposal for rectifying the supposed discovery deficiency. First, the agency can issue cease-and-desist orders requiring a

[1] *See, e.g.*, Defs.' Ex. 18, Dkt. No. 24-18 (FCC order reinstating investigation into news distortion complaint filed by amicus Center for American Rights); FCC Establishes MB Docket No. 25-73 And Comment Cycle for News Distortion Complaint Involving CBS Broadcasting Inc., Licensee

party to comply with FCC rules or orders. *See* 47 U.S.C. § 312(b); 47 C.F.R. § 1.91. Second, the agency can issue a formal admonishment under 47 C.F.R. § 0.111(a)(18) or informal warning letters threatening consequences if a violation is not remedied.[2] Third, the agency can negotiate a consent decree with the broadcaster to redress any violations and resolve an enforcement matter.[3]

In any event, Defendants' concessions that the agency possessed "a number of" alternative tools for redressing the purported discovery deficiency, Hr'g Tr. 67:25–68:4, cement the conclusion that Defendants' stated reasons for initiating early license renewal were pretextual. Courts have consistently recognized that "[d]epartures from the normal procedural sequence . . . might afford evidence that improper purposes are playing a role." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977); *see also, e.g.*, *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 571 (D.C. Cir. 2019) ("[U]nexplained deviations from established procedure can permit a jury to infer that a purportedly fair selection process was in fact a pretext for discrimination"); *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (noting that pretext may be established by "deviation from established procedures or criteria"). The Court should conclude the same here. Defendants' attempt to recast this evidence as a claim that the agency chose the "wrong tool," Defs.' Supp. Br. 5, misses the point: Plaintiffs invoke the available

---

Of WCBS, FCC, DA 25-107, at 1 (Feb. 5, 2025), https://docs.fcc.gov/public/attachments/DA-25-107A1.pdf (FCC Public Notice calling for public comments in response to complaint).

[2] *See, e.g.*, *Jerry W. Materne*, Notice of Apparent Liability for Forfeiture, 33 FCC Rcd. 7319, 7320 (EB 2018) (discussing the Enforcement Bureau issuing a warning letter to a broadcaster); *Royal Realty LLC*, Letter, Case No. EB-FIELDNER-23-00035134, 2024 WL 194094 (EB Jan. 16, 2024).

[3] *See, e.g.*, *CBS Radio, Inc.*, Order, 22 FCC Rcd. 7026, 7026 (2007) (adopting a consent decree to resolve an investigation over potential broadcast sponsorship identification rule violations); *KRXA, LLC*, Order, 29 FCC Rcd. 3483, 3483 (EB 2014) (adopting a consent decree to resolve an investigation over potential broadcast sponsorship identification and indecency rule violations); *Townsquare Media, Inc.*, 39 FCC Rcd. 286 (MB 2024) (adopting a consent decree to resolve an investigation into potential broadcast sponsorship identification and online political file rule violations).

alternatives as evidence of retaliatory purpose, not to contest the Bureau's statutory authority to call for early renewal.

Dated: October 12, 2026

By: /s/ Beth A. Wilkinson
Beth A. Wilkinson (D.C. Bar No. 462561)
James Rosenthal (D.C. Bar No. 456124)
Jenna P. Swarbrick (D.C. Bar No. 1614398)
Daniel Epps (*pro hac vice*, D.C. Bar No. 1002523)
Luke Churchill (D.C. Bar No. 90020985)
**WILKINSON STEKLOFF LLP**
2001 M St. NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
jpswarbrick@wilkinsonstekloff.com
depps@wilkinsonstekloff.com
lchurchill@wilkinsonstekloff.com

Caroline Li (D.C. Bar No. 1779285)
**WILKINSON STEKLOFF LLP**
130 W 42nd St., 24th Floor
New York, NY 10036
Telephone: (212) 294-8910
Facsimile: (202) 847-4005
cli@wilkinsonstekloff.com

Paul D. Clement (D.C. Bar No. 433215)
Jeffrey C. Thalhofer (D.C. Bar No. 1658324)
**CLEMENT & MURPHY, PLLC**
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
jeff.thalhofer@clementmurphy.com

*Counsel for Plaintiffs American Broadcasting Companies, Inc.; The Walt Disney Company; KABC Television, LLC; KFSN Television, LLC; KGO Television, Inc.; KTRK Television, Inc.; WABC Television (New York), LLC; WLS Television, Inc.; WPVI Television*

*(Philadelphia), LLC; and WTVD Television, LLC.*